NO. 21-2166

_____

IN THE
UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

Carolina Youth Action Project, et al.,
Plaintiffs-Appellees

v.

Alan Wilson,
Defendant- Appellant.

_____

On Appeal from the United States District Court for the
District of South Carolina, Charleston Division

_____

**BRIEF OF DEFENDANT-APPELLANT WILSON**
_____

ALAN WILSON
Attorney General

ROBERT D. COOK
Solicitor General
Email: rcook@scag.gov

/s/ J. Emory Smith, Jr.
J. EMORY SMITH, JR.
Deputy Solicitor General
Email: esmith@scag.gov

Thomas T. Hydrick
Assistant Deputy Solicitor General
Email:ThomasHydrick@scag.gov

Office of the Attorney General
Post Office Box 11549
Columbia, South Carolina 29211

Phone:  (803) 734-3680;
Fax:  (803) 734-3677

Counsel for Attorney General Wilson

## RULE 26.01 DISCLOSURE STATEMENT

Attorney General Wilson is a State official, and therefore does not have a parent corporation or any stock.

# TABLE OF CONTENTS

TABLE OF CONTENTS.................................................................. i

TABLE OF AUTHORITIES ......................................................... iii

INTRODUCTION .........................................................................1

JURISDICTIONAL STATEMENT ...............................................2

STATEMENT OF ISSUES ............................................................3

STATEMENT OF THE CASE ........................................................3

   Procedural History ..................................................................3

   The Statutes At Issue ..............................................................7

      Section 16-17-420 – Disturbing schools ...........................7

      Section 16-17-530 – Disorderly Conduct ..........................9

   Facts Pertaining To Statutes ...................................................9

      Captain Rinehart Testimony .............................................10

      Other Incident Reports ......................................................12

      Plaintiffs-Appellees' Charges ...........................................13

STANDARD OF REVIEW ..........................................................14

SUMMARY OF ARGUMENT .....................................................14

ARGUMENT ...............................................................................17

   I SECTIONS 16-17-420 (PRIOR TO THE 2018 AMENDMENT) AND 16-17-530 ARE NOT VAGUE OR OTHERWISE UNCONSTITUTIONAL .............17

      A Plaintiffs raise a facial challenge to both statutes. ........................18

      B The District Court erred in its vagueness analysis. ........................19

      C The challenged statutes do no reach constitutionally protected conduct. .....21

      D The challenged statutes are not unconstitutionally vague.............................25

      E The Court Improperly Relied on Statistics About a Disproportionate Number of Charges to Students of Color and Disabled Students .................................46

   II THE COURT ERRED IN CERTIFYING THIS CLASS .............................47

      Lack of Commonality ..........................................................49

      Lack of Typicality and Adequacy of Proposed Representatives .....................50

i

The Relief Requested Does Not Benefit the Whole Class................................51

III THE DISTRICT COURT LACKED AUTHORITY TO ORDER CLASS –
WIDE EXPUNGEMENT AND SUCH RELIEF IS INAPPROPRIATE HERE 52

CONCLUSION ...........................................................................................56

CERTIFICATE OF COMPLIANCE.......................................................58

CERTIFICATE OF SERVICE .................................................................59

# TABLE OF AUTHORITIES

## CASES

*Alabama Educ. Ass'n v. State Superintendent of Educ.*,
746 F.3d 1135 (11th Cir. 2014) ............................................................20

*Anders v. California*,
386 U.S. 738 (1967) ...........................................................................46

*Anderson v. Shaver*,
290 F.Supp. 920 (D.C.N.M. 1968) ......................................................41

*Baby Neal for and by Kanter v. Casey*,
43 F.3d 48 (3d Cir., 1994) .................................................................52

*Bad Frog Brewery, Inc. v. New York State Liquor Authority*,
973 F.Supp. 280 (N.D.N.Y.,1997) ......................................................40

*Bethel School District No. 403 v. Fraser*,
478 U.S. 675 (1986) ...........................................................................35

*Calloway v. Lokey*,
948 F.3d 194 (4th Cir. 2020) ..............................................................14

*Chaplinksy v. State of New Hampshire*,
315 U.S. 568 (1942) ..................................................................... 28, 34

*City of Cincinnati v. Hoffman*,
31 Ohio St. 2d 163, 285 N.E.2d 714 (1972) ........................................32

*City of Landrum v. Sarratt*,
352 S.C. 139, 572 S.E.2d 476 (Ct. App. 2002) ............................ 26, 28

*City of Seattle v. Eze*,
759 P.2d 366, 111 Wash.2d 22 (Wash. 1988) .....................................38

*Commonwealth v. Orlando*,
371 Mass. 732, 359 N.E.2d 310 (1977) ...............................................32

*Commonwealth v. Telcinord*,
94 Mass. App. Ct. 232, 113 N.E.3d 382 (2018) ........................... 32, 33

*Copeland v. Vance*,
893 F.3d 101 (2nd Cir. 2018) ..............................................................20

*Deiter v. Microsoft Corp.*,
436 F.3d 461 (4th Cir., 2006) .............................................................51

*Edgar v. Haines*,
2 F.4th 298 (4th Cir. 2021) .......................................................... 18, 19

*Esteban v. Central Missouri State College,*
  415 F.2d 1077 (CA8 1969)................................................................44

*Flemming v. Nestor,*
  363 U.S. 603 (1960) ......................................................................17

*Fletcher v. Peck,*
  6 Cranch 87, 3 L.Ed. 162. (1810)....................................................17

*Fox v. Philadelphia Turf Club, Inc.,*
  1987 WL 17751 (E.D.Pa., 1987*)*....................................................40

*Freeman v. State,*
  302 Ga. 181, 805 S.E.2d 845 (2017) ...............................................30

*Glover v. Johnson,*
  85 F.R.D. 1 (E.D. Mich. 1977).......................................................49

*Grayned v. City of Rockford,*
  408 U.S. 104 (1972) ........................................................... 43, 44, 45

*Groppi v. Froehlich,*
  311 F.Supp. 765 (D.C.Wis. 1970)...................................................30

*Gutknecht v. United States,*
  396 U.S. 295, (1970) .....................................................................55

*Heard v. Rizzo,*
  281 F. Supp. 720 (E.D. Pa.)............................................................32

*In re Amir X.S.,*
  371 S.C. 380, 639 S.E.2d 144, (2006).......................................... passim

*In re Charles Steven B.,*
  No. 2004-UP-225, 2004 WL 6251491 (Ct. App. 2004)....................45

*In re D.H.,*
  663 S.E.2d 139, 283 Ga. 556 (Ga.,2008) ........................................42

*In the Interest of Doe,*
  318 S.C. 527, 458 S.E.2d 556 (Ct. App. 1995) ................................45

*In the Interest of Joelle T.,*
  No. 2010-UP-547, 2010 WL 10088227 (Ct. App. 2010)...................45

*In the Interest of Terrance M.,*
  368 S.C. 276, 628 S.E.2d 295 (2006)..............................................46

*Johnson v. Quattlebaum,*
  664 F. App'x 290 (4th Cir. 2016) ................................................ passim

*Johnson v. United States,*
  576 U.S. 591 (2015) ................................................................. 20, 21

*Kenny v. Wilson,*
  Order, March,3, 2017, 2017 WL 4070961 ..........................................3

iv

*Kenny v. Wilson,*
   885 F.3d 280 (4th Cir. 2018) ......................................................... 3, 24
*Knox v. United States,*
   No. CIVA 9071792-HMHGCK, 2008 WL 2168871 (D.S.C. May 2, 2008) 55, 56
*Kolbe v. Hogan,*
   849 F.3d 114 (4th Cir. 2017) ............................................................. 33
*Kowall v. U.S.,*
   53 F.R.D. 211 (W.D.Mich.1971) .................................................. 54, 55
*Legette v. Moore,*
   2003 WL 23851069 (D.S.C. 2003) .................................................... 35
*Lewis v. City of New Orleans,*
   415 U.S. 130 (1974) ........................................................................ 26
*Livingston v. State,*
   995 A.2d 812, 192 Md.App. 553 ...................................................... 30
*Lowery v. Adams,*
   344 F.Supp. 446 (D.C.Ky., 1972) .................................................... 30
*M.C. v. State,*
   695 So. 2d 477 (Fla. Dist. Ct. App. 1997) .................................... 20, 38
*Maages Auditorium v. Prince George's County, Maryland,*
   681 F. App'x 256 (4th Cir. 2017) ..................................................... 21
*Mahoney Area Sch. v. B.L.,*
   141 S.Ct. 2038 (2021) ..................................................................... 21
*Martin v. Lloyd,*
   700 F.3d 132 (4th Cir. 2012) ....................................................... 20, 29
*McDaniel v. Board of Educ. of City of Chicago,*
   2013 WL 4047989 .......................................................................... 52
*Newsom ex rel. Newsom v. Albemarle County School Bd.,*
   354 F.3d 249 (4th Cir. 2003) ........................................................... 22
*Occupy Fort Myers v. City of Fort Myers,*
   882 F.Supp.2d 1320 (M.D.Fla.,2011) ............................................... 31
*Parker v. Levy,*
   417 U.S. 733 (1974) ................................................................... 25, 29
*Schleifer by Schleifer v. City of Charlottesville,*
   159 F.3d 843 (4th Cir.1998) ............................................................ 19
*Sessions v. Dimaya,*
   138 S.Ct. 1204 (2018) ..................................................................... 20
*State ex rel. Williams v. City Court of Tucson,*
   520 P.2d 1166, 21 Ariz.App. 489 (Ariz.App. 1974) ........................... 40

v

*State v. Bailey*,
    368 S.C. 39,  626 S.E.2d 898 (App. 2006) ...........................................................27
*State v. Furio*,
    267 N.C. 353, 148 S.E.2d 275 ...........................................................42
*State v. Hammersley*,
    134 Idaho 816, 10 P.3d 1285 (2000) ...........................................................27
*State v. James M.*,
    111 N.M. 473, 806 P.2d 1063 (1990) ...........................................................27
*State v. LaCoste*,
    347 S.C. 153, 553 S.E.2d 464 (Ct.App.2001) ...........................................................27
*State v. Perkins*,
    306 S.C. 353, 412 S.E.2d 385, (1991) ................................................... 26, 28
*State v. Schoner*,
    591 P.2d 1305, 121 Ariz. 528 (Ariz.App., 1979) ...........................................................42
*State v. Szymkiewicz*,
    237 Conn. 613, 678 A.2d 473 (1996) ...........................................................27
*State v. Wiggins*,
    158 S.E.2d 37, 272 N.C. 147 (N.C. 1967) ................................................... 42, 43
*Sullivan v. Murphy*,
    478 F.2d 938 (D.C. Cir. 1973) ................................................... 53, 54, 56
*Tigrett v. Rector and Visitors of University of Virginia*,
    97 F.Supp.2d 752 (W.D.Va.,2000) ...........................................................31
*Tinker v. Des Moines Independent School Dist.*,
    393 U.S. 503 (1969) ................................................... 22, 23, 24
*Toledo v. Thompson-Bean*,
    879 N.E.2d 799 173 Ohio App.3d 566, 2007 -Ohio- 4898 (Ohio App. 6
    Dist.,2007) ................................................... 41, 42
*Town of Honea Path v. Flynn*,
    255 S.C. 32,  176 S.E.2d 564, (1970) ...........................................................39
*U.S. v. Cassiagnol*,
    420 F.2d 868 (4th Cir. 1970) ...........................................................31
*U.S. v. Linn*,
    513 F.2d 925 (10th Cir.) ...........................................................54
*United States v. Agront*,
    773 F.3d 192 (9th Cir. 2014) ...........................................................32
*United States v. Bagley*,
    899 F.2d 707 (8th Cir. 1990) ...........................................................53
*United States v. Brown*,
    No. 3:07-155-JFA, 2011 WL 13273882 (D.S.C. 2011) .......................................43

*United States v. D'Anjou*,
 16 F.3d 604 (4th Cir. 1994) ................................................................46
*United States v. McLeod*,
 385 F.2d 734 (5th Cir. 1967) ................................................ 53, 54, 56
*United States v. Mettetal*,
 714 F. App'x 230 (4th Cir. 2017) ......................................................53
*United States v. Nordean*,
 No. CR 21-175 (TJK), 2021 WL 6134595 (D.D.C. Dec. 28, 2021) ...................31
*United States v. Petras*,
 No. CR 2:15-CR-087-D, 2016 WL 1054597 (N.D. Tex. Mar. 17, 2016)............21
*United States v. Williams*,
 553 U.S. 285, (2008) ...........................................................................33
*Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*,
 455 U.S. 489 (1982) ..................................................................... passim
*Wal-Mart Stores, Inc. v. Dukes*,
 564 U.S. 338 (2011) ..................................................................... 47, 48
*Ward v. Rock Against Racism*,
 491 U.S. 781 (1989) ............................................................................26
*Washington v. Davis*,
 426 U.S. 229 (1976) ............................................................................47
*Wheeler v. Goodman*,
 306 F.Supp. 58 (W.D.N.C.1969) .................................................. 54, 56
*Williams v. Wofford*,
 No. C20-1477-RSL-MLP, 2021 WL 5280025 (W.D. Wash. Nov. 2, 2021) .......20
*Yick Wo v. Hopkins*,
 118 U.S. 356 (1886) ............................................................................46

## STATUTES

28 U.S.C. §1291 ..........................................................................................3
28 U.S.C. §§ 1331 and 1334(a)(3)-(4) .......................................................2
42 U.S.C. § 1983 .........................................................................................2
S.C. Code Ann. §16-17-420 ............................................................ passim
S.C. Code Ann. §16-17-530 ............................................................ passim
S.C. Code Ann. §17-1-40 .......................................................... 6, 7, 53

vii

## RULES

Fed. R. App. P. 32 ................................................................................58
Rule 23, FRCP ............................................................................ 48, 51
Rule 56, FRCP ................................................................................14

## OTHER AUTHORITIES

7A Fed. Prac. & Proc. Civ. § 1769 (3d ed.) ......................................51

## INTRODUCTION

The individual Plaintiffs-Appellees and an organization brought this case for themselves in 2016 and on behalf of an alleged class of elementary and secondary students in an unwarranted, sweeping assault on two statutes, the Disturbing Schools statute, S.C. Code Ann. §16-17-420 and the Disorderly Conduct statute as applied to school children, §16-17-530. Those statutes have been not been changed in any way pertinent to this case in decades except for a 2018 amendment to §16-17-420 that limits the statute to non-students and thereby moots all requests for prospective relief. No case at the appellate level in South Carolina or in the United States District Court in this State has ever found either statute to be unconstitutional. Plaintiffs-Appellees have used this action to decriminalize behavior that is criminal according to our law and address school disciplinary issues which are policy decisions for the legislative branch of State government rather than the Courts.

This suits has sought to tie the hands of prosecutors and law enforcement by enjoining prosecutions under these laws even though no named plaintiff has charges pending against him or her. Although a class has been certified of all children in the State (JA, V. I, p. 270), respectfully, only a microscopic portion of school children were charged in the 2019-2020 school year – less than 1/7 of 1%. *See, infra.* Moreover, Plaintiffs demanded extraordinary and sweeping relief by the expungement of records retroactively which is unprecedented in this state.

By Order dated October 8, the District Court ruled with Plaintiffs-Appellees in granting their Motion for Summary Judgment and denying the Attorney General's. JA, VIII, p. 910. The Attorney General has appealed that ruling because the statutes at issue meet constitutional standards, because the District Court fundamentally erred in its vagueness analysis, because this Court lacked the authority to order class wide expungement under the circumstances of the case and for the other reasons discussed below.

## JURISDICTIONAL STATEMENT

Plaintiffs-Appellees' claims were brought under the Fourteenth Amendment Due Process Clause of the United States Constitution and 42 U.S.C. § 1983. JA, V. I, p. 153 (Amended Complaint, ¶¶ 11 & 12). The District Court had jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1334(a)(3)-(4). Id. (¶ 13). The District Court issued an order and opinion granting Plaintiffs-Appellees' Motion for Summary Judgment and denying Defendant-Appellant's Motion for Summary Judgment on October 8. JA, V. III, p. 910. Plaintiffs-Appellees filed a Notice of Appeal on October 12, 2021 (JA, V. III, p. 949) as to that order and also prior opinions and orders of the Court February 24, 2021 certifying Class and Sub-Classes and addressing expungement as remedy (JA, V. I, p. 270), March 30, 2020, denying Motion to Dismiss and Motion to Dismiss or Strike Class Action Allegations (JA, V. I, p. 233) and May 10, 2019, granting Motion to Amend (JA, V. I, p. 150). The

2

District Court issued summary judgment in a civil action on October 13, 2021 (JA, V. III, p. 951), and the Defendant filed an Amended Notice of Appeal on October 19, including the summary judgment of October 13.  JA, V. III, p. 953.

This appeal is from a final order and judgment that disposes of all claims. This Court has jurisdiction pursuant to 28 U.S.C. §1291.

## STATEMENT OF ISSUES

1. Whether the District Court erred in finding that sections 16-17-420 (prior to the 2018 amendment) and 16-17-530 are unconstitutional.
2. Whether the District Court erred in certifying the class and sub-classes in this case.
3. Whether the District Court erred in ordering class-wide expungement.

## STATEMENT OF THE CASE

### Procedural History

The original Complaint was dismissed due to lack of standing by the late, Honorable Weston Houck.  Order, March 3, 2017, 2017 WL 4070961.  The Court of Appeals for the Fourth Circuit vacated that Order and remanded the case concluding that the allegations of S.P., D.S. and Nesmith were sufficient to establish an injury in fact. *Kenny v. Wilson*, 885 F.3d 280, 291 (4th Cir. 2018). The Court said that it "need not decide whether Kenny or Girls Rock have also established an injury in fact. Whether the claims alleged by these Plaintiffs-Appellees survive further analysis is a matter we leave to the district court." *Id.*

3

Upon remand, the Attorney General and the law enforcement officer defendants, Hanshaw, Crowe, Turner and Morton renewed their motion to dismiss and also answered the original complaint. Later, the parties consented to an order of this Court staying this action as to the law enforcement officer defendants. Order, May 15, 2018. JA, V. I, p. 127. The Court dismissed those defendants by Text Order of October 13, 2021. JA, V. I, p. 31.

Plaintiffs-Appellees moved to amend their Complaint to add or substitute D.D. as a class representative. JA, V. I, p. 142. The Motion noted that D.S. had graduated from high school, and that the case against him under §16-17-420 was dismissed. This Court granted that Motion by Order of May 10, 2019 (JA, V. I, p. 150).

Attorney General Wilson moved to dismiss the Amended Complaint because Plaintiffs-Appellees had conceded that the claims of Plaintiffs-Appellees Kenny and Nesmith are resolved, because Plaintiff Girls Rock (now Carolina Youth Action project) lacked standing, and because the remaining claims were subject to dismissal for one or more grounds. The Court agreed that the claims of Kenny, Nesmith and all other claims for future injunctive relief as to the Disturbing Schools Law were moot, but not moot as to expungement. JA, V. I, p. 237. Plaintiffs-Appellees reported that they did not oppose the dismissal of Plaintiffs-Appellees Kenny and Nesmith. The Court found that the claims of D.S. were not moot due to her no longer

4

being in school and found that Girl's Rock (Carolina Youth Action project) had organizational and representational standing.  JA, V. I, p. 240.   This Court denied the Motion because "[p]erforming Defendant's requested constitutional analysis at this juncture would amount to the court determining the final outcome of this case . . . ."  JA, V. I, p. 245.

The Attorney General filed an Answer to the Amended Complaint (JA, V. I, p. 248) in which, among other defenses, he alleged that Plaintiffs-Appellees had failed to state a class action, contended that S.C. Code Ann. §16-17-420, as written prior to amendment in 2018, and §16-17-530 are not vague or otherwise unconstitutional and contended that subject to the March 30, 2020, Order of this Court (JA, V. I, p. 233), the Attorney General reserved all of his arguments that expungement may not be ordered as relief in this case including, but not limited to relief for the alleged class.  The Answer also asserted that the Plaintiffs-Appellees Kenny and Nesmith should be dismissed as parties because Plaintiffs-Appellees agree that their claims are resolved.

By its Order of February 24, 2021, (JA, V. I, p. 270), this Court granted Plaintiffs-Appellees' Motion to Certify a Class Action including, for purposes of injunctive relief, a class of elementary and secondary students facing a risk of referral or arrest under S.C. Code Ann. §16-17-530 (disorderly conduct) and two subclasses for purposes of obtaining an injunction against the retention of records

5

under §16-17-530 and the former provisions of §16-17-420 (disturbing schools).

The Attorney General moved for summary judgment arguing that the statutes are not unconstitutionally vague. JA, V. I, p. 289. Plaintiffs-Appellees also moved for summary judgment challenging the laws alleging that they were unconstitutional. JA V. II, p. 349.

The District Court issued an order and judgment granting the Plaintiffs-Appellees' Motion for Summary Judgment and denying the Attorney General's motion. JA, V. III, p. 910. The Order dismissed the Plaintiffs Kenny and Nesmith[1], permanently enjoined the enforcement of S.C. Code Ann. §16-17-530 as to elementary and secondary school students in South Carolina while they are attending school, and permanently enjoined the State from retaining the records of the Disorderly Conduct Law Sub-Class and the Disturbing Schools Law Sub-Class, relating to being taken into custody, charges filed, adjudication, or disposition under §16-17-420, prior to May 17, 2018, and under §16-17-530, except as would be permissible following expungement under S.C. Code Ann. § 17-1-40.

The District Court granted in part and denied in part the Attorney General's Motion for Stay pending appeal. JA, V. III, p. 955. The Court ordered that the permanent enjoinment of the State's enforcement of S.C. Code Ann. §16-17-530 as

---

[1] Defendant-Appellant does not oppose the dismissal of Plaintiffs Kenny and Nesmith.

to elementary and secondary school students in South Carolina while they are attending school is partially stayed as discussed in the Order, pending the outcome of Defendant's appeal of the court's opinion and order. The Court also stayed the permanent injunction prohibiting the State from retaining the records of the Disorderly Conduct Law Sub-Class and the Disturbing Schools Law Sub-Class, relating to being taken into custody, charges filed, adjudication, or disposition under §16-17-420, prior to May 17, 2018, and under §16-17-530, except as would be permissible following expungement under §17-1-40 subject to the condition regarding sealing records as discussed herein, pending the outcome of Defendant's appeal.

## The Statutes At Issue

### Section 16-17-420 – Disturbing schools

Section 16-17-420 provided as follows until 2018:

(A) It shall be unlawful:(1) for any person wilfully or unnecessarily (a) to interfere with or to disturb in any way or in any place the students or teachers of any school or college in this State, (b) to loiter about such school or college premises or (c) to act in an obnoxious manner thereon; or( 2) for any person to (a) enter upon any such school or college premises or (b) loiter around the premises, except on business, without the permission of the principal or president in charge.

(B) Any person violating any of the provisions of this section shall be guilty of a misdemeanor and, on conviction thereof, shall pay a fine of not more than one thousand dollars or be imprisoned in the county jail for not more than ninety days.

7

(C) The summary courts are vested with jurisdiction to hear and dispose of cases involving a violation of this section. If the person is a child as defined by Section 63-19-20, jurisdiction must remain vested in the Family Court.

. . . HISTORY: 1962 Code § 16-551; 1952 Code § 16-551; 1942 Code § 1129; 1932 Code § 1129; Cr. C. '22 § 28; 1919 (31) 239; 1968 (55) 2308; 1972 (57) 2620; 2010 Act No. 273, § 12, eff June 2, 2010.

Part A has been substantially the same since it was enacted in 1919. See History, *supra.* In 1968, it was amended to remove language limiting the applicability of the provision to schools attended by women or girls. In 1972, the penalty provisions were changed, and in 2010, the penalty provisions were changed again and the summary court jurisdiction paragraph was added. Therefore, in pertinent parts, this statute has been the same for nearly one hundred years. No appellate case has addressed a vagueness claim regarding this law. *In re Amir X.S.* 371 S.C. 380, 639 S.E.2d 144, (2006) rehearing denied, certiorari denied 551 U.S. 1132, found the statute not to be overbroad and that Plaintiff lacked standing to raise a vagueness claim.

In 2018 the statute was substantially amended to impose criminal penalties only on non-students except for threats by students to take the life of or to inflict bodily harm upon another. Act 182, 2018 S.C. Acts (effective date May 17, 2018). (SECTION 1. (A) It is unlawful for a person who is not a student to wilfully interfere with, disrupt, or disturb the normal operations of a school or college in this State by.

8

. . .); except that now under §16-17-425. "[i]t is unlawful for a student of a school or college in this State to make threats to take the life of or to inflict bodily harm upon another by using any form of communication whatsoever.")   Appellees no longer sought prospective injunctive relief as to this statute, and the District Court did not order any.

### Section 16-17-530 – Disorderly Conduct

Plaintiffs-Appellees challenge §16-17-530 as applied to elementary and secondary students.  Its language has been substantially the same since it was first enacted over 70 years ago, and it currently reads as follows:

> Any person who shall (a) be found on any highway or at any public place or public gathering in a grossly intoxicated condition or otherwise conducting himself in a disorderly or boisterous manner, (b) use obscene or profane language on any highway or at any public place or gathering or in hearing distance of any schoolhouse or church or (c) while under the influence or feigning to be under the influence of intoxicating liquor, without just cause or excuse, discharge any gun, pistol or other firearm while upon or within fifty yards of any public road or highway, except upon his own premises, shall be deemed guilty of a misdemeanor and upon conviction shall be fined not more than one hundred dollars or be imprisoned for not more than thirty days.
>
> . . . HISTORY: 1962 Code § 16-558; 1952 Code § 16-558; 1949 (46) 466; 1968 (55) 2842; 1969 (56) 153.

### Facts Pertaining To Statutes

Although this case should be purely about whether the statutes are unconstitutionally vague, we provided the following information regarding

9

enforcement subject to any objections we may have to evidence offered by Plaintiffs-Appellees.

Craig Wheatley is the manager of data and statistics for the Department of Juvenile Justice. JA, V. I, p. 319, ll. 18-21. He has supplied the following data that shows that the total number of students that have been referred for violations of one of the above statutes was 1,058 in the 2019-2020 school year with the latter number including an undetermined number of non-school related charges. *See* table at JA, V. I, p. 329. Therefore, data shows that roughly only 1 / 750 students are referred annually now which is .13% or less than 1/7 of 1% or about 1.5 students out of every thousand. Furthermore, these calculations include DJJ referrals for charges that are not school related which make these numbers higher than they would be for just school misconduct. See JA V. I , p, 321, line 12 – p. 327, l. 20 (Wheatley Dep.).

### Captain Rinehart Testimony

He is the Captain of the Specialized Investigations for the Greenville County Sheriff's Office which includes the school enforcement unit. Rinehart Dep., JA, V. I, p. 332, l. 15 – p.333, l. 15). Prior to that position he was supervisor of the school enforcement unit and conducted training, reviewed incident reports and served as liason to the school district. JA, V. I, p. 334, l. 7 – p. 338, l. 1 and JA, V. I, p. 347(vita). Deputies assigned to the school enforcement unit have responsibility for the safety and security of the school campus and the investigation of criminal

10

incidents related to the school or its students.  JA, V. I, p. 339, ll. 10- 16).  School resource officers attend the South Carolina Criminal Justice Academy's two week SRO certification class.  JA. I, p. 340, ll. 8-16).  Captain Rinehart testified as follows as to how a resource officer might handle an incident:

> A. Well, obviously, if the -- if the  individual is causing a disturbance in the school and the -- the teacher immediately picks up the phone and calls an administrator or calls for the SRO, then, obviously, the SRO is going to get down there and try to evaluate what's going on. Even if the teacher or the administrator has tried to de-escalate the situation, we would continue -- if the individual's behavior was still beyond the normal, we would try to de-escalate that . . . .

> Q. And if a teacher or administrator called for an SRO, would it be possible ever for that officer to determine that the student's behavior was not beyond the normal?

> A. Yes.

> * * *

> Q. How often does that happen?

> A. I would probably say more often than not.

> Q. . . . What are the circumstance[s] under which a student might be charged with disorderly conduct?

> A. Causing a severe disruption inside a classroom, um, causing a severe disruption during class change, um, in the cafeteria or in a setting, in an office setting, say an administrator is having a meeting with them and their behavior gets out of control, obviously if they come to school intoxicated and aggressively intoxicated, situations like that.

JA, V. I, p. 341, l. 4 –p 344, l. 2).  A serious disruption in a cafeteria might including

11

jumping up on a table and causing a disturbance that might escalate into something involving hundreds of students.  JA, V. I, p. 344, l. 3 – p. 346, l. 12.  Throughout his testimony, Captain Rinehart demonstrated that charges were made carefully only after investigation of the event, the totality of the circumstances, and discussions with school officials.  He indicated no difficulty in understanding or applying any statutes including the disorderly conduct statute and the disturbing schools statute.

## Other Incident Reports

The Attorney General filed incident reports as exhibits to his return to Plaintiffs' Motion for Summary Judgment showing behavior that was most clearly criminal.  Here are four examples:

> the princip[al],. . ., along with the assistant princip[al] . . .who were with the same suspect from the last incident, attempting to escort her as she behaved boisterously, using profane language and physically resisting administration. I then contacted the suspect, and attempted to assist in escorting her.  At this time·, the suspect pulled away hard, grabbing the left arm of the officer. I then moved her to the side of the hallway and secured her hands behind her back using properly spaced and double locked handcuffs.

JA, V. III, pp. 855, 856 (Ex. 1, North Charleston incident reports[2])

> 10 student fight in the English wing of North Charleston high school with 4 teachers, "all three student-concern specialist[s] and other adults assisting in trying to gain order for the disruption . . . while [the officer] was trying to control S9 and remove him from the area, he was then attacked by another student . . . causing him to fall to the ground."

---

[2] Redactions were made in Exhibits 1 and 2 in white.

12

JA, V. I, p. 857 (Exhibit 1)

> Officers were contacted by school radio about a fight that was occurring in the C hallway between several student. Officers and school admin separated everyone involved . . . The suspects then left the guidance office and ran toward another admin office to try and fight the, other students again. School admin and officers attempted to restrain the suspects. I took hold of one of the suspects and ordered her to stop and calm down. The suspect began yelling at me and telling me to "get the f[*] off of her'. I told the suspect several times to relax and calm down. The suspect repeatedly tried to break free from me to fight the other students. I attempted to get the suspect back into the guidance office. The suspect again tried to break free from me.

JA, V. III, p. 858 (Exhibit 1).

> Once in my office the subject became very aggressive cursing stating "You're a b*!" "Your're a f*!" while my office door was open and students walking down the hallway. The subject then kicked my desk knocking several items on my desk to the floor. I then advised the subject that he was under arrest and will be charged with Assault and battery 3rd and also Disorderly Conduct.

JA, V. III, pp. 866 & 867(Exhibit 2).

**Plaintiffs-Appellees' Charges**

In her Declaration S.P. reported that she refused the principal's request to leave the library with him, told the SRO that she did not want to talk to him or the principal when he arrived, that she cursed a girl laughing at her when she finally did leave with them and then "said something like 'f* all of you'" to students in the library who were clapping as she was lead out of the library. JA, V. II, pp. 378 & 379. She was charged with disorderly conduct. *Id.,* p. 379. D.S. was charged with

13

disturbing schools for fighting in the school, but the charges were later dismissed. JA, V. II, pp. 359 and 360. D.D. was charged with disturbing schools for allegedly making threats against the school. JA V. II, p. 354.

## STANDARD OF REVIEW

The Court of Appeals "review[s] a summary judgment de novo, applying the same standard that the district court was required to apply. *Calloway v. Lokey*, 948 F.3d 194, 201 (4th Cir. 2020). Under Rule 56, FRCP, a district court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See also*, *Calloway*. In this case, under this standard, the district court should have denied the Appellees' motion and granted the Attorney General's motion as a matter of law.

## SUMMARY OF ARGUMENT

The Disorderly Conduct statute (S.C. Code Ann. §16-17-530) has been in effect for over 70 years and the Disturbing Schools statute (§16-17-420) was enacted over a century prior to its substantial amendment in 2018 to remove its application to students in most instances. Prior to the Order of the District Court in the instant case, never before had either statute been declared unconstitutional. Only a miniscule portion of students in South Carolina are charged under the disorderly conduct statute. The primary question for the Court in this case is whether these state statutes at issue are unconstitutionally vague under applicable standards. They

are valid, they should not have been set aside.

Plaintiffs-Appellees no longer seek prospective injunctive relief as to the Disturbing Schools statute, but invalidating the disorderly conduct statute as to them would remove a tool of law enforcement in dealing with disruptive and fighting students who are yelling at staff and visitors, hitting other students, running away from staff, kicking furniture, hitting doors, shoving staff and law enforcement. *See infra*. Never before has the former disturbing schools statute or the disorderly conduct statute been declared unconstitutional and they have been in force for decades. The disorderly conduct tool is applied to only a tiny percentage of students annually but protects the many other students and school staff threatened and disrupted by criminal behavior.

The District Court erred in finding the statutes unconstitutionally vague for multiple reasons. First, the District Court erred by failing to apply the framework set out by the Supreme Court in *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489 (1982) to assess facial vagueness challenges. However, even if the District Court applied the proper vagueness framework, the court erred in concluding that the challenged statutes are unconstitutionally vague. Under South Carolina case law, neither statute punishes lawful speech, only fighting words. They also do not punish protected expressive conduct. They do reach conduct that is subject to criminal penalties and in doing so they are not vague. The District Court

15

failed to apply the limitations on the application of the former Disturbing Schools law that applies only to conduct that willfully and unnecessarily disturbs the learning environment. These limitations prevent any conclusion that the statute is vague. The Court also failed to rely on case law applications of disorderly conduct statutes in other statutes and instead relied on dictionary definitions of those terms.

Even if, arguendo, the Court correctly ruled that the statutes are unconstitutionally vague, it erred in certifying a class of all elementary and secondary students in the state. That enormous class consists of nearly 800,000 students of which less than 1/7 of 1% were charged under either statute in the 2019-2020 school year. When only a miniscule number of students are charged, the class cannot meet commonality or typicality requirements. The individual parties cannot adequately serve as representative of a class in which few are affected by the statutes. Many of the students in the class may favor application of the laws.

The granting of retroactive expungements to students who have been charged is not supported by case law. The only cases supporting expungements of a group of parties has been in mass arrest situations. Such circumstances are not present here when students were charged at different individual times for different reasons.

The District Court erred in its analysis and in its conclusion that the statutes are unconstitutionally vague and in the expungement relief it ordered. The Court should be reversed.

16

# ARGUMENT

# I

## SECTIONS 16-17-420 (PRIOR TO THE 2018 AMENDMENT) AND 16-17-530 ARE NOT VAGUE OR OTHERWISE UNCONSTITUTIONAL

In considering a constitutional challenge, we bear in mind that "[e]very statute is presumed to be constitutional." *Johnson v. Quattlebaum*, 664 F. App'x 290, 291 (4th Cir. 2016). "'[I]t is not on slight implication and vague conjecture that the legislature is to be pronounced to have transcended its powers, and its acts to be considered as void.' *Fletcher v. Peck*, 6 Cranch 87, 128, 3 L.Ed. 162. (1810)." *Flemming v. Nestor*, 363 U.S. 603, 617 (1960).

With these background principles in mind, the District Court erred in holding that the challenged statutes are unconstitutionally vague. As an initial matter, the District Court erred by failing to apply the framework set out by the Supreme Court in *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc*., 455 U.S. 489 (1982) to assess facial vagueness challenges. The District Court also failed to consider binding and persuasive authority which render the challenged statutes constitutional under any potentially relevant framework.

17

## A

## Plaintiffs raise a facial challenge to both statutes.

This case is essentially a facial challenge. The District Court found that the challenge to the former Disturbing Schools statutes is facial, but that Plaintiffs-Appellees seek to invalidate it only as to elementary and secondary students. JA, V. III, p. 931. Although the challenge to the Disorderly Conduct statute is as applied to elementary and secondary students, it is applicable to that very large population rather than to individuals. *Edgar v. Haines*, 2 F.4th 298 (4th Cir. 2021) ("[a]t the outset, we reiterate that the Plaintiffs-Appellees are mounting a facial challenge, meaning that their claim is that the policies and regulations are unconstitutional not as applied to their own conduct, but rather, on their face, as they apply to the population generally. . . ."). These challenges are to such large segments of the general population that they should be treated as facial. Although the District Court stated that the parties conceded that the outcome of the lawsuit would not change based upon whether the court characterizes the challenge as facial or applied (JA, V. I, p. 931), the State made clear in argument that the nature of the challenges as facial "would be a further constraint on the Court as to overturning the statute because they are looked upon with disfavor." JA, V. III, p. 931.

Facial challenges such as the ones in the instant case are disfavored "because they 'run contrary to the fundamental principle of judicial restraint that courts should

18

neither anticipate a question of constitutional law in advance of the necessity of deciding it nor formulate a rule of constitutional law broader than is required by the precise facts to which it is to be applied.'" *Edgar, supra*.   Similarly, as this Court explained in *Schleifer by Schleifer v. City of Charlottesville*, 159 F.3d 843, 853 (4th Cir.1998):

> Striking down ordinances (or exceptions to the same) as facially void for vagueness is a disfavored judicial exercise. Nullification of a law in the abstract involves a far more aggressive use of judicial power than striking down a discrete and particularized application of it . . . It is preferable for courts to demonstrate restraint by entertaining challenges to applications of a law as those challenges arise.

The District Court not only applied the wrong standards for analyzing the vagueness claims and failed to recognize and apply the disfavor of the Courts to facial challenges, the Court failed to give effect to limiting constructions applicable to the statutes and to case law definitions of their terms.   Under the analysis below, the statutes are constitutional.

## B

### The District Court erred in its vagueness analysis.

Because plaintiffs raise a facial vagueness challenge to the two statutes, the District Court was bound to apply the vagueness analysis set forth in *Hoffman Estates*.   In *Hoffman Estates*, the Supreme Court outlined a two-part framework to assess a facial vagueness challenge.   First, courts must "determine whether the

19

enactment implicates a substantial amount of constitutionally protected conduct." *Martin v. Lloyd*, 700 F.3d 132, 135 (4th Cir. 2012) (quoting *Hoffman Estates*, 455 U.S. at 494). Second, if the enactment does not implicate constitutionally protected conduct, a court must consider whether the law is "impermissibly vague in all its applications." *Id* (quoting *Hoffman Estates*, 455 U.S. at 494–95).

This Court and courts from across the country routinely apply this two-part framework in assessing facial vagueness challenges. *See Martin*, 700 F.3d at 135; *see also Alabama Educ. Ass'n v. State Superintendent of Educ.*, 746 F.3d 1135, 1138 (11th Cir. 2014); *M.C. v. State,* 695 So. 2d 477, 480 (Fla. Dist. Ct. App. 1997) (applying *Hoffman Estates* to a challenge to a Florida school disruption statute).

Courts continue to do so even after the Supreme Court's decision in *Johnson v. United States*, 576 U.S. 591 (2015), which did not expressly overrule *Hoffman Estates*. *See Sessions v. Dimaya*, 138 S.Ct. 1204, 1250 (2018) (Thomas, J., dissenting) (noting that *Johnson* did not overrule *Hoffman Estates*); *see also Copeland v. Vance*, 893 F.3d 101, 113 n.3 (2nd Cir. 2018) ("Plaintiffs, relying on [*Sessions v. Dimaya*], decided after this appeal was heard, argue that a statute must be clear in all its applications to survive a vagueness challenge. This gets the rule backwards. Under a long line of decisions that *Dimaya* did not disturb, a statute will generally survive a facial challenge so long as it is not invalid in all its applications."); *Williams v. Wofford*, No. C20-1477-RSL-MLP, 2021 WL 5280025,

20

at *27 (W.D. Wash. Nov. 2, 2021) ("The *Johnson* Court did not, however, expressly overrule *Hoffman Estates*, and it is unclear the extent to which its rejection of the proposition that a statute is void for vagueness only if its void in all of its applications applies outside the context of the Court's residual clause cases."); *United States v. Petras*, No. CR 2:15-CR-087-D, 2016 WL 1054597, at *9 (N.D. Tex. Mar. 17, 2016) ("Finally, since *Johnson* was decided, courts have continued to follow *Village of Hoffman Estates*' test for vagueness.").[3]

## C

### The challenged statutes do no reach constitutionally protected conduct.

Applying *Hoffman Estates*, this Court should first consider whether the challenged statutes reach a substantial amount of constitutionally protected conduct. In doing so, this Court is bound to assess the statutes in light of the underlying school setting. *See Mahoney Area Sch. v. B.L.*, 141 S.Ct. 2038 (2021) ("[C]ourts must apply the First Amendment 'in light of the special characteristics of the school environment.'"); *see also In re Amir X.S.*, 372 S.C. 380, 388 n.4, 639 S.E.2d 144,

---

[3] In its unpublished opinion in *Johnson v. Quattlebaum*, this Court suggested that the Supreme Court backed away from *Hoffman Estates* in *Johnson*. *See Johnson v. Quattlebaum*, 664 F. App'x at 294 n.5. Since then, however, this Court has continued to apply *Hoffman Estates* to vagueness challenges. *See*, *e.g.*, *Maages Auditorium v. Prince George's County, Maryland*, 681 F. App'x 256, 264 (4th Cir. 2017). In any event, this Court plainly lacks the authority to overrule *Hoffman Estates* absent express clarification from the Supreme Court. *See supra*.

148 n.4 (2006) (noting that statutes that address a breach of peace in schools must be considered in light of the special characteristics of the school environment).

It is well established that students at school have far more limited First Amendment rights than elsewhere. *See Tinker v. Des Moines Independent School Dist.*, 393 U.S. 503, 507 (1969) ("[T]he Court has repeatedly emphasized the need for affirming the comprehensive authority of the States and of school officials, consistent with fundamental constitutional safeguards, to prescribe and control conduct in the schools."); *Newsom ex rel. Newsom v. Albemarle County School Bd.*, 354 F.3d 249, 255 (4th Cir. 2003) ("[C]ourts have long recognized that a public school student's First Amendment rights are not coextensive to those held by others in other contexts.").

In *Tinker v. Des Moines Independent School Dist.*, 393 U.S. 503 (1969), the Supreme Court outlined some of the limitations on students' First Amendment rights. Of particular relevance here, the Court held that conduct by students that "materially disrupts classwork or involves substantial disorder or invasion of the rights of others" is not "immunized by the constitutional guarantee of freedom of speech." *Tinker*, 393 at 513.

The challenged statutes seek to prevent the very type of disruptive behavior condemned by *Tinker* and do not reach constitutionally protected conduct. *See* S.C. Code Ann. § 16-17-420 (prohibiting willful or unnecessary disturbance in the school

22

setting); S.C. Code Ann. § 16-17-530 (prohibiting disorderly conduct in a public place).  In fact, both the South Carolina Supreme Court and this Court have previously held that the statutes do not reach a substantial amount of constitutionally protected conduct.

With respect to the disturbing schools statute, the South Carolina Supreme Court has expressly held that South Carolina's disturbing schools statute "does not substantially prohibit First Amendment speech." *In re Amir X.S.*, 372 S.C. 380, 388, 639 S.E.2d 144, 148 (2006).  In explaining why the statute does not implicate the First Amendment, the South Carolina Supreme Court held:

> By its terms, the statute does not apply to protected speech. Specifically, the disturbing schools statute does not prohibit spoken words or conduct "akin to 'pure speech.'" Nor does the statute broadly regulate conduct like a breach of the peace statute. Instead, § 16-17-420 criminalizes conduct that "disturbs" or "interferes" with schools, or is "obnoxious." In applying the *Tinker* distinction between direct restrictions on silent, passive expression of opinion versus restrictions on expression when accompanied by disorder or disturbance of schools, § 16-17-420 . . . clearly applies to the latter. Such conduct is not protected by the First Amendment and accordingly, we hold that § 16-17-420 is not a substantial threat to protected speech requiring overbreadth adjudication.

*In re Amir*, 371 S.C. at 388–89, 639 S.E.2d at 148 (internal citations omitted).  In reaching this conclusion, the South Carolina Supreme Court emphasized that the disturbing schools statute prohibits nothing more than what was prohibited in *Tinker* itself.  *In re Amir*, 371 S.C. at 390, 639 S.E.2d at 149 ("*Tinker* permits the State to

23

enforce its significant interest in its education system by punishing behavior that 'materially disrupts classwork or involves substantial disorder or invasion of the rights of others.'" Section 16-17-420 prohibits no more than this.") (quoting *Tinker*, 393 U.S. at 506).

With respect to the disorderly conduct statute, this Court has expressly held that the disorderly conduct statute, as construed by South Carolina courts, "reaches only speech unprotected by the First Amendment." *Johnson v. Quattlebaum, supra*, 664 F. App'x at 292. In explaining its decision, this Court held that South Carolina law "authoritatively construes the Statute to require fighting words for a conviction, speech that [the plaintiff] concedes is unprotected by the First Amendment." *Id*. at 294.

Finally, this Court's decision in *Kenny v. Wilson*, 885 F.3d 280 (4th Cir. 2018) does not compel a contrary conclusion because its holding was expressly limited to resolving the question of standing of three named plaintiffs. *See Kenny v. Wilson*, 885 F.3d 280, 291 (4th Cir. 2018) ("For the reasons given, we conclude that S.P., D.S., and Nesmith's allegations are sufficient to establish an injury in fact."). The opinion simply did not address—and did not purport to address—whether the challenged statutes reach constitutionally protected conduct under *Hoffman Estates*.

**D**

**The challenged statutes are not unconstitutionally vague.**

Because the challenged statutes do not implicate constitutionally protected conduct, plaintiffs must show that the statutes are impermissibly vague in all of their applications.

And even if this Court concludes that the challenged statutes do reach constitutionally protected conduct—or that *Hoffman Estates* does not apply—plaintiffs nevertheless have failed to demonstrate that the statutes are unconstitutionally vague. *See Parker v. Levy*, 417 U.S. 733, 760 (1974) ("[E]ven if there are marginal applications in which a statute would infringe on First Amendment values, facial invalidation is inappropriate if the remainder of the statute . . . covers a whole range of easily identifiable and constitutionally proscribable . . . conduct . . . .") (internal quotation marks omitted). This true for the reasons set forth below.

**1. Section 16-17-530 is constitutional.**

Section 16-17-530 is constitutional and is not unconstitutionally vague. The terms are of ordinary meaning, and their construction is limited by binding South Carolina case law. The statute provides sufficient guidelines and notice of proscribed conduct. *See Schleifer*, 158 F.3d at 853. Finally, case law from across the country reinforces the conclusion that the statute is not unconstitutionally vague.

25

### Limitations on the Statute's Application

The application of §16-17-530 has been limited by South Carolina courts to the use of fighting words. This limitation mitigates against any potential vagueness concerns. *See Hoffman Estates*, 455 U.S. at 499. And in considering plaintiffs' facial challenge to section 530, this Court must consider the effect of this limiting construction. *See Ward v. Rock Against Racism*, 491 U.S. 781, 796 (1989).

In describing this limiting construction, the South Carolina Supreme Court has said that "[t]o punish only spoken words addressed to a police officer, a statute must be limited in scope to fighting words that 'by their very utterance inflict injury or tend to incite an immediate breach of the peace.' *Hill*, 482 U.S. at 461-462 (quoting *Lewis v. City of New Orleans*, 415 U.S. 130 (1974)." *State v. Perkins*, 306 S.C. 353, 354–55, 412 S.E.2d 385, 386, (1991).[4]

*City of Landrum v. Sarratt*, 352 S.C. 139, 143–45, 572 S.E.2d 476, 478–79 (Ct. App. 2002) provides further guidance as to the limitation to "fighting words" and the scope of the disorderly conduct statute generally:

> However, the determination of whether profane words constitute fighting words depends upon the circumstances surrounding their utterance. *Lewis v. City of New Orleans*, 415 U.S. 130, 135, (1974) (Powell, J., concurring). Some of the factors to consider in determining if profanity constitutes fighting words are the presence of bystanders, the accompaniment of other aggressive behavior, and whether the

---

[4] This holding is not necessarily limited to a specific statute and could thus also apply to the disturbing schools statute.

words are repeatedly uttered. *See State v. Szymkiewicz*, 237 Conn. 613, 678 A.2d 473, 475–79 (1996) (finding fighting words where defendant repeatedly cursed police officer and store detective and threatened store detective, and uproar occurred in front of other customers who congregated to watch); *State v. Hammersley*, 134 Idaho 816, 10 P.3d 1285, 1287–89 (2000) (finding adult in vehicle who yelled "shut your f——ing mouth, you b—— ..." to 13 year old friend of adult's daughter and two other preteens on street used fighting words); *State v. James M.*, 111 N.M. 473, 806 P.2d 1063, 1065–66 (1990) (holding minor's repeated yelling of "f—— you" while flailing arms and pointing at another individual on a public sidewalk as a small crowd congregated constituted fighting words); . . . .

\* \* \*

[In]*State v. LaCoste*, 347 S.C. 153, 163–64, 553 S.E.2d 464, 470 (Ct.App.2001), cert. granted, Feb. 25, 2002 [, the defendant] threw up his arms in a hostile manner and yelled obscenities at a police officer, insisting he would not comply with the officer's demands. After his arrest, LaCoste repeatedly shouted obscenities, challenging the officer, and taunting the officer and another officer regarding their lack of success in bringing him under control. This court found there was sufficient evidence to enable the trial court to deny LaCoste's motion for directed verdict. *Id.*

Applying the fighting words doctrine to the facts of this case, we agree with the magistrate and conclude Sarratt's remarks, accompanied with the loud manner in which they were spoken, constituted fighting words. We find Sarratt's language, especially once he directed vulgarities at Franklin's mother, would incite an ordinary person to violence.

*See also*, *Johnson v. Quattlebaum, supra*, 664 F. App'x at 295, *supra* and *State v. Bailey*, 368 S.C. 39, 45, 626 S.E.2d 898, 901 (App. 2006).

Although "the 'fighting words' exception may require a narrower application in cases involving words addressed to a police officer 'because a properly trained officer may reasonably be expected to exercise a higher degree of restraint than the

27

average citizen,'" (*Perkins,* 412 S.E. 2d at 386) the term is limiting as to other persons. *City of Landrum, supra,* , 352 S.C. at 141,  572 S.E.2d  at 477 (Ct. App.,2002) applied "fighting words" doctrine to case in which the defendant was "arrested for yelling profanities at . . . [individual] and his mother . . . as they left the Landrum Municipal Court and walked across the municipal parking lot.".

This limitation renders the statute constitutional.  Under binding Supreme Court precedent and persuasive authority from this Court, this limitation necessarily renders the statute constitutional and not vague.  *See Chaplinsky v. State of New Hampshire*, 315 U.S. 568, 574 (1942) ("This conclusion [limiting the statute's application to words likely to cause a breach of the peace] necessarily disposes of appellant's contention that the statute is so vague and indefinite as to render a conviction thereunder a violation of due process. A statute punishing verbal acts, carefully drawn so as not unduly to impair liberty of expression, is not too vague for a criminal law."); *see also Johnson v. Quattlebaum*, 664 F. App'x at 294 (concluding that the portion of South Carolina's disorderly conduct statute prohibiting profane speech is not unconstitutionally vague).

Because the statute does not punish words other than fighting words, only its application to conduct needs to be assessed.  In reaching a contrary conclusion, the Court found that, in practice, Disorderly Conduct charges are not limited to incidents based on profanity with fighting words.  JA, V. III, p. 940).  The Court cited only

28

two examples which are not supportive. In Exhibit 12 to Plaintiffs-Appellees,
Motion for Summary Judgment (JA, V. II, p. 845) the subject yelled, cursed and
when "told to get back . . . she continued to be disruptive and curse." In the incident
report at Exhibit 10G to Plaintiffs-Appellees Motion for Summary Judgment (JA, V.
II, p. 811), the subject cursed while walking behind an officer and the mother of
another student. When the officer asked for his school identification card, the subject
refused saying "[y]ou don't need to know who I am, and I've done nothing wrong
for you to be stopping me p**** b****." *Id.* In this context with the behavior and
the refusal to cooperate, the language was "fighting words." Moreover, as the Fourth
Circuit has ruled, "[a] difference of opinion amongst judges or law enforcement does
not make a statute unconstitutionally vague." *Martin v. Lloyd*, 700 F.3d 132, 137
(4th Cir. 2012).

Regardless, two enforcement incidents alone provide no basis to facially
invalidate the law. *See Hoffman Estates*, 455 U.S. at 494–95; *Parker*, 417 U.S. at
760. As outlined above, numerous incidents detail criminal behavior of students
charged with disorderly conduct or disturbing the students including fighting,
shoving or hitting school staff and officers and kicking furniture. This type of violent
conduct plainly falls outside of the realm of constitutionally protected expressive
conduct. And the application of the statute to such conduct demonstrates that the
statute is not impermissibly vague in all or even most of its applications, satisfying

29

*Hoffman Estates*. The District Court erred in concluding otherwise.

## Case Law Upholding the Statute

The conclusion that §16-17-530 is constitutional is reinforced by decisions from across the country. Numerous disorderly conduct statutes and ordinances of other states have been upheld as not unconstitutionally vague including, for example, the following: *City of Groppi v. Froehlich*, 311 F.Supp. 765, 767 (D.C.Wis. 1970)("'(1) Each [legislative] house may punish as a contempt, by imprisonment, a breach of its privileges or the privileges of its members * * * for . . .b) Disorderly conduct in the immediate view of the house and directly tending to interrupt its proceedings.")

*Freeman v. State*, 302 Ga. 181, 183, 805 S.E.2d 845, 848 (2017)("disorderly conduct when he or she '[a]cts in a ... tumultuous manner . . . .'". Upheld statute using dictionary definition of "tumultuous.")

*Livingston v. State*, 995 A.2d 812, 821, 192 Md.App. 553, 569 Md.App.,2010)( "[w]hile an individual is in any placement for tuberculosis treatment, the individual may not: (1) Behave in a disorderly manner." H–G § 18–325(b)(1).)

*Lowery v. Adams*, 344 F.Supp. 446, 453–54 (D.C.Ky., 1972)(Policy statement that "[t]he University will not allow or tolerate any disruptive or disorderly conduct which interferes with the rights and opportunities of those who attend the University

30

for the purpose for which the University exists-the right to utilize and enjoy the facilities provided to obtain an education.")

*Occupy Fort Myers v. City of Fort Myers*, 882 F.Supp.2d 1320, 1337 (M.D.Fla.,2011)("Loitering and boisterousness. Sleep or protractedly lounge on the seats, benches, or other areas, or engage in loud, boisterous, threatening, abusive, insulting or indecent language, or engage in any disorderly conduct or behavior tending to a breach of the public peace." Court found only the terms "protractedly lounge" and "tending" to be vague)

*Tigrett v. Rector and Visitors of University of Virginia,* 97 F.Supp.2d 752, 755 (W.D.Va.,2000) ("Disorderly conduct is defined to include acts which break the peace or are lewd, indecent or obscene and which are not constitutionally-protected speech.")

*U.S. v. Cassiagnol*, 420 F.2d 868, 872 (4th Cir. 1970)("GSA regulation prohibiting 'unwarranted loitering * * * or assembly' and 'unseemly or disorderly conduct' while on government property.")

Most recently, courts have rejected vagueness challenges to federal disorderly conduct statutes arising out of charges based on the events of January 6, 2021 at the United States Capitol. *See United States v. Nordean*, No. CR 21-175 (TJK), 2021 WL 6134595, at *19 (D.D.C. Dec. 28, 2021) ("Second, the statute is not unconstitutionally vague such that Defendant's preferred constriction is necessary.

31

The text is clear and gives fair notice of the conduct it punishes, and it is not standardless enough to invite arbitrary enforcement.").

Several statutes and regulations including "boisterous" as part of the definition of disorderly conduct have been upheld. *See, eg.  United States v. Agront*, 773 F.3d 192, 197 (9th Cir. 2014)("prohibition on '[d]isorderly conduct' creating 'loud, boisterous, and unusual noise' on VA property . . . ."); *Heard v. Rizzo*, 281 F. Supp. 720, 741 (E.D. Pa.), aff'd, 392 U.S. 646, 88 S. Ct. 2307, 20 L. Ed. 2d 1358 (1968) (willfully making  "loud, boisterous and unseemly noise or disturbance"); *City of Cincinnati v. Hoffman*, 31 Ohio St. 2d 163, 165, 285 N.E.2d 714, 716–17 (1972)(Ordinance providing that "[i]t shall be unlawful for any person to willfully conduct himself or herself in a noisy, boisterous, rude, insulting or other disorderly manner, with the intent to abuse or annoy any person or the citizens of the city or any portion thereof . . . .").

Given the foregoing, Section 16-17-530 clearly passes muster under standards applied to vagueness challenges.  It is "both general enough to take into account a variety of human conduct and sufficiently specific to provide fair warning that certain kinds of conduct are prohibited."   *Colten, supra.*   As stated in *Commonwealth v. Telcinord*, 94 Mass. App. Ct. 232, 239, 113 N.E.3d 382, 389 (2018), quoting *Commonwealth v. Orlando*, 371 Mass. 732, 733-736, 359 N.E.2d 310 (1977):

32

> A more specific standard is impractical because the conduct proscribed by this law necessarily varies according to its location and timing.... A disturbing the peace standard which attempted to define more precisely the levels of noise and types of conduct permitted in various places at varying times would be both underinclusive and overbroad. The void for vagueness doctrine does not require this result. Rather, for offenses such as this, it permits the use of a normative standard which informs a potential defendant that his common sense in most cases will define proscribed conduct.

"Our case law is replete with examples of upholding statutory language that is not precise but nevertheless "'requires a person to conform his conduct to an imprecise but comprehensible normative standard so that men of common intelligence will know its meaning.'"  *Commonwealth v. Telcinord*, 113 N.E.3d at 388–89.  This statute is most certainly comprehensible and provides fair warning.

Despite this clear weight of authority, the District Court found that the Disorderly Conduct statute provided "no discernable standard for applying and enforcing it to the State's elementary and secondary school students, relying on the following from *Kolbe v. Hogan*, 849 F.3d 114, 149 (4th Cir. 2017):

> the vagueness inquiry . . . focuses on the intractability of identifying the applicable legal standard, not on the difficulty of ascertaining the relevant facts in close cases. *See United States v. Williams*, 553 U.S. 285, 306, (2008) ("What renders a statute vague is not the possibility that it will sometimes be difficult to determine whether the incriminating fact it establishes has been proved; but rather the indeterminacy of precisely what that fact is.")

33

For the reasons discussed above, such a conclusion was in error, and the disorderly conduct statute poses no problems of indeterminacy or intractability.

## 2. Section 16-17-420 (Prior to 2018 Amendment) is constitutional.

Section 16-17-420 is constitutional and is not unconstitutionally vague. The statute's terms are all ones of ordinary meaning, and their application is limited in significant ways under the statute and case law interpreting the statute. The statute thus provides ample guidelines to law enforcement and reasonable notice of proscribed conduct. *See Schleifer*, 158 F.3d at 853. Case law from across the country only reinforces the conclusion that the statute is not unconstitutionally vague.

### Limitations on the Statute's Application

The application of Section 16-17-420 is limited in several important respects. These limitations further mitigate any potential vagueness concerns. *See Hoffman Estates*, 455 U.S. at 499. First, as noted above, under South Carolina law, the statute arguably does not apply to words except fighting words. This limitation would render the statute constitutional. *See Chaplinksy*, 315 U.S. at 574.

However, even if Section 16-17-420 is not limited to fighting words, other limitations on the statute's construction render the statute constitutional. As noted above, the South Carolina Supreme Court has interpreted the statute to only reach

speech that is not protected by the First Amendment. *See In re Amir*, 371 S.C. at

388–89, 639 S.E.2d at 148.[5]  This limitation also renders the statute not vague.

Further, under binding case law, the statute only applies to conduct that

disturbs the learning environment that is also willful or unnecessary.  The District

Court relied on the parts of the statute that make it unlawful for a person to "interfere

or disturb in any way" to "loiter" and "to act in an obnoxious manner, but these terms

are all limited by the requirement that a person engage in these acts "wilfully or

unnecessarily" and that the conduct "disturb the learning environment."  *Amir,*

*supra,* recognized that these terms limit the statute. Although scienter[6] is not required

in a law to avoid vagueness, it "may mitigate a law's vagueness."  *Hoffman Estates*,

*supra,* 455 U.S. at 499.   This statute is not vague and in need of scienter.

Nevertheless, it has been construed so as to limit its application.

---

[5] Courts routinely uphold schools' ability to regulate and prohibit vulgar and offensive speech.  *See Legette v. Moore*, 2003 WL 23851069 (D.S.C. 2003) (granting summary judgment on plaintiff's section 1983 claim where plaintiff was charged with disturbing schools for using vulgar language in the school setting); *see also Bethel School District No. 403 v. Fraser*, 478 U.S. 675, 683 (1986) (recognizing that "it is a highly appropriate function of public school education to prohibit the use of vulgar and offensive terms in public discourse. . . . The schools, as instruments of the state, may determine that the essential lessons of civil, mature conduct cannot be conveyed in a school that tolerates lewd, indecent, or offensive speech. . .")

[6] "Scienter" has been defined as "[a] degree of knowledge that makes a person legally responsible for the consequences of his or her act or omission; the fact of an act's having been done knowingly, esp. as a ground for civil damages or criminal punishment."  SCIENTER, Black's Law Dictionary (10th ed. 2014).

The South Carolina Supreme Court relied on the limiting terms of "wilfully" and "unnecessarily" to dispose of the First Amendment / overbreadth challenge in *Amir.* Although the Court did not rule on the merits of the vagueness challenge because the Plaintiff lacked standing on that issue, its interpretation of the statute is instructive here:

> The overbreadth doctrine additionally provides that any threat or deterrence to constitutionally protected expression may be removed by a limiting construction on the challenged statute. *Broadrick,* 413 U.S. at 613, 93 S.Ct. 2908. Analyzed from this perspective, § 16–17–420 is limited in its application by its own terms so as to remove any substantial threat to constitutionally protected expression. First, the statute specifically deals with the disturbance of students and teachers in South Carolina's schools, and not a disturbance in just any public forum. *See S.H.B.,* 355 So.2d at 1178. Furthermore, it does not explicitly prohibit any type of gathering or expression except those which disturb the learning environment in South Carolina's schools. Those who wish to engage in this type of "expression" are free to either do so elsewhere; or do so in the school environment in a way that does not disturb schools. *McAlpine,* 309 F.Supp. at 140. Finally, the statute is limited in the type of conduct that may be punished. The disturbance or interference is required to be done "wilfully" or "unnecessarily." S.C.Code Ann. § 16–17–420(1)(a).
>
> Taken to its outermost First Amendment boundaries, § 16–17–420 is most accurately characterized as "intertwining" speech and non-speech elements. *Cox v. Louisiana,* 379 U.S. at 563; *McAlpine,* 309 F.Supp. at 140. Appellant argues that this might include constitutionally protected expression, but we find this is not "substantially" so. The proper functioning of schools is "a topic of great and fundamental interest to our society." *McAlpine* 309 F.Supp. at 140. Clearly the State has a legitimate interest in maintaining the integrity of its education system.[footnote omitted] This objective is necessarily achieved in part by classroom discipline. Because the school environment is "fragile by [its] nature," it requires a certain level of conduct and cooperation on

36

the part of both the student and the teacher in order to function effectively for all its participants. *S.H.B.,* 355 So.2d at 1178. Any conduct in this context that interferes with the State's legitimate objectives may be prohibited. "The fact that free speech is intermingled with such conduct does not bring with it constitutional protection." *McAlpine,* 309 F.Supp. at 140.

639 S.E.2d at 148–49.

The District Court limits this construction of the statute to the overbreadth challenge, but the interpretation was not so limited. *Amir* expressly stated, that §16-17-420 "does not explicitly prohibit any type of gathering or expression <u>except those which disturb the learning environment in South Carolina's schools.</u>" Therefore, the "disturb the learning environment requirement applies to the entirety of the statute and it is not turned off or on depending upon whether overbreadth is at issue. In other words, the entire statute is modified by the requirement that the conduct disturb the learning environment which is more than sufficient to overcome the vagueness challenge. The District Court instead relied on dictionary definitions of individual terms, but it erroneously failed to apply this modifier to them and found vagueness where it does not exist. The Court indicated that even if this standard did apply the statute does not distinguish between "typical childhood and adolescent behavior and the sort of conduct that is criminally prohibited, but it does." JA, V. II, p. 946. Disturbing the learning environment with conduct that is willful or unnecessary is sufficient to distinguish the criminal from childish behavior.

37

Although the disturb the learning environment modifier prevents a finding of vagueness, the terms of the statute are not vague even without that modifier. Section 16-17-420 also contains the conditions that a person act "unnecessarily" or "wilfully." The requirement in §16-17-420 that the conduct be "willful" certainly supplies the same scienter requirement as does the requirement in a Florida law that requires that acts be done "knowingly."

> We note immediately that section 877.13 does contain a specific scienter requirement that a person act "knowingly" to interfere or disrupt school functions or activities. Thus, the accused is not faced with the perils of strict criminal liability for an unintentional violation of this statute. . . . .Giving the terms in section 877.13 their plain and ordinary meaning, we conclude that this statute is not vague because it seeks to prohibit any conduct, acts, etc., which are specifically and intentionally designed to stop or temporarily impede the progress of any normal school function or activity occurring on the school's property."

*M.C. v. State*, 695 So.2d 477, 483 (Fla.App. 3 Dist.,1997). "Unnecessary" is a term of ordinary meaning that something is "[n]ot required under the circumstances; not necessary." UNNECESSARY, Black's Law Dictionary (10th ed. 2014).

Therefore, the proscribed conduct of interfering, disturbing, loitering or acting obnoxiously must be willful or unnecessary and must "disturb the learning environment" (*Amir*). These terms "provides additional indicia of objectivity" as did the term "unreasonably" in a Seattle ordinance that made a person guilty of "disorderly bus conduct" if he or she "[u]nreasonably disturbs others by engaging in loud or raucous behavior." *City of Seattle v. Eze,* 759 P.2d 366, 370, 111 Wash.2d

38

22, 29 (Wash. 1988). The District Court erred in failing to recognizing the consequence of this scienter requirement.

<center>**Analysis of Terms**</center>

Particular terms of §16-17-420 are examined below which shows that all of them meet standards of constitutionality and that the statute is not vague.

<center>The Term "Interfering"</center>

Plaintiffs-Appellees have cited *Town of Honea Path v. Flynn*, 255 S.C. 32, 40, 176 S.E.2d 564, 567, (1970) which found vague an ordinance that made "a penal offense for one to interfere with a police officer 'in any manner, by word or act, * * *'." The Court questioned "just what kind of word or words would amount to interference with an officer is not at all indicated by the ordinance" . . . That Honea Path ordinance is distinguishable because it is not limited by a requirement such as the on applied to § 420 that the interference be disturbing to the learning environment. State law has also recognized limitations on punishment of words addressed to a police officer.

<center>The Term "Obnoxious"</center>

The terms "act in an obnoxious manner" are not vague because of the limitations in the instant statute just as the term "obnoxious" has prevailed against challenges elsewhere.

<center>39</center>

> The Court notes that the term "obnoxious," if taken alone, could push the envelope of unconstitutional vagueness. However, if taken in context of the sentence "obnoxious or offensive to the commonly and generally accepted standards of fitness and good taste," the scope of the conduct proscribed is sufficiently clear, and fairly puts a reasonable beer distributor on notice that vulgar or profane language will be prohibited in the context of beer advertising.

*Bad Frog Brewery, Inc. v. New York State Liquor Authority*, 973 F.Supp. 280, 288 (N.D.N.Y.,1997); rev'd in part on other grounds, 134 F.3d 87, (2nd Cir., 1997) ; *see also, Fox v. Philadelphia Turf Club, Inc.,* 1987 WL 17751, at *3 (E.D.Pa., 1987)* (The Court found "that prohibition against 'disturbing the peace' and 'obnoxious behavior on the grounds of association' are standards which a person of ordinary intelligence can understand."). Here, the obnoxious conduct must be willful or unnecessary and must be disturbing to the learning environment which is sufficient notice of its meaning. Also, as noted, previously, the use of words alone may not be punished unless "fighting words."

<div align="center">The Term "Loitering"</div>

The inclusion of loitering in the statute is not vague. "When 'loitering' is joined with a second specific element, courts have uniformly found that such legislation sufficiently informs a person of common understanding as to what is forbidden. *State ex rel. Williams v. City Court of Tucson*, 520 P.2d 1166, 1168, 21 Ariz.App. 489, 491 (Ariz.App. 1974). The loitering provision of the disturbing

<div align="center">40</div>

schools law here is joined with the elements of willfully or unnecessarily engaging in such conduct.  Some other examples of loitering provisions that have been upheld include the following:

 *Anderson v. Shaver*, 290 F.Supp. 920, 921 (D.C.N.M. 1968) upheld a New Mexico ordinance  finding that it had  "even more clarity and certainly (sic)  [than a California statute given a restricted meaning]  in that it defines what kind of loitering is forbidden, i.e. that done 'without lawful business there.'

Under §16-17-420, additional "element[s]" (*Williams*) are included and the kind of loitering that is prohibited is defined (*Anderson*).  Plaintiffs-Appellees erroneously claim that the statute is not limited to "loitering that impairs school functions," but it is so limited. The loitering, as set forth above, must be disturbing to the learning environment as well as be willful or unnecessary.   In most instances, the statute would apply to non-students.  Certainly, the term is not vague.

### Case Law Upholding the Statute

Decisions from federal and state courts only reinforce the conclusion that the disturbing schools statute is not vague. Courts have upheld a number of similar statutes prohibiting disturbance of schools:

 *Toledo v. Thompson-Bean*, 879 N.E.2d 799, 802, 804 173 Ohio App.3d 566, 570, 2007 -Ohio- 4898, ¶ 13 (Ohio App. 6 Dist.,2007) ("No person shall * * *

41

disrupt, disturb or interfere with the teaching of any class of students, or disrupt, disturb or interfere with any activity conducted in a school * * *.")[7]

*In re D.H.*, 663 S.E.2d 139, 140, 283 Ga. 556, 557 (Ga.,2008)("the phrase 'disrupt or interfere with the operation of any public school' contains words of ordinary meaning that give fair notice as to the statute's application.")

*State v. Schoner*, 591 P.2d 1305, 1306, 121 Ariz. 528, 529 (Ariz.App., 1979)(The statute provided that "[a] person who wilfully disturbs a public school or school meeting is guilty of a misdemeanor . . . .")

*State v. Wiggins*, 158 S.E.2d 37, 42, 272 N.C. 147, 153 (N.C. 1967)( a person was guilty of a misdemeanor if he or she "wilfully interrupt[s] or disturb[s] any public or private school")[8]

---

7 *Toledo* held that "the Safe School Ordinance is not vague for its use of the terms 'disrupt' and 'disturb' as they entail an objective test. . . . However, following the reasoning of *Euclid v. Moore, supra*, we are also required to construe the ordinance as proscribing only "willful" disturbances. . . . ('Statutes that prohibit 'disturbing the peace' are construed, if possible, to apply only to conduct that is actually intended to create a disturbance * * *')"). *Id.*

[8] As stated in *Wiggins*:

> The defendants argue in their brief that this statute is void because its prohibitions are uncertain, vague or indefinite, under the rule applied by this Court in *State v. Furio*, 267 N.C. 353, 148 S.E.2d 275. They argue in their brief that the statute contains no definition of 'interrupt' or of 'disturb' and, consequently, men of common intelligence must necessarily guess at its meaning and thus be left in doubt as to what conduct is prohibited. It is difficult to believe that the defendants are as

42

In South Carolina, Judge Anderson previously denied a certificate of appealability in a disturbing schools case, concluding that the petitioner failed to make a substantial showing of the denial of a constitutional right. *United States v. Brown*, No. 3:07-155-JFA, 2011 WL 13273882 (D.S.C. 2011). In describing the statute, Judge Anderson commented as follows:

> [t]hus, the government submits that the criminal offense of disturbing schools is not a minor offense and it differs from the minor criminal offenses of disorderly conduct and trespassing because it possesses the additional element that the conduct involving a school or college by stating that the conduct must "interfere with or disturb in any way or in any place the student or teachers of any school or college in this State", or occur on school premises. . . .

2011 WL 13273882 at *4.

Most significantly, the United States Supreme Court upheld a similar ordinance in *Grayned v. City of Rockford*, 408 U.S. 104, 107–08 (1972). The Court considered an antinoise ordinance that provided that "[n]o person, while on public or private grounds adjacent to any building in which a school or any class thereof is in session, shall willfully make or assist in the making of any noise or diversion

---

mystified as to the meaning of these ordinary English words as they profess to be in their brief. Clearly, they have grossly underestimated the powers of comprehension possessed by 'men of common intelligence.'

158 S.E.2d at 46, 272 N.C. 153, 158–59 (N.C. 1967).

which disturbs or tends to disturb the peace or good order of such school session or

class thereof. . . ."

As the Court stated in *Grayned*:

[W]e find no unconstitutional vagueness in the antinoise ordinance. Condemned to the use of words, we can never expect mathematical certainty from our language. The words of the Rockford ordinance are marked by 'flexibility and reasonable breadth, rather than meticulous specificity,' *Esteban v. Central Missouri State College*, 415 F.2d 1077, 1088 (CA8 1969) (Blackmun, J.), cert. denied, 398 U.S. 965(1970), but we think it is clear what the ordinance as a whole prohibits. Designed, according to its preamble, 'for the protection of Schools,' the ordinance forbids deliberately noisy or diversionary activity that disrupts or is about to disrupt normal school activities. . . . Since *Meyer* was specifically cited in the opinion below, and it in turn drew heavily on *Gregory*, we think it proper to conclude that the Supreme Court of Illinois would interpret the Rockford ordinance to prohibit only actual or imminent interference with the 'peace or good order' of the school. Although the prohibited quantum of disturbance is not specified in the ordinance, it is apparent from the statute's announced purpose that the measure is whether normal school activity has been or is about to be disrupted. We do not have here a vague, general 'breach of the peace' ordinance, but a statute written specifically for the school context, where the prohibited disturbances are easily measured by their impact on the normal activities of the school. Given this 'particular context,' the ordinance gives 'fair notice to those to whom (it) is directed. (emphasis added).

408 U.S. at 110–12 (footnotes omitted).

In §16-17-420, we also have "a statute written specifically for the school

context, where the prohibited disturbances are easily measured by their impact on

the normal activities of the school. Given this 'particular context,' the ordinance

gives 'fair notice to those to whom (it) is directed" and is thus not unconstitutionally vague. *Id*.

Decades of lawful enforcement of the statute support this conclusion and demonstrate that the statute is not invalid in all of its applications. Illustrative of this point is *In the Interest of Doe*, 318 S.C. 527, 458 S.E.2d 556 (Ct. App. 1995), in which the Court of Appeals upheld the Family Court's adjudication of delinquency for Disturbing Schools. There, the State based its case upon evidence that: John began kicking, punching, fighting and pushing a table after a teacher attempted to look in his book bag. John testified to screaming for an hour during which time classes were being held. Several teaches' aides, and administrators were required to deal with John. John's violent behavior led to him being restrained by two teachers. John admitted hitting the teacher's aide and even trying to kill himself. Under these circumstances, John's actions were sufficient to sustain an adjudication of delinquency for disturbing a school as contemplated by § 16-17-420. 318 S.C. at 533, 458 S.E.2d at 560.

Other cases amply demonstrate the lawful enforcement of the same statute. *See also In the Interest of Joelle T.*, No. 2010-UP-547, 2010 WL 10088227 (Ct. App. 2010) (upholding adjudication of delinquency for disturbing schools); *In re Charles Steven B.*, No. 2004-UP-225, 2004 WL 6251491 (Ct. App. 2004) (dismissing appeal of petitioner who pled guilty to one count of simple assault and one count of

disturbing schools and other county based upon *Anders v. California*, 386 U.S. 738

(1967)); *In the Interest of Terrance M.*, 368 S.C. 276, 628 S.E.2d 295 (2006)

(adjudicated delinquent for disturbing schools and contempt). These examples—in

addition to the incident reports cited above—demonstrate that the statute is not

invalid in all or even most of its applications.

<div align="center">

**E**

**The Court Improperly Relied on Statistics About a Disproportionate Number
of Charges to Students of Color and Disabled Students**

</div>

Plaintiffs pointed to racially disproportionate referrals under the laws but

made no racial discrimination claim and provide no evidence that vagueness is

responsible for the difference. They cited no case finding vagueness on the basis of

a racially disparate impact. Even if they had alleged an equal protection claim on

the basis of the disproportion, which they have not done, their claim would fail under

*United States v. D'Anjou*, 16 F.3d 604, 612 (4th Cir. 1994) because they have no

evidence that it has been applied in a discriminatory manner or that it was enacted

with a discriminatory purpose.[9] The Court's Order suggests that it improperly relied

---

9  As stated in *D'Anjou*:

> Although even a facially neutral statute can be found discriminatory in
> its application, *Yick Wo v. Hopkins*, 118 U.S. 356 (1886), absent such
> evidence a facially neutral statute is not subjected to heightened
> scrutiny unless the challenging party presents sufficient evidence that
> an impermissible discriminatory purpose can be ascribed to the

<div align="center">46</div>

on this disproportionality as a ground for finding vagueness as to both statutes.  JA, V. II, pp. 940 and 946).

Finally, although the Defendant Wilson maintains that the statutes are not vague, should this Court determine that clarification of either statute by the South Carolina Supreme Court would be determinative of a claim, then this Court should certify questions to the Supreme Court for that purpose.

<div align="center">

**II**

**THE COURT ERRED IN CERTIFYING THIS CLASS**

</div>

The District Court certified a breathtakingly large Plaintiff class consisting of every single student in the K-12 school system in this State – 787,069 students in 2019-2020 (JA, V. I, p. 263) of which only a minute percentage have been affected by the statutes at issue.  JA, V. I, p. 270.  The class action is "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348 (2011).  "A party seeking class certification must affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are in fact sufficiently

---

enacting body. *Washington v. Davis*, 426 U.S. 229 (1976).

In this instance, there is evidence that the line Congress and the Sentencing Commission have drawn has a disproportionate impact upon blacks. But this is not sufficient to make out an Equal Protection Violation.

<div align="center">47</div>

numerous parties, common questions of law or fact, etc. . . [S]ometimes it may be

necessary for the court to probe behind the pleadings before coming to rest on the

certification question'" *Id,* 564 U.S. at 350.  Plaintiffs fail to meet these standards

under Rule 23, FRCP, which provides as follows:

> a) Prerequisites**.** One or more members of a class may sue or be sued as
> representative parties on behalf of all members only if:
> (1) the class is so numerous that joinder of all members is
> impracticable;
> (2) there are questions of law or fact common to the class;
> (3) the claims or defenses of the representative parties are typical of the
> claims or defenses of the class; and
> (4) the representative parties will fairly and adequately protect the
> interests of the class.

Of course, with over 787,000 members, the class is numerous under 23(a)(1);

however, Plaintiffs fall far short of satisfying the requirements for commonality and

typicality under Rule 23(a)(2) particularly when only a miniscule percentage of the

proposed class is affected by the requirement.  As noted above regarding the

Wheatley deposition, data shows that roughly only 1 / 750 students were referred

then  which is .13% or less than 1/7 of 1% or about 1.5 students out of every

thousand.  Furthermore, these calculations include DJJ referrals for charges that are

not school related which make these numbers higher than they would be for just

school misconduct.  JA, V. I, p. 31, l. 12- p. 327, l. 20.  See also, JA, V. I,  p. 329.

The  District  Court  rejected  Defendant-Appellant's  argument  that

commonality and, *infra,* typicality were absent because the impact on the student

48

population as a whole from these laws is miniscule and many students, probably the majority, may prefer that the laws be enforced. Plaintiffs-Appellants relied on *Glover v. Johnson,* 85 F.R.D. 1, 5 (E.D. Mich. 1977) which rejected the argument that the *Glover* Plaintiffs "have failed to show that all or even most other women inmates in Michigan share their views regarding the inadequacies of the Department's present educational and vocational programs." *Glover* said that the "claim is typical and common to plaintiffs' proposed class regardless of whether most women inmates would view the present system as inadequate for their own purposes or would avail themselves of further educational and vocational training if offered." This possible difference in views of educational opportunity in Glover is quite different from the division in views that may exist here of the over 99% of students who seem to have no trouble conforming their conduct to the statutes at issue and may welcome their enforcement, and the tiny number who have been charged with violation of the laws including those who have engaged in fighting, shoving and hitting school personnel and kicking furniture. That all may be affected by the laws does not create commonality or typicality when only a tiny number have been charged and only a handful have chosen to sue.

## Lack of Commonality

Commonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury' . . . Their claims must depend upon a common

49

contention—for example, the assertion of discriminatory bias on the part of the same supervisor." *Walmart, supra.*    Plaintiffs-Appellants try to avoid *Walmart* by claiming that common statutes are involved in this case and that *Walmart* lacked a common policy, but the statutes do not resolve commonality.   Instead, Plaintiffs-Appellants fail to meet this commonality test because they have not suffered the same alleged injury if any by the statutes.  None of the individual Plaintiffs have been charged under both statutes.  Probably, few if any of the class members have been charged under both laws. Not all class members will have charges pending. The vast majority will never have been charged under either statute nor will they be concerned that they might be charged in the future.  Many Plaintiff class members would likely want the laws enforced against students who are disturbing engaging in disorderly conduct.  Only a miniscule percentage of students have been charged under the statutes at issue. Therefore, commonality is lacking under 23(a)(2).

### Lack of Typicality and Adequacy of Proposed Representatives

Moreover, as noted above, some members of the class would undoubtedly have criminal charges pending against them, and a preliminary injunction, if *arguendo* one is issued, would throw their cases into confusion possibly delaying favorable resolution for them.    Many other students may prefer that the laws be enforced.  For these reasons as well as the tiny portion of the class affected by the statutes, Plaintiffs-Appellants fail to satisfy the typicality requirements of Rule

50

12(b)(3). "[T]ypicality[does not]  require[] that the plaintiff's claim and the claims of class members be perfectly identical or perfectly aligned. But when the variation in claims strikes at the heart of the respective causes of actions, we have readily denied class certification." *Deiter v. Microsoft Corp.*, 436 F.3d 461, 467 (4ᵗʰ Cir., 2006). Moreover, the disparity in the status of the individual Plaintiffs and most all of the class members prevents them from "adequately protect[ing] the interests of the class." Rule 23(a)(4).[10] Rather than being typical of the class, the claims of the proposed representatives are <u>a</u>typical of more than 99% of the students in South Carolina schools, and they cannot be adequate representatives under Rule 23(a)(4).

### The Relief Requested Does Not Benefit the Whole Class

Plaintiffs-Appellants must also satisfy one of the requirements of Rule 23(b). They choose to bring their motion under 23(b)(2) but fail to meets its terms.  Under that Rule, "[a] class action may be maintained if Rule 23(a) is satisfied and if . . .  2) the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory

---

10 As stated in Federal Practice and Procedure,"the representatives and the class members must share common objectives and legal or factual positions to establish adequacy of representation. If they do not, then Rule 23(a)(4) will not be satisfied." (footnote omitted).  § 1769The Representatives Will Protect the Interests of the Class—Coextensiveness of Interest, 7A Fed. Prac. & Proc. Civ. § 1769 (3d ed.). Defendant—Appellant challenged only the adequacy of the parties as representatives and does not question the adequacy of their counsel.

51

relief is appropriate respecting the class as a whole." "What is important [under 23(b)(2)] is that the relief sought by the named plaintiffs should benefit the entire class." *Baby Neal for and by Kanter v. Casey*, 43 F.3d 48, 59 (3d Cir., 1994); *see also, McDaniel v. Board of Educ. of City of Chicago*, 2013 WL 4047989, at *18 (N.D.Ill.,2013 ("Although Plaintiffs have structured their case around a claim for class-wide injunctive relief . . . whether their requested relief would benefit or harm each putative class member requires an individualized determination.") As noted above, very few Plaintiff class members would benefit from an injunction in that more than 99% have never been charged, and most of them probably do not anticipate being charged and /or may want existing laws enforced against those students who are violating the disturbing schools and disorderly conduct statutes.

### III

### THE DISTRICT COURT LACKED AUTHORITY TO ORDER CLASS – WIDE EXPUNGEMENT AND SUCH RELIEF IS INAPPROPRIATE HERE

Expungement is available for individuals when the requirements are met as provided by South Carolina statute.[11]  Not only did the District Court strike down the disorderly conduct and disturbing schools statutes, it bypassed the statutory provisions for expungement in directing class-wide expungement.  The Order of

---

11 The statutory provisions are outlined and discussed in the State's Memorandum regarding expungement procedure in South Carolina.  JA, V. I, p 225.

February 24, 2021 (JA, V. I, p. 270), relied on general remedial authority to support the extraordinary remedy of class wide expungement. See, note, 13, infra. Except as provided following expungement under S.C. Code Ann. §17-1-40, this Court enjoined the State from retaining the records of the students charged under the statutes at issue in this proceeding. (JA, V. III, p. 947). The Court stayed expungement portions of its Order pending appeal. See, supra, Statement of the Case.

Expungement is unprecedented in this case and inconsistent with the Fourth Circuit's opinion in *United States v. Mettetal*, 714 F. App'x 230, 235–36 (4th Cir. 2017):

> On balance, expungement is rarely justified. *See United States v. Bagley*, 899 F.2d 707, 708 (8th Cir. 1990).
>
> Mettetal argues that where a court overturns an arrest or conviction for lack of probable cause, that record must be expunged. As the Eighth Circuit pointed out in[ *United States v. Bagley*, 899 F.2d 707, 708 (8th Cir. 1990)], it is "difficult to imagine that expunction, a remedy to be used in extreme circumstances, should be exercised every time a case is dismissed because evidence is suppressed." 899 F.2d at 708. Indeed, the cases Mettetal points to in support of this claim involved much more "extreme circumstances," like mass arrests intended to curb the expression of civil rights. *See Sullivan v. Murphy*, 478 F.2d 938 (D.C. Cir. 1973) (arrest of over 14,000 antiwar demonstrators); *United States v. McLeod*, 385 F.2d 734 (5th Cir. 1967) (large-scale arrests intended to harass and intimidate black voters). These circumstances are so different from the ones before us that they afford no assistance to Mettetal's argument.[footnote omitted]
>
> The judiciary and the public possess an independent interest in

53

> maintaining a full and accurate account of court proceedings and the judiciary's own role in the vindication of criminal defendants' constitutional rights. . . .We find no reason to believe that this interest is not present here.

The District Court simply stated, with no explanation other than a citation to Plaintiffs-Appellees Memorandum, that it agreed with Plaintiffs-Appellees that the expungement in the instant case is distinguishable from the expungement in *Mettetal*. JA, V. I, p. 287, n. 12. Plaintiffs-Appellees tried to distinguish *Mettetal* because a constitutional violation was not involved, but the authority they cite does not support class-wide expungement. Class-wide expungement is completely inconsistent with *Mettetal*'s finding that expungement is "rarely justified."

The District Court of South Carolina recognized the limitations on ordering expungement:

> This Court is aware that the power to expunge "is a narrow one, and should not be routinely used whenever a criminal prosecution ends in an acquittal, but should be reserved for the unusual or extreme case." *U.S. v. Linn*, 513 F.2d 925, 927 (10th Cir.), cert. denied, 423 U.S. 836 (1975). Such extreme circumstances have been found and records ordered to be expunged where procedures of mass arrests rendered judicial determination of probable cause impossible, *Sullivan v. Murphy*, 478 F.2d 938 (D.C.Cir.1973); where the court determined the sole purpose of the arrests was to harass civil rights workers, *U.S. v. McLeod*, 385 F.2d 734 (5th Cir.1967); where the police misused the police records to the detriment of the defendant, *Wheeler v. Goodman*, 306 F.Supp. 58 (W.D.N.C.1969); or where the arrest was proper but was based on a statute later declared unconstitutional, *Kowall v. U.S.,* 53 F.R.D. 211 (W.D.Mich.1971). Nothing like any of these extreme circumstances exist in this case. Accordingly, Petitioner is not entitled to expungement of his records.

54

*Knox v. United States*, No. CIVA 9071792-HMHGCK, 2008 WL 2168871, at *6–7 (D.S.C. May 2, 2008), *report and recommendation adopted*, No. CA 9:07-1792-HMH-GCK, 2008 WL 2168866 (D.S.C. May 20, 2008), aff'd, 297 F. App'x 254 (4th Cir. 2008).

  *Knox* cites *Kowall v. U.S.,* 53 F.R.D. 211 (W.D.Mich.1971) for authority for expungement for an arrest under an unconstitutional statute, but that case is very limited. [12]  It provides no authority for this Court to order the extraordinary remedy of a class wide expungement for students charged under the statutes at issue. Moreover, *Kowall* suggests that such class wide relief would be inappropriate in the court's statement that "[i]n *each* case, the court must weigh the reasons advanced for and against expunging arrest records. If it is found after careful analysis that the public interest in retaining records of a *specific arrest* is clearly outweighed by the dangers of unwarranted adverse consequences to the individual, then the records involved may properly be expunged." 53 F.R.D. at 214 (emphasis added).  If a class is certified, these considerations of "*specific arrest*[s]" could not be undertaken for

---

12 *Kowall* is distinguishable because the request for expungement was made by a single individual in connection with his moving to vacate his sentence imposed by the same court.  The sentence was the result of a regulation found to be invalid. *Kowali* cites *Gutknecht v. United States*, 396 U.S. 295, 306, (1970) which held that "[t]he power under the regulations to declare a registrant 'delinquent' has no statutory standard or even guidelines."

55

a broad expungement of records for potentially numerous individuals including the severity of the conduct that led to those arrests.

Although a Court does have authority to order expungement in the event of an arrest based upon an unconstitutional statute, no case appears to have ordered such relief on a class wide basis under circumstances even remotely comparable to the instant case.[13]

## CONCLUSION

For the foregoing reasons, the District Court's Orders should be reversed except as to its dismissal of the Kenny and Nesmith Plaintiffs.

<div style="margin-left: 40%;">

Respectfully submitted,

ALAN WILSON
Attorney General

ROBERT D. COOK
Solicitor General
Email: rcook@scag.gov


[Signature block continues next page]

</div>

---

[13] Plaintiffs referred primarily to three cases in support of class wide expungement relief, *U.S. v. McLeod*, 385 F.2d 734 (5th Cir. 1967), *Sullivan, supra*, and, a case the District Court also cited, *Wheeler v. Goodman*, 306 F.Supp 58 (W.D.N.C. 1969). All three were distinguished in *Knox, supra,* and deal with expunging the plaintiffs' records after they were arrested unlawfully in group or mass.

/s/ J. Emory Smith, Jr.
J. EMORY SMITH, JR.
Deputy Solicitor General
Email: esmith@scag.gov

Thomas T. Hydrick
Assistant Deputy Solicitor General
Email: ThomasHydrick@scag.gov

Office of the Attorney General
Post Office Box 11549
Columbia, South Carolina 29211
Phone: (803) 734-3680
Fax: (803) 734-3677

February 11, 2022                    Counsel for Attorney General Wilson

# CERTIFICATE OF COMPLIANCE

1. This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) with the modified limit of 16,125 words authorized by Order of this Court, January 31, 2022 (Doc. 16) because it contains 14,146 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman.

/s/ J. Emory Smith, Jr.
Counsel for Defendant-Appellant

## CERTIFICATE OF SERVICE

I hereby certify that on this 11th day of February, 2022, I filed the foregoing Brief of Defendants-Appellant with the Clerk of the Court using the CM/ECF system, which will automatically serve electronic copies upon all counsel of record.


/s/ J. Emory Smith, Jr.

Office of the Attorney General
For South Carolina
Post Office Box 11549
Columbia, South Carolina  29211
esmith@scag.gov

59