## NO. 21-2166

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

---

CAROLINA YOUTH ACTION PROJECT; et al.,
<div align="center">Plaintiffs – Appellees</div>

<div align="center">v.</div>

ALAN WILSON, in his official capacity as Attorney General of South Carolina,
<div align="center">Defendant – Appellant</div>

---

## JOINT APPENDIX
## Volume I of III (Pages 1 – 348)

---

David Allen Chaney, Jr.
Direct: 843-287-7953
Email: achaney@aclusc.org
ACLU OF SOUTH CAROLINA
P. O. Box 20998
Charleston, SC 29403

Sarah Hinger
Direct: 212-519-7882
Email: shinger@aclu.org

Galen Leigh Sherwin
Direct: 212-519-7819
Email: gsherwin@aclu.org

American Civil Liberties Union
18th Floor 125 Broad Street
New York, NY 10004

Counsel for Plaintiffs-Appellees

ALAN WILSON
Attorney General

ROBERT D. COOK
Solicitor General
Email: rcook@scag.gov

J. EMORY SMITH, JR.
Deputy Solicitor General
Email: esmith@scag.gov

THOMAS T. HYDRICK
Assistant Deputy Solicitor General
Email: ThomasHydrick@scag.gov

Office of the Attorney General
Post Office Box 11549
Columbia, South Carolina 29211
803-734-3680
Counsel for Defendant-Appellant

## TABLE OF CONTENTS

## Volume I of III

Docket................................................................................................. 1

Complaint.......................................................................................... 34

 Appendix 1, Act No. 156, 1919 SC Acts 239............................. 63

 Appendix 2, Act No. 943, 1968 SC Acts 2308............................65

 Appendix 3, Act No. 1426, 1972 SC Acts 2620..........................67

 Appendix 5, 1994 S.C. Op. Att'yGen. 25,1994 WL 199757........................ 70

 Appendix 6, Letter from Robert D. Cook, Asst. Deputy Att'y Gen.,
  to Hon. John W. Holcombe, July 12, 1999......................... 73

 Appendix 7, 1990 S.C. Op. Att'y Gen. 61, 1990 WL 482448 ..................... 75

Motion to Certify Class (ECF 6) ......................................................... 77

 *Appendix 4, Affidavit Decl. of Plaintiff Kenny........................ 839
 *Appendix 5, Affidavit Decl. of Plaintiff Nesmith.....................847
 *Appendix 6, Affidavit Decl. of Carpenter on behalf of
  Plaintiff Girls Rock.............................................................387
 *Appendix 7, Affidavit Decl. of Plaintiff D.S. ......................... 358
 *Appendix 8, Affidavit Decl. of Plaintiff S.P............................ 376
 *Appendix 9, Affidavit Decl. of Plaintiff K.B............................835

Motion to Dismiss of AG (ECF 28) ............................................... 108

Renewed Motion to Dismiss of AG (ECF 117) ....................................110

––––––––––––––––––––

 \*  Asterisked attachments included with attachments to Plaintiffs' Motion
  for Summary Judgment, *infra.*

Answer to Complaint (ECF 118)........................................................... 113

Order staying action as to Law Enforcement Defendants (ECF131).....................127

Motion to file Supplemental Authority (ECF 132)...................................134

    Attachment A – Act 182, 2018 S.C. Acts.....................................137

Motion to Amend Complaint (ECF 151) ............................................. 142

    Attachment 1 –Proposed Amended Complaint (infra, as filed)..................153
    *Attachment 2 – DD Affidavit, *infra*..........................................350
    *Attachment 3 – Solicitor's letter, *infra* ..................................... 356

Order granting Amendment 5/10/19 (ECF 156)................................  150

Amended Complaint (ECF No. 157)......................................................153

Motion to Dismiss Amended Complaint, etc.  (ECF No. 165) ............................ 181

Transcript of Motion to Dismiss hearing 12/4/19 (Caption page deleted) ...........183

Memorandum Regarding Expungement (ECF No. 179) ......................................225

Order Denying Motion to Dismiss 3/30/20 (ECF No. 185)................................. 233

Answer to Amended Complaint (ECF No. 186) ...................................................248

Motion to Supplement Class Certification Motion (ECF No. 187) .....................262

    *Exhibit 1, Declaration of D.D., *infra*..........................................350
    *Exhibit A Letter from Solicitor Richardson, *infra* ................................. 356
    Supplemental Memorandum re Class Definition (ECF 198)......................266

---------------

\* Asterisked attachments included with attachments to Plaintiffs' Motion
   for Summary Judgment, *infra*.

Order granting Motion to Certify 2/24/21 (ECF No. 201)......................................270

Motion for Summary Judgment of AG (ECF No. 215) ......................................  289

    Memorandum in Support of Motion.........................................................291
    Ex. -  Wheatley Deposition Excerpts.......................................................317
    Ex. - Emails to / from Smith & Hinger....................................................328
    Ex. – Rinehart Deposition excerpts and Vita ...........................................  330

## Volume II of III

Motion for Summary Judgment of Carolina Youth Action Project
    (ECF No. 216)........................................................................................349

    Ex. 1 D.D. Declaration............................................................................ 350
        Exhibit A – Solicitor's Letter, May 10, 2017................................. 356
    Ex. 2 D.S. Declaration ...........................................................................358
    Ex. 3 S.P. Declaration.............................................................................376
    Ex. 4 Carpenter Declaration....................................................................387
    Ex. 5 Ryan Declaration...........................................................................397
    Ex. 6 Supplemental Declaration of Ryan.................................................. 464
    Ex. 7 Kayiza Declaration........................................................................511
    Ex. 7B1 Richland Co. Sheriff's Office Incident Report ............................516
    Ex. 7B2 Richland Co. Sheriff's Office Incident Report ............................518
    Ex. 7B3 Richland Co. Sheriff's Office Incident Report ............................520
    Ex. 7B4 Richland Co. Sheriff's Office Incident Report ............................522
    Ex. 7B5 North Charleston Incident Report...............................................525
    Ex. 7C1 Charleston Co. School District Code of Conduct ........................528
    Ex. 7C2  Richland One School District Code of Conduct..........................581
    Ex. 7C3  Student Behavior Code.............................................................. 634
    Ex. 7F Expungements and Pardons in SC.................................................639
    Ex. 7H Letter of Solicitor Myers.............................................................650
    Ex. 8 Madubuonwu Declaration.............................................................. 653
    Ex. 9 Marcelin Declaration.................................................................... .669
    Ex. 10  Mohammed Declaration...............................................................695
    Ex. 10A Greenville Behavior Code..........................................................698
    Ex. 10B Richland 1 School District Code of Conduct...............................704
    Ex. 10C Richland 2 Code of Conduct......................................................726
    Ex. 10D  Charleston School District Manual............................................ 733
    Ex  10E  Greenville Co. Sheriff's Office  Incident Report........................798

Ex 10F Greenville Co. Sheriff's Office Incident Report.........................805
Ex 10G Greenville Co. Sheriff's Office Incident Report ...........................809
Ex 10H Richland Co. Sheriff's Office Incident Report ...........................813
Ex 10I N. Charleston Police Incident Report .........................................815
Ex 10J N. Charleston Police Incident Report...........................................818
Ex. 10K Richland Co. Sheriff's Incident Report....................................821
Ex. 10L Rinehart Deposition Excerpts...................................................825
Ex. 11 Declaration of K.B...................................................................835
Ex. 12 Declaration of Kenny...............................................................839
Ex. 13 Declaration of Nesmith............................................................847

## VOLUME III of III

Attachments to AG's response to Plaintiffs' MSJ at ECF 226 .............................852

Exhibit 1 N. Chas. Incident Reports.......................................................852
Exhibit 2 Richland Incident Report ......................................................865
Exhibit 3 Rinehart Deposition excerpts.....................................................868


Transcript of Hearing re Summary Judgment 10/4/21 ..........................................874

Opinion and Order Granting Summary Judgment- 10/8/21 (ECF 240)................910

Notice of Appeal (ECF 244)....................................................................949

Summary Judgment 10/13/21 (ECF 248)..................................................951

Amended Notice of Appeal (ECF 250)....................................................953

Order regarding Motion for Stay (ECF 260)............................................955

Query    Reports    Utilities    Help    Log Out

<span style="color:green">APPEAL</span>,<span style="color:red">CLOSED</span>

# U.S. District Court
# District of South Carolina (Charleston)
# CIVIL DOCKET FOR CASE #: 2:16-cv-02794-MBS

Kenny et al v. Wilson et al
Assigned to: Honorable Margaret B Seymour
Case in other court: 4CCA, 21-02166
Cause: 42:1983 Civil Rights Act

Date Filed: 08/11/2016
Date Terminated: 10/13/2021
Jury Demand: Both
Nature of Suit: 950 Constitutional - State Statute
Jurisdiction: Federal Question

**Plaintiff**

**Niya Kenny**
*on behalf of herself and all others similarly situated*
*TERMINATED: 10/08/2021*

represented by **Galen Leigh Sherwin**
American Civil Liberties Union Foundation
125 Broad Street
18th Floor
New York, NY 10004
212-519-7819
Email: gsherwin@aclu.org
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Sarah Ann Hinger**
American Civil Liberties Union Foundation
125 Broad Street
18th Floor
New York, NY 10004
212-519-7882
Email: shinger@aclu.org
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Shirene Carole Hansotia**
American Civil Liberties Union of SC Foundation
PO Box 20998
Charleston, SC 29413
843-405-3934
Fax: 843-720-1428
Email: shansotia@aclusc.org
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Susan King Dunn**
American Civil Liberties Union of SC

**JA1**

Foundation
PO Box 20998
Charleston, SC 29413
843-830-1571
Fax: 843-720-1428
Email: susandunn1950@gmail.com
*TERMINATED: 06/04/2021*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**David Allen Chaney , Jr**
ACLU of South Carolina
1220 Laurens Road
Suite B
Greenville, SC 28607
843-282-7953
Email: achaney@aclusc.org
*ATTORNEY TO BE NOTICED*

**Dennis David Parker**
American Civil Liberties Union Foundation
125 Broad Street
18th Floor
New York, NY 10004
212-519-7832
Email: dparker@aclu.org
*TERMINATED: 01/16/2019*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Emma Jane Roth**
American Civil Liberties Union
125 Broad Street
18th Floor
New York, NY 10004
212-284-7325
Email: eroth@aclu.org
*TERMINATED: 12/03/2019*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Lenora Michelle Lapidus**
American Civil Liberties Union Foundation
125 Broad Street
18th Floor
New York, NY 10004
212-549-2668
Email: llapidus@aclu.org
*TERMINATED: 12/03/2019*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

<u>**Plaintiff**</u>

**Taurean Nesmith**                                    represented by **Galen Leigh Sherwin**

**JA2**

*on behalf of himself and all others similarly situated*
*TERMINATED: 10/08/2021*

(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Sarah Ann Hinger**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Shirene Carole Hansotia**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Susan King Dunn**
(See above for address)
*TERMINATED: 06/04/2021*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Tiffani Joy Burgess**
American Civil Liberties Union Foundation
125 Broad Street
18th Floor
New York, NY 10004
212-519-7867
Email: tburgess@aclu.org
*TERMINATED: 09/27/2021*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**David Allen Chaney , Jr**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Dennis David Parker**
(See above for address)
*TERMINATED: 01/16/2019*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Emma Jane Roth**
(See above for address)
*TERMINATED: 12/03/2019*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Lenora Michelle Lapidus**
(See above for address)
*TERMINATED: 12/03/2019*

**JA3**

*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Carolina Youth Action Project**                represented by   **Galen Leigh Sherwin**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Sarah Ann Hinger**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Shirene Carole Hansotia**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Susan King Dunn**
(See above for address)
*TERMINATED: 06/04/2021*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Tiffani Joy Burgess**
(See above for address)
*TERMINATED: 09/27/2021*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**David Allen Chaney , Jr**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Dennis David Parker**
(See above for address)
*TERMINATED: 01/16/2019*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Emma Jane Roth**
(See above for address)
*TERMINATED: 12/03/2019*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Lenora Michelle Lapidus**
(See above for address)
*TERMINATED: 12/03/2019*

**JA4**

*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**DS**                                          represented by   **Galen Leigh Sherwin**
*by and through her next of kin Juanita Ford,*                  (See above for address)
*on behalf of herself and all others similarly*                 *LEAD ATTORNEY*
*situated*                                                      *PRO HAC VICE*
                                                                *ATTORNEY TO BE NOTICED*

                                                                **Sarah Ann Hinger**
                                                                (See above for address)
                                                                *LEAD ATTORNEY*
                                                                *PRO HAC VICE*
                                                                *ATTORNEY TO BE NOTICED*

                                                                **Shirene Carole Hansotia**
                                                                (See above for address)
                                                                *LEAD ATTORNEY*
                                                                *ATTORNEY TO BE NOTICED*

                                                                **Susan King Dunn**
                                                                (See above for address)
                                                                *TERMINATED: 06/04/2021*
                                                                *LEAD ATTORNEY*
                                                                *ATTORNEY TO BE NOTICED*

                                                                **Tiffani Joy Burgess**
                                                                (See above for address)
                                                                *TERMINATED: 09/27/2021*
                                                                *LEAD ATTORNEY*
                                                                *PRO HAC VICE*
                                                                *ATTORNEY TO BE NOTICED*

                                                                **David Allen Chaney , Jr**
                                                                (See above for address)
                                                                *ATTORNEY TO BE NOTICED*

                                                                **Dennis David Parker**
                                                                (See above for address)
                                                                *TERMINATED: 01/16/2019*
                                                                *PRO HAC VICE*
                                                                *ATTORNEY TO BE NOTICED*

                                                                **Emma Jane Roth**
                                                                (See above for address)
                                                                *TERMINATED: 12/03/2019*
                                                                *PRO HAC VICE*
                                                                *ATTORNEY TO BE NOTICED*

                                                                **Lenora Michelle Lapidus**
                                                                (See above for address)
                                                                *TERMINATED: 12/03/2019*

**JA5**

*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**SP**
*by and through her next of kin Melissa Downs, on behalf of herself and all others similarly situated*

           represented by       **Galen Leigh Sherwin**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Sarah Ann Hinger**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Shirene Carole Hansotia**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Susan King Dunn**
(See above for address)
*TERMINATED: 06/04/2021*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Tiffani Joy Burgess**
(See above for address)
*TERMINATED: 09/27/2021*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**David Allen Chaney , Jr**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Dennis David Parker**
(See above for address)
*TERMINATED: 01/16/2019*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Emma Jane Roth**
(See above for address)
*TERMINATED: 12/03/2019*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Lenora Michelle Lapidus**
(See above for address)
*TERMINATED: 12/03/2019*

**JA6**

*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Alan Wilson**
*in his official capacity as Attorney General of South Carolina, on behalf of himself and others similarly situated*

represented by  **James Emory Smith , Jr**
SC Attorney General's Office
PO Box 11549
Columbia, SC 29211
803-734-3970
Fax: 803-734-3677
Email: esmith@scag.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**J Alton Cannon, Jr**
*in his official capacity as the Sheriff of Charleston County, SC; on behalf of himself and others similarly situated*
*TERMINATED: 10/13/2021*

represented by  **Robin Lilley Jackson**
Senn Legal
PO Box 12279
Charleston, SC 29422
843-556-4045
Fax: 843-556-4046
Email: Robin@sennlegal.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Sandra Jane Senn**
Senn Legal
PO Box 12279
Charleston, SC 29422
843-556-4045
Fax: 843-556-4046
Email: Sandy@sennlegal.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Luther T Reynolds**
*in his official capacity as the Chief of the Police Department of the City of Charleston, SC*
*TERMINATED: 10/13/2021*

represented by  **Robin Lilley Jackson**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Sandra Jane Senn**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Reginald L Burgess**
*in his official capacity as the Chief of the Police Department of the City of North*

represented by  **Robin Lilley Jackson**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**JA7**

*Charleston, SC*
*TERMINATED: 10/13/2021*

**Sandra Jane Senn**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Carl Ritchie**
*in his official capacity as the Chief of the*
*Police Department of the City of Mt.*
*Pleasant, SC; on behalf of himself and*
*others similarly situated*
*TERMINATED: 10/13/2021*

represented by **Andrew F Lindemann**
Lindemann and Davis PA
PO Box 6923
Columbia, SC 29260
803-881-8920
Email: andrew@ldlawsc.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Leon Lott**
*in his official capacity as the Sheriff of*
*Richland County, SC; on behalf of himself*
*and others similarly situated*
*TERMINATED: 10/13/2021*

represented by **Robert David Garfield**
Crowe LaFave LLC
PO Box 1149
Columbia, SC 29202
803-999-1225
Fax: 803-848-8157
Email: robert@crowelafave.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Steven Richard Spreeuwers**
Crowe LaFave LLC
PO Box 1149
Columbia, SC 29202
803-399-9970
Fax: 803-726-7694
Email: steve@crowelafave.com
*TERMINATED: 04/17/2018*
*ATTORNEY TO BE NOTICED*

**Defendant**

**W H Holbrook**
*Department ofin his official capacity as the*
*Chief of the Police Department of the City*
*of Columbia, SC; on behalf of himself and*
*others similarly situated*
*TERMINATED: 10/13/2021*

represented by **Dana Marie Thye**
City of Columbia
PO Box 667
Columbia, SC 29202
803-737-4242
Fax: 803-737-4250
Email: Dana.Thye@columbiasc.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**William Michael Hemlepp , Jr**
The Jeffcoat Firm
1333 Main Street
Suite 510
Columbia, SC 29201

**JA8**

803-200-2000
Fax: 803-808-2240
Email: mikeh@thejeffcoatfirm.com
*TERMINATED: 05/29/2019*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Johnny Mack Brown**
*in his official capacity as the Interim Sheriff*
*of Greenville County, SC*
*TERMINATED: 10/13/2021*

represented by  **Anne R Culbreath**
Willson Jones Carter and Baxley
872 S Pleasantburg Drive
Greenville, SC 29607
864-672-3713
Fax: 864-235-6015
Email: ARCulbreath@wjlaw.net
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Ken Miller**
*in his official capacity as the Chief of the*
*Police Department of the City of Greenville,*
*SC; on behalf of himself and others*
*similarly situated*
*TERMINATED: 10/13/2021*

represented by  **James Emory Smith , Jr**
(See above for address)
*TERMINATED: 12/08/2016*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Michael Stuart Pitts**
City of Greenville
Office of the City Attorney
206 S Main Street
9th Floor
Greenville, SC 29601
864-467-4420
Fax: 864-467-4424
Email: mpitts@greenvillesc.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Logan McCombs Wells**
City of Greenville
PO Box 2207
Greenville, SC 29602
864-467-4354
Fax: 864-467-4424
Email: lmwells@greenvillesc.gov
*ATTORNEY TO BE NOTICED*

**Robert P Coler**
City of Spartanburg
PO Box 1749
Spartanburg, SC 29304
864-596-2722
Fax: 864-596-2313
Email: bcoler@cityofspartanburg.org
*ATTORNEY TO BE NOTICED*

**JA9**

**Defendant**

**Lance Crowe**
*in his official capacity as the Chief of the Police Department of the City of Travelers Rest, SC; on behalf of himself and others similarly situated*
*TERMINATED: 10/13/2021*

represented by **James Emory Smith , Jr**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Steve Moore**
*in his official capacity as Interim Chief of the Police Department of the City of Simpsonville, SC; on behalf of himself and others similarly situated*
*TERMINATED: 04/26/2018*

represented by **James Emory Smith , Jr**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**M Bryan Turner**
*in his official capacity as the Chief of the Police Department of the City of Mauldin, SC; on behalf of himself and others similarly situated*
*TERMINATED: 10/13/2021*

represented by **James Emory Smith , Jr**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Dan Reynolds**
*in his official capacity as the Chief of the Police Department of the City of Greer, SC; on behalf of himself and others similarly situated*
*TERMINATED: 10/13/2021*

**Defendant**

**A Keith Morton**
*in his official capacity as the Chief of the Police Department of the City of Fountain Inn, SC; on behalf of himself and others similarly situated*
*TERMINATED: 10/13/2021*

represented by **James Emory Smith , Jr**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Michael D Hanshaw**
*in his official capacity as Interim Chief of the Police Department of the City of Simpsonville, SC*
*TERMINATED: 10/13/2021*

represented by **James Emory Smith , Jr**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Amicus**

**United States**

represented by **Robert M Sneed**
US Attorneys Office (Cola)
1441 Main Street
Suite 500

**JA10**

Columbia, SC 29201
803-939-3056
Email: robert.sneed@usdoj.gov
*TERMINATED: 05/29/2020*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Shirene Carole Hansotia**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 08/11/2016 | 1 | COMPLAINT against All Defendants ( Filing fee $ 400 receipt number 0420-6702430.), filed by DS, Niya Kenny, Taurean Nesmith, SP, Girls Rock Charleston Inc. Service due by 11/14/2016. (Attachments: # 1 Appendix 1: 1919 S.c. Acts 239, # 2 Appendix 2: 1968 S.C. Acts 2308, # 3 Appendix 3: 1972 S.C. Acts 1426, # 4 Appendix 4:In re Joelle T., No. 20 1 0-UP-547, 2010 WL 10088227, at *1 (S.C. Ct. App. Dec. 16,2010), # 5 Appendix 5: 1994 S.C. Op. Att'yGen. 25,1994 WL 199757, # 6 Appendix 6:Letter from Robert D. Cook, S.c. Assistant Att'y Gen., to Hon. John W. Holcombe, # 7 Appendix 7: 1990 S.C. Op. Att'y Gen. 61, 1990 WL 482448, # 8 Appendix Index to Appendices) (vdru, ) (Entered: 08/12/2016) |
| 08/11/2016 | 2 | Local Rule 26.01 Answers to Interrogatories by DS, Girls Rock Charleston Inc, Niya Kenny, Taurean Nesmith, SP.(vdru, ) (Main Document 2 replaced on 8/18/2016) (vdru, ). Modified to replace with corrected document provided by filer on 8/18/2016 (vdru, ). (Entered: 08/12/2016) |
| 08/11/2016 | 3 | Summons Issued as to All Defendants. (vdru, ) (Entered: 08/12/2016) |
| 08/16/2016 | 5 | MOTION for Preliminary Injunction by Niya Kenny. Response to Motion due by 9/2/2016. (Attachments: # 1 Affidavit Decl of Plaintiff Kenny, # 2 Affidavit Decl. of Plaintiff Nesmith, # 3 Affidavit Decl. of Carpenter on behalf of Plaintiff Girls Rock, # 4 Affidavit Decl. of Plaintiff D.S., # 5 Affidavit Decl. of Plaintiff S.P., # 6 Affidavit Decl. of K,B. (minor), # 7 Affidavit Decl. of French Marcelin, # 8 Affidavit Decl. of Ryan (expert), # 9 Addendum Refernces and endnotes to Ryan's decl., # 10 Appendix Part 1 of Appendix to Ryan Decl. Curriculum vitae, # 11 Appendix Part 2 of Appendix to Ryan 's Decl. Curriculum vitae., # 12 Affidavit Decl. of Kayiza, # 13 Exhibit Ex. A DJJ statistics, # 14 Exhibit Ex. B Incident reports, # 15 Exhibit Ex. C.1 Charleston County School District Code of Conduct, # 16 Exhibit Ex. C.2 Richland One Discipline Code of Conduct, # 17 Exhibit Ex C.3 Greenville County School District Student Code, # 18 Exhibit Ex. C.4 Richland School District 2 Back-2-School Handbook, # 19 Exhibit Ex. C-5 Spring Valley 2015-2016 Student Handbook, # 20 Exhibit Ex. D Excerpts from DJJ facilities descriptions, # 21 Exhibit Ex. E Publication of 13th Circuit Public Defenders Office, # 22 Exhibit Ex.F Expungement information, # 23 Exhibit Ex. G. Description of Twilight program, # 24 Exhibit Ex. H Letter from Solicitor Donald Myers, # 25 Exhibit Ex. I DOJ COPS Fact Sheet on SROs)No proposed order.(Dunn, Susan) (Entered: 08/16/2016) |
| 08/17/2016 | 6 | MOTION to Certify Class by Niya Kenny. Response to Motion due by 9/6/2016. (Attachments: # 1 Appendix Henry v. Jefferson Cty. Planning Commn, No. 99-2122, 215 F.3d 1313, 2000 WL 742188 (4th Cir. 2000), # 2 Appendix R.A.G. ex rel. R.B. v. Buffalo City Sch. Dist. Bd. of Educ., 569 F. Appx 41 (2d Cir. 2014), # 3 Appendix R.A-G ex rel. R.B. v. Buffalo City Sch. Dist. Bd. of Educ., No. 12-CV-960S, 2013 WL 3354424 |

| | | |
|---|---|---|
| | | (W.D.N.Y. July 3, 2013), # 4 Affidavit Decl. of Plaintiff Kenny, # 5 Affidavit Decl. of Plaintiff Nesmith, # 6 Affidavit Decl. of Carpenter on behalf of Plaintiff Girls Rock, # 7 Affidavit Decl. of Plaintiff D.S., # 8 Affidavit Decl. of Plaintiff S.P., # 9 Affidavit Decl. of Plaintiff K.B.)No proposed order.(Dunn, Susan) (Entered: 08/17/2016) |
| 08/25/2016 | 7 | MOTION for Extension of Time by Lance Crowe, Ken Miller, Steve Moore, A Keith Morton, Alan Wilson. Response to Motion due by 9/12/2016. Proposed order is being emailed to chambers with copy to opposing counsel.(Smith, James) (Entered: 08/25/2016) |
| 08/26/2016 | 8 | **ORDER granting 7 Motion for Extension of Time. It is ordered that the Defendants are granted a 21 day extension in addition to the 21 days allowed by Rule 12, FRCP, after service, for a total of 42 days to respond to the Complaint following service. They are also granted a 28 day extension to respond to Plaintiffs' Motions for Preliminary Injunction and Class Certification in addition to the 14 allowed by Local Rule 7.06 after service, for a total of 42 days to respond to the Motions following service. Signed by Honorable C Weston Houck on 8/26/2016.(vdru, )** (Entered: 08/26/2016) |
| 08/29/2016 | 9 | MOTION to Appear Pro Hac Vice by Sarah Ann Hinger ( Filing fee $ 250 receipt number 0420-6734015) by Niya Kenny. Response to Motion due by 9/15/2016. (Attachments: # 1 Affidavit Application of Sarah Hinger, # 2 Supporting Documents Certificate of Good Standing)Proposed order is being emailed to chambers with copy to opposing counsel.(Dunn, Susan) (Entered: 08/29/2016) |
| 08/29/2016 | 10 | MOTION to Appear Pro Hac Vice by Dennis David Parker ( Filing fee $ 250 receipt number 0420-6734036) by Niya Kenny. Response to Motion due by 9/15/2016. (Attachments: # 1 Affidavit Application of Dennis Parker, # 2 Supporting Documents Certificate of Good Standing)Proposed order is being emailed to chambers with copy to opposing counsel.(Dunn, Susan) (Attachment 1 replaced on 8/31/2016) (vdru, ). Modified to replace attachment #1 with corrected document provided by the filer on 8/31/2016 (vdru,). (Entered: 08/29/2016) |
| 08/29/2016 | 11 | MOTION to Appear Pro Hac Vice by Galen Leigh Sherwin ( Filing fee $ 250 receipt number 0420-6734045) by Niya Kenny. Response to Motion due by 9/15/2016. (Attachments: # 1 Affidavit Application of Galen Sherwin, # 2 Supporting Documents Certificate of Good Standing)Proposed order is being emailed to chambers with copy to opposing counsel.(Dunn, Susan) (Entered: 08/29/2016) |
| 08/30/2016 | 12 | MOTION for Extension of Time to File Answer by W H Holbrook. Response to Motion due by 9/16/2016. No proposed order.(Hemlepp, William) (Entered: 08/30/2016) |
| 08/31/2016 | 13 | **ORDER granting 11 Motion to Appear Pro Hac Vice. It is ordered that Galen Leigh Sherwin who represents the Plaintiffs is granted admission pro hac vice in this case. Signed by Honorable C Weston Houck on 8/30/2016.(vdru, )** (Entered: 08/31/2016) |
| 08/31/2016 | 14 | **ORDER granting 9 Motion to Appear Pro Hac Vice. It is ordered that Sarah Ann Hinger who represents the Plaintiffs is granted admission pro hac vice in this case. Signed by Honorable C Weston Houck on 8/30/2016.(vdru, )** (Entered: 08/31/2016) |
| 08/31/2016 | 15 | **ORDER granting 10 Motion to Appear Pro Hac Vice. It is ordered that Dennis David Parker who represents the Plaintiffs is granted admission pro hac vice in this case. Signed by Honorable C Weston Houck on 8/31/2016.(vdru, )** (Entered: 08/31/2016) |
| 09/01/2016 | 16 | **TEXT ORDER granting 12 Motion for Extension of Time to Answer re 1 Complaint, W H Holbrook answer due 9/30/2016. Defendant W.H. Holbrook is granted an extension of time of 21 days to respond by answer or motion to the** |

| | | |
|---|---|---|
| | | **Complaint. Defendant W.H. Holbrook is also granted an extension of time of 28 days to respond to Plaintiffs Motions for Preliminary Injunction and Class Certification. Entered at the Direction of The Honorable C Weston Houck on 8/31/2016. (vdru, )** (Entered: 09/01/2016) |
| 09/07/2016 | 17 | MOTION for Extension of Time by Steve Loftis. Response to Motion due by 9/26/2016. (Attachments: # 1 Proposed Order)No proposed order.(Culbreath, Anne) (Entered: 09/07/2016) |
| 09/07/2016 | 18 | MOTION for Extension of Time by Leon Lott. Response to Motion due by 9/26/2016. No proposed order.(Garfield, Robert) (Entered: 09/07/2016) |
| 09/08/2016 | 19 | MOTION for Extension of Time by Carl Ritchie. Response to Motion due by 9/26/2016. (Attachments: # 1 Email from Susan Dunn re: consent to requested extensions)No proposed order.(Lindemann, Andrew) (Entered: 09/08/2016) |
| 09/08/2016 | 20 | Local Rule 26.01 Answers to Interrogatories by Lance Crowe, Ken Miller, Steve Moore, A Keith Morton, Alan Wilson.(Smith, James) (Entered: 09/08/2016) |
| 09/08/2016 | 21 | **TEXT ORDER granting 18 Motion for Extension of Time and 19 Motion for Extension of Time. The deadline for Defendants Carl Ritchie and Leon Lott to respond to the Complaint and motions is extended until Sept. 30. Entered at the Direction of The Honorable C Weston Houck on 9/8/2016.(vdru, )** (Entered: 09/08/2016) |
| 09/13/2016 | 23 | MOTION for Extension of Time by M Bryan Turner. Response to Motion due by 9/30/2016. No proposed order.(Smith, James) (Entered: 09/13/2016) |
| 09/14/2016 | 24 | **TEXT ORDER granting 23 Motion for Extension of Time and 17 Motion for Extension of Time. It is ordered that the deadline for Defendants Loftis and Turner's responses to the Complaint and to the Motions for Preliminary Injunction and Class Certification is extended to September 30. Entered at the Direction of The Honorable C Weston Houck on 9/14/2016.(vdru, )** (Entered: 09/14/2016) |
| 09/26/2016 | 25 | MOTION for Leave to File Excess Pages by Lance Crowe, Steve Moore, A Keith Morton, M Bryan Turner, Alan Wilson. Response to Motion due by 10/14/2016. No proposed order.(Smith, James) (Entered: 09/26/2016) |
| 09/28/2016 | 26 | **TEXT ORDER granting 25 Motion for Leave to File Excess Pages. It is ordered that the Defendants may include up to 15 additional pages in their Memo in Support of their Motion to Dismiss and in Opposition to Plaintiffs Motion for Preliminary Injunction. Entered at the Direction of The Honorable C Weston Houck on 9/27/2016.(vdru, )** (Entered: 09/28/2016) |
| 09/28/2016 | 27 | MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM by W H Holbrook. Response to Motion due by 10/17/2016. No proposed order.(Hemlepp, William) (Entered: 09/28/2016) |
| 09/30/2016 | 28 | MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM *AND MOTION TO STRIKE CLASS ACTION ALLEGATIONS* by Lance Crowe, Steve Moore, A Keith Morton, M Bryan Turner, Alan Wilson. Response to Motion due by 10/17/2016. (Attachments: # 1 Memo in Support)No proposed order.(Smith, James) (Entered: 09/30/2016) |
| 09/30/2016 | 29 | RESPONSE in Opposition re 6 MOTION to Certify Class Response filed by Lance Crowe, Steve Moore, A Keith Morton, M Bryan Turner, Alan Wilson.Reply to Response to Motion due by 10/11/2016 (Smith, James) (Entered: 09/30/2016) |
| 09/30/2016 | 30 | RESPONSE in Opposition re 5 MOTION for Preliminary Injunction Response filed by |

**JA13**

USCA4 Appeal: 21-2166     Doc: 18     Filed: 02/11/2022     Pg: 19 of 353

|  |  | Lance Crowe, Steve Moore, A Keith Morton, M Bryan Turner, Alan Wilson.Reply to Response to Motion due by 10/11/2016 (Smith, James) (Entered: 09/30/2016) |
| --- | --- | --- |
| 09/30/2016 | 31 | Local Rule 26.01 Answers to Interrogatories by M Bryan Turner.(Smith, James) (Entered: 09/30/2016) |
| 09/30/2016 | 32 | NOTICE of Appearance by Robert P Coler on behalf of Ken Miller (Coler, Robert) (Entered: 09/30/2016) |
| 09/30/2016 | 33 | MOTION to Stay re 6 MOTION to Certify Class by J Alton Cannon, Jr, Eddie Driggers, Jr, Gregory G Mullen. Response to Motion due by 10/17/2016. No proposed order.(Senn, Sandra) (Entered: 09/30/2016) |
| 09/30/2016 | 34 | First MOTION to Dismiss for Lack of Jurisdiction *12(b)(1) Subject Matter Jurisdiction* by Ken Miller. Response to Motion due by 10/17/2016. (Attachments: # 1 Memo in Support)No proposed order.(Coler, Robert) (Entered: 09/30/2016) |
| 09/30/2016 | 35 | RESPONSE in Opposition re 5 MOTION for Preliminary Injunction Response filed by J Alton Cannon, Jr, Eddie Driggers, Jr, Gregory G Mullen.Reply to Response to Motion due by 10/11/2016 (Senn, Sandra) (Entered: 09/30/2016) |
| 09/30/2016 | 36 | MOTION to Dismiss , MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM ( Response to Motion due by 10/17/2016.) by Steve Loftis. (Attachments: # 1 Memo in Support Memorandum in Support of Motion to Dismiss)No proposed order.(Culbreath, Anne) (Entered: 09/30/2016) |
| 09/30/2016 | 37 | RESPONSE in Opposition re 5 MOTION for Preliminary Injunction Response filed by Steve Loftis.Reply to Response to Motion due by 10/11/2016 (Culbreath, Anne) (Entered: 09/30/2016) |
| 09/30/2016 | 38 | RESPONSE in Opposition re 6 MOTION to Certify Class Response filed by Steve Loftis.Reply to Response to Motion due by 10/11/2016 (Culbreath, Anne) (Entered: 09/30/2016) |
| 09/30/2016 | 39 | Local Rule 26.01 Answers to Interrogatories by Steve Loftis.(Culbreath, Anne) (Entered: 09/30/2016) |
| 09/30/2016 | 40 | Local Rule 26.01 Answers to Interrogatories by J Alton Cannon, Jr, Eddie Driggers, Jr, Gregory G Mullen.(Senn, Sandra) (Entered: 09/30/2016) |
| 09/30/2016 | 41 | MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM by J Alton Cannon, Jr, Eddie Driggers, Jr, Gregory G Mullen. Response to Motion due by 10/17/2016. No proposed order.(Senn, Sandra) (Entered: 09/30/2016) |
| 09/30/2016 | 42 | MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM *Lack of Jurisdiction* by Carl Ritchie. Response to Motion due by 10/17/2016. (Attachments: # 1 Memo in Support)No proposed order.(Lindemann, Andrew) (Entered: 09/30/2016) |
| 09/30/2016 | 43 | Local Rule 26.01 Answers to Interrogatories by Carl Ritchie.(Lindemann, Andrew) (Entered: 09/30/2016) |
| 09/30/2016 | 44 | MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM *LACK OF JURISDICTION* by Leon Lott. Response to Motion due by 10/17/2016. (Attachments: # 1 Memo in Support)No proposed order.(Garfield, Robert) (Entered: 09/30/2016) |
| 09/30/2016 | 45 | Local Rule 26.01 Answers to Interrogatories by Leon Lott.(Garfield, Robert) (Entered: 09/30/2016) |
| 09/30/2016 | 46 | RESPONSE in Opposition re 6 MOTION to Certify Class Response filed by Carl Ritchie.Reply to Response to Motion due by 10/11/2016 (Lindemann, Andrew) (Entered: |

**JA14**

| | | |
|---|---|---|
| | | 09/30/2016) |
| 09/30/2016 | 47 | RESPONSE in Opposition re 6 MOTION to Certify Class Response filed by Leon Lott.Reply to Response to Motion due by 10/11/2016 (Garfield, Robert) (Entered: 09/30/2016) |
| 09/30/2016 | 48 | RESPONSE in Opposition re 5 MOTION for Preliminary Injunction Response filed by Leon Lott.Reply to Response to Motion due by 10/11/2016 (Garfield, Robert) (Entered: 09/30/2016) |
| 09/30/2016 | 49 | RESPONSE in Opposition re 5 MOTION for Preliminary Injunction Response filed by Carl Ritchie.Reply to Response to Motion due by 10/11/2016 (Lindemann, Andrew) (Entered: 09/30/2016) |
| 10/07/2016 | 50 | MOTION for Extension of Time to File Response/Reply as to 44 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM /LACK OF JURISDICTION, 35 Response in Opposition to Motion, 48 Response in Opposition to Motion, 28 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM AND MOTION TO STRIKE CLASS ACTION ALLEGATIONS, 33 MOTION to Stay re 6 MOTION to Certify Class , 27 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM , 36 MOTION to Dismiss MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM , 41 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM , 46 Response in Opposition to Motion, 49 Response in Opposition to Motion, 42 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM /Lack of Jurisdiction, 38 Response in Opposition to Motion, 37 Response in Opposition to Motion, 34 First MOTION to Dismiss for Lack of Jurisdiction 12(b)(1) Subject Matter Jurisdiction, 47 Response in Opposition to Motion, 30 Response in Opposition to Motion, 29 Response in Opposition to Motion by Niya Kenny. Response to Motion due by 10/24/2016. No proposed order.(Dunn, Susan) (Entered: 10/07/2016) |
| 10/12/2016 | 51 | **TEXT ORDER granting 50 Motion for Extension of Time to File Response/Reply in Support of Plaintiffs' Motions for Preliminary Injunction, Class Certification and Response to Defendants' Motions to Dismiss. Replies due by 10/19/2016. Entered at the Direction of The Honorable C Weston Houck on 10/12/2016.(vdru, )** (Entered: 10/12/2016) |
| 10/19/2016 | 52 | MOTION to Appear Pro Hac Vice by Lenora Lapidus ( Filing fee $ 250 receipt number 0420-6814571) by Niya Kenny. Response to Motion due by 11/7/2016. (Attachments: # 1 Affidavit PHV affidavit, # 2 Exhibit Certificate of Good Standing)Proposed order is being emailed to chambers with copy to opposing counsel.(Dunn, Susan) (Entered: 10/19/2016) |
| 10/19/2016 | 53 | RESPONSE in Opposition re 28 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM AND MOTION TO STRIKE CLASS ACTION ALLEGATIONS Response filed by Niya Kenny.Reply to Response to Motion due by 10/31/2016 (Attachments: # 1 Affidavit Declaration of True copy of Family court record)(Dunn, Susan) (Entered: 10/19/2016) |
| 10/19/2016 | 54 | RESPONSE in Opposition re 44 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM /LACK OF JURISDICTION, 34 First MOTION to Dismiss for Lack of Jurisdiction 12(b)(1) Subject Matter Jurisdiction, 27 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM , 36 MOTION to Dismiss MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM , 41 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM , 42 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM /Lack of Jurisdiction Response filed by Niya Kenny.Reply to Response to Motion due by 10/31/2016 (Dunn, Susan) (Entered: 10/19/2016) |
| 10/19/2016 | 55 | **ORDER granting 52 Motion to Appear Pro Hac Vice. It is ordered that Lenora** |

| | | |
|---|---|---|
| | | **Lapidus who represents the Plaintiffs is granted pro hac vice admission in this case. Signed by Honorable C Weston Houck on 10/19/2016.**(vdru, ) (Entered: 10/19/2016) |
| 10/19/2016 | 56 | REPLY to Response to Motion re 5 MOTION for Preliminary Injunction Response filed by Niya Kenny. (Dunn, Susan) (Entered: 10/19/2016) |
| 10/19/2016 | 57 | REPLY to Response to Motion re 6 MOTION to Certify Class Response filed by Niya Kenny. (Dunn, Susan) (Entered: 10/19/2016) |
| 10/20/2016 | 58 | MOTION for Extension of Time by Steve Loftis. Response to Motion due by 11/7/2016. No proposed order.(Culbreath, Anne) (Entered: 10/20/2016) |
| 10/20/2016 | 59 | MOTION for Extension of Time to File Response/Reply as to 53 Response in Opposition to Motion, by Lance Crowe, Steve Moore, A Keith Morton, M Bryan Turner, Alan Wilson. Response to Motion due by 11/7/2016. No proposed order.(Smith, James) (Entered: 10/20/2016) |
| 10/25/2016 | 60 | **TEXT ORDER granting 58 Motion for Extension of Time. It is ordered that the deadline for Sheriff Loftis' Replies to the Plaintiff's Responses filed on October 19 is extended until November 4, 2016. Entered at the Direction of The Honorable C Weston Houck on 10/25/2016.**(vdru, ) (Entered: 10/25/2016) |
| 10/25/2016 | 61 | **TEXT ORDER granting 59 Motion for Extension of Time to File Replies re 28 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM _AND MOTION TO STRIKE CLASS ACTION ALLEGATIONS_ Replies of Defendants Wilson, Crowe, Moore, Turner and Morton due by 11/4/2016. Entered at the Direction of The Honorable C Weston Houck on 10/25/2016.**(vdru, ) (Entered: 10/25/2016) |
| 10/26/2016 | 62 | MOTION for Extension of Time to File Response/Reply as to 54 Response in Opposition to Motion,, by J Alton Cannon, Jr, Eddie Driggers, Jr, Gregory G Mullen. Response to Motion due by 11/14/2016. No proposed order.(Senn, Sandra) (Entered: 10/26/2016) |
| 10/26/2016 | 63 | REPLY to Response to Motion re 44 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM _/LACK OF JURISDICTION_, 34 First MOTION to Dismiss for Lack of Jurisdiction _12(b)(1) Subject Matter Jurisdiction_, 27 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM , 36 MOTION to Dismiss MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM , 41 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM , 42 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM _/Lack of Jurisdiction_ 54 Response filed by W H Holbrook. (Hemlepp, William) (Entered: 10/26/2016) |
| 10/27/2016 | 64 | **TEXT ORDER granting 62 Motion for Extension of Time to File Reply: The deadline for Defendants Cannon, Driggers, and Mullen to file their Reply to Plaintiffs' Memorandum of Law in Opposition to Defendants' Motions to Dismiss is extended until November 4, 2016. Replies due by 11/4/2016. Entered at the Direction of The Honorable C Weston Houck on 10/27/2016.**(vdru, ) (Entered: 10/27/2016) |
| 10/27/2016 | 65 | MOTION for Extension of Time to File Response/Reply as to 54 Response in Opposition to Motion,, by Carl Ritchie. Response to Motion due by 11/14/2016. No proposed order. (Lindemann, Andrew) (Entered: 10/27/2016) |
| 10/28/2016 | 66 | NOTICE of Appearance by Logan McCombs Wells on behalf of Ken Miller (Wells, Logan) (Entered: 10/28/2016) |
| 10/28/2016 | 67 | First MOTION for Extension of Time to File Response/Reply as to 54 Response in Opposition to Motion,, by Ken Miller. Response to Motion due by 11/17/2016. No proposed order.(Wells, Logan) (Entered: 10/28/2016) |
| 10/28/2016 | 68 | **TEXT ORDER granting 65 Motion for Extension of Time to File Reply re 42** |

**JA16**

| | | |
|---|---|---|
| | | **MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM** *Lack of Jurisdiction*. It is ordered that Defendant Ritchie will be allowed an additional four days to file a reply to Plaintiffs' memorandum in opposition to his motion to dismiss. The deadline is extended until November 4, 2016. Replies due by 11/4/2016. Entered at the Direction of The Honorable C Weston Houck on 10/28/2016.(vdru, ) (Entered: 10/28/2016) |
| 10/28/2016 | [69](#) | NOTICE of Appearance by Michael Stuart Pitts on behalf of Ken Miller (Pitts, Michael) (Entered: 10/28/2016) |
| 10/31/2016 | [70](#) | MOTION for Extension of Time to File Response/Reply as to [54](#) Response in Opposition to Motion,, by Leon Lott. Response to Motion due by 11/17/2016. No proposed order. (Garfield, Robert) (Entered: 10/31/2016) |
| 10/31/2016 | 71 | **TEXT ORDER granting** [67](#) **Defendant Ken Miller's Motion for Extension of Time to File Reply to Plaintiffs Memorandum of Law in Opposition to Defendants Motions to Dismiss. The new deadline is November 4, 2016. Entered at the Direction of The Honorable C Weston Houck on 10/31/2016.(vdru, )** (Entered: 10/31/2016) |
| 10/31/2016 | [72](#) | NOTICE of Appearance by Steven Richard Spreeuwers on behalf of Leon Lott (Spreeuwers, Steven) (Entered: 10/31/2016) |
| 11/01/2016 | 73 | **TEXT ORDER granting** [70](#) **Defendant Sheriff Lott's Motion for Extension of Time to File Reply to the Plaintiff's Motions to Dismiss. Replies due by 11/4/2016. Entered at the Direction of The Honorable C Weston Houck on 11/1/2016.(vdru, )** (Entered: 11/01/2016) |
| 11/01/2016 | [74](#) | MOTION for Leave to File Excess Pages *in Reply* by Lance Crowe, Steve Moore, A Keith Morton, M Bryan Turner, Alan Wilson. Response to Motion due by 11/18/2016. No proposed order.(Smith, James) (Entered: 11/01/2016) |
| 11/02/2016 | 75 | **TEXT ORDER granting** [74](#) **Motion for Leave to File Excess Pages. It is ordered that Defendants Wilson, Crowe, Moore, Morton, and Turner are allowed to includeup to five additional pages for their reply to the Plaintiffs Memorandum in Opposition to their Motion to Dismiss (ECF No. 53). Entered at the Direction of The Honorable C Weston Houck on 11/2/2016.(vdru, )** (Entered: 11/02/2016) |
| 11/04/2016 | [76](#) | REPLY to Response to Motion re [34](#) First MOTION to Dismiss for Lack of Jurisdiction *12(b)(1) Subject Matter Jurisdiction* Response filed by Ken Miller. (Wells, Logan) (Entered: 11/04/2016) |
| 11/04/2016 | [77](#) | REPLY to Response to Motion re [28](#) MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM *AND MOTION TO STRIKE CLASS ACTION ALLEGATIONS* Response filed by Lance Crowe, Steve Moore, A Keith Morton, M Bryan Turner, Alan Wilson. (Smith, James) (Entered: 11/04/2016) |
| 11/04/2016 | [78](#) | REPLY to Response to Motion re [44](#) MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM */LACK OF JURISDICTION* Response filed by Leon Lott. (Garfield, Robert) (Entered: 11/04/2016) |
| 11/04/2016 | [79](#) | REPLY to Response to Motion re [36](#) MOTION to Dismiss MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM *And Reply to Plaintiff's Memorandum of Law in Opposition to Defendant's Motion to Dismiss* Response filed by Steve Loftis. (Culbreath, Anne) (Entered: 11/04/2016) |
| 11/04/2016 | [80](#) | REPLY to Response to Motion re [5](#) MOTION for Preliminary Injunction *And Plaintiff's Reply Memorandum of Law in Support of Plaintiff's Motion for Preliminary Injunction* Response filed by Steve Loftis. (Culbreath, Anne) (Entered: 11/04/2016) |

| 11/04/2016 | 81 | REPLY to Response to Motion re 6 MOTION to Certify Class *And Plaintiff's Reply Memorandum of Law Regarding Motion for Class Certification* Response filed by Steve Loftis. (Culbreath, Anne) (Entered: 11/04/2016) |
| 11/04/2016 | 82 | REPLY to Response to Motion re 41 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM Response filed by J Alton Cannon, Jr, Eddie Driggers, Jr, Gregory G Mullen. (Senn, Sandra) (Entered: 11/04/2016) |
| 11/04/2016 | 83 | REPLY to Response to Motion re 42 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM */Lack of Jurisdiction* Response filed by Carl Ritchie. (Lindemann, Andrew) (Entered: 11/04/2016) |
| 11/16/2016 | 84 | NOTICE of Hearing on Motion 5 MOTION for Preliminary Injunction, 6 MOTION to Certify Class, 33 MOTION to Stay re 6 MOTION to Certify Class, 27 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM, 28 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM *AND MOTION TO STRIKE CLASS ACTION ALLEGATIONS*, 34 First MOTION to Dismiss for Lack of Jurisdiction *12(b)(1) Subject Matter Jurisdiction*, 36 MOTION to Dismiss MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM, 41 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM , 42 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM */Lack of Jurisdiction*, 44 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM */LACK OF JURISDICTION*: Motion Hearing set for 12/1/2016 02:30 PM in Charleston Courtroom #4, U. S. Court House, 85 Broad St, Charleston before Honorable C Weston Houck. (ssam, ) (Entered: 11/16/2016) |
| 11/18/2016 | 85 | NOTICE OF RESCHEDULED HEARING 12/1/2016 cancelled and rescheduled to: Hearing on Motion 5 MOTION for Preliminary Injunction, 6 MOTION to Certify Class, 33 MOTION to Stay re 6 MOTION to Certify Class, 27 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM, 28 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM *AND MOTION TO STRIKE CLASS ACTION ALLEGATIONS*, 34 First MOTION to Dismiss for Lack of Jurisdiction *12(b)(1) Subject Matter Jurisdiction*, 36 MOTION to Dismiss MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM, 41 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM, 42 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM */Lack of Jurisdiction*, 44 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM */LACK OF JURISDICTION* set for 12/8/2016 02:30 PM in Charleston Courtroom #1, J. Waties Waring Judicial Center, 83 Meeting St, Charleston before Honorable C Weston Houck. (sshe, ) Modified on 12/8/2016 **PLEASE NOTE: CHANGE OF COURTROOM LOCATION** (sshe, ). (Entered: 11/18/2016) |
| 11/28/2016 | 86 | RESPONSE in Support re 5 MOTION for Preliminary Injunction *Statement of Interest of the United States* Response filed by United States. (Sneed, Robert) (Main Document 86 replaced on 11/29/2016 (sshe, ). Modified on 11/29/2016 to replace with corrected document as requested and provided by filing user, added attorney for United States (sshe, ). (Entered: 11/28/2016) |
| 12/02/2016 | 87 | MOTION to Withdraw as Attorney by Ken Miller. Response to Motion due by 12/16/2016. Add an additional 3 days only if served by mail or otherwise allowed under Fed. R. Civ. P. 6 or Fed. R. Crim. P. 45. No proposed order.(Smith, James) (Entered: 12/02/2016) |
| 12/08/2016 | 88 | **TEXT ORDER granting 87 Motion to Withdraw as Attorney. The Office of the Attorney General of South Carolina, including J. Emory Smith will no longer be representing Defendant Miller. Mr. Miller will continue to be represented by Michael S tuart Pitts, Robert P. Coler, and Logan M cCombs Wells of the City Attorneys Office for the City of Greenville. Entered at the Direction of The Honorable C Weston Houck on 12/7/2016.**(vdru, ) (Entered: 12/08/2016) |

**JA18**

| | | |
|---|---|---|
| 12/08/2016 | 90 | **Minute Entry. Proceedings held before Honorable C Weston Houck: Motion Hearing held on 12/8/2016 re** 44 **MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM** *LACK OF JURISDICTION* **filed by Leon Lott,** 34 **First MOTION to Dismiss for Lack of Jurisdiction** *12(b)(1) Subject Matter Jurisdiction* **filed by Ken Miller,** 28 **MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM** *AND MOTION TO STRIKE CLASS ACTION ALLEGATIONS* **filed by A Keith Morton, M Bryan Turner, Lance Crowe, Steve Moore, Alan Wilson,** 27 **MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM filed by W H Holbrook,** 36 **MOTION to Dismiss MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM filed by Steve Loftis,** 41 **MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM filed by Eddie Driggers, Jr, Gregory G Mullen, J Alton Cannon, Jr,** 42 **MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM** *Lack of Jurisdiction* **filed by Carl Ritchie. Court will consider issues of standing and abstention. Court Reporter: Jack Bryan, Court Smart. (ssam, ) (Entered: 12/09/2016)** |
| 03/03/2017 | 91 | **ORDER The Court grants the motions to dismiss (ECF Nos. 27, 28, 34, 36, 41, 42, and 44). Accordingly, the case is dismissed without prejudice. Signed by Honorable C Weston Houck on 02/28/2017.(egra, )** (Entered: 03/03/2017) |
| 03/06/2017 | 92 | JUDGMENT: The Court grants the Defendants' Motions to Dismiss and this case is dismissed without prejudice. (vdru, ) (Entered: 03/06/2017) |
| 03/20/2017 | 93 | MOTION for Attorney Fees by J Alton Cannon, Jr, Eddie Driggers, Jr, Gregory G Mullen. Response to Motion due by 4/4/2017. Add an additional 3 days only if served by mail or otherwise allowed under Fed. R. Civ. P. 6 or Fed. R. Crim. P. 45. (Attachments: # 1 Exhibit Senn Declaration, # 2 Exhibit Senn CV, # 3 Exhibit DeAntonio Declaration, # 4 Exhibit Summary of Time Records, # 5 Exhibit Certification of Filing User)No proposed order.(Senn, Sandra) Modified to correct filing date on 3/21/2017 (vdru, ). (Entered: 03/21/2017) |
| 03/22/2017 | 95 | NOTICE OF APPEAL as to 91 Order on Motion to Dismiss for Failure to State a Claim,, Order on Motion to Dismiss/Lack of Jurisdiction,,,, 92 Judgment by Niya Kenny. - Filing fee $ 505, receipt number 0420-7064258. The Docketing Statement form, Transcript Order form and CJA 24 form may be obtained from the Fourth Circuit website at www.ca4.uscourts.gov (Dunn, Susan) (Entered: 03/22/2017) |
| 03/23/2017 | 96 | Transmittal Sheet for Notice of Appeal to USCA re 95 Notice of Appeal, The Clerk's Office hereby certifies the record and the docket sheet available through ECF to be the certified list in lieu of the record and/or the certified copy of the docket entries. (vdru, ) (Entered: 03/23/2017) |
| 03/27/2017 | 98 | MOTION for Attorney Fees by Steve Loftis. Response to Motion due by 4/10/2017. Add an additional 3 days only if served by mail or otherwise allowed under Fed. R. Civ. P. 6 or Fed. R. Crim. P. 45. (Attachments: # 1 Exhibit Declaration of Anne R. Culbreath, # 2 Exhibit Summary of Time Records)No proposed order.(Culbreath, Anne) (Entered: 03/27/2017) |
| 04/04/2017 | 99 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of motion hearing for dates of 12-8-16, before Judge C. Weston Houck, re 95 Notice of Appeal, Court Reporter/Transcriber Bryan/Potocki, Telephone number/e-mail 843-723-2208/potockidebra@bellsouth.net. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Parties have 7 calendar days from the filing of the transcript to file with the court a Notice of Intent to Request Redaction. *Does this satisfy all appellate orders for this reporter? Y* |

**JA19**

| | | Redaction Request due 4/25/2017. Redacted Transcript Deadline set for 5/5/2017. Release of Transcript Restriction set for 7/3/2017. (dpotocki, ) (Entered: 04/04/2017) |
|---|---|---|
| 04/04/2017 | 100 | MOTION to Stay re 93 MOTION for Attorney Fees , 95 Notice of Appeal, 98 MOTION for Attorney Fees by Niya Kenny. Response to Motion due by 4/18/2017. Add an additional 3 days only if served by mail or otherwise allowed under Fed. R. Civ. P. 6 or Fed. R. Crim. P. 45. (Attachments: # 1 Supporting Documents Unpublished decision CSX v. Peirce)No proposed order.(Dunn, Susan) (Entered: 04/04/2017) |
| 04/06/2017 | 101 | **TEXT ORDER granting 100 Motion to Stay proceedings on defendants' motions for fees and expenses. The Court holds the motions for attorney fees (ECF Nos. 93 and 98) in abeyance pending resolution of the appeal by the Fourth Circuit. Entered at the Direction of The Honorable C Weston Houck on 4/6/2017.(vdru, )** (Entered: 04/06/2017) |
| 03/15/2018 | 102 | USCA OPINION for 95 Notice of Appeal, filed by Niya Kenny. Decision of Appeals Court: Vacated and Remanded Decision of District Court. (vdru, ) (Entered: 03/15/2018) |
| 04/06/2018 | 103 | USCA MANDATE and JUDGMENT entered March 15, 2018, takes effect this date as to as to 95 Notice of Appeal, filed by Niya Kenny. In accordance with the decision of this court, the judgment of the district court is vacated. This case is remanded to the district court for further proceedings consistent with the court's decision. (Attachments: # 1 4CCA Judgment)(vdru, ) (Entered: 04/06/2018) |
| 04/06/2018 | 104 | Case Reassigned to Judge Honorable Margaret B Seymour. Judge Honorable C Weston Houck no longer assigned to the case. (glev, ) (Entered: 04/06/2018) |
| 04/09/2018 | 105 | NOTICE OF CHANGE OF CASE NUMBER from 2:16-cv-2794-CWH to 2:16-cv-2794-MBS. Please use the new case number on all future filings. (vdru, ) (Entered: 04/09/2018) |
| 04/13/2018 | 106 | ANSWER to 1 Complaint,, by W H Holbrook.(Hemlepp, William) (Entered: 04/13/2018) |
| 04/16/2018 | 107 | NOTICE of Hearing: Status Conference set for Monday, 4/30/2018 at 11:00 AM in Charleston Courtroom #5, U. S. Court House, 85 Broad St, Charleston before Honorable Margaret B Seymour. (vdru, ) (Entered: 04/16/2018) |
| 04/16/2018 | 108 | MOTION to Withdraw as Attorney by Leon Lott. Response to Motion due by 4/30/2018. Add an additional 3 days only if served by mail or otherwise allowed under Fed. R. Civ. P. 6 or Fed. R. Crim. P. 45. No proposed order.(Spreeuwers, Steven) (Entered: 04/16/2018) |
| 04/16/2018 | 109 | NOTICE of Appearance by Robin Lilley Jackson on behalf of J Alton Cannon, Jr, Eddie Driggers, Jr, Gregory G Mullen (Jackson, Robin) (Entered: 04/16/2018) |
| 04/17/2018 | 110 | **TEXT ORDER granting 108 Motion to Withdraw as Attorney. It is ordered that Attorney Steven R. Spreeuwers is allowed to withdraw as counsel for Defendant Leon Lott. Attorney Robert D. Garfield, will remain as counsel for Defendant Leon Lott. Entered at the Direction of The Honorable Margaret B Seymour on 4/16/2018. (vdru, )** (Entered: 04/17/2018) |
| 04/17/2018 | 112 | NOTICE OF RESCHEDULED HEARING: Please be advised that the Status Conference originally set for 4/30/2018 is cancelled and rescheduled to: Status Conference set for Thursday, 4/26/2018 at 10:00 AM in Charleston Courtroom #5, U. S. Court House, 85 Broad St, Charleston before Honorable Margaret B Seymour. (vdru, ) (Entered: 04/17/2018) |
| 04/19/2018 | 113 | MOTION to Dismiss *Renewed* by Ken Miller. Response to Motion due by 5/3/2018. Add an additional 3 days only if served by mail or otherwise allowed under Fed. R. Civ. P. 6 or Fed. R. Crim. P. 45. No proposed order.(Wells, Logan) (Entered: 04/19/2018) |

| | | |
|---|---|---|
| 04/19/2018 | [114](#) | ANSWER to [1](#) Complaint,, by Ken Miller.(Wells, Logan) (Entered: 04/19/2018) |
| 04/19/2018 | [115](#) | MOTION to Dismiss by W H Holbrook. Response to Motion due by 5/3/2018. Add an additional 3 days only if served by mail or otherwise allowed under Fed. R. Civ. P. 6 or Fed. R. Crim. P. 45. No proposed order.(Hemlepp, William) (Entered: 04/19/2018) |
| 04/19/2018 | [116](#) | MOTION to Dismiss by J Alton Cannon, Jr, Eddie Driggers, Jr, Gregory G Mullen. Response to Motion due by 5/3/2018. Add an additional 3 days only if served by mail or otherwise allowed under Fed. R. Civ. P. 6 or Fed. R. Crim. P. 45. No proposed order. (Jackson, Robin) (Entered: 04/19/2018) |
| 04/19/2018 | [117](#) | MOTION to Dismiss *Renewed Motion to Dismiss and Motion to Strike* by Lance Crowe, Steve Moore, A Keith Morton, M Bryan Turner, Alan Wilson. Response to Motion due by 5/3/2018. Add an additional 3 days only if served by mail or otherwise allowed under Fed. R. Civ. P. 6 or Fed. R. Crim. P. 45. No proposed order.(Smith, James) (Entered: 04/19/2018) |
| 04/19/2018 | [118](#) | ANSWER to [1](#) Complaint,, by Lance Crowe, Steve Moore, A Keith Morton, M Bryan Turner, Alan Wilson.(Smith, James) (Entered: 04/19/2018) |
| 04/20/2018 | [119](#) | ANSWER to [1](#) Complaint,, by J Alton Cannon, Jr, Eddie Driggers, Jr, Gregory G Mullen. (Jackson, Robin) (Entered: 04/20/2018) |
| 04/20/2018 | [120](#) | ANSWER to [1](#) Complaint,, by Steve Loftis.(Culbreath, Anne) (Entered: 04/20/2018) |
| 04/20/2018 | [121](#) | MOTION to Dismiss by Steve Loftis. Response to Motion due by 5/4/2018. Add an additional 3 days only if served by mail or otherwise allowed under Fed. R. Civ. P. 6 or Fed. R. Crim. P. 45. No proposed order.(Culbreath, Anne) (Entered: 04/20/2018) |
| 04/20/2018 | [122](#) | MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM */Lack of Jurisdiction (Renewed)* by Carl Ritchie. Response to Motion due by 5/4/2018. Add an additional 3 days only if served by mail or otherwise allowed under Fed. R. Civ. P. 6 or Fed. R. Crim. P. 45. (Attachments: # [1](#) Memo in Support)No proposed order.(Lindemann, Andrew) (Entered: 04/20/2018) |
| 04/20/2018 | [123](#) | ANSWER to [1](#) Complaint,, by Carl Ritchie.(Lindemann, Andrew) (Entered: 04/20/2018) |
| 04/20/2018 | [124](#) | MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM *(Renewed)* by Leon Lott. Response to Motion due by 5/4/2018. Add an additional 3 days only if served by mail or otherwise allowed under Fed. R. Civ. P. 6 or Fed. R. Crim. P. 45. No proposed order. (Garfield, Robert) (Entered: 04/20/2018) |
| 04/20/2018 | [125](#) | ANSWER to [1](#) Complaint,, by Leon Lott.(Garfield, Robert) (Entered: 04/20/2018) |
| 04/26/2018 | 126 | **Minute Entry. Proceedings held before Honorable Margaret B Seymour: Status Conference held on 4/26/2018. Michael D. Hanshaw is substituted for Defendant Steve Moore. Motions to Dismiss are taken under advisement. Once dismissal motions are decided, class certification and an amended scheduling order will be discussed. Court Reporter Virginia Druce, Court Smart. (cper, )** (Entered: 04/26/2018) |
| 05/03/2018 | [128](#) | MOTION to Amend/Correct *Caption* by Niya Kenny. Response to Motion due by 5/17/2018. Add an additional 3 days only if served by mail or otherwise allowed under Fed. R. Civ. P. 6 or Fed. R. Crim. P. 45. Proposed order is being emailed to chambers with copy to opposing counsel.(Dunn, Susan) (Entered: 05/03/2018) |
| 05/03/2018 | [129](#) | RESPONSE in Opposition re [124](#) MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM *(Renewed)*, [116](#) MOTION to Dismiss , [117](#) MOTION to Dismiss *Renewed Motion to Dismiss and Motion to Strike*, [121](#) MOTION to Dismiss , [113](#) MOTION to |

| | | |
|---|---|---|
| | | Dismiss *Renewed*, [115](#) MOTION to Dismiss , [122](#) MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM */Lack of Jurisdiction (Renewed)* Response filed by Niya Kenny.Reply to Response to Motion due by 5/11/2018 Add an additional 3 days only if served by mail or otherwise allowed under Fed. R. Civ. P. 6. (Dunn, Susan) (Entered: 05/03/2018) |
| 05/11/2018 | [130](#) | REPLY to Response to Motion re [117](#) MOTION to Dismiss *Renewed Motion to Dismiss and Motion to Strike* Response filed by Alan Wilson. (Smith, James) (Entered: 05/11/2018) |
| 05/15/2018 | [131](#) | **CONSENT ORDER withdrawing [93](#) Motion for Attorney Fees [98](#) Motion for Attorney Fees [113](#) Motion to Dismiss [115](#) Motion to Dismiss [116](#) Motion to Dismiss; [117](#) Motion to Dismiss [121](#) Motion to Dismiss [122](#) Motion to Dismiss for Failure to State a Claim and [124](#) Motion to Dismiss for Failure to State a Claim. It is agreed that this action shall be STAYED as to the Law Enforcement Defendants and it is further agreed that between the Plaintiffs and the Law Enforcement Defendants, each party shall bear its own costs. Signed by Honorable Margaret B Seymour on 5/14/2018.(vdru, )** (Entered: 05/15/2018) |
| 06/06/2018 | [132](#) | MOTION for Leave to File *Supplemental Authority* by Alan Wilson. Response to Motion due by 6/20/2018. Add an additional 3 days only if served by mail or otherwise allowed under Fed. R. Civ. P. 6 or Fed. R. Crim. P. 45. (Attachments: # [1](#) Exhibit Act 182, 2018 SC Acts)No proposed order.(Smith, James) (Entered: 06/06/2018) |
| 06/20/2018 | [133](#) | **ORDER granting [128](#) Motion to Amend: It is ordered that the Case Caption will be amended to reflect a name change for the Plaintiff and several Defendants in their official capacity. Signed by Honorable Margaret B Seymour on 6/19/2018.(vdru, )** (Entered: 06/20/2018) |
| 06/20/2018 | [134](#) | RESPONSE in Opposition re [132](#) MOTION for Leave to File *Supplemental Authority* Response filed by Niya Kenny.Reply to Response to Motion due by 6/27/2018 Add an additional 3 days only if served by mail or otherwise allowed under Fed. R. Civ. P. 6. (Dunn, Susan) (Entered: 06/20/2018) |
| 06/21/2018 | [135](#) | REPLY to Response to Motion re [132](#) MOTION for Leave to File *Supplemental Authority* Response filed by Alan Wilson. (Smith, James) (Entered: 06/21/2018) |
| 12/20/2018 | 136 | NOTICE of Status Conference and Hearing on Motion [132](#) MOTION for Leave to File *Supplemental Authority* : Please be advised that a Hearing is set for 1/17/2019 at 10:00 AM in Charleston Courtroom #4, U. S. Court House, 85 Broad St, Charleston before Honorable Margaret B Seymour. (vdru, ) (Entered: 12/20/2018) |
| 01/03/2019 | 137 | NOTICE OF RESCHEDULED STATUS CONFERENCE and HEARING on [132](#) MOTION for Leave to File Supplemental Authority : The Hearing previously set for 1/17/2019 is cancelled and rescheduled to: Status Conference and Motion Hearing set for Wednesday, 1/23/2019 at 2:00 PM in Charleston Courtroom #4, U. S. Court House, 85 Broad St, Charleston before Honorable Margaret B Seymour. (vdru, ) (Entered: 01/03/2019) |
| 01/08/2019 | 138 | NOTICE OF RESCHEDULED HEARING on [132](#) MOTION for Leave to File Supplemental Authority and STATUS CONFERENCE : The Hearing previously set for 1/23/2019 is cancelled and rescheduled to: Motion Hearing set for Monday, 1/28/2019 at 02:30 PM in Charleston Courtroom #4, U. S. Court House, 85 Broad St, Charleston before Honorable Margaret B Seymour. (vdru, ) (Entered: 01/08/2019) |
| 01/14/2019 | [139](#) | MOTION to Appear Pro Hac Vice by Emma Roth ( Filing fee $ 250 receipt number 0420-8210097) by Niya Kenny. Response to Motion due by 1/28/2019. Add an additional 3 days only if served by mail or otherwise allowed under Fed. R. Civ. P. 6 or Fed. R. |

| | | Crim. P. 45. (Attachments: # 1 Affidavit By Roth in support of Motion, # 2 Exhibit Certificate of Good Standing for Roth)Proposed order is being emailed to chambers with copy to opposing counsel.(Dunn, Susan) (Entered: 01/14/2019) |
|---|---|---|
| 01/14/2019 | 140 | MOTION to Withdraw as Attorney *Dennis Parker* by Niya Kenny. Response to Motion due by 1/28/2019. Add an additional 3 days only if served by mail or otherwise allowed under Fed. R. Civ. P. 6 or Fed. R. Crim. P. 45. Proposed order is being emailed to chambers with copy to opposing counsel.(Dunn, Susan) (Entered: 01/14/2019) |
| 01/15/2019 | 141 | **ORDER granting 139 Motion to Appear Pro Hac Vice: Emma Jane Roth who represents the Plaintiffs is granted pro hac vice admission in this case. Signed by Honorable Margaret B Seymour on 1/15/2019.(vdru, ) (Entered: 01/15/2019)** |
| 01/16/2019 | 142 | **ORDER granting 140 Motion to Withdraw as Attorney. It is ordered that Dennis David Parker be allowed to withdraw from this case. Signed by Honorable Margaret B Seymour on 1/15/2019.(vdru, ) (Entered: 01/16/2019)** |
| 01/18/2019 | 144 | JOINT STIPULATION by Niya Kenny. (Dunn, Susan) (Entered: 01/18/2019) |
| 01/18/2019 | 145 | Joint Rule 26(f) Report by Niya Kenny.(Dunn, Susan) (Entered: 01/18/2019) |
| 01/28/2019 | 146 | **Minute Entry. Proceedings held before Honorable Margaret B Seymour: Status Conference held on 1/28/2019. Plaintiffs to notify the court in 2 weeks if D.S. will remain a class representative or if they will be substituting another plaintiff. Court Reporter: Virginia Druce, CourtSmart. (ssam, ) (Entered: 01/28/2019)** |
| 01/28/2019 | 147 | **TEXT ORDER granting 132 Motion for Leave to File: It is ordered that Defendant Allen Wilson is granted leave to file Supplemental Authority Supporting his Renewed Motion to Dismiss the Complaint. Entered at the Direction of The Honorable Margaret B Seymour on 1/28/2019.(vdru, ) (Entered: 01/28/2019)** |
| 02/11/2019 | 148 | MOTION for Extension of Time by Niya Kenny. Response to Motion due by 2/25/2019. Add an additional 3 days only if served by mail or otherwise allowed under Fed. R. Civ. P. 6 or Fed. R. Crim. P. 45. No proposed order.(Dunn, Susan) (Entered: 02/11/2019) |
| 02/12/2019 | 149 | **TEXT ORDER granting 148 Motion for Extension of Time: Plaintiffs shall have until 2/19/2019 to file notice to the Court re the class representation. Entered at the Direction of The Honorable Margaret B Seymour on 2/12/2019.(vdru, ) (Entered: 02/12/2019)** |
| 02/19/2019 | 151 | First MOTION to Amend/Correct 1 Complaint,, by Niya Kenny. Response to Motion due by 3/5/2019. Add an additional 3 days only if served by mail or otherwise allowed under Fed. R. Civ. P. 6 or Fed. R. Crim. P. 45. (Attachments: # 1 Supporting Documents Proposed amended complaint, # 2 Affidavit Declaration of DD, # 3 Exhibit Solicitor's letter. Exh to DD declaration)Proposed order is being emailed to chambers with copy to opposing counsel.(Dunn, Susan) (Entered: 02/19/2019) |
| 02/22/2019 | 152 | NOTICE of Request for Protection from Court Appearance by James Emory Smith, Jr for 3/19/2019, 4/26/2019, 5/14/2019, 5/17/2019 (Smith, James) (Entered: 02/22/2019) |
| 02/25/2019 | 153 | MOTION for Extension of Time to File Response/Reply as to 151 First MOTION to Amend/Correct 1 Complaint,, by Alan Wilson. Response to Motion due by 3/11/2019. Add an additional 3 days only if served by mail or otherwise allowed under Fed. R. Civ. P. 6 or Fed. R. Crim. P. 45. No proposed order.(Smith, James) (Entered: 02/25/2019) |
| 02/28/2019 | 154 | **TEXT ORDER granting 153 Motion for Extension of Time to File Response re 151 First MOTION to Amend/Substitute Class Representative 1 Complaint, . Defendant is granted an additional fourteen (14) days to respond. Response to Motion due by 3/19/2019. Add an additional 3 days only if served by mail or otherwise allowed** |

JA23

USCA4 Appeal: 21-2166   Doc: 18   Filed: 02/11/2022   Pg: 29 of 353

| | | |
|---|---|---|
| | | **under Fed. R. Civ. P. 6 or Fed. R. Crim. P. 45. Entered at the Direction of The Honorable Margaret B Seymour on 2/28/2019.**(vdru, ) (Entered: 02/28/2019) |
| 03/18/2019 | 155 | RESPONSE in Opposition re 151 First MOTION to Amend/Correct 1 Complaint,, Response filed by Alan Wilson.Reply to Response to Motion due by 3/25/2019 Add an additional 3 days only if served by mail or otherwise allowed under Fed. R. Civ. P. 6. (Smith, James) (Entered: 03/18/2019) |
| 05/10/2019 | 156 | **ORDER granting 151 Motion to Amend/Correct: Plaintiffs are granted leave to amend the complaint and add DD as a class representative. Signed by Honorable Margaret B Seymour on 5/10/2019.**(vdru, ) (Entered: 05/10/2019) |
| 05/16/2019 | 157 | AMENDED COMPLAINT against All Defendants, filed by Niya Kenny. Service due by 8/14/2019 (Dunn, Susan) (Entered: 05/16/2019) |
| 05/23/2019 | 158 | MOTION to Substitute Attorney by W H Holbrook. Response to Motion due by 6/6/2019. Add an additional 3 days only if served by mail or otherwise allowed under Fed. R. Civ. P. 6 or Fed. R. Crim. P. 45. No proposed order.(Hemlepp, William) (Entered: 05/23/2019) |
| 05/28/2019 | 159 | MOTION for Extension of Time *to Respond to Amended Complaint* by Alan Wilson. Response to Motion due by 6/11/2019. Add an additional 3 days only if served by mail or otherwise allowed under Fed. R. Civ. P. 6 or Fed. R. Crim. P. 45. No proposed order. (Smith, James) (Entered: 05/28/2019) |
| 05/29/2019 | 160 | NOTICE of Appearance by Dana Marie Thye on behalf of W H Holbrook (Thye, Dana) (Entered: 05/29/2019) |
| 05/29/2019 | 161 | MOTION to Withdraw as Attorney by W H Holbrook. Response to Motion due by 6/12/2019. Add an additional 3 days only if served by mail or otherwise allowed under Fed. R. Civ. P. 6 or Fed. R. Crim. P. 45. No proposed order.(Hemlepp, William) (Entered: 05/29/2019) |
| 05/29/2019 | 162 | **TEXT ORDER granting 159 Motion for Extension of Time; granting 161 Motion to Withdraw as Attorney. Entered at the direction of Honorable Margaret B Seymour on 5/29/2019.**(jbry, ) (Entered: 05/29/2019) |
| 06/06/2019 | 165 | MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM *AND MOTION TO DISMISS OR STRIKE CLASS ACTION ALLEGATIONS* by Alan Wilson. Response to Motion due by 6/20/2019. Add an additional 3 days only if served by mail or otherwise allowed under Fed. R. Civ. P. 6 or Fed. R. Crim. P. 45. (Attachments: # 1 Memo in Support)No proposed order.(Smith, James) (Entered: 06/06/2019) |
| 06/11/2019 | 166 | MOTION for Extension of Time to File Response/Reply as to 165 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM *AND MOTION TO DISMISS OR STRIKE CLASS ACTION ALLEGATIONS* by Alan Wilson. Response to Motion due by 6/25/2019. Add an additional 3 days only if served by mail or otherwise allowed under Fed. R. Civ. P. 6 or Fed. R. Crim. P. 45. No proposed order.(Smith, James) (Entered: 06/11/2019) |
| 06/20/2019 | 167 | RESPONSE in Opposition re 165 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM *AND MOTION TO DISMISS OR STRIKE CLASS ACTION ALLEGATIONS* Response filed by Niya Kenny.Reply to Response to Motion due by 6/27/2019 Add an additional 3 days only if served by mail or otherwise allowed under Fed. R. Civ. P. 6. (Dunn, Susan) (Entered: 06/20/2019) |
| 06/21/2019 | 168 | **TEXT ORDER granting 166 Motion for Extension of Time to File Response/Reply. Signed by Honorable Margaret B Seymour on 06/21/2019.**(hada, ) (Entered: 06/21/2019) |

<div align="center">JA24</div>

| | | |
|---|---|---|
| 07/05/2019 | 169 | REPLY to Response to Motion re 165 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM *AND MOTION TO DISMISS OR STRIKE CLASS ACTION ALLEGATIONS* Response filed by Alan Wilson. (Attachments: # 1 Exhibit R105, 2019 S.C. Acts - amendment to disorderly conduct statute)(Smith, James) (Entered: 07/05/2019) |
| 11/14/2019 | 170 | NOTICE of Hearing on Motion 165 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM *AND MOTION TO DISMISS OR STRIKE CLASS ACTION ALLEGATIONS* : Motion Hearing set for 12/4/2019 at 2:00 PM in Charleston Courtroom #4, U. S. Court House, 85 Broad St, Charleston before Honorable Margaret B Seymour. (vdru, ) (Entered: 11/14/2019) |
| 11/27/2019 | 171 | MOTION to Withdraw as Attorney by Niya Kenny. Response to Motion due by 12/11/2019. Add an additional 3 days only if served by mail or otherwise allowed under Fed. R. Civ. P. 6 or Fed. R. Crim. P. 45. No proposed order.(Dunn, Susan) (Entered: 11/27/2019) |
| 11/27/2019 | 172 | MOTION to Withdraw as Attorney *Due to death* by Niya Kenny. Response to Motion due by 12/11/2019. Add an additional 3 days only if served by mail or otherwise allowed under Fed. R. Civ. P. 6 or Fed. R. Crim. P. 45. No proposed order.(Dunn, Susan) (Entered: 11/27/2019) |
| 12/03/2019 | 173 | **TEXT ORDER granting 171 Motion to Withdraw as Attorney ; granting 172 Motion to Withdraw as Attorney. Entered at the Direction of The Honorable Margaret B Seymour on 12/3/2019.(vdru, ) (Entered: 12/03/2019)** |
| 12/04/2019 | 175 | **Minute Entry. Proceedings held before Honorable Margaret B Seymour: taking under advisement 165 Motion to Dismiss for Failure to State a Claim; Motion Hearing held on 12/4/2019 re 165 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM *AND MOTION TO DISMISS OR STRIKE CLASS ACTION ALLEGATIONS* filed by Alan Wilson. Defendant has until 1/17/2020 to submit a brief re: the power of the court to address records retroactively and the extent of the expungement procedure in South Carolina. (Defendant's Brief due by 1/17/2020). Court Reporter Karen Martin. (ssam, ) (Entered: 12/04/2019)** |
| 12/16/2019 | 176 | STIPULATION *Written Assurance Form* by Niya Kenny. (Attachments: # 1 Supporting Documents Exhibit A)(Dunn, Susan) (Entered: 12/16/2019) |
| 01/15/2020 | 177 | Joint MOTION for Confidentiality Order by Niya Kenny. Response to Motion due by 1/29/2020. Add an additional 3 days only if served by mail or otherwise allowed under Fed. R. Civ. P. 6 or Fed. R. Crim. P. 45. (Attachments: # 1 Proposed Order, # 2 Supporting Documents Attachment A, # 3 Supporting Documents Attachment B, # 4 Supporting Documents Attachment C)Proposed order is being emailed to chambers with copy to opposing counsel.(Dunn, Susan) (Additional attachment(s) added on 1/16/2020: # 5 Proposed Order) (vdru, ). Modified to add proposed order as attachment #5 on 1/16/2020 (vdru, ). (Entered: 01/15/2020) |
| 01/15/2020 | 178 | Joint MOTION for Confidentiality Order *Redlines show in Word format* by Niya Kenny. Response to Motion due by 1/29/2020. Add an additional 3 days only if served by mail or otherwise allowed under Fed. R. Civ. P. 6 or Fed. R. Crim. P. 45. (Attachments: # 1 Supporting Documents Attachment A, # 2 Supporting Documents Attachment B, # 3 Supporting Documents Attachment C)Proposed order is being emailed to chambers with copy to opposing counsel.(Dunn, Susan) (Entered: 01/15/2020) |
| 01/17/2020 | 179 | RESPONSE in Support re 165 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM *AND MOTION TO DISMISS OR STRIKE CLASS ACTION ALLEGATIONS* |

**JA25**

|  |  | *Memorandum Regarding Expungement* Response filed by Alan Wilson. (Smith, James) (Entered: 01/17/2020) |
|---|---|---|
| 01/24/2020 | 180 | **ORDER granting granting 178 Motion for Confidentiality Order : The parties have stipulated that certain discovery material is and should be treated as confidential and have agreed to the terms of this order. Details regarding the designation and treatment of confidential materials are set forth in Order. Signed by Honorable Margaret B Seymour on 1/21/2020.(vdru, )** (Entered: 01/24/2020) |
| 01/31/2020 | 181 | REPLY to Response to Motion re 165 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM *AND MOTION TO DISMISS OR STRIKE CLASS ACTION ALLEGATIONS* Response filed by Niya Kenny. (Attachments: # 1 Supporting Documents Unreported case referenced in the brief)(Dunn, Susan) (Entered: 01/31/2020) |
| 02/04/2020 | 182 | MOTION for Extension of Time by Alan Wilson. Response to Motion due by 2/18/2020. Add an additional 3 days only if served by mail or otherwise allowed under Fed. R. Civ. P. 6 or Fed. R. Crim. P. 45. No proposed order.(Smith, James) (Entered: 02/04/2020) |
| 02/05/2020 | 183 | **TEXT ORDER granting 182 Motion for Extension of Time: The deadline for Defendant Wilson to file a reply to the response filed by Plaintiffs (Dkt. No. 181) to his Memorandum Regarding Expungement (Dkt. No. 179) is extended until 2/12/2020. Entered at the Direction of The Honorable Margaret B Seymour on 2/5/2020.(vdru, )** (Entered: 02/05/2020) |
| 02/12/2020 | 184 | REPLY to Response to Motion re 165 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM *AND MOTION TO DISMISS OR STRIKE CLASS ACTION ALLEGATIONS Reply to Response to Memorandum regarding expungement* Response filed by Alan Wilson. (Smith, James) (Entered: 02/12/2020) |
| 03/30/2020 | 185 | **ORDER AND OPINION: Defendant's Motion to Dismiss the Amended Complaint and Motion to Dismiss or Strike Class Action allegations (ECF No. 165) is Denied. Signed by Honorable Margaret B Seymour on 3/30/2020. (vdru, )** (Entered: 03/30/2020) |
| 04/09/2020 | 186 | ANSWER to 157 Amended Complaint by Alan Wilson.(Smith, James) (Entered: 04/09/2020) |
| 05/11/2020 | 187 | MOTION re 6 MOTION to Certify Class by Carolina Youth Action Project, DS, Niya Kenny, Taurean Nesmith, SP. Response to Motion due by 5/26/2020. Add an additional 3 days only if served by mail or otherwise allowed under Fed. R. Civ. P. 6 or Fed. R. Crim. P. 45. (Attachments: # 1 Exhibit Declaration of D.D., # 2 Supporting Documents Letter from Solicitor)No proposed order.(Dunn, Susan) Modified on 11/17/2020 to reference 198 additional attachments. (vdru, ). (Entered: 05/11/2020) |
| 05/21/2020 | 188 | RESPONSE in Opposition re 187 MOTION re 6 MOTION to Certify Class , 6 MOTION to Certify Class Response filed by Alan Wilson.Reply to Response to Motion due by 5/28/2020 Add an additional 3 days only if served by mail or otherwise allowed under Fed. R. Civ. P. 6. (Smith, James) (Entered: 05/21/2020) |
| 05/28/2020 | 189 | REPLY to Response to Motion re 187 MOTION re 6 MOTION to Certify Class , 6 MOTION to Certify Class Response filed by Carolina Youth Action Project, DS, Niya Kenny, Taurean Nesmith, SP. (Dunn, Susan) (Entered: 05/28/2020) |
| 06/05/2020 | 191 | Joint Rule 26(f) Report by Carolina Youth Action Project, DS, Niya Kenny, Taurean Nesmith, SP.(Dunn, Susan) (Entered: 06/05/2020) |
| 10/20/2020 | 192 | NOTICE of Appearance by Shirene Carole Hansotia on behalf of Carolina Youth Action Project, DS, Niya Kenny, Taurean Nesmith, SP (Hansotia, Shirene) (Entered: 10/20/2020) |

**JA26**

| 10/28/2020 | 193 | NOTICE of TELEPHONE STATUS CONFERENCE: Please be advised that a Telephone Status Conference is set for Friday, 10/30/2020, at 10:00 AM before The Honorable Margaret B Seymour. **Plaintiffs' Counsel shall arrange the call for all participating parties. Plaintiffs' Counsel is instructed to please provide conference call dial-in information to the parties and copy the Court at filingdocs_ecf_chas@scd.uscourts.gov. (vdru, ) (Entered: 10/28/2020) |
|---|---|---|
| 10/28/2020 | 194 | NOTICE OF RESCHEDULED TELEPHONE CONFERENCE: Please be advised that the phone status conference originally set for 10/30/2020 is cancelled and RESCHEDULED to: Telephonic Status Conference set for Thursday, 10/29/2020 at 03:00 PM before The Honorable Margaret B Seymour for purpose of discussing definition of class as proposed in 6 Motion to Certify, in light of 2018 amendments to the Disturbing Schools statute. *Plaintiffs' Counsel shall arrange the call for all participating parties. Plaintiffs' Counsel is instructed to please provide conference call dial-in information to the parties and copy the Court at filingdocs_ecf_chas@scd.uscourts.gov. (vdru, ) (Entered: 10/28/2020) |
| 10/29/2020 | 195 | **Minute Entry. Proceedings held before Honorable Margaret B Seymour: Telephone Status Conference held on 10/29/2020. Plaintiffs to provide a proposed amended definition as discussed on the record by 11/17/20. Defendants to file a supplemental reply by 11/30/20. Court Reporter: Tana Hess. (ssam, )** (Entered: 10/29/2020) |
| 11/17/2020 | 198 | Additional Attachments to Main Document 187 MOTION re 6 MOTION to Certify Class . First attachment description: Supplemental Memorandum re Class Definition . (Dunn, Susan) (Entered: 11/17/2020) |
| 11/30/2020 | 199 | RESPONSE in Opposition re 187 MOTION re 6 MOTION to Certify Class , 6 MOTION to Certify Class Response filed by Alan Wilson.Reply to Response to Motion due by 12/7/2020 Add an additional 3 days only if served by mail or otherwise allowed under Fed. R. Civ. P. 6. (Smith, James) (Entered: 11/30/2020) |
| 12/07/2020 | 200 | REPLY to Response to Motion re 187 MOTION re 6 MOTION to Certify Class 199 Response filed by Carolina Youth Action Project, DS, Niya Kenny, Taurean Nesmith, SP, United States. (Hansotia, Shirene) (Main Document 200 replaced on 12/9/2020) (vdru, ). Modified on 12/9/2020 to replace with correctly signed document as provided by the filer. (vdru, ). (Entered: 12/07/2020) |
| 02/24/2021 | 201 | **OPINION AND ORDER: It is ordered that the Motion to Certify, ECF No. 6, and Motion to Supplement, ECF No. 187, are granted. The Court certifies the Class and Sub-Classes as defined in the Supplemental Memorandum, ECF No. 198, pursuant to Federal Rule of Civil Procedure 23(b) (2) and further orders that Plaintiffs' counsel of record is appointed class counsel. It is further Ordered that within fourteen days, counsel shall file a joint status report and a joint proposed amended scheduling order. Details set forth in Order. Signed by Honorable Margaret B Seymour on 2/23/21. (vdru, )** Modified on 2/24/2021 to correct signature date of Order. (vdru, ). (Entered: 02/24/2021) |
| 03/10/2021 | 203 | Consent MOTION to Amend/Correct 191 Rule 26(f) Report by Carolina Youth Action Project, DS, Niya Kenny, Taurean Nesmith, SP. Response to Motion due by 3/24/2021. Add an additional 3 days only if served by mail or otherwise allowed under Fed. R. Civ. P. 6 or Fed. R. Crim. P. 45. Proposed order is being emailed to chambers with copy to opposing counsel.(Hansotia, Shirene) (Entered: 03/10/2021) |
| 03/19/2021 | 204 | **SCHEDULING ORDER Discovery due by 4/19/2021, Motion in Limine due by 11/16/2021, Motions due by 7/15/2021 (Responses to Summary Judgment Motions due 8/15/2021, Replies due 8/30/2021), Rule 26(a)(3) Disclosures due by 11/10/2021,** |

**JA27**

| | | **Trial Deadline 12/1/2021. Signed by Honorable Margaret B Seymour on 3/17/2021.** **(vdru, )** (Entered: 03/19/2021) |
|---|---|---|
| 04/29/2021 | 206 | MOTION to Appear Pro Hac Vice by Tiffani Burgess ( Filing fee $ 350 receipt number 0420-9808829) by Carolina Youth Action Project, DS, Niya Kenny, Taurean Nesmith, SP, United States. Response to Motion due by 5/13/2021. Add an additional 3 days only if served by mail or otherwise allowed under Fed. R. Civ. P. 6 or Fed. R. Crim. P. 45. (Attachments: # 1 Affidavit Application of Tiffani Burgess, # 2 Exhibit Certificate of Good Standing for Tiffani Burgess)No proposed order.(Hansotia, Shirene) (Attachment 1 replaced on 4/29/2021) (vdru, ). Modified on 4/29/2021 to replace attachment 1 with corrected document as provided by the filer. (vdru, ). (Attachment 1 replaced on 5/12/2021) (vdru, ). (Additional attachment(s) added on 5/12/2021: # 3 District of Colorado Bar Certificate) (vdru, ). Modified on 5/12/2021 to replace attachment and add an attachment as provided by the filer. (vdru, ). (Entered: 04/29/2021) |
| 05/26/2021 | 207 | MOTION to Withdraw as Attorney by Carolina Youth Action Project, DS, Niya Kenny, Taurean Nesmith, SP. Response to Motion due by 6/9/2021. Add an additional 3 days only if served by mail or otherwise allowed under Fed. R. Civ. P. 6 or Fed. R. Crim. P. 45. (Attachments: # 1 Exhibit Certification of local Counsel)No proposed order.(Dunn, Susan) (Entered: 05/26/2021) |
| 05/26/2021 | 208 | **TEXT ORDER granting 206 Motion to Appear Pro Hac Vice. It is ordered that Tiffani Joy Burgess, who represents the Plaintiffs, is granted admission pro hac vice in this case. Entered at the Direction of The Honorable Margaret B Seymour on 5/25/2021. (vdru, )** (Entered: 05/26/2021) |
| 05/27/2021 | 209 | CERTIFICATE OF CONSULTATION byCarolina Youth Action Project, DS, Niya Kenny, Taurean Nesmith, SP re 207 MOTION to Withdraw as Attorney . (Dunn, Susan) (Entered: 05/27/2021) |
| 05/28/2021 | 210 | CERTIFICATE OF CONSULTATION byCarolina Youth Action Project, DS, Niya Kenny, Taurean Nesmith, SP re 207 MOTION to Withdraw as Attorney . (Attachments: # 1 Notice of Right to File Objections Notice to clients whose consent has nor bee obtained)(Dunn, Susan) (Entered: 05/28/2021) |
| 06/04/2021 | 211 | **TEXT ORDER granting 207 Motion to Withdraw as Attorney. Susan K. Dunn is granted leave of court to withdraw her appearance as counsel for the Plaintiffs. Entered at the Direction of The Honorable Margaret B Seymour on 6/4/2021.(vdru, )** (Entered: 06/04/2021) |
| 07/13/2021 | 213 | REPLY by Alan Wilson to 204 Scheduling Order, *Notice of Consent Extension to Scheduling Order*. (Smith, James) (Entered: 07/13/2021) |
| 07/23/2021 | 215 | MOTION for Summary Judgment by Alan Wilson. Response to Motion due by 8/6/2021. Add an additional 3 days only if served by mail or otherwise allowed under Fed. R. Civ. P. 6 or Fed. R. Crim. P. 45. (Attachments: # 1 Memo in Support Memo in Support of Summary Judgment, # 2 Exhibit Wheatley Depo excerpts, # 3 Exhibit Emails of counsel, # 4 Exhibit Rinehart Depo excerpts & vita)No proposed order.(Smith, James) (Entered: 07/23/2021) |
| 07/23/2021 | 216 | MOTION for Summary Judgment by Carolina Youth Action Project, DS, Niya Kenny, Taurean Nesmith, SP. Response to Motion due by 8/6/2021. Add an additional 3 days only if served by mail or otherwise allowed under Fed. R. Civ. P. 6 or Fed. R. Crim. P. 45. (Attachments: # 1 Memo in Support)No proposed order.(Hansotia, Shirene) Modified on 7/26/2021 to reference additional attachments 217 , 218 , 219 , 220 , 221 , 222 , 223 , and 224 . (vdru, ). (Entered: 07/23/2021) |
| 07/23/2021 | 217 | Additional Attachments to Main Document 216 MOTION for Summary Judgment . First |

| | | |
|---|---|---|
| | | attachment description: Exhibit 1 . (Hansotia, Shirene) (Entered: 07/23/2021) |
| 07/23/2021 | 218 | Additional Attachments to Main Document 216 MOTION for Summary Judgment . First attachment description: Exhibit 2 . (Hansotia, Shirene) (Entered: 07/23/2021) |
| 07/23/2021 | 219 | Additional Attachments to Main Document 216 MOTION for Summary Judgment . First attachment description: Exhibit 3 . (Hansotia, Shirene) (Entered: 07/23/2021) |
| 07/23/2021 | 220 | Additional Attachments to Main Document 216 MOTION for Summary Judgment . First attachment description: Exhibit 4 . (Hansotia, Shirene) (Entered: 07/23/2021) |
| 07/23/2021 | 221 | Additional Attachments to Main Document 216 MOTION for Summary Judgment . First attachment description: Exhibit 5 . (Hansotia, Shirene) (Entered: 07/23/2021) |
| 07/23/2021 | 222 | Additional Attachments to Main Document 216 MOTION for Summary Judgment . First attachment description: Exhibit 6 . (Attachments: # 1 Exhibit 7, # 2 Exhibit 7.B.1, # 3 Exhibit 7.B.2, # 4 Exhibit 7.B.3, # 5 Exhibit 7.B.4, # 6 Exhibit 7.B.5, # 7 Exhibit 7.C.1, # 8 Exhibit 7.C.2, # 9 Exhibit 7.C.3, # 10 Exhibit 7.F, # 11 Exhibit 7.H)(Hansotia, Shirene) (Entered: 07/23/2021) |
| 07/23/2021 | 223 | Additional Attachments to Main Document 216 MOTION for Summary Judgment . First attachment description: Exhibit 8 . (Attachments: # 1 Exhibit 9, # 2 Exhibit 10, # 3 Exhibit 10.A, # 4 Exhibit 10.B, # 5 Exhibit 10.C, # 6 Exhibit 10.E, # 7 Exhibit 10.F, # 8 Exhibit 10.G, # 9 Exhibit 10.H, # 10 Exhibit 10.I, # 11 Exhibit 10.J, # 12 Exhibit 10.K, # 13 Exhibit 10.L, # 14 Exhibit 11, # 15 Exhibit 12, # 16 Exhibit 13)(Hansotia, Shirene) (Entered: 07/23/2021) |
| 07/23/2021 | 224 | Additional Attachments to Main Document 216 MOTION for Summary Judgment . First attachment description: Exhibit 10.D . (Hansotia, Shirene) (Entered: 07/23/2021) |
| 08/12/2021 | 225 | NOTICE of Appearance by David Allen Chaney, Jr on behalf of Carolina Youth Action Project, DS, Niya Kenny, Taurean Nesmith, SP (Chaney, David) (Main Document 225 replaced on 8/13/2021) (vdru, ). Modified on 8/13/2021 to replace with corrected document as provided by the filer. (vdru, ). (Entered: 08/12/2021) |
| 08/16/2021 | 226 | RESPONSE in Opposition re 216 MOTION for Summary Judgment Response filed by Alan Wilson.Reply to Response to Motion due by 8/30/2021 Add an additional 3 days only if served by mail or otherwise allowed under Fed. R. Civ. P. 6. (Attachments: # 1 Exhibit N. Chas. Incident Reports, # 2 Exhibit Richland Incident Report, # 3 Exhibit Rinehart Deposition excerpts)(Smith, James) Modified on 8/19/2021 to correct deadline set per ECF #204. (vdru, ). (Entered: 08/16/2021) |
| 08/16/2021 | 227 | RESPONSE in Opposition re 215 MOTION for Summary Judgment Response filed by Carolina Youth Action Project, DS, Niya Kenny, Taurean Nesmith, SP.Reply to Response to Motion due by 8/30/2021 Add an additional 3 days only if served by mail or otherwise allowed under Fed. R. Civ. P. 6. (Chaney, David) Modified on 8/19/2021 to correct deadline set per ECF #204. (vdru, ). (Entered: 08/16/2021) |
| 08/25/2021 | 228 | REPLY by Alan Wilson to 204 Scheduling Order, *Notice of Consent Extension to Reply Deadline.* (Smith, James) (Entered: 08/25/2021) |
| 09/01/2021 | 230 | REPLY to Response to Motion re 215 MOTION for Summary Judgment Response filed by Alan Wilson. (Smith, James) (Entered: 09/01/2021) |
| 09/01/2021 | 231 | REPLY to Response to Motion re 216 MOTION for Summary Judgment Response filed by Carolina Youth Action Project, DS, Niya Kenny, Taurean Nesmith, SP. (Chaney, David) (Entered: 09/01/2021) |
| 09/14/2021 | 232 | NOTICE Telephonic Oral Argument: re 215 and 216 Motions for Summary Judgment set |

**JA29**

| | | |
|---|---|---|
| | | for 9/28/2021 01:00 PM before Honorable Margaret B Seymour. NOTE: The Court will send dial-in instructions prior to the hearing. (hcor, ) (Entered: 09/14/2021) |
| 09/14/2021 | 233 | Consent MOTION to Continue *Telephone Conference* by Carolina Youth Action Project, DS, Niya Kenny, Taurean Nesmith, SP. Response to Motion due by 9/28/2021. Add an additional 3 days only if served by mail or otherwise allowed under Fed. R. Civ. P. 6 or Fed. R. Crim. P. 45. No proposed order.(Chaney, David) (Entered: 09/14/2021) |
| 09/15/2021 | 234 | **TEXT ORDER: The Oral Argument set for 9/28/2021 is VACATED and the 233 Motion to Continue is denied as moot. Signed by Honorable Margaret B Seymour on 9/15/21.(iyou, )** (Entered: 09/15/2021) |
| 09/21/2021 | 235 | MOTION to Withdraw as Attorney *(Tiffani Burgess)* by Carolina Youth Action Project, DS, Niya Kenny, Taurean Nesmith, SP. Response to Motion due by 10/5/2021. Add an additional 3 days only if served by mail or otherwise allowed under Fed. R. Civ. P. 6 or Fed. R. Crim. P. 45. No proposed order.(Chaney, David) (Entered: 09/21/2021) |
| 09/27/2021 | 236 | **TEXT ORDER granting 235 Motion to Withdraw as Attorney: Tiffani Burgess is relieved as counsel for Plaintiffs. Entered at the Direction of The Honorable Margaret B Seymour on 9/27/2021.(vdru, )** (Entered: 09/27/2021) |
| 09/29/2021 | 238 | NOTICE of Hearing on Motion 216 MOTION for Summary Judgment , 215 MOTION for Summary Judgment : TELEPHONIC HEARING Motion Hearing set for 10/4/2021 11:00 AM before Honorable Margaret B Seymour. NOTE: This hearing will be held by telephonic conference. Instructions for joining the telephonic conference will be distributed at a later date. (hcor, ) (Entered: 09/29/2021) |
| 10/04/2021 | 239 | **Minute Entry. Proceedings held before Honorable Margaret B Seymour: Telephonic Oral Argument held on 10/4/2021 re 216 MOTION for Summary Judgment filed by SP, DS, Niya Kenny, Taurean Nesmith, Carolina Youth Action Project, 215 MOTION for Summary Judgment filed by Alan Wilson. All parties were represented on the call. The Court takes motions under advisement. Court Reporter Michele Becker. (hcor, )** (Entered: 10/04/2021) |
| 10/08/2021 | 240 | **OPINION AND ORDER denying 215 Motion for Summary Judgment; granting 216 Motion for Summary Judgment. Plaintiffs Kenny and Nesmith are dismissed. The State's enforcement of S.C. Code Ann. § 16-17-530 is permanently enjoined as to elementary and secondary school students in SC while attending school and the State is permanently enjoined from retaining the records of the Disorderly Conduct Law Sub-Class and the Disturbing Schools Law Sub-Class relating to being taken into custody, charges filed, adjudication, or disposition under S.C. Code Ann. § 16-17-420, prior to May 17, 2018, and under S.C. Code Ann. § 16-17-530, except as would be permissible under S.C. Code Ann. § 17-1-40. Signed by Honorable Margaret B Seymour on 10/8/2021.(mdea)** (Main Document 240 replaced on 10/8/2021) (mdea, ). (Entered: 10/08/2021) |
| 10/08/2021 | 242 | **ORDER: On or before close of business Monday, October 11, 2021, the parties shall file a notice as to why the court should not dismiss the Law Enforcement Defendants and thereby close the case. Signed by Honorable Margaret B Seymour on 10/8/2021. (iyou, )** (Entered: 10/08/2021) |
| 10/12/2021 | 243 | REPLY by Lance Crowe, Michael D Hanshaw, A Keith Morton, M Bryan Turner, Alan Wilson to 242 Order, . (Smith, James) (Entered: 10/12/2021) |
| 10/12/2021 | 244 | NOTICE OF APPEAL as to 185 Memorandum,Opinion & Order, 201 Memorandum,Opinion & Order,, 243 Reply, 240 Order on Motion for Summary Judgment,,,,,,, 156 Order on Motion to Amend/Correct by Alan Wilson. - Filing fee $ 505, receipt number 0420-10120600. The Docketing Statement form, Transcript Order |

| | | form and CJA 24 form may be obtained from the Fourth Circuit website at www.ca4.uscourts.gov (Smith, James) (Entered: 10/12/2021) |
|---|---|---|
| 10/12/2021 | [245](#) | REPLY by Carolina Youth Action Project, DS, Taurean Nesmith, SP to 242 Order, . (Chaney, David) (Entered: 10/12/2021) |
| 10/13/2021 | 246 | **TEXT ORDER: In accordance with the Consent Order, ECF No. 131, and with reference to the Notices Regarding Dismissal, ECF Nos. 243, 245, the stay imposed on the Law Enforcement Defendants is hereby lifted and those Defendants are dismissed. Entered at the Direction of The Honorable Margaret B Seymour on 10/13/2021. (vdru, )** (Entered: 10/13/2021) |
| 10/13/2021 | [248](#) | SUMMARY JUDGMENT: Defendants' Motion for Summary Judgment is denied and Plaintiffs' Motion for Summary Judgment is granted. It is further ordered that the State's enforcement of S.C. Code Ann. § 16-17-530 is permanently enjoined as to elementary and secondary school students in SC while attending school and the State is permanently enjoined from retaining the records of the Disorderly Conduct Law Sub-Class and the Disturbing Schools Law Sub-Class relating to being taken into custody, charges filed, adjudication, or disposition under S.C. Code Ann. § 16-17-420, prior to May 17, 2018, and under S.C. Code Ann. § 16-17-530, except as would be permissible under S.C. Code Ann. § 17-1-40. (vdru, ) (Entered: 10/13/2021) |
| 10/13/2021 | [249](#) | Transmittal Sheet for Notice of Appeal to USCA re [244](#) Notice of Appeal, The Clerk's Office hereby certifies the record and the docket sheet available through ECF to be the certified list in lieu of the record and/or the certified copy of the docket entries. (vdru, ) (Entered: 10/13/2021) |
| 10/19/2021 | [250](#) | AMENDED NOTICE OF APPEAL as to [248](#) Summary Judgment,, [185](#) Memorandum,Opinion & Order, [201](#) Memorandum,Opinion & Order,, [240](#) Order on Motion for Summary Judgment,,,,,,, [156](#) Order on Motion to Amend/Correct by Alan Wilson. - Filing fee $ 505, receipt number 0420-10134229. The Docketing Statement form, Transcript Order form and CJA 24 form may be obtained from the Fourth Circuit website at www.ca4.uscourts.gov (Smith, James) Modified on 10/20/2021 to edit docket text. (vdru, ). (Entered: 10/19/2021) |
| 10/20/2021 | [252](#) | MOTION to Stay re [248](#) Summary Judgment,, [240](#) Order on Motion for Summary Judgment,,,,,,, by Alan Wilson. Response to Motion due by 11/3/2021. Add an additional 3 days only if served by mail or otherwise allowed under Fed. R. Civ. P. 6 or Fed. R. Crim. P. 45. No proposed order.(Smith, James) Modified on 10/28/2021 to reference [255](#) Supplement. (vdru, ). (Entered: 10/20/2021) |
| 10/21/2021 | [253](#) | Consent MOTION to Continue *Time for Petitioning for Fees* by Carolina Youth Action Project, DS, Niya Kenny, Taurean Nesmith, SP. Response to Motion due by 11/4/2021. Add an additional 3 days only if served by mail or otherwise allowed under Fed. R. Civ. P. 6 or Fed. R. Crim. P. 45. No proposed order.(Chaney, David) (Entered: 10/21/2021) |
| 10/27/2021 | [255](#) | SUPPLEMENT by Alan Wilson to [252](#) MOTION to Stay re [248](#) Summary Judgment,, [240](#) Order on Motion for Summary Judgment,,,,,,, . (Attachments: # [1](#) Affidavit Affidavit of Crider of DJJ and Table)(Smith, James) (Attachment 1 replaced on 10/28/2021) (vdru, ). Modified on 10/28/2021 to replace attachment with modified version provided by the filer. (vdru, ). (Entered: 10/27/2021) |
| 10/28/2021 | 256 | **TEXT ORDER granting [253](#) Motion to Continue: It is ordered that the time to file a petition for attorneys fees is deferred until 14 days after a final decision of the Court of Appeals in this matter. Entered at the Direction of The Honorable Margaret B Seymour on 10/28/2021.(vdru, )** (Entered: 10/28/2021) |
| 11/03/2021 | [257](#) | RESPONSE in Opposition re [252](#) MOTION to Stay re [248](#) Summary Judgment,, [240](#) |

| | | |
|---|---|---|
| | | Order on Motion for Summary Judgment,,,,,,, Response filed by Carolina Youth Action Project, DS, SP.Reply to Response to Motion due by 11/10/2021 Add an additional 3 days only if served by mail or otherwise allowed under Fed. R. Civ. P. 6. (Chaney, David) (Entered: 11/03/2021) |
| 11/10/2021 | 258 | REPLY to Response to Motion re 252 MOTION to Stay re 248 Summary Judgment,, 240 Order on Motion for Summary Judgment,,,,,,, Response filed by Alan Wilson. (Smith, James) (Entered: 11/10/2021) |
| 11/17/2021 | 259 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of Proceedings. Motion Hearing for date of 12/4/2019, before Judge Margaret B. Seymour, re 250 Notice of Appeal, 244 Notice of Appeal, Court Reporter/Transcriber Karen E. Martin, Telephone number/e-mail Karen_E_Martin@scd.uscourts.gov. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Parties have 7 calendar days from the filing of the transcript to file with the court a Notice of Intent to Request Redaction. *Does this satisfy all appellate orders for this reporter? Y*<br><br>Redaction Request due 12/8/2021. Redacted Transcript Deadline set for 12/20/2021. Release of Transcript Restriction set for 2/15/2022. (kmartin, ) (Entered: 11/17/2021) |
| 12/01/2021 | 260 | **ORDER granting in part and denying in part 252 Motion to Stay of the opinion and order pending Defendant's appeal of the court's decision: It is ordered that the permanent injunction prohibiting the State from retaining the records of the Disorderly Conduct Law Sub-Class and the Disturbing Schools Law Sub-Class, relating to being taken into custody, charges filed, adjudication, or disposition under S.C. Code Ann. § 16-17-420, prior to May 17, 2018, and under S.C. Code Ann. § 16-17-530, except as would be permissible following expungement under S.C. Code Ann. § 17-1-40, is Stayed, subject to the condition regarding sealing records as discussed herein, pending the outcome of Defendant's appeal of the courts opinion and order to the Fourth Circuit. It is further Ordered that the Motion to Stay is otherwise Denied. Signed by Honorable Margaret B Seymour on 12/1/2021.**(vdru, ) (Entered: 12/01/2021) |
| 01/04/2022 | 261 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of Proceedings. Motion for Summary Judgment for dates of October 4, 2021, before Judge Margaret B. Seymour, re 95 Notice of Appeal, 250 Notice of Appeal,, 244 Notice of Appeal, Court Reporter/Transcriber Michele E. Becker, Telephone number/e-mail MicheleBecker.CRR@gmail.com. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Parties have 7 calendar days from the filing of the transcript to file with the court a Notice of Intent to Request Redaction. *Does this satisfy all appellate orders for this reporter? Y*<br><br>Redaction Request due 1/25/2022. Redacted Transcript Deadline set for 2/4/2022. Release of Transcript Restriction set for 4/4/2022. (tjohnson, ) (Entered: 01/04/2022) |

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 02/04/2022 10:23:02 | | |
| PACER Login: | A_Wilson17 | Client Code: |
| | | **JA32** |

| Description: | Docket Report | Search Criteria: | 2:16-cv-02794-MBS |
|---|---|---|---|
| Billable Pages: | 30 | Cost: | 3.00 |

**JA33**

# THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH CAROLINA
## CHARLESTON DIVISION

| | | |
|---|---|---|
| NIYA KENNY; TAUREAN NESMITH; GIRLS ROCK CHARLESTON, INC.; D.S., by and through her next of kin Juanita Ford, and S.P., by and through her next of kin Melissa Downs, on behalf of themselves and all others similarly situated,<br><br>        Plaintiffs<br><br>        v.<br><br>ALAN WILSON in his official capacity as Attorney General of South Carolina; J.ALTON CANNON, JR. in his official capacity as the Sheriff of Charleston County, SC; GREGORY G. MULLEN in his official capacity as the Chief of the Police Department of the City of Charleston, SC; EDDIE DRIGGERS, JR in his official capacity as the Chief of the Police Department of the City of North Charleston, SC; CARL RITCHIE in his official capacity as the Chief of the Police Department of the City of Mt. Pleasant, SC; LEON LOTT in his official capacity as the Sheriff of Richland County, SC; W.H.HOLBROOK in his official capacity as the Chief of the Police Department of the City of Columbia, SC; STEVE LOFTIS in his official capacity as the Sheriff of Greenville County, SC; KEN MILLER in his official capacity as the Chief of the Police Department of the City of Greenville, SC; LANCE CROWE in his official capacity as the Chief of the Police Department of the City of Travelers Rest, SC; STEVE MOORE in his official capacity as Interim Chief of the Police Department of the City of Simpsonville, SC; M.BRYAN TURNER in his official capacity as the Chief of the Police Department of the City of Mauldin, SC; DAN REYNOLDS in his official capacity as the Chief of the Police Department of the City of Greer, SC; A. KEITH MORTON in his official capacity as the Chief of the Police Department of the City of Fountain Inn, SC; on behalf of themselves and others similarly situated,<br><br>        Defendants. | | Civil Action No.:   2:16-cv-2794-CWH<br><br><br><u>COMPLAINT</u> |

## PRELIMINARY STATEMENT

1. Plaintiffs challenge as unconstitutional S.C. Code § 16-17-420, commonly referred to as the "Disturbing Schools" statute, which sweeps within the purview of criminal law and the court system a broad swath of adolescent behavior. The Disturbing Schools statute violates fundamental concepts of fairness and the most basic tenets of due process.

2. By broadly labeling as criminal any "interference," or "disturbance" of a school, any act of "loitering" and any "obnoxious" action, the Disturbing Schools statute creates an impossible standard for school children to follow and for police to enforce with consistency and fairness. The Disturbing Schools statute also chills the ability of students to speak out against abuses and to participate in conversations about policing of their own classrooms and campuses.

3. South Carolina Code § 16-17-420 was enacted almost 100 years ago and there is no indication that it was intended to apply, or was applied at the time, to students rightfully attending their own school. More recently, however, the law's broad terms have been invoked to draw thousands of adolescents into the juvenile and criminal justice systems. The Disturbing School charge is consistently among the leading sources of referrals to the South Carolina Department of Juvenile Justice.

4. While the Disturbing Schools statute impacts hundreds of adolescents each year, some students in South Carolina feel the burdens of the law more than others. Statewide in 2014-2015, Black students were nearly four times as likely to be referred for charges of Disturbing Schools as were their white classmates. In Charleston County, young people were more likely to be referred to the juvenile justice system

1

**JA35**

for Disturbing Schools than for any other reason and Black students were more than six times as likely as their white peers to be referred for this offense.

5. When applied to school students, the Disorderly Conduct statute, which prohibits conducting oneself "in a disorderly or boisterous manner," is similarly vague. S.C. Code §16-17-530. It fails to provide notice to students or guidance to those charged with determining which adolescent behavior falls under the terms of the law. Adolescents are also commonly referred to the Department of Juvenile Justice for Disorderly Conduct.

6. The types of incidents that lead to Disturbing Schools and Disorderly Conduct charges cannot be distinguished by any objective standard from the types of behaviors schools address regularly without resort to the criminal justice system. These include minor school infractions like cursing, refusing to follow directions, and involvement in a physical altercation that did not result in significant injuries and where the student was not the initiator. Students as young as seven have been charged with Disturbing Schools. At times, students have been arrested when they react to disruptions caused by those who are supposed to protect them.

7. School Codes of Conduct from across the state reflect the inability to distinguish criminal Disturbing Schools or Disorderly Conduct from minor school infractions. According to Codes of Conduct, students may experience consequences ranging from a verbal warning to criminal charges for the same behaviors.

8. The resort to charging students criminally occurs despite the substantial role played by school employees in shaping student behavior and the classroom environment.

**JA36**

Research demonstrates that teachers and schools can employ a range of effective approaches to prevent disruption, and to de-escalate disruption and conflicts when they do occur. In contrast, research also shows that educators who employ punitive approaches create negative experiences for all students and may escalate disruptions.

9. Referral to law enforcement during school greatly diminishes the likelihood that a student will graduate. Young people who are charged with crimes may feel stigma and fear, making it more difficult to engage with school. They may also face disciplinary consequences that can include years in alternative settings that fail to offer complete access to course work necessary to graduate.

10. Plaintiffs are individuals and a nonprofit organization whose members are directly impacted by and face ongoing risk of arrest or referral under S.C. Code § 16-17-420. Plaintiffs seek a declaratory judgment that S.C. Code § 16-17-420 violates their constitutional right to due process, as well as an injunction preliminarily and permanently enjoining enforcement of and reliance upon S.C. Code § 16-17-420 by Defendants.

11. Plaintiffs D.S. and S.P. are individuals who face an ongoing risk of arrest or referral under S.C. Code § 16-17-530 while attending school. Plaintiffs seek declaratory judgment that S.C. Code § 16-17-530 violates their constitutional right to due process when applied to elementary and secondary school students, as well as an injunction preliminarily and permanently enjoining enforcement of and reliance upon S.C. Code § 16-17-530 as applied to students by Defendants.

2:16-cv-02794-CWH    Date Filed 08/11/16    Entry Number 1    Page 5 of 29

## JURISDICTION AND VENUE

12. This action arises under 42 U.S.C. § 1983 to redress the deprivation under color of state law of rights secured by the United States Constitution.

13. This Court has original jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3)-(4).

14. Venue is proper in this Court under 28 U.S.C. § 1391(b)(1) and (2).

15. This Court has the authority to enter a declaratory judgment and to provide preliminary and permanent injunctive relief pursuant to Rules 57 and 65 f the Federal Rules of Civil Procedure, and 28 U.S.C. §§ 2201 and 2202.

## PARTIES

### A. Plaintiffs

16. Plaintiff Niya Kenny ("Plaintiff Kenny" or "Ms. Kenny") is a nineteen year-old African-American female who resides in Richland County, South Carolina. Ms. Kenny obtained her G.E.D. Diploma from Richland County School District Two in June, 2016.

17. Ms. Kenny was arrested and charged under S.C. Code § 16-17-420 while a student at Spring Valley High School in Richland School District Two. Ms. Kenny fears future arrest and prosecution under the Disturbing Schools statute if, while on or around the grounds of a school, her actions are interpreted to fall under any of the broad terms of the statute.

4

**JA38**

2:16-cv-02794-CWH    Date Filed 08/11/16    Entry Number 1    Page 6 of 29

18. Plaintiff D.S. is a seventeen year-old African-American female who resides in Charleston, South Carolina. She brings this case through her grandmother and next of kin, Juanita Ford. D.S. was enrolled at Stall High School in the Charleston County School District during the 2015-2016 school year. D.S. plans to enroll at Summerville High School in Dorchester County School District Two in August 2016. D.S. experienced lead poisoning as a young child and has an Individualized Education Plan.

19. D.S. was charged under S.C. Code § 16-17-420 while attending school. D.S. fears being charged under the Disturbing Schools or Disorderly Conduct statutes in the future if, while on or around the grounds of a school, her actions are interpreted to fall under any of the broad terms of the statutes.

20. Plaintiff S.P. is a fifteen year-old Caucasian female who resides in Travelers Rest, South Carolina. She brings this case through her mother and next of kin, Melissa Downs. S.P. was enrolled at Travelers Rest High School in the Greenville County School District during the 2015-2016 school year. She plans to continue school at Travelers Rest High School in the 2016-2015 school year. S.P. has been diagnosed with mood and conduct disabilities. She has requested special education services to address her disability and has had a behavior intervention plan.

21. S.P. was referred under S.C. Code § 16-17-0530 (disorderly conduct) while attending school. S.P. fears being charged under the Disturbing Schools or Disorderly Conduct statutes in the future if, while on or around the grounds of a school, her actions are interpreted to fall under any of the broad terms of the statutes.

JA39

22. Plaintiff Girls Rock, Charleston ("Girls Rock") is a non-profit organization with its principal office in Charleston, SC. Girls Rock provides mentorship, music and arts education, and leadership development to young people in Charleston, South Carolina. Girls Rock operates an afterschool program serving at-risk youth and youth who have been involved in the justice system. Girls Rock is guided by core principles that include challenging criminalization and promoting collective accountability for behavior.

23. Girls Rock sues on behalf of its members, students who risk arrest or referral under S.C. Code § 16-17-420 or S.C. Code § 16-17-530 while attending school. Girls Rock also sues on its own behalf. Girls Rock is substantially burdened in its mission by the continued practice of charging students under S.C. Code § 16-17-420.

24. Plaintiff Taurean Nesmith ("Plaintiff Nesmith" or Mr. Nesmith") is a twenty-one year-old African American male who resides permanently in Kingstree, South Carolina. Mr. Nesmith is a student at Benedict College in Columbia, South Carolina.

25. Mr. Nesmith was arrested and charged with Disturbing Schools under S.C. Code § 16-17-420 at his college-owned apartment building. Mr. Nesmith fears future arrest and prosecution under the Disturbing Schools statute in the future if, while on or around the grounds of a school, his actions are interpreted to fall under any of the broad terms of the statute.

**B. Defendants**

26. Defendant Alan Wilson ("Defendant Wilson" or "Mr. Wilson") is sued in his official capacity as the Attorney General of South Carolina. Pursuant to the South Carolina

Constitution, it is Defendant Wilson's duty in his capacity as Attorney General of

South Carolina to assist and represent the Governor in the faithful execution of the

laws. S.C. Const. art. IV § 15. Further, pursuant to South Carolina law, "[h]e shall

appear for the State in the Supreme Court and the court of appeals in the trial and

argument of all causes, criminal and civil, in which the State is a party or interested,

and in these causes in any other court or tribunal when required by the Governor or

either branch of the General Assembly." S.C. Code § 1-7-40, and "[i]n all cases

wherein the right of the State may be involved, the persons claiming under the State

shall call on the Attorney General . . . to defend the right of the State." S.C. Code § 1-

7-710. Mr. Wilson is a person within the meaning of 42 U.S.C. § 1983 and acts under

color of state law in all circumstances relevant to this complaint.

Charleston Defendants

27. Defendant J. Alton Cannon, Jr. ("Defendant Cannon" or "Mr. Cannon") is sued in his

official capacity as the Sheriff of Charleston County, S.C. The jurisdiction of the

Charleston County Sheriff's Office includes schools within Charleston County.

28. Defendant Gregory G. Mullen ("Defendant Mullen" or "Mr. Mullen") is sued in his

official capacity as the Chief of the City of Charleston, S.C. Police Department. The

jurisdiction of the Charleston Police Department includes schools within Charleston

County.

29. Defendant Eddie Driggers, Jr. ("Defendant Driggers" or "Mr. Driggers") is sued in

his official capacity as Chief of the North Charleston, S.C. Police Department. The

jurisdiction of the North Charleston Police Department includes schools within

Charleston County.

30. Defendant Carl Ritchie ("Defendant Ritchie" or "Mr. Ritchie") is sued in his official capacity as Chief of the Mount Pleasant, S.C. Police Department. The jurisdiction of the Mount Pleasant Police Department includes schools within Charleston County.

Columbia Defendants

31. Defendant Leon Lott ("Defendant Lott" or "Mr. Lott") is sued in his official capacity as the Sheriff of Richland County, S.C. The jurisdiction of the Richland County Sheriff's Department includes schools within Richland County.

32. Defendant W.H. Holbrook ("Defendant Holbrook" or "Mr. Holbrook") is sued in his official capacity as Chief of the Columbia, S.C. Police Department. The jurisdiction of the Columbia Police Department includes schools within Richland County.

Greenville Defendants

33. Defendant Steve Loftis ("Defendant Loftis" or "Mr. Loftis") is sued in his official capacity as the Sheriff of Greenville County, S.C. The jurisdiction of the Greenville County Sheriff's Department includes schools within Greenville County.

34. Defendant Ken Miller ("Defendant Miller" or "Mr. Miller") is sued in his official capacity as Chief of the City of Greenville, S.C. Police Department. The jurisdiction of the Greenville Police Department includes schools within Greenville County.

35. Defendant Lance Crowe ("Defendant Crowe" or "Mr. Crowe") is sued in his official capacity as Chief of the Travelers Rest, S.C. Police Department. The jurisdiction of the Travelers Rest Police Department includes schools within Greenville County.

36. Defendant Steve Moore ("Defendant Moore" or "Mr. Moore") is sued in his official capacity as Interim Chief of the Simpsonville, S.C. Police Department. The

8

jurisdiction of the Simpsonville Police Department includes schools within Greenville County.

37. Defendant M. Bryan Turner ("Defendant Turner" or "Mr. Turner") is sued in his official capacity as Chief of the Mauldin, S.C. Police Department. The jurisdiction of the Mauldin Police Department includes schools within Greenville County.

38. Defendant Dan Reynolds ("Defendant Reynolds" or "Mr. Reynolds") is sued in his official capacity as Chief of the City of Greer, S.C. Police Department. The jurisdiction of the Greer Police Department includes schools within Greenville County.

39. Defendant A. Keith Morton ("Defendant Morton" or "Mr. Morton") is sued in his official capacity as Chief of the Fountain Inn, S.C. Police Department. The jurisdiction of the Fountain Inn Police Department includes schools within Greenville County.

40. Defendants, through their respective duties and obligations, are responsible for enforcing S.C. Code § 16-17-420 and S.C. Code § 16-17-530. Each Defendant, and those subject to their direction, supervision, and control, has or intentionally will perform, participate in, aide and/or abet in some manner the acts alleged in this complaint, has or will proximately cause the harm alleged herein, and has or will continue to injure Plaintiffs irreparably if not enjoined. Accordingly, the relief requested herein is sought against each Defendant, as well as all persons under their supervision, direction, or control, including but not limited to their officers, employees, and agents.

JA43

## STATUTORY FRAMEWORK

41. South Carolina Code § 16-17-420 provides:

It shall be unlawful:
(1) for any person wilfully or unnecessarily (a) to interfere with or to disturb in any way or in any place the students or teachers of any school or college in this State, (b) to loiter about such school or college premises or (c) to act in an obnoxious manner thereon; or

(2) for any person to (a) enter upon any such school or college premises or (b) loiter around the premises, except on business, without the permission of the principal or president in charge.

S.C. Code § 16-17-420(A).

42. A violation of S.C. Code § 16-17-420 is punishable by fine of not more than $1,000 or ninety days imprisonment. S.C. Code § 16-17-420(B).

43. Section 16-17-420, now commonly referred to as the "Disturbing Schools" statute, was enacted in 1919 and as originally drafted, applied to "any school or college in the State attended by women or girls." 1919 S.C. Acts 239 (Appendix 1).

44. The Disturbing Schools statute was amended in 1968 to apply to "any school." 1968 S.C. Acts 2308 (Appendix 2). It was subsequently applied to arrest protestors on a college campus. *See Bistrick v. Univ. of S. Carolina*, 324 F. Supp. 942 (S.C. 1971); *Herman v. Univ. of S. Carolina*, 341 F. Supp. 226, 229 (D.S.C. 1971), *aff'd*, 457 F.2d 902 (4th Cir. 1972). In 1972, the statute was amended to increase the applicable penalties. 1972 S.C. Acts 1426 (Appendix 3).

45. A Westlaw search generated cases referencing juveniles charged under § 16-17-420 beginning in 1989. *See Matter of Johnny J.*, 387 S.E.2d 251, 252 (S.C. 1989)(indefinite commitment for probation violation and status offenses was

10

**JA44**

inappropriate); *In Interest of Doe*, 458 S.E.2d 556, 560 (Ct. App. 1995)(conviction for

Disturbing Schools upheld; S.C. Code § 20-7-2170 precluded residential evaluation

for children ten years old and younger); *In re Amir X.S.*, 639 S.E.2d 144 (S.C.

2006)(statute not overbroad or vague as applied); *In re Joelle T.*, No. 2010-UP-547,

2010 WL 10088227, at *1 (S.C. Ct. App. Dec. 16, 2010) (Appendix 4).

46. In 2010, the law was amended to remove mandatory minimum sentences and fines

and to expressly vest jurisdiction in summary courts or for juveniles, in family court.

2010 South Carolina Laws Act 273 (S.B. 1154).

47. Section 16-17-420 contains no intent requirement before imposing criminal penalties.

48. The terms "interfere," "disturb," "loiter," and "act in an obnoxious manner" are not

further defined by the statute.

49. South Carolina Code § 16-17-530 provides:

> Any person who shall (a) be found on any highway or at any public place
> or public gathering in a grossly intoxicated condition or otherwise
> conducting himself in a disorderly or boisterous manner, (b) use obscene
> or profane language on any highway or at any public place or gathering or
> in hearing distance of any schoolhouse or church or (c) while under the
> influence or feigning to be under the influence of intoxicating liquor,
> without just cause or excuse, discharge any gun, pistol or other firearm
> while upon or within fifty yards of any public road or highway, except
> upon his own premises, shall be deemed guilty of a misdemeanor and
> upon conviction shall be fined not more than one hundred dollars or be
> imprisoned for not more than thirty days.

S.C. Code § 16-17-530.

50. The terms "disorderly" and "boisterous" are not further defined by the statute.

51. A series of South Carolina Attorney General's Opinions discuss the reach of both the Disturbing Schools and Disorderly Conduct statutes to address student conduct.

52. Attorney General's Opinions conclude that the Disturbing Schools statute and the Disorderly Conduct statute may both be applied to prohibit "[u]se of foul or offensive language toward a principal, teacher, or police officer," or "[u]se of obscene or profane language near a 'schoolhouse.'" 1994 S.C. Op. Att'y Gen. 25, 1994 WL 199757 (Appendix 5).

53. The Attorney General's Office also concludes that "[f]ailure by a student . . . to leave a school campus or school bus, when requested to do so," *id.*, "fighting," *id.*, and becoming "uncooperative and disruptive," each may constitute Disturbing Schools. Letter from Robert D. Cook, S.C. Assistant Att'y Gen., to Hon. John W. Holcombe, Sheriff, Chester Co., 1999 WL 626642 (July 12, 1999) (Appendix 6).

54. Moreover, Attorney General's Opinions observe that "[n]o express limitations on the time of applicability of [§16-17-420's] prohibition are set forth," 1990 S.C. Op. Att'y Gen. 61, 1990 WL 482448 (Appendix 7), and reason that the law might "apply to any part of the campus regardless of whether students or other students [sic] or faculty were present." 1994 S.C. Op. Att'y Gen. 25.

## FACTUAL ALLEGATIONS

### A. The Impact of Educator Practices on Student Behavior

55. Normal adolescent development includes the development of behavioral and social skills.

56. Addressing student behavior is a regular part of school administration.

57. Research indicates that the ways in which schools and teachers approach student behavior and the school climate can shape student behavior for better or worse.

58. There are many techniques shown to reduce incidences of disruption and discipline when employed by educators. Evidence based practices exist to respond to a continuum of student needs, and effective approaches exist including for students requiring higher levels of support.

59. In contrast, schools and classrooms that are characterized by a punitive approach with high levels of discipline and fewer positive supports are experienced negatively by students and teachers.

60. Some educator practices and responses can escalate student misbehavior and conflict.

61. Black students and students with disabilities are disproportionately likely to be subjected to exclusionary discipline such as out-of-school suspension as well as referral to law enforcement and arrest at school.

62. Research does not suggest that racial disparities in discipline can be explained by differences in behavior across students of different races.

13

**JA47**

63. Disparities are most prevalent in categories of discipline that require subjective determination of whether the rule was violated, such as offenses of "disruption" or "excessive noise."

64. Students who experience punitive discipline miss valuable educational time and may enter a cycle of negative consequences.

65. Students are frequently disciplined more harshly when their behavior is characterized as criminal, and their educational opportunities are diminished through expulsion, suspension, placement in an alternative program, or a combination of these consequences.

66. Disciplinary consequences can have lasting impact on a student's ability to access educational opportunities. For example, students may be placed into alternative programs without significant support services, providing only computer based instruction, and with no fixed end period, from which they must instead earn their way out. These programs may not even provide the course work required to obtain a high school diploma, placing the prospect of educational reentry further and further out of reach.

67. Students may also experience stigma and increased negative feelings about school which may impact their ability to reengage with school.

68. Students who experience referral to law enforcement have significantly reduced likelihood of graduating from high school, even after a first referral.

69. Without a high school education, a young person's future prospects are also dimmed.

14

**JA48**

**B. Enforcement of S.C. Code § 16-17-420 and § 16-17-530 Across South Carolina**

70. Between the 2010-2011 school year and March, 2016, over 9,500 young people in South Carolina were referred to the Department of Juvenile Justice on charges of Disturbing Schools.

71. This number provides only a partial picture of the law's impact. Students 17 and older are charged and prosecuted as adults.

72. Students as young as seven have been charged with Disturbing Schools.

73. Students have been charged with Disturbing Schools in every county in the state except for Chester County.

74. Disturbing Schools and Disorderly Conduct charges are consistently among the leading reasons that young people enter the juvenile justice system.

75. Although referrals for Disturbing Schools have decreased over time in some counties, Disturbing Schools charges have increased statewide from the 2012-2013 school year to the 2015-2016 school year.

76. Rates of racial disparity in referrals for Disturbing Schools have also increased. In the 2014-2015 school year, Black students statewide were nearly 4 times as likely as their white classmates to be charged with Disturbing Schools.

77. Substantial racial disparities in Disturbing Schools referrals exist in large and small counties and in counties that are more and less racially homogenous.

78. Across the state, there are wide discrepancies in how charges of Disturbing Schools are handled, including whether they will be dismissed, diverted, or prosecuted. In about twenty percent of cases in which DJJ recommended diversion, solicitor's offices moved forward with prosecution.

79. School Codes of Conduct from across South Carolina reflect the impossibility of attempting to distinguish criminal Disturbing Schools or Disorderly Conduct from behaviors that should be addressed through school responses, including responses as minimal as a verbal warning or a parent conference.

80. Infractions including "disruption," "behavior that significantly interrupts the learning environment," "fighting," "excessive noise," "boisterous play or pranks," and "profanity" have all been listed as behaviors that can be addressed through lesser school interventions. Yet the same behaviors may lead students to be charged with the crimes of Disturbing Schools or Disorderly Conduct.

81. The prior experiences of named Plaintiffs exemplify the arbitrary and discriminatory application of the Disturbing Schools and Disorderly Conduct statutes to charge or refer students.

82. Students have been arrested and charged with Disturbing Schools when expressing concern over police actions.

83. On October 26th, 2015, Niya Kenny was a student at Spring Valley High School when she was arrested under S.C. Code § 16-17-420. Ms. Kenny was in her math class. Students were instructed to work on their laptops on a practice math lesson. Ms.

16

**JA50**

Kenny was working on her lesson when she noticed her teacher whispering to a student a couple desks away. She thought that the teacher must have been helping the other student with her work until she saw him walk over to his desk and call for someone to escort the student from the class. Ms. Kenny wondered what the girl could have done wrong, because she had not noticed anything out of the ordinary.

84. Shortly thereafter, a School Resource Officer ("SRO"), a sworn police officer of the Richland County Sheriff's Office, known among students as "Officer Slam" entered the room. Ms. Kenny witnessed her classmate forcefully pulled from her desk by the SRO, dragged on the floor, and handcuffed. Deeply frightened by the officer's actions, Ms. Kenny attempted to document the incident and called out for someone to do something to stop the violent treatment of her classmate.

85. In response, Ms. Kenny was herself arrested. She was handcuffed in front of her classmates, berated by the police officer and the school administrator for voicing her concern and distress, held in an adult detention center for several hours, patted down, finger printed and photographed.

86. The police incident report described her offense as a crime of disorderly conduct and she was charged with Disturbing Schools.

87. Throughout her experience, Ms. Kenny was scared and humiliated. Although she would have liked to complete her senior year with friends and classmates, due to the humiliation and anxiety she experienced, Ms. Kenny did not feel that she could return to Spring Valley High School. She withdrew and entered a GED program.

17

88. Taurean Nesmith was arrested and charged with Disturbing Schools at his college-owned apartment building. A campus police officer who had repeatedly stopped and searched Mr. Nesmith and his friends was patrolling in the apartment complex parking lot as Mr. Nesmith and friends left the building and got into their cars. The officer approached Mr. Nesmith's friend and proceeded to ask him for his identification.

89. Mr. Nesmith complained to another friend that the officer was again stopping them because of their race. The Officer then turned his attention to Mr. Nesmith and asked for his identification. Mr. Nesmith asked why the officer needed to see his identification and continued to question the officer's actions. Other residents came out to their balconies to see what was happening.

90. Mr. Nesmith was eventually handcuffed and transported to a detention center where he remained overnight. He was charged with Disturbing Schools and Disorderly Conduct. His charges were later dropped.

91. In other instances, students have been charged with Disturbing Schools as the result of behaviors that could just as possibly have met with less severe school discipline or other interventions.

92. In Richland School District One, an eight-year-old African-American student was charged with Disturbing Schools and assault when, after being directed to leave class, the student attempted to slam the classroom door and the teacher's arm was caught.

93. In Charleston, an African American student was charged with Disturbing Schools and adjudicated delinquent after she and a group of other students were reported for taking photographs of themselves and other students in the girls' restroom. The student was referred to Girls Rock as a condition of her probation.

94. When K.B., a Latina student in Charleston, was thirteen years old, she was charged with Disturbing Schools and adjudicated delinquent after an incident that started with her late arrival to gym class. A School Resource Officer was called when K.B. began to loudly protest being made to leave the gym class and being followed to the "tardy sweep" room. The police officer physically restrained K.B., taking her to the ground and causing bruises, and placed her in handcuffs. She was searched before being released to her mother. The police incident report indicated that K.B. would be charged with Disorderly Conduct. She was subsequently charged with Disturbing Schools.

95. K.B. was sentenced to probation and referred to Girls Rock by her probation officer. K.B. took honors courses in middle school. When K.B. returned to her high school after being charged, she was placed in a program called "Twilight," through which she was provided no more than three hours of computer-based education per day, and which did not provide access to the courses necessary to obtain a high school diploma. Because K.B. was only permitted to be on campus during program hours, which were shorter than the normal school day, K.B. had to find her own transportation to school, which was a costly expense for K.B. and her mother.

JA53

96. K.B. and her mother may move to Texas soon. Although K.B. believes she will be able to return to her regular classes if she begins school in South Carolina, she believes that she will no longer be on track to graduate from high school.

97. D.D., an African American female who has struggled with homelessness, was charged with Disturbing Schools after an incident at her Charleston middle school. D.D. was sent out of class for talking. While she was seated on a bench outside of the classroom, another girl walked past her and began speaking to her. A School Resource Officer noticed her speaking to another student and she was detained, handcuffed, and charged with Disturbing Schools. She was placed on probation and became involved with Girls Rock.

98. When D.D. left the alternative middle school and started high school, she was placed in the Twilight program. Although she has remained in the Twilight program for two years, she continues to attend school and struggle to obtain an education. D.D. must find her own transportation to and from Twilight. Her family does not own a car and navigating the bus system was difficult. D.D. was detained for violating the terms of her probation after being picked up for truancy. While attending Twilight, D.D. also does not have access to the school lunch services that she would receive if attending school regularly.

99. S.P. was charged with Disorderly Conduct as a freshman in the Greenville County School District. S.P. has diagnosed disabilities that impact her mood and conduct and has seen a therapist for several years. S.P. had a Behavior Intervention Plan with her school. On the day that S.P. was charged with Disorderly Conduct, she had an

20

ongoing altercation with a girl who had been making fun of her throughout the morning. S.P. encountered the girl in the library and told her to stop talking about her before sitting down at a table with friends. The principal came to the library and told S.P. that she needed to leave with him. When she refused and complained that the girl who was making fun of her did not get in trouble, the principal told S.P. he was addressing her because she could be arrested for not leaving with him. An SRO came to the library and S.P. eventually agreed to leave the library with him. As she was leaving, S.P. cursed at the student who had been teasing her. Other students in the library also began to clap as S.P. was escorted out of the library, and S.P. cursed at them.

100.     Several months later, S.P. was charged with Disorderly Conduct for these actions.

101.     D.S., an African American student in Charleston, was charged with Disturbing Schools after becoming involved in a physical altercation which she did not initiate and in which she was the only person who sustained an injury, a lump on her head.

102.     Charged as adults, D.S., her friend, and the other two students involved in the altercation plead guilty to Disturbing Schools without legal representation. D.S. received a suspended sentence of a $400 fine or 20 days imprisonment conditioned on completion of a Pretrial Intervention program (PTI). D.S. subsequently learned that participation in PTI costs $300 or more, a cost that she could not afford. D.S. was rejected from the PTI program and spent many stressful weeks fearing that she would be sent to jail before she obtained a public defender who was able to reopen her case, which was eventually dismissed.

103.    Enforcement of the Disturbing Schools and Disorderly Conduct laws has also impacted Girls Rock as an organization. Recognizing that Disturbing Schools charges are a primary cause of youth involvement with the justice system, Girls Rock has taken up efforts to challenge the Disturbing Schools statute and bring awareness to the statute's negative impact on Charleston area young people. For example, Girls Rock teen leaders have engaged in an organizing apprenticeship in which they learned about school-based referrals to law enforcement and the Disturbing Schools law and spoke about these issues at public events, Girls Rock After School Program ("GRASP") participants performed a skit on the issue during the program's annual showcase, and created a short video about their advocacy.

104.    Girls Rock volunteers have also expended significant time and resources to address the impacts of Disturbing Schools adjudications through mentorship and support of young people in the GRASP program. Girls Rock volunteers also attended hearings with members. They present testimony to speak on a participant's character and her progress in GRASP. Volunteers have spent hours, at times across multiple days, to attend these hearings.

105.    Girls Rock is a primarily volunteer run organization with limited resources. The significant time and resources that Girls Rock staff members spend in mentoring and supporting young people who have been caught up in the justice system for charges of Disturbing Schools detracts from Girls Rock's ability to help other young people. In addition, time spent addressing ongoing court involvement and other collateral consequences of a Disturbing Schools adjudication detract from the positive mentorship activities that Girls Rock seeks to provide. Time spent at court hearings

would otherwise be spent developing programming and providing direct services to young people and attending to administrative business necessary to sustain the operations of the organization, such as writing grant proposals and conducting fundraising activities.

106.    The experiences of named Plaintiffs and other students in South Carolina reflect the Disturbing Schools and Disorderly Conduct statutes' broad reach and arbitrary and discriminatory enforcement. The terms of § 16-17-420 are vague and fail to provide notice to students and others expected to comply with its terms or to provide sufficient guidance to those charged with its enforcement, permitting arbitrary and discriminatory enforcement. When applied to elementary and secondary school students, the terms of §16-17-530 are equally vague.

107.    Plaintiffs have an objectively reasonable fear that they will be charged with Disturbing Schools under § 16-17-420 or Disorderly Conduct under § 16-17-530.

108.    Plaintiffs have no adequate remedy at law.

## CLASS ALLEGATIONS

### Plaintiff Class

109.    Plaintiffs D.S and S.P. bring this action on behalf of themselves and on behalf of all elementary and secondary public school students in South Carolina ("Plaintiff Class"), each of whom faces a risk of arrest or juvenile referral under the broad and overly vague terms of the challenged statutes.

23

110.    The class is so numerous that joinder of all members is impracticable. F. R. Civ.

P. 23(a)(1). Upon information and belief, there are over 750,000 elementary and

secondary public school students residing South Carolina. Each of these students

faces a risk of arrest or juvenile referral under the broad and overly vague terms of

S.C. Code § 16-17-420 or S.C. Code § 16-17-530.

111.    Plaintiffs' claims share common issues of law and fact, including but not limited

to whether each of the challenged statutes is overly vague and violates the Due

Process Clause of the Fourteenth Amendment. Fed. R. Civ. P. 23(a)(2).

112.    The claims or defenses of the named Plaintiffs are typical of the claims of

members of the Plaintiff Class. All Plaintiffs' claims arise from S.C. Code § 16-17-

420 and S.C. Code § 16-17-530 and are based on the same constitutional provisions

and arguments.

113.    The named Plaintiffs will fairly and adequately protect the interests of the

Plaintiff Class. The named Plaintiffs have no interest that is now or may be

potentially antagonistic to the interests of the class. Named Plaintiffs and the Plaintiff

Class both seek to enjoin enforcement of S.C. Code § 16-17-420 and S.C. Code § 16-

17-420 and to obtain a declaration that each law violates the due process guarantees

of the Fourteenth Amendment. The attorneys representing the Plaintiffs are

experienced civil rights attorneys and are considered able practitioners in federal

constitutional litigation.

114.    This action is also maintainable as a class action under Fed. R. Civ. P. 23(b)(2).

Class certification is also proper because S.C. Code § 16-17-420 and S.C. Code § 16-

17-530 each apply generally to the class, thereby making final injunctive and declaratory relief appropriate as to the whole.

### The Defendant Class

115.    Plaintiffs bring this action against named Defendants individually and, pursuant to Rules 23(a) and 23(b)(1) and (b)(3) of the Federal Rules of Civil Procedure, on behalf of all South Carolina law enforcement agencies who may enforce S.C. Code §§ 16-17-420 and 16-17-530 against Plaintiffs. The proposed Defendant Class consists of all South Carolina law enforcement agencies with authority to enforce S.C. Code § 16-17-420 and S.C. Code § 16-17-530 against Plaintiffs.

116.    The class is so numerous that joinder of all members is impracticable. Fed. R. Civ. P. 23(a)(1). Upon information and belief, there are more than 200 state and local law enforcement agencies in South Carolina, employing over 11,000 personnel. S.C. Code § 16-17-420 has been enforced against Plaintiffs in each county in South Carolina, apart from Chester County.

117.    There are questions of law and fact common to the members of the class, including but not limited to whether the challenged statutes are overly vague and violate the Due Process Clause of the Fourteenth Amendment. Fed. R. Civ. P. 23(a)(2).

118.    The claims against the named Defendants are typical of the claims against the Defendant Class, particularly because this is a facial challenge to the statute. All claims arise from S.C. Code § 16-17-420 and S.C. Code § 16-17-530 and are based on the same constitutional provisions and arguments. The Defenses expected to be

25

asserted by the named Defendants likewise are common to the members of the Defendant Class.

119.    This action is maintainable as a class action under Fed. R. Civ. P. 23(b)(1). Prosecution of separate actions against individuals would create the risk of inconsistent and varying adjudications.

120.    This action is also maintainable as a class action under Fed. R. Civ. P. 23(b)(2). Plaintiffs' claims to enjoin enforcement of S.C. Code § 16-17-420 and S.C. Code § 530 apply generally to the class, thereby making final injunctive and declaratory relief appropriate as to the whole.

## CLAIMS FOR RELIEF

### First Cause of Action

### S.C. Code § 16-17-420 Violates Due Process

### Under the United States Constitution, 42 U.S.C. § 1983

121.    Plaintiffs incorporate by reference all of the preceding paragraphs of this Complaint as though fully set forth herein.

122.    S.C. Code § 16-17-420's vague terms violate Plaintiffs' rights to due process guaranteed by the Fourteenth Amendment to the United States Constitution. U.S. Const. amend. XIV, § 1.

26

**JA60**

## Second Cause of Action

### S.C. Code § 16-17-530 Violates Due Process

### Under the United States Constitution as Applied to Elementary and

### Secondary Students, 42 U.S.C. § 1983

123.   Plaintiffs incorporate by reference all of the preceding paragraphs of this Complaint as though fully set forth herein.

124.   S.C. Code § 16-17-530's vague terms as applied to elementary and secondary school students violate Plaintiffs' rights to due process guaranteed by the Fourteenth Amendment to the United States Constitution. U.S. Const. amend. XIV, § 1.

### PRAYER FOR RELIEF

Wherefore, Plaintiffs respectfully request that the Court:

A. Issue a declaratory judgment that S.C. Code § 16-17-420 is unconstitutional;

B. Issue a declaratory judgment that S.C. Code § 16-17-530 is unconstitutional;

C. Issue injunctive relief:

    1. preliminarily and permanently enjoining enforcement by Defendants of S.C. Code § 16-17-420;

    2. preliminarily and permanently enjoining enforcement by Defendants of S.C. Code § 16-17-530 against elementary and secondary school students;

    3. enjoining Defendants from considering any Plaintiffs' records relating to being taken into custody, charges filed, adjudication, or disposition under S.C. Code § 16-17-420 or S.C. Code § 16-17-530, and from retaining such records except as would be permissible following expungement under S.C. Code § 17-1-40;

3. enjoining Defendants from considering any Plaintiffs' records related to arrest, booking record, associated bench warrants, mug shots, fingerprints, charges filed, proceedings, or sentencing under S.C. Code § 16-17-420 or S.C. Code § 16-17-530, and from retaining such records except as would be permissible following expungement under S.C. Code § 17-1-40;

D. Award Plaintiffs costs and attorneys' fees pursuant to 42 U.S.C. § 1988; and

E. Grant such other, further, and different relief as the Court deems just and proper.

F. The declaratory and injunctive relief requested in this action is sought against each Defendant; against each Defendant's officers, employees, and agents; and against all persons acting in active concert or participation with any Defendant, or under any Defendant's supervision, direction, or control.

Pursuant to Local Rule 3.01(B), undersigned counsel hereby endorses and certifies that this action is properly filed in the Charleston Division.

Dated: Aug. 11, 2016

Respectfully submitted,

s/Susan K. Dunn

SUSAN K. DUNN (Fed. Bar #647)          SARAH HINGER*
American Civil Liberties Union          GALEN SHERWIN*
Foundation of South Carolina            DENNIS D. PARKER*
P.O. Box 20998                          LENORA LAPIDUS*
Charleston, S.C. 29413-0998             American Civil Liberties Union Foundation
Tel: (843) 282-7953                     125 Broad Street 18th FL
Fax: (843) 720-1428                     New York, NY 10004
sdunn@aclusc.org                        shinger@aclu.org

                                        *Pro Hac Vice Motions to be submitted
                                        ATTORNEYS FOR PLAINTIFFS

JA62

# Acts and Joint Resolutions

*of the*

# GENERAL ASSEMBLY

*of the*

# State of South Carolina

———

## Passed at the Regular Session of 1919

———

Printed by Order of the General Assembly and Designed to Form a
Part of the Thirty-First Volume of the Statutes at Large,
Commencing With the Acts of the Regular
Session of 1919

———

THE R. L. BRYAN COMPANY
COLUMBIA, S. C.
1919

Appendix 1

OF SOUTH CAROLINA.                    239

§ 3. **When Effective.**—This Act shall go into effect March 15, 1919.

§ 4. **Inconsistent Acts Repealed.**—All Acts or parts of Acts inconsistent with this Act are hereby repealed.

Approved the 7th day of March, A. D. 1919.

------

### No. 156.

### AN ACT to Protect Schools and Colleges Attended by Women and Girls.

**Section 1. Disturbing Schools Attended by Girls or Women Unlawful.**—Be it enacted by the General Assembly of the State of South Carolina, That it shall be unlawful for any person wilfully or unnecessarily to interfere with or to disturb in any way or in any place the students or teachers of any school or college in this State attended by women or girls or to loiter about such school or college premises, or to act in an obnoxious manner thereon, or for any person to enter upon any such school or college premises, or loiter around the premises, except on business, without the permission of the principal or president in charge.

§ 2. **Violation of This Act a Misdemeanor—Penalty.**—Any person violating any of the provisions of Section 1 of this Act shall be guilty of a misdemeanor, and, on conviction thereof, shall pay a fine of not less than ten dollars nor more than one hundred dollars, or be imprisoned in the county jail for not less than ten days nor more than thirty days.

Approved the 7th day of March, A. D. 1919.

------

### No. 157.

### AN ACT to Establish a Bureau for the Registration and Employment of Teachers and to Make Provision Therefor.

**Section 1. Teachers' Employment Bureau Established.**—Be it enacted by the General Assembly of the State of South Carolina, A bureau for the registration and employment of teachers is hereby created.

Appendix 1

# Acts and Joint Resolutions

OF THE

## GENERAL ASSEMBLY

OF THE

# State of South Carolina

———

### REGULAR SESSION OF 1968

———

**Second Part**
of Fifty-fifth Volume of Statutes at Large

(The Acts and Joint Resolutions of 1967
Constituted the First Part)

———

PRINTED UNDER DIRECTION OF
HENRY L. LAKE
CODE COMMISSIONER

Appendix 2

the postmaster at the time of preliminary approval, and must be approved or modified by the postmaster within fifteen days.

Changes in existing property numbering systems for individual streets, subdivisions, municipalities, and water and sewer districts may be initiated by petition of seventy-five per cent of the property owners affected or by the governing body or postmaster or the Planning Commission. No property number will be changed by the Planning Commission until all affected property owners and the postmaster have been notified in writing concerning the proposed change. All involved persons shall be given fifteen days in which to communicate to the Planning Commission any suggestions, comments, or complaints concerning the proposed change."

**SECTION 3. Time effective.**—This act shall take effect upon approval by the Governor.

Approved the 28th day of February, 1968.

---

(R975, H1416)        **No. 943**

**An Act To Amend Section 16-551, Code of Laws of South Carolina, 1962, Relating To Disturbances At Schools Attended By Women Or Girls, So As To Include All Schools Within The Provisons Of The Section.**

Be it enacted by the General Assembly of the State of South Carolina:

**SECTION 1. Unlawful to disturb students or teachers.**—Subsection (1) of Section 16-551, Code of Laws of South Carolina, 1962, relating to disturbances at schools attended by women or girls, is amended to include all schools by striking "attended by women or girls" on line three so that, when so amended, subsection (1) shall read:

"(1) For any person wilfully or unnecessarily (a) to interfere with or to disturb in any way or in any place the students or teachers of any school or college in this State, (b) to loiter about such school or college premises or (c) to act in an obnoxious manner thereon; or".

**SECTION 2. Time effective.**—This act shall take effect upon approval by the Governor.

Approved the 2nd day of March, 1968.

Appendix 2

# Acts and Joint Resolutions

OF THE

# GENERAL ASSEMBLY

OF THE

# State of South Carolina

———————

## REGULAR SESSION OF 1972

———————

**Second Part**
of Fifty-Seventh Volume of Statutes at Large

(The Acts and Joint Resolutions of 1971
Constitute the First Part)

———————

PRINTED UNDER DIRECTION OF
HENRY L. LAKE
CODE COMMISSIONER

Appendix 3

commodations, included within subsection (a) or any single family residence the occupants of which rent, lease, or furnish for compensation not more than one room therein.

(c) Nothing in this section shall require any person renting, leasing, or providing for compensation real property to modify his property in any way or provide a higher degree of care for a blind person, visually handicapped person, or other physically disabled person than for a person who is not physically disabled.

(d) Every totally or partially blind person who has a guide dog, or who obtains a guide dog, shall be entitled to full and equal access to all housing accommodations provided for in this section, and he shall not be required to pay extra compensation for such guide dog but shall be liable for any damage done to the premises by such a guide dog.

**SECTION 8. Time effective.**—This act shall take effect upon approval by the Governor.

Approved the 23rd day of June, 1972.

————————

(R1647, H3094)                    No. 1426

**An Act To Amend Section 16-551, Code Of Laws Of South Carolina, 1962, As Amended, Relating To School Disturbances, So As To Increase The Penalty.**

Be it enacted by the General Assembly of the State of South Carolina:

**SECTION 1. School disturbances—penalties.**—Section 16-551 of the 1962 Code, as amended by Act No. 943 of 1968, is further amended to read as follows:

"Section 16-551. It shall be unlawful:

(1) For any person wilfully or unnecessarily (a) to interfere with or to disturb in any way or in any place the students or teachers of any school or college in this State, (b) to loiter about such school or college premises or (c) to act in an obnoxious manner thereon; or

(2) For any person to (a) enter upon any such school or college premises or (b) loiter around the premises, except on business, without the permission of the principal or president in charge.

Any person violating any of the provisions of this section shall be guilty of a misdemeanor and, on conviction thereof, shall pay a fine

Appendix 3

USCA4 Appeal: 21-2166    Doc: 18    Filed: 02/11/2022    Pg: 74 of 353

of not less than one hundred dollars nor more than one thousand dollars or be imprisoned in the county jail for not less than thirty days nor more than ninety days."

**SECTION 2.  Time effective.**—This act shall take effect upon approval by the Governor.

Approved the 23rd day of June, 1972.

————————

(R1648, H3099)                No. 1427

An Act To Amend Section 56-1705, Code Of Laws Of South Carolina, 1962, Relating To The License Fee For Nursing Home Administrators, So As To Eliminate An Obsolete Date Reference.

Be it enacted by the General Assembly of the State of South Carolina:

**SECTION 1.  License fee.**—Section 56-1705 of the 1962 Code, added by Section 8, Part II of Act 984 of 1970, is amended by striking the section and inserting:

"Section 56-1705.  Each person licensed as a nursing home administrator shall be required to pay a license fee in an amount to be fixed by the Board, which fee shall not exceed one hundred dollars, and shall be renewable biennially upon payment of the license fee on such dates as established by the Board."

**SECTION 2.  Time effective.**—This act shall take effect upon approval by the Governor.

Approved the 23rd day of June, 1972.

————————

(R1649, H3107)                No. 1428

An Act To Amend Section 7 Of Act No. 445 Of 1971, Relating To The Regulation Of Controlled Substances And Dangerous Drugs, So As To Further Provide For The Definition Of A Practitioner.

Be it enacted by the General Assembly of the State of South Carolina:

**SECTION 1.  Practitioner defined.**—Section 7 of Act 445 of 1971 is amended by striking the following:

Appendix 3

1994 S.C. Op. Atty. Gen. 62 (S.C.A.G.), 1994 S.C. Op. Atty. Gen. No. 25, 1994 WL 199757

Office of the Attorney General

State of South Carolina
Opinion No. 94-25
April 11, 1994

**\*1**  Mr. Joseph P. Madden
Public Information Officer
Jasper County Schools
Post Office Box 848
Ridgeland, SC 29936

Dear Mr. Madden:
You have requested the opinion of this Office as to certain matters relating to the arrest of students "disturbing a school." You have set forth two different circumstances which are discussed below.

The first circumstance concerns fighting. Under S.C.Code Ann. § 16–17–420 (1976) for a person "... to interfere with or to disturb in any way ... the students or teachers of any school ..." is unlawful. No case has apparently addressed the question of whether fighting would constitute interference or disturbance of a school, however, giving "interfere" and "disturb" their plain meanings [1] would include fighting which was, in fact, disruptive of a classroom, school corridor or any other part of the school campus where students or faculty are engaged in school activities. The Court might construe these terms to apply to any part of the campus regardless of whether students or other students or faculty were present. The fighting might also constitute assault and battery. See State v. Hill, 254 S.C. 321, 175 S.E.2d 227 (1970).

If your school district believes that a crime has occurred by students fighting on campus, the district should report the matter to its local law enforcement agency. That agency could determine whether an arrest should be made. Certainly, too, the students could be subject to discipline in accordance with any applicable parts of your school district's disciplinary policy. We have not seen your District's policy.

The other circumstance that you have mentioned is a student's refusal to leave the school campus or school bus when requested to do so by a principal. Depending upon the facts, this conduct could constitute disturbance of a school. Moreover, it might also constitute loitering (§ 16–17–420) or trespass pursuant to §§ 16–11–530, 16–11–600 and 16–11–620 assuming that the principal has properly directed the student to leave, and the student has failed or refused to do so. Refusal to leave might also violate § 16–17–420 as to entry of a school campus without permission. If a crime has been committed in the refusal to leave, law enforcement officers could be called to handle the matter.

In connection with the refusal of a student to leave campus, you have asked whether the student's use of offensive language toward the principal or police officer may make the student subject to arrest. If the language included the threat to take the life of or inflict bodily harm on the principal, the conduct could constitute a crime pursuant to § 16–3–1040 (Supp.1993). This statute would probably also apply to such conduct directed to a law enforcement officer as a "public official" under § 16–3–1040. See Ops. Att'y Gen. September 8, 1992. Use of obscene or profane language near a "schoolhouse" might constitute disorderly conduct under § 16–17–530 or it might constitute disturbing the school under § 16–17–420. Of course, use of obscene language may be subject to sanction under the school district's disciplinary policy if such conduct is prohibited thereunder.

**Mr. Joseph P. Madden, 1994 S.C. Op. Atty. Gen. 62 (1994)**

---

**\*2** The purpose of this response is not to outline each and every possible crime that might be applicable to a given set of circumstances. Whether a crime has been committed would depend upon the particular facts of a situation; however, I hope that this letter provides you with some guidance to the general applicability of criminal laws as to fighting and trespass on school premises and threats to kill or do bodily harm to school officials and other public officers. Should you need additional information, please do not hesitate to contact me.

CONCLUSION

South Carolina possesses laws which provide for a tough, but fair, policy in the schools to protect administrators, teachers and students. If these laws are used forcefully, firmly and fearlessly, they will greatly help to make schools the safe zones we need.

Emphasis by school officials should be on using existing laws to make the school safe, not just in name, but in fact. That includes every classroom, every hallway, each restroom, all gyms and parking lots. Fighting constitutes disrupting a school and is against State law. Failure to leave a school campus when directed to do so by a principal is against State law, too. So is using foul or abusive language against a teacher, staff member or police officer.

If school officials use the legal tools that are available to them, administrators, staff, teachers and students will not forfeit their right to safety and security at the schoolhouse door.
1. South Carolina Code Section 16–17–420 makes it unlawful to interfere with or to disturb in any way the students or teachers of any school.

2. Fighting would be included within the prohibition of Section 16–17–420.

3. This statute could be interpreted to include any part of the school campus, regardless of whether students or other students or faculty are present.

4. Such fighting may also constitute assault and battery.

5. If a school district believes a crime has occurred by students fighting on campus, the matter should be reported immediately to local law enforcement.

6. Students fighting on school grounds would be subject to a school's disciplinary policy, in addition to any criminal penalties contained in Section 16–17–420.

7. Failure by a student or other person to leave a school campus or school bus, when requested to do so by a principal, could, under particular circumstances, constitute a criminal offense.

8. Such failure could constitute disturbance of a school, loitering (Section 16–17–420), trespass (Sections 16–11–530, 16–11–600, 16–11–620) (assuming the principal has directed the student to leave and the student does not), or entry of a school without permission (Section 16–11–420).

9. Calling local law enforcement would be the proper procedure to remove a student or other person who fails to leave when directed by a principal.

10. Use of foul or offensive language toward a principal, teacher, or police officer can constitute a crime. Such conduct could, depending on the circumstances, be a threat to harm a teacher or principal (Section 16–3–1040 [ [Supp.1993]). Such conduct may also constitute disorderly conduct (Section 16–17–530) or disturbing the school (Section 16–17–420).

---

**Mr. Joseph P. Madden, 1994 S.C. Op. Atty. Gen. 62 (1994)**

---

**\*3**  11. Use of obscene or offensive language may also be subject to discipline under a school's policy in addition to criminal penalties.

 Sincerely yours,

T. Travis Medlock
Attorney General

Footnotes

1    "Where the terms of a statute are clear and unambiguous, there is no room for interpretation and we must apply them according to their literal meaning." South Carolina Department of Highways and Public Transportation v. Dickinson, 288 S.C. 134, 341 S.E.2d 134 (1986).
     1994 S.C. Op. Atty. Gen. 62 (S.C.A.G.), 1994 S.C. Op. Atty. Gen. No. 25, 1994 WL 199757

---

**End of Document**                      © 2016 Thomson Reuters. No claim to original U.S. Government Works.

John W. Holcombe, 1999 WL 626642 (1999)

1999 WL 626642 (S.C.A.G.)

Office of the Attorney General

State of South Carolina
July 12, 1999

**\*1** The Honorable John W. Holcombe
Sheriff
Chester County
P.O. Box 727
Chester, South Carolina 29706

Dear Sheriff Holcombe,

Thank you for your letter, dated May 13, 1999, to this Office which has been referred to me for a response. You ask for an opinion on South Carolina Code of Laws Sections 16-17-420 and 59-63-280, entitled Disturbing schools and Possession of paging devices by public school students under the age of eighteen prohibited, respectively.

You describe a situation in which a student became uncooperative and disruptive after his pager went off in a classroom and he was escorted to the Assistant Principal s office. You write that the student refused to provide his name and produce the pager to the Assistant Principal and the School Resource Officer. When told he would be placed under arrest for disturbing school if he did not relinquish the pager, he replied, Go ahead and arrest me. I m not giving it up. The student became even more disruptive when placed under arrest and additional units had to be called in to assist the School Resource Officer.

In particular you ask whether under 16-17-420, a student can be charged with disturbing school, while at school. You also ask whether an officer may confiscate the pager, pursuant to 59-63-280, in such circumstances as described above.

In response to your first question, Section 16-17-420 does not limit the application of the disturbance of school offense to perpetrators entering from off campus. The statute says:

It shall be unlawful:
(1) For any person wilfully or unnecessarily (a) to interfere with or to disturb in any way or in any place the students or teachers of any school or college in this State, (b) to loiter about such school or college premises or (c) to act in an obnoxious manner therein; or

(2) For any person to (a) enter upon any such school or college premises or (b) loiter around on the premises, except on business, without the permission of the principal or president in charge.

Although provision (2) addresses people who enter from off campus or who remain on campus without a legitimate purpose, provision (1) certainly applies to students on campus or in the classroom, as well. In the attached opinion, dated April 11, 1994, this Office opined at some length on the application of 16-17-420 to students who were fighting at school. Furthermore, the South Carolina Court of Appeals upheld a ten year old boy s conviction under 16-17-420 after he became disruptive in a school cafeteria. See In the Interest of John Doe, 318 S.C. 527, 458 S.E.2d 556 (1995). In short, a student can be charged under 16-17-420 for an offense committed at school.

As to your second question, I have been unable to find any case law or previous Attorney General opinions addressing the confiscation of a pager under Section 59-63-280. However, [w]here the terms of a statute are clear and unambiguous, there

John W. Holcombe, 1999 WL 626642 (1999)

is no room for interpretation and we must apply them according to their literal meaning. South Carolina Department of Highways and Public Transportation v. Dickinson, 288 S.C. 134, 341 S.E.2d 134 (1986). South Carolina Code Section 59-63-280 says, in part:

*2 (D) A person who discovers a student in possession of a paging device in violation of this section shall report the violation to the appropriate school administrator, as determined by school policy, who shall order a peace officer or appropriate school employee to confiscate the device, which is forfeited to the school district.

This provision of the statute offers a clear and unambiguous response to your question. Absent the few exceptions for permissible pagers enumerated in provision (B), a School Resource Officer following the above procedures does have the right to confiscate the pager.

This letter is an informal opinion only. It has been written by a designated Senior Assistant Attorney General and represents the position of the undersigned attorney as to the specific question asked. It has not, however, been personally scrutinized by the Attorney General not officially published in the manner of a formal opinion.

With kind regards, I remain
Very truly yours,

Robert D. Cook
Assistant Deputy Attorney General

1999 WL 626642 (S.C.A.G.)

---

**End of Document**

© 2016 Thomson Reuters. No claim to original U.S. Government Works.

Michael V. Woodall, Ph.D., 1990 S.C. Op. Atty. Gen. 175 (1990)

1990 S.C. Op. Atty. Gen. 175 (S.C.A.G.), 1990 S.C. Op. Atty. Gen. No. 90-61, 1990 WL 482448

Office of the Attorney General

State of South Carolina
Opinion No. 90-61
October 17, 1990

**\*1**  Michael V. Woodall, Ph.D.
Superintendent
Lexington District Two School
715 Ninth Street
West Columbia, South Carolina 29169

Dear Dr. Woodall:
In a letter to this Office you questioned whether Section 16–17–420 of the Code can be applied on a twelve month a year, twenty-four hour basis. Such provision states:
It shall be unlawful:
(1) For any person wilfully or unnecessarily (a) to interfere with or to disturb in any way or in any place the students or teachers of any school or college in this State, (b) to loiter about such school or college premises or (c) to act in an obnoxious manner thereon; or

(2) For any person to (a) enter upon any such school or college premises or (b) loiter around the premises, except on business, without the permission of the principal or president in charge.

A criminal penalty of a fine of not less than one hundred dollars nor more than one thousand dollars or a term of imprisonment of not less than thirty days nor more than ninety days is provided.

You stated that one of your middle schools is situated in an unsavory neighborhood, commonly referred to as "Crack Alley", and individuals sometimes gather at the school on weekends, during the summer, and early morning hours. In light of such circumstances you have questioned whether Section 16–17–420 can be enforced regardless of whether a school is in session.

In People In Interest of C.M., 630 P.2d 593 (Col.1981) the Colorado Supreme Court construed a statute which established a criminal offense if an individual
Loiters in or about a school building or grounds, not having any reason or relationship involving custody of, or responsibility for, a pupil or any other specific, legitimate reason for being there, and not having written permission from a school administrator.

The Court in holding such statute to be unconstitutionally vague on due process grounds noted that the statute
... neither requires a demonstrable causality between the conduct and the impairment of school functions nor does it even require that the conduct occur while school is in session.

630 P.2d at 596.

Michael V. Woodall, Ph.D., 1990 S.C. Op. Atty. Gen. 175 (1990)

On its face, Section 16–17–420 makes no reference to the time period for enforcement. Moreover, I am unaware of any prior opinion of this Office or decision by a court in this State construing such provision in such regard. The prohibitions against interfering with or disturbing students or teachers and acting in an obnoxious manner appear to be applicable only when a school is in session or otherwise open. However, the statute further prohibits "loitering about" or entering school or college premises, except on business, without permission of the principal or president in charge. No express limitations on the time of applicability of such prohibition are set forth. Of course, such prohibitions should not be construed in a manner inconsistent with legitimate First Amendment privileges. Also, for purposes of this opinion, the provision is not being construed on constitutional grounds. See, e.g., 50 A.L.R.3d 340–382 where similar statutes have been reviewed on a variety of constitutional bases.

**\*2**  As to your specific question of whether Section 16–17–420 can be applied on a twelve month a year twenty-four hour basis, it is my conclusion that there is no restriction in such regard. Therefore, such provision could be enforced regardless of whether school is in session. Of course, while this Office must presume the constitutionality of Section 16–17–420, any final determination as to constitutionality is a matter for the courts. See: Opin. of the Atty.Gen. dated March 23, 1990. Therefore, as to any questions regarding constitutionality you may wish to consult with your school attorney.
 Sincerely,

Charles H. Richardson
Assistant Attorney General

1990 S.C. Op. Atty. Gen. 175 (S.C.A.G.), 1990 S.C. Op. Atty. Gen. No. 90-61, 1990 WL 482448

**End of Document**    © 2016 Thomson Reuters. No claim to original U.S. Government Works.

**THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**CHARLESTON DIVISION**

KENNY, et al.

<div style="margin-left:2em">Plaintiffs,</div>

<div style="margin-left:2em">v.</div>

WILSON, et al.

<div style="margin-left:2em">Defendants.</div>

Civil Action No.:
2:16-cv-2794-CWH

PLAINTIFFS' MOTION FOR
CLASS CERTIFICATION AND
MEMORANDUM OF LAW IN
SUPPORT

<u>**PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**</u>

<u>**AND MEMORANDUM OF LAW IN SUPPORT**</u>

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ....................................................................... ii

Joint Motion for class certification and Memorandum in Support .................. 1

PROPOSED CLASSES ............................................................................. 1

Arguments and authorities in Support ....................................................... 2

I.    THE COURT SHOULD CERTIFY THE PLAINTIFF CLASS. ....................................... **2**

    A.   The Plaintiffs Meet All of the Requirements for Class Certification Under Rule 23(a). 2

       1)    The Plaintiff Class Satisfies the Numerosity Requirement, Joinder Is Impracticable, and Membership Is Readily Ascertainable. ......................................................... 2

       2)    Plaintiff Class Members' Claims Present the Common Legal Question of Whether the Disturbing Schools and Disorderly Conduct Laws are Unconstitutionally Vague. ....... 4

       3)    The Claims of the Named Plaintiffs Are Typical of the Class. ................................... 10

       4)    The Named Plaintiffs Will Adequately Protect the Interests of the Class. ............... 12

    B.   The Requirements of Rule 23(b)(2) Are Satisfied ............................................... 13

II.   **THE COURT SHOULD CERTIFY THE DEFENDANT CLASS** ............................... **15**

    A.   The Proposed Defendant Class Satisfies the Prerequisites of Rule 23(a) ........................ 16

       1)    The Defendant Class Satisfies the Numerosity Requirement and Joinder Is Impracticable. ................................................................................................. 16

       2)    Defenses Will Be Common to All Members of the Defendant Class. ..................... 17

       3)    The Defenses of Named Defendants Are Typical of the Defendant Class .............. 18

       4)    The Defendants Will Adequately Protect the Interests of the Defendant Class. ...... 19

    B.   The Requirements of Rule 23(b)(1) and 23(b)(3) Are Satisfied ............................... 19

       1)    The Defendant Class Meets the Requirements of Rule 23(b)(1). .............................. 19

       2)    The Defendant Class Meets the Requirements of Rule 23(b)(3). .............................. 20

          (A)   Lack of Interest in Individually Controlling the Defense ........................................ 20

          (B)   Absence of Litigation Against Class Members ...................................................... 21

          (C)   Desirability of Concentrating the Litigation in the District .................................... 21

          (D)   Unlikelihood of Difficulty in Managing This Class Action .................................. 22

          (E)   Predominance .................................................................................................. 23

CONCLUSION ....................................................................................... 24

i

# TABLE OF AUTHORITIES

**Cases**

*Akron Ctr. For Reprod. Health v. Rosen*,
  110 F.R.D. 576 (N.D. Ohio 1986) ................................................................16

*Alvarado Partners, L.P. v. Mehta*,
  130 F.R.D. 673 (D. Colo. 1990) ..................................................................17

*Amchem Products, Inc. v. Windsor*,
  521 U.S. 591 (1997) ....................................................................19,21,23

*Autry v. Mitchell*,
  420 F. Supp. 967 (E.D.N.C. 1976) ..............................................................16

*Baby Neal ex rel. Kanter v. Casey*,
  43 F.3d 48 (3d Cir. 1994) ...........................................................................5

*Baggett v. Bullitt*,
  377 U.S. 360 (1964) .................................................................................10

*Bell v. Disner*,
  No. 3:14-CV-91, 2015 WL 540552 (W.D.N.C. Feb. 10, 2015)..............17,18

*Berry v. Schulman*,
  807 F.3d 600 (4th Cir. 2015) ...................................................................5, 14

*Black v. Rhone-Poulenc, Inc.*,
  173 F.R.D. 156 (S.D. W. Va. 1996)...............................................................4

*Broussard v. Meineke Discount Muffler Shops, Inc.*,
  155 F.3d 331 (4th Cir. 1998) ....................................................................12

*Brown v. Nucor Corp.*,
  576 F.3d 149 (4th Cir. 2009) ....................................................................12

*Brown v. Nucor Corp.*,
  785 F.3d 895 (4th Cir. 2015) .............................................................4,7,8,9

*Bullock v. Bd. of Educ. of Montgomery Cty.*,
  210 F.R.D. 556 (D. Md. 2002) ........................................3,4,7,8,10,12

*Bumgarner v. NCDOC*,
  276 F.R.D. 452 (E.D.N.C. 2011) ................................................................14

*Califano v. Yamasaki*,
  442 U.S. 682 (1979) ....................................................................................5

*Callahan v. Wallace*,
  466 F.2d 59 (5th Cir. 1972)........................................................................16

*City of Ann Arbor Emps.' Ret. Sys. v. Sonoco Products Co.*,
  270 F.R.D. 247 (D.S.C. 2010)....................................................................11

*City of Chicago v. Morales*,
  527 U.S. 41 (1999)....................................................................................6,7

*Colautti v. Franklin*,
   439 U.S. 379 (1979) ..................................................................................................10

*Comer v. Life Ins. Co. of Alabama*,
   No. C/A 0:08-228-JFA, 2010 WL 233857 (D.S.C. Jan. 14, 2010)................................23

*Connally v. Gen. Constr. Co.*,
   269 U.S. 385 (1926) ..................................................................................................6

*Cuthie v. Fleet Reserve Ass'n*,
   743 F. Supp. 2d 486 (D. Md. 2010) .........................................................................3

*Cypress v. Newport News Gen. & Nonsectarian Hosp. Ass'n*,
   375 F.2d 648 (4th Cir. 1967) ...................................................................................2

*Dameron v. Sinai Hosp. of Baltimore, Inc.*,
   595 F. Supp. 1404 (D. Md. 1984) ............................................................................12

*Deiter v. Microsoft Corp.*,
   436 F.3d 461 (4th Cir. 2006) ...................................................................................10

*DG ex rel. Stricklin v. Devaughn*,
   594 F.3d 1188 (10th Cir. 2010) ...............................................................................10

*Doe v. Heckler*,
   576 F. Supp. 463 (D. Md. 1983) ..............................................................................12

*Fariasantos v. Rosenberg & Assocs., LLC*,
   303 F.R.D. 272 (E.D. Va. 2014) ...............................................................................9

*Floyd v. City of New York*,
   283 F.R.D. (S.D.N.Y. 2012) ....................................................................................11

*Good v. Am. Water Works Co., Inc.*,
   310 F.R.D. 274 (S.D.W. Va. 2015) .................................................................22,23,24

*Gray v. Hearst Commc'ns, Inc.*,
   444 F. App'x 698 (4th Cir. 2011) ............................................................................23

*Grayned v. City of Rockford*,
   408 U.S. 104 (1972) ..................................................................................................6

*Harris v. Graddick*,
   593 F. Supp. 128 (M.D. Ala. 1984)......................................................................16,17

*Harris v. Rainey*,
   299 F.R.D. 486 (W.D. Va. 2014)..................................................................8,12,13,14

*Henry v. Jefferson Cty. Planning Comm'n*,
   No. 99-2122, 215 F.3d 1318, 2000 WL 742188 (4th Cir. 2000) ....................................6

*Holsey v. Armour & Co.*,
   743 F.2d 199 (4th Cir. 1984) ...............................................................................7,13

*Horton v. Goose Creek Indep. Sch. Dist.*,
   690 F.2d 470 (5th Cir. 1982) ...................................................................................3

*J.D. v. Nagin*,
   255 F.R.D. 406 (E.D. La. 2009) ...............................................................................15

iii

*Kolender v. Lawson*,
   461 U.S. 352 (1983) ...................................................................................6,7

*Krakauer v. Dish Network L.L.C.*,
   311 F.R.D. 384 (M.D.N.C. 2015) .......................................................... 20,24

*M.D. v. Perry*,
   294 F.R.D. 7 (S.D. Tex. 2013) ........................................................................11

*Marcera v. Chinlund*,
   595 F.2d 1231, (2d Cir. 1979) ......................................................................18

*Mateo-Evangelio v. Triple J Produce, Inc.*,
   No. 7:14-CV-302-FL, 2016 WL 183485 (E.D.N.C. Jan. 14, 2016) ...................20,22,23

*Matthews v. Buel, Inc.*,
   No. CA 7:11-162-TMC, 2012 WL 1825273 (D.S.C. May 18, 2012) ....................24

*Monaco v. Stone*,
   187 F.R.D. 50 (E.D.N.Y. 1999) ....................................................................16

*Montague v. Dixie Nat. Life Ins. Co.*,
   No. CIV.A. 3:09-687-JFA, 2010 WL 4156365 (D.S.C. Oct. 19, 2010) ............ 21,22,23

*Moodie v. Kiawah Island Inn Co., LLC*,
   309 F.R.D. 370 (D.S.C. 2015) ...........................................................3,10,13,17,23

*Olvera-Morales v. Int'l Labor Mgmt. Corp.,*
   *Inc.*, 246 F.R.D. 250 (M.D.N.C. 2007) ...........................................................7

*Papachristou v. City of Jacksonville*,
   405 U.S. 156 (1972) ................................................................... 6,10,24

*Paxman v. Campbell*,
   612 F.2d 848 (4th Cir. 1980) .......................................................................19

*Plotnick v. Computer Scis. Corp. Deferred Comp. Plan for Key Execs.*,
   No. 1:15-CV-01002, 2016 WL 1704158 (E.D. Va. Apr. 26, 2016) .....................4

*R.A.G. ex rel. R.B. v. Buffalo City Sch. Dist. Bd. of Educ.*,
   569 F. App'x 41 (2d Cir. 2014) ......................................................... 4,8,11

*R.A-G ex rel. R.B. v. Buffalo City Sch. Dist. Bd. of Educ.*,
   No. 12-CV-960S, 2013 WL 3354424 (W.D.N.Y. July 3, 2013) .....................11,14

*Ragsdale v. Turnock*,
   734 F. Supp. 1457 (N.D. Ill. 1990) ............................................................16

*Reed v. Big Water Resort, LLC*,
   No. 2:14-CV-1583-DCN, 2015 WL 5554332 (D.S.C. Sept., 21 2015) ..................4

*Scott v. Clarke*,
   61 F. Supp. 3d 569 (W.D. Va. 2014) .......................................................4,5,14

*Scott v. Family Dollar Stores, Inc.*,
   733 F.3d 105 (4th Cir. 2013) .......................................................................9

*Smith v. Goguen*,
   415 U.S. 566 (1974) .......................................................................................6

**JA81**

*Strawser v. Strange*,
    105 F. Supp. 3d 1323 (S.D. Ala. 2015) ...........................................16
*Thomas v. FTS USA, LLC*,
    312 F.R.D. 312 (East. Dist. VA, Jan.7, 2016).........................21,22,23
*Thorn v. Jefferson-Pilot Life Ins. Co.*,
    445 F.3d 311 (4th Cir. 2006) ...............................................13,20,23
*Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*,
    455 U.S. 489 (1982) ...........................................................................7
*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011) ....................................................4, 8,8,10,24
*Ward v. Dixie Nat'l Life Ins. Co.*,
    595 F.3d 164, 179–80 (4th Cir. 2010) ...............................................9
*Whitt v. Wells Fargo Fin., Inc.*,
    664 F. Supp. 2d 537 (D.S.C. 2009) ....................................................9

## Other Authorities

2 William B. Rubenstein, *Newberg on Class Actions* § 5:6 (5th ed. 2012)................................ 17
7A Charles Alan Wright et al., *Federal Practice and Procedure* § 1763 (3d ed. 2005)
    ...............................................................................5,11,13,21,22
Brian A. Reaves, *Census of State and Local Law Enforcement Agencies, 2008*, NCJ 233982
    (Bureau of Justice Statistics), July 2011 ............................... 17
Note, *Defendant Class Actions*, 91 Harv. L. Rev. 630 (1978).........................16,18,24

## Rules

Fed. R. Civ. P. 23................................................................................2,15
Fed. R. Civ. P. 23(a) ............................................................................ 15
Fed. R. Civ. P. 23(b)(1)(A)................................................................... 19
Fed. R. Civ. P. 23(b)(2)........................................................................ 14
Fed. R. Civ. P. 23(b)(3)....................................................................20,21

**JA82**

Plaintiffs, through their undersigned attorneys, respectfully move the Court for an order certifying the classes of plaintiffs and defendants set forth in the Complaint, naming as class representatives the plaintiffs and defendants set forth in the above caption, and naming the undersigned attorneys as co-lead counsel, pursuant to Federal Rule of Civil Procedure 23.

<div align="center">

**PROPOSED CLASSES**

</div>

In this vagueness challenge to South Carolina's "Disturbing Schools" and Disorderly Conduct statutes, Plaintiffs D.S  and S.P.[1] ("Named Plaintiffs") move this Court pursuant to Rules 23(a) and 23(b)(2) of the Federal Rules of Civil Procedure to certify a plaintiff class consisting of all elementary and secondary public school students in South Carolina ("Plaintiff Class"), each of whom faces a risk of arrest or juvenile referral under the broad and overly vague terms of the challenged statutes. Plaintiffs further move pursuant to Rules 23(a), 23(b)(1) and (b)(3) to certify a defendant class of all law enforcement agencies with authority to enforce S.C. Code §§ 16-17-420 and 16-17-530 against Plaintiffs ("Defendant Class"). Plaintiffs' motion should be granted because the Plaintiffs meet the requirements of each of these rules as to both of the proposed classes.

Support for certification is provided below.

---

[1] Plaintiffs do not move on behalf of Niya Kenny, Taurean Nesmith, or Girls Rock Charleston, because they do not fall within the proposed class elementary and secondary public school students at risk of enforcement under the Disturbing Schools and Disorderly Conduct statutes. Those individual Plaintiffs will remain outside of the Plaintiff Class and proceed on an individual basis in this case.

<div align="center">

**JA83**

</div>

### ARGUMENTS AND AUTHORITIES IN SUPPORT

## I.    THE COURT SHOULD CERTIFY THE PLAINTIFF CLASS.

Plaintiffs meet each of the prerequisites for class certification under Rules 23(a) and 23(b)(2). First, joinder would be impracticable because the proposed Plaintiff Class includes over 750,000 elementary and secondary students enrolled in public schools from across the state. Second, the Named Plaintiffs' and Plaintiff Class members' claims present the common legal question of whether the Disturbing Schools and Disorderly Conduct statutes are impermissibly vague in violation of the Due Process Clause of the Fourteenth Amendment of the United States Constitution. Because of this common legal question, the claims of the Named Plaintiffs are typical (and, indeed, identical to) those of members of the class, and they are adequately equipped to protect the interests of the class. Finally, with respect to the requirements of Rule 23(b), because Defendants have applied the Disturbing Schools and Disorderly Conduct laws in a manner that applies generally to the class, relief is appropriate respecting the Plaintiff Class as a whole.

### A.  The Plaintiffs Meet All of the Requirements for Class Certification Under Rule 23(a).

#### 1)  The Plaintiff Class Satisfies the Numerosity Requirement, Joinder Is Impracticable, and Membership Is Readily Ascertainable.

The numerosity requirement is met when the number of potential plaintiffs is "so numerous that joinder of all members [of the class] is impracticable." Fed. R. Civ. P. 23. "No specified number is needed to maintain a class action under Fed. R. Civ. P. 23; application of the rule is to be considered in light of the particular circumstances of the case." *Cypress v. Newport News Gen. & Nonsectarian Hosp. Ass'n*, 375 F.2d 648, 653 (4th Cir. 1967) (certifying class with eighteen members). "[W]here general knowledge and common sense would indicate that [the

2:16-cv-02794-CWH    Date Filed 08/17/16    Entry Number 6    Page 9 of 31

class] is large, the numerosity requirement is satisfied." *Harris v. Rainey*, 299 F.R.D. 486, 489 (W.D. Va. 2014) (*citing Mitchell-Tracey v. United Gen. Title Ins. Co*., 237 F.R.D. 551, 556 (D. Md. 2006)). Certification is appropriate when joinder of all members would be extremely difficult or inconvenient—though the standard is not that it be impossible. *See Cuthie v. Fleet Reserve Ass'n*, 743 F. Supp. 2d 486, 498 (D. Md. 2010); *Bullock v. Bd. of Educ. of Montgomery Cty*., 210 F.R.D. 556, 559 (D. Md. 2002).

In the instant case, the proposed class, all public elementary and secondary students in South Carolina, clearly meets these requirements. The South Carolina Department of Education reports that 763,588 students were actively enrolled in South Carolina public schools as of the forty-fifth day of the 2015-2016 school year. South Carolina Department of Education, Active Student Headcounts.[2] Courts have routinely found numerosity met in proposed classes of far fewer students. *See Bullock*, 210 F.R.D. at 559 (certifying class of "several hundred" homeless students); *Horton v. Goose Creek Indep. Sch. Dist*., 690 F.2d 470, 484 (5th Cir. 1982) (certifying class of 15,400 members made up of all students enrolled in school district). Joinder of this large a number of plaintiffs would clearly be impracticable.

Moreover, although the precise number of matriculated students may fluctuate, this class is sufficiently clearly defined to meet Rule 23's "implicit" requirement "that the members of a proposed class be 'readily identifiable.'" *Moodie v. Kiawah Island Inn Co., LLC*, 309 F.R.D. 370, 375 (D.S.C. 2015) (citing *EQT Prod. Co. v. Adair,* 764 F.3d 347, 358 (4th Cir. 2014)). The class is itself clearly defined, and class membership is ascertainable through "minor discovery" of state and district records. *Id.* at 376–77 (finding ascertainability where members of class of workers were "easily identified by reference to Defendant's payroll records" and other standard

---

[2] *Available at* http://ed.sc.gov/data/other/student-counts/active-student-headcounts/ (last visited Aug. 2, 2016).

forms); *Reed v. Big Water Resort, LLC*, No. 2:14-CV-1583-DCN, 2015 WL 5554332, at *4

(D.S.C. Sept., 21 2015) (finding ascertainability where class of between 257 and 750 private club

members could be identified by reviewing their individual contracts). The proposed class is thus

both sufficiently numerous and ascertainable to meet the requirements of Rule 23(a)(1).

> ### 2) Plaintiff Class Members' Claims Present the Common Legal Question of Whether the Disturbing Schools and Disorderly Conduct Laws are Unconstitutionally Vague.

In order to demonstrate commonality, Plaintiffs will need to show proof that they suffer a

common injury, and that resolution of the claim would provide class-wide relief. *See Wal-Mart*

*Stores, Inc. v. Dukes*, 564 U.S. 338, 349–50 (2011). Common questions may be questions of law

*or* of fact. *Black v. Rhone-Poulenc, Inc.*, 173 F.R.D. 156, 161 (S.D. W. Va. 1996). Thus, "[t]his

requirement is satisfied when there is even a single common question that will resolve an issue

central to the validity of each of the class member's claims." *Plotnick v. Computer Scis. Corp.*

*Deferred Comp. Plan for Key Execs.*, No. 1:15-CV-01002, 2016 WL 1704158, at *4 (E.D. Va.

Apr. 26, 2016). Yet, "[w]hile the claims of the class members must arise from similar practices

and be based on the same legal theory, the commonality requirement does not require that all

class members share identical factual histories." *Scott v. Clarke*, 61 F. Supp. 3d 569, 586 (W.D.

Va. 2014); *Bullock*, 210 F.R.D. at 560. Rather, "a class-wide proceeding must be able to generate

common answers that drive the litigation." *Brown v. Nucor Corp.*, 785 F.3d 895, 909 (4th Cir.

2015). Accordingly, allegations of a common law or policy that subjects an entire class to

unlawful treatment will satisfy the commonality requirement. *See Plotnick*, 2016 WL 1704158,

at *4; *Brown*, 785 F.3d at 915 (finding commonality satisfied for purposes of liability

determination in light of "a pattern of engrained discriminatory decision-making that consistently

disadvantaged black workers"); *R.A.G. ex rel. R.B. v. Buffalo City Sch. Dist. Bd. of Educ.*, 569 F.

App'x 41 (2d Cir. 2014) (summary order) (Appendix 2) (affirming certification of class of

students classified as disabled and receiving supplemental services under IDEA where claims

were "predicated on a policy that [was] applied uniformly to all students"); *Scott v. Clarke*, 61 F.

Supp. 3d at 586 (finding commonality prong met in Eighth Amendment challenge to inadequate

provision of medical care in correctional facility).

Courts routinely find commonality to be satisfied where the relief requested is principally

or solely declaratory and injunctive relief. *See Califano v. Yamasaki*, 442 U.S. 682, 701 (1979).

This is because in such cases, "[i]t is unlikely that differences in the factual background of each

claim will affect the outcome of the legal issue." *Id*. Thus, "where plaintiffs request declaratory

and injunctive relief against a defendant engaging in a common course of conduct toward them,

[ ] there is [ ] no need for *individualized* determinations of the propriety of injunctive relief."

*Baby Neal ex rel. Kanter v. Casey*, 43 F.3d 48, 57 (3d Cir. 1994) (emphasis in original). *See also*

*Berry v. Schulman*, 807 F.3d 600, 608–09 (4th Cir. 2015) ("[B]ecause of the group nature of the

harm alleged and the broad character of the relief sought, the (b)(2) class is, by its very nature,

assumed to be a homogenous and cohesive group with few conflicting interests among its

members." (quoting *Allison v. Citgo Petroleum Corp.,* 151 F.3d 402, 413 (5th Cir.1998))); *Scott*

*v. Clarke*, 61 F. Supp. 3d at 585 ("[S]uits for injunctive relief by their very nature present

common questions of law and fact." (quoting *McGlothlin v. Connors*, 142 F.R.D. 626, 633

(W.D. Va. 1992))); 7A Charles Alan Wright et al., *Federal Practice and Procedure* § 1763 (3d

ed. 2005) ("[C]lass suits for injunctive or declaratory relief by their very nature often present

common questions[.] . . . When plaintiff is alleging the existence of a pattern and practice of

discrimination or the existence of a discriminatory policy applicable to the class members, the

question of the discriminatory character of defendant's conduct is basic to the action and the fact

2:16-cv-02794-CWH    Date Filed 08/17/16    Entry Number 6    Page 12 of 31

that the individual class members may have suffered different effects from the alleged

discrimination is immaterial for purposes of this prerequisite.").

Here, the plaintiffs seek to enjoin the operation of the Disturbing Schools and Disorderly

Conduct statutes based on the single legal theory that the statutes are unconstitutionally vague.

Whether or not a law is vague is a purely legal question. *Henry v. Jefferson Cty. Planning

Comm'n*, No. 99-2122, 215 F.3d 1318, 2000 WL 742188, at *4 (4th Cir. 2000) (unpublished

table opinion) (Appendix 1). The common legal question in a vagueness challenge is whether the

law is so vague that it "fails to give a person of ordinary intelligence fair notice that his

contemplated conduct is forbidden by the statute" and "encourages arbitrary and erratic arrests

and convictions." *Papachristou v. City of Jacksonville*, 405 U.S. 156, 162 (1972) (internal

citation omitted); *City of Chicago v. Morales*, 527 U.S. 41, 52 (1999) ("[An enactment] may be

impermissibly vague because it fails to establish standards for the police and public that are

sufficient to guard against the arbitrary deprivation of liberty interests." (citing *Kolender v.

Lawson,* 461 U.S. 352, 358 (1983))). The vagueness doctrine is animated by the concern that

such imprecision "may authorize and even encourage arbitrary and discriminatory enforcement."

*Morales*, 527 U.S. at 56; *see also Smith v. Goguen*, 415 U.S. 566, 573 (1974); *Grayned v. City of

Rockford*, 408 U.S. 104, 108–09 (1972) ("A vague law impermissibly delegates basic policy

matters to policemen, judges, and juries for resolution on an ad hoc and subjective basis, with the

attendant dangers of arbitrary and discriminatory application.").

Whether or not a law is vague is an objective, rather than a subjective, inquiry.

*Papachristou*, 405 U.S. at 162 (a statute is vague if it "fails to give a person of ordinary

intelligence fair notice that his contemplated conduct is forbidden by the statute") (internal

citation omitted); *Connally v. Gen. Constr. Co.*, 269 U.S. 385, 391 (1926) ("[A] statute which

either forbids or requires the doing of an act in terms so vague that [persons] of common intelligence must necessarily guess at its meaning and differ as to its application violates the first essential of due process of law.").[3] The outcome of the claim thus does not turn upon the subjective perceptions or personal experiences of the individual plaintiffs. Given the consistency of the legal theory behind the Plaintiffs' claim, the resolution of which would determine the outcome of the litigation, and the lack of need for an individualized inquiry, the commonality prong is satisfied. *See Brown*, 785 F3d at 909; *Clarke*, 61 F. Supp. 3d at 585–88; *Bullock*, 210 F.R.D. at 556; *Olvera-Morales v. Int'l Labor Mgmt. Corp., Inc.*, 246 F.R.D. 250, 256 (M.D.N.C. 2007) (citing *Peoples v. Wendover Funding, Inc*., 179 F.R.D. 492, 498 (D. Md.1998)); *Holsey v. Armour & Co.*, 743 F.2d 199, 217 (4th Cir. 1984) (certiorari denied).

In addition to asserting a single legal theory, Plaintiffs also assert a common set of facts resulting in a common injury: being subject to actual and threatened enforcement of an overly vague criminal statute commonly applied to penalize a broad range of normal adolescent conduct. For purposes of their vagueness challenge, the single, common injury sustained by all public elementary and secondary students is the lack of certainty as to how to regulate their behavior in order to avoid running afoul of the law and the risk of arrest or juvenile referral under the laws in an arbitrary and discriminatory manner. *See Morales*, 527 U.S. at 71 (Breyer, J., concurring in part and concurring in the judgment) ("The ordinance is unconstitutional, not because a policeman applied this discretion wisely or poorly in a particular case, but rather because the policeman enjoys too much discretion in *every* case. And if every application of the

---

[3] The standard for assessing certainty is higher in the criminal context, particularly where the statute lacks a *mens rea* requirement. *See Kolender v. Lawson*, 461 U.S. at 372; *Morales*, 527 U.S. at 55; *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 499 (1982).

7

**JA89**

2:16-cv-02794-CWH    Date Filed 08/17/16    Entry Number 6    Page 14 of 31

ordinance represents an exercise of unlimited discretion, then the ordinance is invalid in all its applications.").

That the details of the specific incidents precipitating charges for disturbing schools or disorderly conduct may vary does not defeat a finding of commonality, as those details are not necessary for adjudication of the Plaintiffs' vagueness claim. *See Brown*, 785 F.3d at 898; *Harris v. Rainey*, 299 F.R.D. at 490 ("[W]hatever factual nuances may exist among putative class members, the legal relief sought is the same: a declaratory judgment . . . and a permanent injunction barring [ ] enforcement [of state laws prohibiting same-sex marriage]."); *Clarke*, 61 F. Supp. 3d at 585–86 (finding commonality met in Eighth Amendment challenge to denial of medical care where claims "do not turn on an individual plaintiff's particular personal health concerns, but rather on [defendants'] alleged systemic failure to provide a level of medical care to all of its residents that complies with constitutional norms"); *Bullock*, 210 F.R.D. at 560 (finding commonality met despite differences including family living arrangements, location of schools, and feasibility of providing transportation); *R.A.G. ex rel R.B.*, 569 F. App'x at 42 (Appendix 2) (finding that a putative class of students' injuries were sufficiently similar under *Wal-Mart* when students were subjected to the same policy (citing *Wal-Mart*, 562 U.S. at 350)). Rather, they merely serve to illustrate the breadth of the conduct covered by the statute's impermissibly vague terms, as well as its arbitrary and discriminatory enforcement—examples of common adolescent behaviors treated as criminal under the statute include involvement in a physical altercation in which there were no significant injuries, cursing, refusing to follow

8

**JA90**

instructions, and expressing concern over the actions of a police officer, *see* Kenny Decl.24;

Nesmith Decl. ¶ 24; Carpenter Decl. ¶ 19; D.S. Decl. ¶ 10; S.P. Decl. ¶ 6; K.B. Decl. ¶¶ 3, 8-9.[4]

It should be noted that the Supreme Court's disapproval of a finding of commonality in

*Wal-Mart Stores v. Dukes*, 564 U.S. 338 (2011), is of limited authority outside of the context of

Title VII, and is, in any event, not controlling in this case. The crux of the claims in *Wal-Mart*

concerned a Title VII challenge to a *lack* of company policy regarding hiring and promotion that

plaintiffs claimed led to discrimination in hiring and promotion by managers and personnel at

over 3,400 stores located around the country. *Id.* at 359–60. Here, by contrast, Plaintiffs assert

that they are all subject to a single law that applies statewide. *See Brown*, 785 F.3d at 910

(distinguishing *Wal-Mart* where plaintiffs challenged policy and practice of discriminatory hiring

and promotion at a single plant); *Scott v. Family Dollar Stores, Inc.*, 733 F.3d 105, 116 (4th Cir.

2013) (limiting *Wal-Mart*'s application where plaintiffs had adequately specified company-wide

practices of arbitrary decision making at the management level). While arbitrariness is a common

thread between the two cases, discretion and arbitrary enforcement are fundamental elements of

---

[4] Nor should the statewide nature of the Plaintiff class be considered dispositive as defeating certification under *Wal-Mart*. In that case, the geographic boundaries included the entire country. *Wal-Mart*, 564 U.S. at 342, 345.  Here, the boundaries lie within a single state—and statewide class actions have always been and clearly remain viable. *See Fariasantos v. Rosenberg & Assocs., LLC*, 303 F.R.D. 272, 278 (E.D. Va. 2014) (rejecting plaintiff's arguments for limiting the class to one county, and instead concluding that, because "there [were] no material differences between [one county's] claims and those from other counties," and because "[a] Virginia class . . . would reduce the number of cases, preserve judicial resources, and adjudicate the claims of all Virginia residents," a statewide class action was the superior method of resolution); *Ward v. Dixie Nat'l Life Ins. Co.*, 595 F.3d 164, 179–80 (4th Cir. 2010) (holding that the district court did not err in certifying a statewide class of plaintiffs in a suit for breach of contract against an insurance provider); *Whitt v. Wells Fargo Fin., Inc.*, 664 F. Supp. 2d 537, 543 (D.S.C. 2009) (holding that a statewide class of workers filing FLSA claims was not collaterally estopped from doing so because a prior, nationwide class had been denied certification).

a vagueness claim. *See Papachristou*, 405 U.S. at 162. *Wal-Mart*'s holding thus cannot be understood as precluding class challenges on vagueness grounds.[5]

### 3)  The Claims of the Named Plaintiffs Are Typical of the Class.

Rule 23(a)(3) requires that the claims of class representatives be "typical" of the members of the putative class. However, typicality does not require "that the plaintiff's claim and the claims of class members be perfectly identical or perfectly aligned." *Deiter v. Microsoft Corp.*, 436 F.3d 461, 467 (4th Cir. 2006); *accord Moodie*, 309 F.R.D. at 378. Rather, "[t]he typicality requirement is met if a plaintiff's claim arises from the same event or course of conduct that gives rise to the claims of other class members and is based on the same legal theory." *Moodie*, 309 F.R.D. at 378 (citing *Parker v. Asbestos Processing, LLC*, No. 0:11-CV-01800-JFA, 2015 WL 127930, at *7 (D.S.C. Jan 8, 2015)); *accord Bullock*, 210 F.R.D. at 560. The typicality requirement also "tends to merge with the commonality and adequacy-of-representation requirements." *Dieter*, 436 F.3d at 466.

In this case, as argued above, the claims of the individual Plaintiffs and the absent class members arise from the same course of conduct—enforcement of the Disturbing Schools and Disorderly Conduct statutes against students—and rest on the identical legal theory—the claim that the statute is unconstitutionally vague. *See DG ex rel. Stricklin v. Devaughn*, 594 F.3d 1188, 1199 (10th Cir. 2010) (named plaintiffs' claims were typical of those of a proposed class of children in long-term foster care in challenge to denial of due-process right to personal security

---

[5] Furthermore, to permit *Wal-Mart* to extend to this context would disturb decades of settled law permitting such claims to proceed, and to prevail. *See, e.g.*, *Colautti v. Franklin*, 439 U.S. 379, 384 n.5, 390 (1979) (holding that § 5(a) of the Pennsylvania Abortion Control Act, challenged by a class of physicians, was unconstitutionally vague); *Baggett v. Bullitt*, 377 U.S. 360, 368 (1964) (holding that statutes requiring teachers and state employees to take loyalty oaths, challenged by a class comprised of faculty, staff, and students at the University of Washington, were unconstitutionally vague).

and safe living conditions as a result of a policy of overburdening caseworkers); *M.D. v. Perry*, 294 F.R.D. 7, 45 (S.D. Tex. 2013) (named minor plaintiffs "need not have suffered identical harms or even have harms that were caused in the exact same way" to have claims typical of the class of foster children that they represented); *Floyd v. City of New York*, 283 F.R.D. 153 (S.D.N.Y. 2012) (complaints of four named African American plaintiffs in challenge to policy and/or practice of stopping and frisking people in violation of the Fourth and Fourteenth Amendments were "precisely the typical ones that are made by other[ ] [class members] who bring or could bring claims for . . . violations by defendants"); *R.A-G ex rel. R.B. v. Buffalo City Sch. Dist. Bd. of Educ.*, No. 12-CV-960S, 2013 WL 3354424, at *11 (W.D.N.Y. July 3, 2013) (Appendix 3), *aff'd sub nom. R.A.G. ex rel. R.B. v. Buffalo City Sch. Dist. Bd. of Educ.,* 569 F. App'x 41 (2d Cir. 2014) (unpublished table opinion)(Appendix 2) ("When it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met irrespective of minor variations in the fact patterns underlying individual claims." (quoting *Robidoux v. Celani,* 987 F.2d 931, 936–37 (2d Cir. 1993))); *Moodie*, 309 F.R.D. at 378 (finding that, even where some named plaintiffs did not share all of the claims in the complaint, the standard for typicality was met, because "[t]ypicality does not require that every class representative have exactly the same claims as every member of the class"); *City of Ann Arbor Emps.' Ret. Sys. v. Sonoco Products Co.*, 270 F.R.D. 247, 251–52 (D.S.C. 2010) (finding typicality satisfied where the "information that the [named] plaintiff assert[ed] [was] materially false and misleading [was] the same information that would be used by other class members to prove their case").

The relief sought is strictly injunctive in nature and does not depend upon adjudication of individual facts, or of individual damages. *See* Wright et al., *supra*, § 1763; *see also id.* § 1764

("[M]any courts have found typicality if the claims . . . of the representatives and the members . . . are based on the same legal theory. . . . Rule 23(a)(3) has been satisfied . . . when defendant's conduct or practices are alleged to violate the class members' constitutional rights."). As was true in the commonality inquiry, the individual incidents that precipitated the individual Named Plaintiffs' charges are immaterial to the outcome of their vagueness claim. And similarly, while the corollary harms suffered as a result of the statute's enforcement—including disruption to the Plaintiffs' education, financial costs, and dignitary harms—may vary from person to person, the precise contours of those harms are not necessary for adjudication of the merits of the claim. *See Brown v. Nucor Corp*., 576 F.3d 149, 159 (4th Cir. 2009); *Clarke*, 61 F. Supp. 3d at 588–90; *Bullock*, 210 F.R.D. at 559–60. Rather, they go to the individual Plaintiffs' standing to seek declaratory and injunctive relief, and illustrate the deep and irreparable impact of these overly broad and vague statutes on students across the state.

Thus, a ruling for the Named Plaintiffs will result in a better outcome for all the Plaintiff Class members, and "as goes the claim of the named plaintiff[s], so go the claims of the class." *Broussard v. Meineke Discount Muffler Shops, Inc.*, 155 F.3d 331, 340 (4th Cir. 1998) (quoting *Sprague v. Gen. Motors Corp*., 133 F.3d 388, 399 (6th Cir. 1998)); *Harris v. Rainey*, 299 F.R.D. at 490 (typicality found where "the relief sought would benefit all class members in an identical manner"); *Dameron v. Sinai Hosp. of Baltimore, Inc.*, 595 F. Supp. 1404, 1408 (D. Md. 1984) (finding typicality where "all class members will benefit"); *Doe v. Heckler*, 576 F. Supp. 463 (D. Md. 1983) (finding typicality where "all members of the class will benefit from the suit").

### 4) The Named Plaintiffs Will Adequately Protect the Interests of the Class.

The courts' inquiry into adequacy is "two-pronged," "requiring evaluation of: (1) whether class counsel are qualified, experienced, and generally able to conduct the proposed litigation;

12

and (2) whether Plaintiffs' claims are sufficiently interrelated with and not antagonistic to the class claims as to ensure fair and adequate representation." *Moodie*, 309 F.R.D. at 378. Both requirements are met here.

First, the ACLU is the nation's preeminent legal organization litigating in the constitutional and civil rights arena; its attorneys have litigated and won countless cases brought under Section 1983, and have expertise bringing due process challenges specifically. Class counsel in this case are a team of experienced civil rights litigators with decades of experience among them. They also have considerable expertise in prosecuting class actions. Proposed class counsel thus meets the requirements of both Rule 23(a)(4) and Rule 23(g).[6]

Moreover, because the individual Named Plaintiffs' claims are identical to those of the Plaintiff Class, there are no conflicts of interest between named parties and the class they seek to represent. None of the class members would be harmed in any way, and all would benefit from, an injunction against the operation of an unconstitutionally vague statute. *See Moodie*, 309 F.R.D. at 378; *Holsey*, 743 F.2d at 217 (African-American employees' discrimination and retaliation claims under Title VII were typical of the plant-wide practices challenged and thus named plaintiffs satisfied requirement for fair and adequate representation). Thus, the adequacy requirement should not seriously be questioned in this case.

### B. The Requirements of Rule 23(b)(2) Are Satisfied.

As the Fourth Circuit has observed, "Rule 23(b)(2) was created to facilitate civil rights class actions." *Thorn v. Jefferson-Pilot Life Ins. Co.*, 445 F.3d 311, 330 (4th Cir. 2006) (citing Wright et al., *supra*, § 1775); *see also Harris v. Rainey*, 299 F.R.D. at 494 ("[S]uits brought for

---

[6] Although the Federal Rules of Civil Procedure were amended in 2003 to include a separate requirement for adequacy of class counsel in Rule 23(g), courts in the Fourth Circuit continue to address adequacy of counsel under Rule 23(a)(4) and generally treat the requirements as coextensive. *See, e.g., Harris v. Rainey*, 299 F.R.D. at 490–91 & n.3; *Moodie*, 309 F.R.D. at 378.

13

**JA95**

injunctive relief alleging civil rights violations are precisely the type of suit for which Rule

23(b)(2) was intended to provide class certification.") Accordingly, Rule 23(b)(2) is "liberally

applied in the area of civil rights." *Bumgarner v. NCDOC*, 276 F.R.D. 452, 457 (E.D.N.C. 2011).

Certification under Rule 23(b)(2) is appropriate when defendants have "acted or refused

to act on grounds that apply generally to the class, so that final injunctive relief or corresponding

declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). *See*

*also Berry v. Schulman*, 807 F.3d 600, 608–09 (4th Cir. 2015) ("[B]ecause of the group nature of

the harm alleged and the broad character of the relief sought, the (b)(2) class is, by its very

nature, assumed to be a homogenous and cohesive group with few conflicting interests among its

members." (quoting *Allison,* 151 F.3d at 413)); *accord Harris v. Rainey*, 299 F.R.D. at 494–95.

In this case, as detailed above, the entire class of public elementary and secondary

students is subject to and at risk of enforcement under the vague Disturbing Schools and

Disorderly Conduct laws, and the Defendants' actions in enforcing those laws are applicable to

the class as a whole. The declaratory and injunctive relief sought would clearly benefit all

members of the class by eliminating the uncertainty as to what conduct is permitted and the risk

of being charged under a vague law. *See Harris v. Rainey*, 299 F.R.D. at 497–98. Thus, as has

been true in numerous other civil rights class actions seeking declaratory and injunctive relief,

certification of the class is appropriate here. *See, e.g.*, *Harris v. Rainey*, 299 F.R.D. at 494–95

(certifying two sub-classes of same-sex couples who wished to wed in Virginia in statewide

challenge to laws prohibiting same-sex marriage); *Scott v. Clarke*, 61 F. Supp. 3d at 590

(certifying class of female prisoners in Eighth Amendment challenge to denial of medical care);

*R.A-G ex rel. R.B.*, 2013 WL 3354424, at *12 (certifying 23(b)(2) class of students seeking

declaratory and injunctive relief for violations of IDEA and § 504 of the Rehabilitative Act); *J.D.*

*v. Nagin*, 255 F.R.D. 406, 416–17 (E.D. La. 2009) (certifying class of detainees in juvenile facility, challenging conditions of confinement under the First, Sixth, Eighth, and Fourteenth Amendments as well as numerous state and federal statutes, under Rule 23(b)(2)).

## II.    THE COURT SHOULD CERTIFY THE DEFENDANT CLASS.

Plaintiffs' motion to certify the Defendant Class pursuant to Rules 23(a) and 23(b)(1) or (b)(3) of the Federal Rules of Civil Procedure should also be granted because the Defendants meet the requirements of each of these rules. First, joinder would be impracticable because the proposed Defendant Class likely includes close to 12,000 sworn personnel working in the nearly 300 state and local law enforcement agencies across the state. Second, the Defendant Class members will share the same set of defenses available in a challenge to the facial validity state statutes; such defenses would not vary based on individual facts. Because of these common legal defenses, the anticipated defenses of the Attorney General, Sheriffs, and Police Chiefs named by the Complaint ("Named Defendants") will be typical (and, indeed, identical to) the anticipated defenses of the members of the class. The Named Defendants are also adequately equipped to protect the interests of the Defendant Class. Finally, with respect to the requirements of Rule 23(b), because there will be a risk of inconsistent adjudication in the absence of class certification, and because common questions predominate and class certification is a superior means of resolution, this class should be certified under either Rule 23(b)(1) or 23(b)(3).

The Federal Rules of Civil Procedure allow courts to certify a defendant class. Rule 23(a) states that "[o]ne or more members of a class may sue *or be sued*." Fed. R. Civ. P. 23(a) (emphasis added). *See also* Fed. R. Civ. P. 23 advisory committee's note to 2003 amendment (discussing "defendant class actions"). Defendant class certification is particularly common when plaintiffs challenge a law executed by multiple defendants at the local level, such as

sheriffs' departments and local prosecutors. *See, e.g., Autry v. Mitchell*, 420 F. Supp. 967, 969

(E.D.N.C. 1976) (defendant class of "all district attorneys of the State of North Carolina and

other officers and persons who have applied, or in the future may apply, [the constitutionally

questionable statute]"); *Callahan v. Wallace*, 466 F.2d 59, 60 (5th Cir. 1972) (defendant class of

"all justices of the peace, . . . and all sheriffs and state troopers"); *Strawser v. Strange*, 105 F.

Supp. 3d 1323, 1330 (S.D. Ala. 2015) (defendant class of judges and others charged with

enforcing Alabama law); *Monaco v. Stone*, 187 F.R.D. 50, 53 (E.D.N.Y. 1999) ("defendant class

of local criminal court judges"); *Ragsdale v. Turnock*, 734 F. Supp. 1457, 1464 (N.D. Ill. 1990),

*aff'd*, 941 F.2d 501 (7th Cir. 1991) ("defendant class consisting of all State's Attorneys in the

State of Illinois"); *Akron Ctr. For Reprod. Health v. Rosen*, 110 F.R.D. 576, 584 (N.D. Ohio

1986) ("defendant class of municipal prosecutors"): *Harris v. Graddick*, 593 F. Supp. 128, 137–

38 (M.D. Ala. 1984) ("[defendant] class consisting of . . . the probate judge, clerk of the circuit

court, and sheriff of each county"). *See also* Note, *Defendant Class Actions*, 91 Harv. L. Rev.

630, 631 (1978) ("[S]uits brought against local public officials challenging the validity of a state

law, [along with patent cases] are the most typical defendant class actions.") (internal citations

omitted).

## A. The Proposed Defendant Class Satisfies the Prerequisites of Rule 23(a).

### 1) The Defendant Class Satisfies the Numerosity Requirement and Joinder Is Impracticable.

As noted above, numerosity does not demand a threshold number of class members.

Rather, the test is whether it would be impracticable—very difficult or inconvenient—to join all

members. This criterion is also applied more liberally to the certification of defendant classes:

"[I]t is generally more likely that defendant classes will contain fewer class members than

plaintiff classes. . . . The defendant classes have fewer members than the typical plaintiff class."

2 William B. Rubenstein, *Newberg on Class Actions* § 5:6 (5th ed. 2012); *see also Alvarado Partners, L.P. v. Mehta*, 130 F.R.D. 673, 675 (D. Colo. 1990) ("[T]he requirements of Rule 23(a)(1) are applied more liberally when certifying a defendant class than when certifying a plaintiff class.").

    In the instant case, the proposed class of law enforcement agencies across the state charged with the responsibility of enforcing the Disturbing Schools and Disorderly Conduct statutes likely includes close to 12,000 members. The latest available statistics from the Bureau of Justice Statistics suggests that there are approximately 272 state and local law enforcement agencies in South Carolina, employing approximately 11,674 sworn personnel. *See* Brian A. Reaves, *Census of State and Local Law Enforcement Agencies, 2008*, NCJ 233982 (Bureau of Justice Statistics), July 2011, at 15.[7] Like the proposed Plaintiff Class, these members would be readily identifiable through, for instance, minor discovery of state and district payroll records. *See Moodie*, 309 F.R.D. at 376–77.

### 2) Defenses Will Be Common to All Members of the Defendant Class.

    Assessment of the commonality and typicality of claims among defendant class members focuses on "the defendants' anticipated defenses" to plaintiffs' claims. Rubenstein, *supra*, § 5:9. Defendants will have the same set of defenses available to a facial challenge to a state statute; there will be no additional defenses based upon individual facts. *See, e.g., Harris v. Graddick*, 593 F. Supp. at 137 (concluding that, because claim was based on state-wide circumstances, "any defenses to the claim would be state-wide, and would be common and typical for all members of the class"); *Bell v. Disner*, No. 3:14-CV-91, 2015 WL 540552, at *3 (W.D.N.C. Feb. 10, 2015) (finding that the trier of fact in "[a] fraudulent transfer case [ ] simply looks at whether there was

---

[7] *Available at* http://www.bjs.gov/content/pub/pdf/csllea08.pdf.

17

**JA99**

a fraudulent transfer to all the [defendants] that must be repaid, without regard to the individual circumstances of participation in the scheme"). *See also Defendant Class Actions*, *supra*, at 643–44, 647 ("If the class action simply challenges the facial validity of the law, as opposed to the manner in which it is administered or enforced, there is by definition only one issue at stake perfectly common to all the class members. Individual advocacy pertaining to the manner of enforcement is irrelevant.").

### 3)  The Defenses of Named Defendants Are Typical of the Defendant Class.

Like commonality, "[t]he typicality requirement does not mandate that the defenses of the representative parties and the class be completely identical or perfectly coextensive." *Bell*, 2015 WL 540552, at *4. However, in this case, as noted above, it is difficult to imagine how the defenses of the class members could vary at all. Because all of the class members are law enforcement officers charged with enforcing the same law, they inevitably share the same defenses of the law, which will not depend on the personal circumstances of the individual law enforcement personnel. Thus, the claims of the Named Defendants will be typical of the claims of the Defendant Class. *See Bell*, 2015 WL 540552, at *4 ("Because the Class Representatives participated in the same [Ponzi] scheme, they inevitably share the same defenses against liability . . . , which does not depend on the personal circumstances of particular [defendants]."); *Marcera v. Chinlund*, 595 F.2d 1231, 1238–39 (2d Cir. 1979), *vac'd on other grounds*, 99 S.Ct. 2833 (1979) (finding that named defendant's necessity defenses were typical of the kind of defenses that members of the defendant class would raise to defeat a charge that their policies were unconstitutional, even where the named defendant argued that there was "substantial variation" among the class members).

### 4) The Defendants Will Adequately Protect the Interests of the Defendant Class.

Because of the similarity of their defenses, the Named Defendants will adequately represent the interests of the Defendant Class. There is no conflict between Named Defendants and other class members. Since the Attorney General is a Named Defendant in this case, and would be charged with defending the law in any event, there can be little question about the adequacy of his representation.

### B. The Requirements of Rule 23(b)(1) and 23(b)(3) Are Satisfied.[8]

### 1) The Defendant Class Meets the Requirements of Rule 23(b)(1).

Federal Rule of Civil Procedure 23(b)(1)(A) allows a court to certify a class when "prosecuting separate actions by or against individual class members would create a risk of . . . inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class." Rule 23(b)(1)(A) applies "in cases where the party is obliged by law to treat the members of the class alike ([e.g.,] a utility acting toward customers; a government imposing a tax)." *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 614 (1997) (citation omitted).

Here, the prosecution of separate actions would create a risk of inconsistent adjudications. In the absence of class certification, an action brought by plaintiffs against the Named Defendants would not be binding on those law enforcement agencies that were not named in this suit, leaving the members of the Plaintiff Class subject to "incompatible standards of conduct" depending on where they attend school. *See* Fed. R. Civ. P. 23(b)(1)(A). Thus,

---

[8] The Fourth Circuit appears to have precluded the use of Rule 23(b)(2) to certify defendant classes, because (b)(2) requires that "injunctive relief be sought *in favor of* the class." *Paxman v. Campbell*, 612 F.2d 848, 854 (4th Cir. 1980) (internal citation omitted) (emphasis added).

**JA101**

certification of the Defendant Class is appropriate in order to ensure uniformity of the law's application.

### 2) The Defendant Class Meets the Requirements of Rule 23(b)(3).

Federal Rule of Civil Procedure 23(b)(3) allows a court to certify a class when "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." This requirement is composed of two primary elements: the "predominance" of the claims common to the class, and the "superiority" of class action as the method of resolution. *Krakauer v. Dish Network L.L.C.*, 311 F.R.D. 384, 394 (M.D.N.C. 2015) (quoting *Thorn*, 445 F.3d at 319)). The Rule provides a list of "matters pertinent to these findings":

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3).

### (A)    Lack of Interest in Individually Controlling the Defense

Individual class members' interest in controlling the litigation is minimal where potential statutory damages are small. *See, e.g.*, *Krakauer*, 311 F.R.D. at 400; *Mateo-Evangelio v. Triple J Produce, Inc.*, No. 7:14-CV-302-FL, 2016 WL 183485, at *8 (E.D.N.C. Jan. 14, 2016). By the same logic, individual members' interest in controlling the *defense* should be minimal where potential statutory *payout* is small. In the present case, members of the Defendant Class, in their official capacities, have no interest in controlling the defense. The Plaintiff Class seeks only declaratory and injunctive relief, as opposed to money damages, against the Defendant Class, minimizing the interest of the Defendant Class members in controlling the litigation.

20

**JA102**

Furthermore, as those charged with the enforcement of the law, Defendant Class members' only

interest should be in the enforcement of constitutionally sound laws.

### (B)     Absence of Litigation Against Class Members

To the best of Plaintiffs' knowledge, no other litigation is already begun by or against

Defendants on this issue, weighing in favor of Defendant Class certification. Fed. R. Civ. P.

23(b)(3).

### (C)     Desirability of Concentrating the Litigation in the District

The third factor of the 23(b)(3) analysis

> requires the court to "evaluate whether allowing a Rule 23(b)(3) action to proceed
> will prevent the duplication of effort and the possibility of inconsistent results, . . .
> [and] . . . whether the forum chosen . . . represents an appropriate place to settle
> the controversy, given the location of the interested parties, the availability of
> witnesses and evidence, and the condition of the court's calendar."

*Montague v. Dixie Nat. Life Ins. Co.*, No. CIV.A. 3:09-687-JFA, 2010 WL 4156365, at *6

(D.S.C. Oct. 19, 2010) (quoting 7A Charles Alan Wright & Arthur R. Miller, *Federal Practice*

*and Procedure* § 1762 (2d ed. 1986)). In cases where these factors are satisfied, both parties will

benefit from the "economies of time, effort, and expense, and . . . uniformity of decision as to

persons similarly situated." *Id.* (citing *Amchem Products*, 521 U.S. at 615); *see also Thomas v.*

*FTS USA, LLC*, 312 F.R.D. 407 (East. Dist. VA., 2016) at 426. Class certification further serves

the interests of providing "a single proceeding in which to determine the merits of the plaintffs'

claims, and therefore protect[ing] *the defendant* from inconsistent adjudications," *Montague*,

2010 WL 4156365, at *6 (citing *Gunnells v. Healthplan Services, Inc.*, 348 F.3d 417, 427 (4th

Cir. 2003)) (emphasis in original). Diffuse class members also weigh in favor of class

certification. *See Thomas*, 312 F.R.D. at 426 ("[B]ecause potential class members are spread

over the entirety of the United States, it would be very desirable to hear the case in one forum

and thus allow for a more efficient, consolidated resolution of the common issues."). Moreover,

"[i]t is obviously desirable" to keep plaintiffs and defendants "in place" where the activities at the center of the controversy have occurred. *See Good v. Am. Water Works Co., Inc.*, 310 F.R.D. 274, 297 (S.D.W. Va. 2015).

In the present case, the District of South Carolina "represents an appropriate place to settle the controversy[ ] given the location of the interested parties." *Montague*, 2010 WL 4156365, at *6 (quoting Wright & Miller, *supra*, § 1762). All of the activities at the center of this controversy have taken place in South Carolina. The Defendant Class members are diffuse, and reside in every corner of South Carolina. Finally, "[b]ecause all potential class members are South Carolina residents and potential witnesses and evidence is located in South Carolina, this court is a proper forum for this controversy." *Montague*, 2010 WL 4156365, at *6.

### (D)    Unlikelihood of Difficulty in Managing This Class Action

Courts must also take into consideration any challenges posed by certification of a defendant class. Manageability is commonly found in cases where there is a high level of "similarity of factual and legal issues." *Thomas*, 312 F.R.D. at 426. In addition, the ease of ascertaining the membership of the class, such as through "payroll records and employee data," reduces and may even eliminate the difficulty of managing the class. *See Mateo-Evangelio*, 2016 WL 183485, at *8 (finding manageability prong met where class members "were all employed by the same interrelated [ ] employers . . . that maintained payroll records and employee data for all of the [ ] workers . . . for the entire time period covered"). While there may still be some "management issues that arise," courts should remain cognizant of the "inefficient, costly and time consuming alternative"—individual trials in each case, *Good*, 310 F.R.D. at 297, which may involve "enormous redundancy of effort, including duplicative discovery, testimony by the same witnesses in potentially hundreds of actions, and relitigation of many . . . identical[ ] legal

issues." *Thomas*, 312 F.R.D. at 421 (quoting *Gunnells*, 448 F.3d at 424). Certification is appropriate when consolidation would, by contrast, "conserve important judicial resources." *Id.*

Manageability is clearly satisfied here. As argued above, the claims of the Plaintiff Class members are identical, which in turn creates a uniform set of available defenses for the Defendant Class. The Defendant Class is also ascertainable, through such information as "payroll records and employment data." *Mateo-Evangelio*, 2016 WL 183485, at *8. Finally, any management issues that could arise would not be great enough to outweigh the "economies of time, effort, and expense" offered by class action in this case. *Montague*, 2010 WL 4156365, at *6 (citing *Amchem Products*, 521 U.S. at 615).

       **(E)**    **Predominance**

Courts in the Fourth Circuit frequently consider predominance separately from the four factors listed in Rule 23(b)(3). *See., e.g., Moodie*, 309 F.R.D. at 379–81; *Montague*, 2010 WL 4156365, at *5–7; *Thomas*, 312 F.R.D. at 421–26; *Good*, 310 F.R.D. at 296–97. Predominance is similar to the commonality inquiry, except that commonality is "subsumed" by the more stringent predominance requirement, which is "far more demanding." *Gray v. Hearst Commc'ns, Inc.*, 444 F. App'x 698, 700 (4th Cir. 2011) (citing *Amchem Products*, 521 U.S. at 609, 623). This is because "commonality requires little more than *the presence of* common questions of law and fact," *Comer v. Life Ins. Co. of Alabama*, No. C/A 0:08-228-JFA, 2010 WL 233857, at *6 (D.S.C. Jan. 14, 2010) (quoting *Thorn*, 445 F.3d at 319) (emphasis added), rather than a requirement that common questions take precedence over any differences. Like Rule 23(b)(3)(C), the predominance inquiry is animated by the desire to ensure that the class action will "achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated." *Gray*, 444 F. App'x at 701 (quoting *Amchem Products*, 521 U.S.

at 623); *see also Thomas*, 312 F.R.D. at 421; *Good*, 310 F.R.D. at 296. The predominance

inquiry also overlaps with Rule 23(b)(3)(D), because claims common to the class must

predominate for a court to find that "individual issues do not present great difficulties in

managing the class." *Krakauer*, 311 F.R.D. at 400. Accordingly, as the Supreme Court has

observed, "[w]hen a class seeks an indivisible injunction benefitting all its members at once,

there is no reason to undertake a case-specific inquiry into whether class issues predominate or

whether class action is a superior method of adjudicating the dispute. Predominance and

superiority are self-evident." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. at 362–63.

As noted previously, there is only one legal question in this challenge to the facial

validity of the statutes challenged in this case. The purely legal question of the facial

constitutionality of these laws predominates over any other question—indeed, it is unlikely that

there are even colorable "individual" questions in this case. *See Defendant Class Actions*, *supra*,

at 643–44, 647; *compare Matthews v. Buel, Inc.*, No. CA 7:11-162-TMC, 2012 WL 1825273, at

*3 (D.S.C. May 18, 2012) ("[I]f the individual claims were brought, they would present the same

legal question."). That question is "whether the law is so vague that it fails to give a person of

ordinary intelligence fair notice that his contemplated conduct is forbidden by the statute."

*Papachristou*, 405 U.S. at 162. Consequently, common issues clearly predominate.

## CONCLUSION

For the foregoing reasons, the Court should grant Plaintiffs' motion for certification of a

Plaintiff Class under Rules 23(a) and 23(b)(2) and a Defendant Class under Rules 23(a) and

23(b)(1) or (b)(3).

Respectfully Submitted,


s/Susan K. Dunn
SUSAN K. DUNN (Fed. Bar #647)          SARAH HINGER*
American Civil Liberties Union          GALEN SHERWIN*
Foundation of South Carolina           DENNIS D. PARKER*
P.O. Box 20998                         LENORA LAPIDUS*
Charleston, S.C. 29413-0998            American Civil Liberties Union
Tel: (843) 282-7953                    125 Broad Street 18th FL
Fax: (843) 720-1428                    New York, NY 10004
sdunn@aclusc.org                       Tel: 212-519-7882
                                       shinger@aclu.org



*Pro Hac Vice Motions to be submitted

ATTORNEYS FOR PLAINTIFFS

2:16-cv-02794-CWH    Date Filed 09/30/16    Entry Number 28    Page 1 of 2

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON  DIVISION

| | | |
|---|---|---|
| Kenny, et al, | ) | Civil Action No.  2:16-cv-2794-CWH |
| | ) | |
| Plaintiffs, | ) | |
| | ) | MOTION TO DISMISS COMPLAINT |
| v. | ) | AND MOTION TO DISMISS OR STRIKE |
| | ) | CLASS ACTION ALLEGATIONS |
| Wilson, et al, | ) | OF DEFENDANTS WILSON, |
| | ) | CROWE, MOORE, |
| Defendants. | ) | TURNER, AND MORTON |
| _____ | ) | |

The  Defendants  Wilson,  Crowe,  Moore,  Turner  and  Morton  (these  Defendants),  as

named herein, hereby move for dismissal of the Complaint in this case pursuant to Rule 12(b)(6),

FRCP, in that, for the  reasons set forth below, Plaintiffs have failed to state a claim upon which

relief can be granted.  This Motion is also made under Rule (12(b)(1) due to lack of subject

matter jurisdiction to consider the claims referenced in Paragraph number 3, below.   These

Defendants also move to dismiss or strike the class action allegations pursuant to Rules 12(b)(6)

and 12(f):

1.      *Younger* and *O'Shea* abstention forecloses this action. *Younger v. Harris*, 401

U.S. 37 (1971); *O'Shea v. Littleton*, 414 U.S. 499 (1974)..

2.      Plaintiffs lack standing to sue, and this action is not ripe.

3.      Under the *Rooker-Feldman* doctrine (*Washington v. Wilmore*, 407 F.3d 274,

279 (4th Cir.2005)), *Heck v. Humphrey*, 512 U.S. 477 (1994) and res judicata

the claims of any Plaintiff or Plaintiff class member should be dismissed if they

have been convicted of or pleaded guilty to charges of violating §§16-17-420

or 16-17-530.

4.    Plaintiffs have failed to state a class action for a plaintiff or defendant class and such allegations are immaterial under Rule 12(f) and fail to satisfy Rule 23, FRCP.

5.    Sections 16-17-420 and 16-17-530 are not vague or otherwise unconstitutional.

Respectfully submitted,

ALAN WILSON
Attorney General
Federal ID No.10457

ROBERT D. COOK
Solicitor General
Federal ID No. 285
Email: RCook@scag.gov

/s/ J. Emory Smith, Jr.
J. EMORY SMITH, JR.
Deputy Solicitor General
Federal ID No. 3908
Email: ESmith@scag.gov

KEVIN DESMOND MARONEY
Assistant Attorney General
Federal ID No. 12377
Email: dmaroney@scag.gov
Office of the Attorney General
Post Office Box 11549
Columbia, South Carolina 29211
Phone:  (803) 734-3680
Fax:  (803) 734-3677

September 30, 2016

Counsel for Defendants Wilson,
Crowe, Moore, Turner and Morton

USCA4 Appeal: 21-2166     Doc: 18     Filed: 02/11/2022     Pg: 115 of 353

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON  DIVISION

| | | |
|---|---|---|
| Kenny, et al, | ) | Civil Action No.  2:16-cv-2794-CWH |
| | ) | |
| Plaintiffs, | ) | RENEWED |
| | ) | MOTION TO DISMISS COMPLAINT |
| v. | ) | AND MOTION TO DISMISS OR STRIKE |
| | ) | CLASS ACTION ALLEGATIONS |
| Wilson, et al, | ) | OF DEFENDANTS WILSON, |
| | ) | CROWE, HANSHAW[1], |
| Defendants. | ) | TURNER, AND MORTON |
| _____ | ) | |

The  Defendants  Alan  Wilson,  Lance  Crowe,  Michael  D.  Hanshaw  (see  footnote  1,
below),  M.  Bryan  Turner  and  A.  Keith  Morton  (these  Defendants),  as  named  herein,  subject  to
the  Opinion  of  the  Court  of  Appeals  for  the  Fourth  Circuit,  March  15,  2018,  in  this  case  (Dkt.
Entry  No.  102),  hereby  renew  their  Motion  to  Dismiss  the  Complaint  in  this  case  pursuant  to
Rule  12(b)(6),  FRCP  (Dkt.  Entry  No.  28  for  Motion  &  Memo  &  Dkt.  Entry  No.  77  for  Reply)   in
that,  for  the   reasons  set  forth  below,  Plaintiffs  have  failed  to  state  a  claim  upon  which  relief  can
be  granted  except  that  these  Defendants  no  longer  maintain  their  abstention  defense  asserted  in
the  original  motion  to  dismiss.   This  renewed  Motion  also  includes  the  previous  ground  of  Rule
(12(b)(1)  due  to  lack  of  subject  matter  jurisdiction  to  consider  the  claims  referenced  in  Item
number  2,  below.   These  Defendants  also  renew  their  motion  to  dismiss  or  strike  the  class  action
allegations  pursuant  to  Rules  12(b)(6)  and  12(f).   The  renewed  grounds  for  this  motion  include,
subject  to  the  Opinion  of  the  Court  of  Appeals,  the  following.

      1.        Plaintiffs lack standing to sue, and this action is not ripe.

---

[1] The Defendant Michael D. Hanshaw has been substituted by the Court of Appeals (Order, April 7, 2017) for the former Defendant, Steve Moore.

**JA110**

2.      Under the *Rooker-Feldman* doctrine (*Washington v. Wilmore*, 407 F.3d 274, 279 (4th Cir.2005)), *Heck v. Humphrey*, 512 U.S. 477 (1994) and res judicata the claims of any Plaintiff or Plaintiff class member should be dismissed if they have been convicted of or pleaded guilty to charges of violating §§16-17-420 or 16-17-530.

3.      Plaintiffs have failed to state a class action for a plaintiff or defendant class and such allegations are immaterial under Rule 12(f) and fail to satisfy Rule 23, FRCP.

4.      Sections 16-17-420 and 16-17-530 are not vague or otherwise unconstitutional. This renewed Motion is based upon and incorporates by reference all grounds and arguments included in the previously filed memoranda referenced above and any oral argument that may be heard by this Court.

This Court previously granted the original Motion to Dismiss only on the ground of lack of standing.  In its Opinion, the Court of Appeals stated as follows: "Because S.P., D.S., and Nesmith satisfy the injury-in-fact requirement, we need not decide whether Kenny or Girls Rock have also established an injury in fact. Whether the claims alleged by these plaintiffs survive further analysis is a matter we leave to the district court."  Dkt. Entry No. 102 at page 18, footnote 4.  Any grounds to the original Motion to Dismiss not decided by the Court of Appeals remain pending before this Court and are hereby renewed by this Motion.

Respectfully submitted,

ALAN WILSON
Attorney General
Federal ID No.10457

[Signature block continues next page]

ROBERT D. COOK
Solicitor General
Federal ID No. 285
Email: RCook@scag.gov

/s/ J. Emory Smith, Jr.
J. EMORY SMITH, JR.
Deputy Solicitor General
Federal ID No. 3908
Email: ESmith@scag.gov

KEVIN DESMOND MARONEY
Assistant Attorney General
Federal ID No. 12377
Email: dmaroney@scag.gov
Office of the Attorney General
Post Office Box 11549
Columbia, South Carolina 29211
Phone:  (803) 734-3680
Fax:  (803) 734-3677

Counsel for Defendants Wilson,
Crowe, Hanshaw, Turner and Morton

April 19, 2018

**JA112**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON  DIVISION

| | | |
|---|---|---|
| Kenny, et al, | ) | Civil Action No.  2:16-cv-2794-MBS |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | **ANSWER OF DEFENDANTS** |
| Wilson, et al, | ) | **WILSON, HANSHAW[1],** |
| | ) | **CROWE, TURNER,** |
| Defendants. | ) | **AND MORTON** |
| | ) | |

Subject to their Motion to Dismiss Complaint and Motion to Dismiss or Strike Class Action Allegations, their renewal of those motions, and the Opinion of the Court of Appeals for the Fourth Circuit, 885 F.3d 280 (March 15, 2018), the Defendants Alan Wilson, Lance Crowe, Michael D. Hanshaw (see footnote 1 below), M. Bryan Turner and A. Keith Morton (these Defendants), as named herein, answering the Complaint herein, allege the following:

**FOR A FIRST DEFENSE**

1.      These Defendants deny each and every allegation of the Complaint not hereinafter specifically admitted.

2.      As to Paragraph 1 of the Complaint, these Defendants admit only that Plaintiffs challenge S.C. Code Ann. §16-17-410.  They crave reference to the statute, deny any allegations inconsistent therewith and deny that the statute is unconstitutional.

3.      As to Paragraph 2, these Defendants crave reference to the statute, deny any allegations inconsistent therewith, and deny that the statute "creates an impossible standard" or chills students.  They deny that the statute is unconstitutional.

---

[1] The Defendant Michael D. Hanshaw has been substituted by the Court of Appeals (Order, April 7, 2017) for the former Defendant, Steve Moore.

4.      As to the first sentence of Paragraph 3, these Defendants admit only that the statute was enacted approximately 100 years ago and deny the remainder of that sentence. They lack knowledge or information sufficient to form a belief about the truth of the allegations as to the second sentence because it does not specify a time frame. They deny any suggestion in the second sentence that the statute is unconstitutional. Defendants lack knowledge or information sufficient to form a belief about the truth of the last sentence of this Paragraph.

5.      As to Paragraph 4, these Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations of this Paragraph. The Plaintiffs allege a probability for arrest, but on information and belief, they have not provided tables showing probability. They deny that arrest data is, itself, a predictor for the future arrest of any individual student.

6.      These Defendants deny the first sentence of Paragraph 5. They lack knowledge or information sufficient to form a belief about the truth of the allegations of the last sentence because the scope of that sentence is not explained.

7.      They deny the first two sentences of Paragraph 6. As to the third sentence of that Paragraph, they admit only that the Marcelin declaration contains a figure of two students referred to the Department of Juvenile Justice during the period 2010 school year – March, 2016, but they deny that the figures are evidence that the statutes are unconstitutional. As to the fourth sentence, they lack knowledge or information sufficient to form a belief about the truth of the allegations of the sentence as written

8.      As to Paragraph 7, they crave reference to the school codes of conduct and deny any allegations inconsistent therewith. They deny any allegation that the Codes support the claims in this case.

9.      These Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations of Paragraphs 8 and 9.

10.      As to Paragraph 10, they deny the first sentence as to those individual Plaintiffs who are no longer enrolled in a school or college.  Subject to the Opinion of the Court of Appeal in this case and their Motion to Dismiss, these Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations that the other Plaintiffs face an ongoing risk of arrest or referral.  As to the second sentence, they admit only that Plaintiffs allege that they seek relief but deny that the statutes are unconstitutional and that they are entitled to the relief alleged.

11.      As to the first sentence of Paragraph 11, they deny, on information and belief, that the Plaintiffs S.P. and D.S. are still attending a South Carolina school.  As to the second sentence, they admit only that Plaintiffs allege that they seek relief but deny that they are entitled to the relief alleged.

12.      As to Paragraph 12, they admit only that Plaintiffs allege that they seek relief under 42 U.S.C. §1983, but deny that they are entitled to the relief alleged.

13.      These Defendants admit Paragraphs 13, 14 and 15 but deny that Plaintiffs are entitled to any relief against them.

14.      They admit the second sentence of Paragraph 16, on information and belief.  They admit the first sentence on information and belief as of the time of the filing of the Complaint. These Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations as to where Ms. Kenny resides now, and note that she is older now than as alleged.

15.      They admit the first sentence of Paragraph 17 and allege, on information and belief, that the charges were dismissed.  As to the second sentence, the Defendants lack

knowledge or information sufficient to form a belief about the truth of the allegations but deny that Ms. Kenny has alleged any risk of prosecution that meets constitutional standards for standing.

16.    They admit the allegations of Paragraph 18 on information and belief as of the time of the filing of the Complaint, but these Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations as to where D.S. resides now and deny on information and belief that she is enrolled in a South Carolina school.

17.    They admit the first sentence of Paragraph 19, but allege that the charge has been dismissed.  As to the second sentence, subject to the Opinion of the Court of Appeals, the Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations but deny that D.S. has any alleged any risk of prosecution that meets constitutional standards for standing and allege, on information and belief, that she is no longer enrolled in a South Carolina school.

18.    They admit the allegations of the first two sentences of Paragraph 20 on information and belief only as of the time of the filing of the Complaint.  These Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations as to where S.P. resides now, or where she was enrolled in the 2016-2017 school year (third sentence).  They deny on information and belief that she is enrolled now in a South Carolina school. Subject to the Opinion of the Court of Appeals, they deny that S.P. has standing.    These Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations of the last two sentences of Paragraph 21.

19.    They admit the allegations of the first sentence of Paragraph 21 on information and belief.    As to the second sentence, subject to the Opinion of the Court of Appeals, these

JA416

Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations but deny that S.P. has any alleged any risk of prosecution that meets constitutional standards for standing and allege, on information and belief, that she is no longer enrolled in a South Carolina school.

20.     Defendants admit the allegations of Paragraph 22 on information and belief.

21.     Defendants admit only that Girls Rock sues as alleged in the first two sentences of Paragraph 23, but they deny that Girls Rock has standing to sue or is entitled to relief and deny the third sentence of that Paragraph.

22.     Defendants admit the first sentence of Paragraph 24 on information and belief as of the time of the filing of the Complaint, but these Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations of as to where Mr. Nesmith resides now and whether he is enrolled in a South Carolina college now.

23.     They admit the first sentence of Paragraph 25 on information and belief, but allege that the charges have since been dismissed.   As to the second sentence, subject to the Opinion of the Court of Appeals, these Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations but deny that Mr. Nesmith has any alleged any risk of prosecution that meets constitutional standards for standing and deny this allegation if he is no longer enrolled in a South Carolina college.

24.     As to the first sentence of Paragraph 26, they admit only that the Defendant Wilson is sued in his official capacity, but deny that Plaintiffs are entitled to relief as to him.  As to the remainder of that Paragraph other than the last sentence, these Defendants crave reference to the cited statutes and constitutional provision and deny any allegations inconsistent therewith. As to the last sentence of this Paragraph, they admit only that the Defendant Wilson is a person

under §1983 and that he is the State Attorney General and acts within the scope of his authority under State law, but they deny that Plaintiffs have stated a claim against him upon which relief can be granted.

25.    They admit Paragraphs 27 – 35, inclusive, on information and belief subject to the jurisdictional limits of those Defendants and deny that Plaintiffs are entitled to relief as to them.

26.    They admit Paragraph 36 except that Michael D. Hanshaw is now the interim Chief of Police for Simpsonville, and they deny that his jurisdiction extends to schools outside that City and deny that Plaintiffs are entitled to relief as to him.

27.    They admit Paragraphs 37 – 39, inclusive, except that they deny that the jurisdiction of the defendants extends to schools outside their respective cities and deny that Plaintiffs are entitled to relief as to them.

28.    As to the first sentence of Paragraph 40, they admit only that their duties under these statutes are as provided by South Carolina law and deny any inconsistencies with South Carolina law.    They deny the second sentence of this Paragraph.  They deny that Plaintiffs are entitled to relief against them alleged in the third sentence.

29.    As to Paragraphs 41, 42, 43 and 44, they crave reference to the referenced statutes and cases and deny any allegations inconsistent therewith.

30.    As to Paragraph 45, these Defendants crave reference to the referenced cases and deny any allegations inconsistent therewith.

31.    As to Paragraph 46, they crave reference to the statute and deny any allegation inconsistent therewith.

32.    As to Paragraphs 47 and 48, these Defendants crave reference to the statute and case law construing it and deny any allegations inconsistent therewith.

33.     As to Paragraph 49, these Defendants crave reference to the statute quoted and deny any inconsistency therewith.

34.     As to Paragraph 50, they crave reference to the statute and case law construing it and deny any inconsistency therewith.

35.     As to Paragraphs 51 - 54, inclusive, these Defendants crave reference to the cited Opinions of the Office of the Attorney General and deny any allegations inconsistent therewith.

36.     These Defendants admit Paragraphs 55 and 56.

37.     These Defendants are lack knowledge or information sufficient to form a belief about the truth of the allegations of Paragraphs 57 – 69, inclusive.

38.     They admit Paragraph 70 on information and belief.

39.     As to Paragraph 71, they are lack knowledge or information sufficient to form a belief about the truth of the allegations of the first sentence as worded.  They admit the second sentence of that paragraph.

40.     As to Paragraph 72, they admit only that the Marcelin declaration contains a figure of two students referred to The Department of Juvenile Justice during the period 2010 school year – March, 2016, but they deny that the figures are evidence that the statutes are unconstitutional.

41.     They admit Paragraph 73 on information and belief as to the period 2010-2016 only.

42.     They lack knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 74.

43.     As to Paragraph 75, they admit only that Plaintiffs have an exhibit that shows an increase in referrals to DJJ in the 2014-15 school year over the 2012-13 school year, but the data

shows that DJJ referrals decreased in the 2013-14 school year.  Complete data for the 2015-2016 school year has not been reported by Plaintiffs.

44.     The first sentence of Paragraph 76 does not refer to the period for which rates are alleged to have increased, and therefore, these Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations.  They deny the second sentence because, on information and belief, the data Plaintiffs have produced shows only some raw numbers and does not contain sufficient information to make predictions as to likelihood of charges among the student population.

45.     They lack knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 77 in that this Paragraph does not specify the counties or the period of time.

46.     As to the first sentence of Paragraph 78, these Defendants allegations about how charges "will be" handled in the future which is unknown.  They lack knowledge or information sufficient to form a belief about the truth of the allegations of the remainder of Paragraph 78 because it does not specify the period of time, and Plaintiffs have produced an exhibit only containing data about prosecutions for the 2010-2011 school year through March, 2016.

47.     These Defendants deny Paragraph 79.

48.     As to Paragraph 80, these Defendants crave reference to school codes of conduct and deny any allegations inconsistent therewith.

49.     These Defendants deny Paragraph 81.

50.     They lack knowledge or information sufficient to form a belief about the truth of the allegations of Paragraphs 82, 83, 84 and 85.

51.    As to Paragraph 86, these Defendants crave reference to the incident report and deny any allegations inconsistent therewith.  They allege that the charges against Plaintiff Kenny have been dismissed.

52.    They lack knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 87.

53.    As to Paragraph 88, they admit only that Plaintiff Nesmith was arrested and charged with disturbing the schools, but they lack knowledge or information sufficient to form a belief about the truth of the allegations of that paragraph.

54.    They lack knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 89.

55.    They lack knowledge or information sufficient to form a belief about the truth of the allegations of the first sentence of Paragraph 90.  They admit the second and third sentences of that paragraph.

56.    They lack knowledge or information sufficient to form a belief about the truth of the allegations of Paragraphs 91, 92 and 93.

57.    As to Paragraph 94, these Defendants admit only that K.B. was charged with disturbing the schools and adjudicated delinquent as alleged in the first sentence.  They crave reference to the police incident report.  They lack knowledge or information sufficient to form a belief about the truth of the allegations of the remainder of the paragraph.

58.    As to Paragraph 95, these Defendants crave reference to her sentencing records and deny any allegations inconsistent therewith.   They lack knowledge or information sufficient to form a belief about the truth of the allegations of the remainder of that Paragraph.

59.    These Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 96.

60.    These Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 97 but crave reference to her sentencing records and incident report and deny any allegations inconsistent therewith.

61.    They lack knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 98.

62.    They lack knowledge or information sufficient to form a belief about the truth of the allegations of Paragraphs 99 and 100 except that they admit only that S.P. was charged with disorderly conduct and, on information and belief, was adjudicated delinquent.  Subject to the Opinion of the Court of Appeals, they deny that S.P. lacks standing now because, on information and belief, she is no longer enrolled in a South Carolina school.

63.    These Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations of Paragraphs 101 and 102 except that they crave reference to the records regarding the referenced charge against D.S. and its adjudication and dismissal and deny allegations inconsistent therewith.  Subject to the Opinion of the Court of Appeals, they deny that D.S. has standing now because, on information and belief, she is no longer enrolled in a South Carolina school.

64.    These Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations of Paragraphs 103, 104 and 105 except that they acknowledge that Plaintiffs have produced an affidavit about Girls Rock.

65.    They deny Paragraphs 106, 107 and 108.

66.    As to Paragraph 109, these Defendants admit only that D.S. and S.P. have brought this action.  They deny, on information and belief, that S.P. and D.S. are in school, and subject to the Opinion of the Court of Appeals, these Defendants deny that they have standing to bring this action.  These Defendants deny that S.P. and D.S. may bring this action on behalf of a class, and deny that the class faces the alleged risk.

67.    As to Paragraph 110, these Defendants admit only the second sentence.  They deny the third sentence.  As to the first sentence, they admit only that the proposed class is numerous but deny that the proposed class meets standards for certification under Rule 23, FRCP.

68.    These Defendants deny Paragraphs 111 and 112.

69.    As to Paragraph 113, they admit only the last sentence.  They deny the remainder of this Paragraph.

70.    These Defendants deny Paragraph 114.

71.    As to Paragraph 115, these Defendants admit only that Plaintiffs have brought this action against these Defendants individually and as representatives of a proposed class, but deny that the proposed class meets standards for certification under Rule 23, FRCP.

72.    As to Paragraph 116, they admit only that the proposed class is numerous, but deny that it meets standards for certification under Rule 23, FRCP.  They crave reference to public records as to the exact number of law enforcement agencies and their personnel, and deny any allegations inconsistent therewith. These Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations of the last sentence because it does not refer to any particular school year.

73.    They deny Paragraph 117.

74.     They deny Paragraph 118 except that they admit only that Plaintiffs allege facial claims of unconstitutionality against the referenced statutes, but deny that those allegations have merit.

75.     These Defendants deny Paragraphs 119 and 120.

76.      Paragraph 121 is a cumulative paragraph to which no response is necessary.  To the extent that, *arguendo,* a response is necessary, these Defendants incorporate by reference their answers to the previous allegations and paragraphs of the Complaint and reassert them.

77.     These Defendants deny Paragraph 122.

78.      Paragraph 123 is a cumulative paragraph to which no response is necessary.  To the extent that, arguendo, a response is necessary, these Defendants incorporate by reference their answers to the previous allegations and paragraphs of the Complaint and reassert them.

79.     These Defendants deny Paragraph 124.

80.      These Defendants deny that Plaintiffs are entitled to any of the Relief in the Prayer for Relief.

**FOR A SECOND DEFENSE**

81.     Subject to the Opinion of the Court of Appeals, these Defendants reserve all of their arguments that Plaintiffs lack standing to bring this suit against any of these Defendants and that this action is not ripe.

82.     They allege on information and belief, that the Plaintiffs S.P., D.S. and Kenny do not have standing to sue because they are no longer in school.

83.     If the Defendant Nesmith is no longer enrolled and attending a college, he lacks standing to sue.

84.     Girls Rock lacks standing to sue.

85.     No Plaintiff has standing to sue any law enforcement officer if he or she is not enrolled in a school or college in his jurisdiction.

86.     No Plaintiff has standing to sue any law enforcement officer who was not involved in his or her arrest.

### FOR A THIRD DEFENSE

85.     Plaintiffs have failed to state a class action for a plaintiff or defendant class and such allegations are immaterial under Rule 12(f) and fail to satisfy Rule 23, FRCP.

### FOR A FOURTH DEFENSE

86.     S.C. Code Ann. §§16-17-420 and 16-17-530 are not vague or otherwise unconstitutional.

### FOR A FIFTH DEFENSE

87.     The law enforcement officer defendants are not necessary parties to this action *See* Rule 21, FRCP.

### FOR A SIXTH DEFENSE

88.     Under the *Rooker-Feldman* doctrine (*Washington v. Wilmore*, 407 F.3d 274, 279 (4th Cir.2005)), *Heck v. Humphrey*, 512 U.S. 477 (1994) and res judicata the claims of any Plaintiff or Plaintiff class member should be dismissed if they have been convicted of or pleaded guilty to charges of violating §§16-17-420 or 16-17-530.

### FOR A SEVENTH DEFENSE

89.     Plaintiffs have failed to state a claim upon which relief can be granted.

### FOR AN EIGHTH DEFENSE

90.     Plaintiffs are not entitled to costs and attorneys' fees under 42 U.S.C. § 1988.

WHEREFORE, having fully answered the Plaintiffs' Complaint, these Defendants pray as follows:

1.      That judgment for these Defendants be entered as to the Complaint and that the relief sought by the Plaintiffs be denied.

2.      For such further relief as the Court deems just and proper.

ALAN WILSON
Attorney General
Federal ID No.10457

ROBERT D. COOK
Solicitor General
Federal ID No. 285
Email: BCook@SCAG.gov

/s/ J. Emory Smith, Jr.
J. EMORY SMITH, JR.
Deputy Solicitor General
Federal ID No. 3908
Email: ESMITH@SCAG.GOV

KEVIN DESMOND MARONEY
Assistant Attorney General
Federal ID No. 12377
Email: dmaroney@scag.gov

Office of the Attorney General
Post Office Box 11549
Columbia, South Carolina 29211
Phone: (803) 734-3680
Fax: (803) 734-3677

Counsel for Defendants

April 19, 2018                            Wilson, Crowe, Hanshaw, Turner and Morton

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| NIYA KENNY; TAUREAN NESMITH; GIRLS ROCK CHARLESTON, INC.; D.S., by and through her next of kin Juanita Ford, and S.P., by and through her next of kin Melissa Downs, on behalf of themselves and all others similarly situated,<br><br>               Plaintiffs,<br><br>        v.<br><br>ALAN WILSON in his official capacity as Attorney General of South Carolina; J. ALTON CANNON, JR. in his official capacity as the Sheriff of Charleston County, SC; GREGORY MULLEN in his official capacity as the Chief of the Police Department of the City of Charleston, SC; EDDIE DRIGGERS JR., in his official capacity as the Chief of the Police Department of the City of North Charleston, SC; CARL RITCHIE in his official capacity as the Chief of the Police Department of the City of Mt. Pleasant, SC; LEON LOTT in his official capacity as the Sheriff of Richland County, SC; W.H. HOLBROOK in his official capacity as the Chief of the Police Department of the City of Columbia, SC; STEVE LOFTIS in his official capacity as the Sheriff of Greenville County, SC; KEN MILLER in his official capacity as the Chief of the Police Department of the City of Greenville, SC; LANCE CROWE in his official capacity as the Chief of the Police Department of the City of Travelers Rest, SC; MICHAEL D. HANSHAW in his official capacity as Interim Chief of the Police Department of the City of Simpsonville, SC; M. BRYAN TURNER in his official capacity as the Chief of the Police Department of the City of Mauldin, SC; DAN REYNOLDS in his official capacity as the Chief of the Police Department of the City of Greer, SC; A. KEITH MORTON in his official capacity as the Chief of the Police Department of the City of Fountain Inn, SC; on behalf of themselves and others similarly situated,<br><br>               Defendants. | CASE NUMBER: 2:16-cv-02794-MBS<br><br><br><br><br><br><br>CONSENT ORDER AS TO MOTIONS TO DISMISS OF LAW ENFORCEMENT DEFENDANTS AND PLAINTIFFS' MOTION FOR DEFENDANT CLASS CERTIFICATION |

Before the Court are the Plaintiffs Niya Kenny; Taurean Nesmith; Carolina Youth Action Project formerly known as Girls Rock, Inc.; D.S., by and through her next of kin Juanita Ford, and S.P., by and through her next of kin Melissa Downs (collectively, hereinafter, "Plaintiffs"), and Defendants J. Alton Cannon, Luther Reynolds, Reginald Burgess, Carl Ritchie, Leon Lott, W.H. Holbrook, Johnny Mack Brown, Ken Miller, Lance Crowe, Michael D. Hanshaw, M. Bryan Turner, and A. Keith Morton (collectively, hereinafter, "Law Enforcement Defendants"), by and through their undersigned respective counsel. The following agreement is entered into by counsel for the parties. The basis for this agreement is as follows:

1. Defendant Wilson, in his official capacity as Attorney General of South Carolina, concedes that where Plaintiffs have established an injury conferring standing, that injury meets the requirements of Article III standing as to traceability and redressability. Subject to the opinion of the Court of Appeals, Defendant Wilson reserves all other arguments including injury.

2. The Law Enforcement Defendants acknowledge service of process in their official capacities as parties to this litigation. It is acknowledged that the Law Enforcement Defendants have a duty to enforce the law. However, the Law Enforcement Defendants do not control the state legislature and the statutes at issue in this case are state statutes.

3. The Plaintiffs and the Defendants both understand that there is currently a bill in the S.C. Legislature which, if passed, will make changes to the current Disturbing Schools law.

4. The Plaintiffs agree to stay all proceedings against the Law Enforcement Defendants and the Law Enforcement Defendants agree to abide by any order or other precedent of this Court and the United States Court of Appeals for the Fourth Circuit regarding the

constitutionality of S.C. Code Ann. §§ 16-17-420 and 16-17-530, and their enforceability, including, but not limited to, any form of injunctive relief.

5.  The Plaintiffs agree that the Law Enforcement Defendants shall not be obligated to further defend this action or to file any further responsive pleadings.

6.  This agreement shall encompass any Law Enforcement officers, agencies or departments that the Plaintiffs may later try to add as parties.

7.  The Law Enforcement Defendants withdraw all pending renewed motions to dismiss and all objections to Plaintiff Class Certification.

8.  Plaintiffs withdraw their Motion for Defendant Class Certification.

9.  Plaintiffs agree to dismiss all claims against Law Enforcement Defendants with prejudice pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(ii) upon a final judgment on claims against remaining Defendants and following any appeal, which Plaintiffs reserve the right to make.

10. The Plaintiffs agree that if they prevail in this litigation they will attempt to seek attorneys' fees and costs under 42 U.S.C. § 1988 only against defendants other than the Law Enforcement Defendants and will not seek any fees or costs relating to this litigation from Law Enforcement Defendants.  The Law Enforcement Defendants agree they will not attempt to seek attorneys' fees or costs relating to this litigation from Plaintiffs, and further agree that any motions for attorneys' fees now pending in the District Court shall be withdrawn. It is agreed that between the plaintiffs and the Law Enforcement Defendants, each party shall bear its own costs.

**JA129**

WHEREFORE, IT IS HEREBY ORDERED THAT this action shall now be STAYED as to the Law Enforcement Defendants, and all parties to this litigation consent to the stay.


/s/ Margaret B. Seymour
Honorable Margaret B. Seymour
Senior United States District Court Judge


Dated: May 14, 2018
Charleston, South Carolina

WE SO AGREE:

 *S/ Susan K. Dunn*
Susan K. Dunn, Fed. ID: 00647
American Civil Liberties Union Foundation of South Carolina
Post Office Box 20998
Charleston, South Carolina 29413
(843) 282-7953
sdunn@aclu.org

Sarah Hinger
Gallen Sherwin
Dennis D. Parker
Lenora Lapidus
American Civil Liberties Union Foundation
125 Broad Street, 18th Floor
New York, New York 10004
(212) 519-2500
shinger@aclu.org
gsherwin@aclu.org
dparker@aclu.org
llapidus@aclu.org


*Counsel for Plaintiffs*


WE AGREE:

 *S/ J. Emory Smith, Jr.*
J. Emory Smith, Jr., Fed. ID 03908
South Carolina Attorney General's Office
Post Office Box 11549
Columbia, South Carolina 29211
(803) 734-3680
esmith@scag.gov

*Counsel for Defendants Alan Wilson,*
*Lance Crowe, Michael D. Hanshaw, M. Bryan Turner,*
*and A. Keith Morton*


[*Signatures Continue on the Following Page*]

5

**JA131**

 *S/ Robin L. Jackson*
Robin L. Jackson, Fed. ID 07465
Sandra J. Senn
Senn Legal, LLC
Post Office Box 12279
Charleston, South Carolina 29422
(843) 556-4045
robin@sennlegal.com
sandy@sennlegal.com

*Counsel for Defendants J. Alton Cannon, Jr.,*
*Gregory Mullen and Eddie Driggers, Jr.*


 *S/ Andrew F. Lindemann*
Andrew F. Lindemann
Lindemann, Davis & Hughes, P.A.
5 Calendar Court, Suite 202
Post Office Box 6923
Columbia, South Carolina 29260
Direct Dial: 803-881-8921
Email: andrew@ldh-law.com

*Counsel for Defendant Carl Ritchie*



 *S/ Robert D. Garfield*
Robert D. Garfield
Post Office Box 1149
Columbia, South Carolina 29202
(803) 999-1225
robert@crowelafave.com

*Counsel for Defendant Leon Lott*


[*Signatures Continue on the Following Page*]

*S/ William Michael Hemlepp, Jr.*
William Michael Hemlepp, Jr.
City of Columbia Attorney's Office
Post Office Box 667
Columbia, South Carolina 29202
(803) 737-4242
wmhemlepp@columbiasc.net

*Counsel for Defendant W.H. Holbrook*


*S/ Anne R. Culbreath*
Anne R. Culbreath
Willson Jones Carter and Baxley
872 S. Pleasantburg Drive
Greenville, South Carolina 29607
(864) 672-3713
arculbreath@wjlaw.net

*Counsel for Defendant Steve Loftis*


*S/ Michael S. Pitts*
Michael S. Pitts
Logan M. Wells, Fed. ID 10714
City of Greenville Office of the City Attorney
Post Office Box 2207
Greenville, South Carolina 29602
mpitts@greenvillesc.gov
lmwells@greenvillesc.gov

*Counsel for Defendant Kenneth Miller*

**JA133**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON  DIVISION

| | | |
|---|---|---|
| Kenny, et al, | ) | Civil Action No.  2:16-cv-2794-MBS |
| | ) | |
| Plaintiffs, | ) | MOTION OF DEFENDANT WILSON |
| | ) | FOR LEAVE TO SUBMIT |
| v. | ) | SUPPLEMENTAL AUTHORITY |
| | ) | SUPPORTING RENEWED |
| Wilson, et al, | ) | MOTION TO DISMISS COMPLAINT |
| | ) | AND MOTION TO DISMISS OR STRIKE |
| Defendants. | ) | CLASS ACTION ALLEGATIONS |
| | ) | |

The Defendant Alan Wilson, respectfully requests leave to submit the attached copy of

Act 182, 2018 S.C. Acts (effective date May 17, 2018 – Attachment A), and the brief argument

below, in support of his renewed Motion to Dismiss (Dkt. Entry No. 117), This Act amends the

Disturbing the Schools statute, S.C. Code Ann. §16-17-425, so as to moot the current challenge

to that law.   The new Act imposes criminal penalties only on non-students except for threats by

students to take the life of or to inflict bodily harm upon another.

> "[T]he doctrine of mootness constitutes a part of the constitutional limits of federal court jurisdiction," *Simmons v. United Mortg. & Loan Inv.*, LLC, 634 F.3d 754, 763 (4th Cir. 2011) (alteration in original) (internal quotation marks omitted) (quoting *United States v. Hardy*, 545 F.3d 280, 283 (4th Cir. 2008)), which extends only to actual cases or controversies, U.S. Const. art. III, § 2. When a case or controversy ceases to exist—either due to a change in the facts or the law—"the litigation is moot, and the court's subject matter jurisdiction ceases to exist also*." S.C. Coastal Conservation League*, 789 F.3d at 482. Put differently, "a case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Powell v. McCormack*, 395 U.S. 486, 496 (1969); *see also Arizonans for Official English v. Arizona,* 520 U.S. 43, 68 n.22 (1997) ("Mootness has been described as 'the doctrine of standing set in a time frame: The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness).' " (quoting U.S. Parole *Comm'n v. Geraghty*, 445 U.S. 388, 397 (1980)).

*Porter v. Clarke*, 852 F.3d 358, 363 (4th Cir. 2017)

Because the statute is now amended so as to exclude the claims of the Plaintiffs, their claims for injunctive relief as to §16-17-425 are now moot. Although the Act does not apply to prior convictions, the complaint does not allege that any Plaintiffs have been adjudicated delinquent under the former law.   The Complaint alleges that three of the named Plaintiffs, Kenny, Nesmith and D.S,   were charged under the former statute, and the Complaint acknowledges that the charges against D.S. were dismissed (Complaint, ¶ 102).   Therefore, his claim as to records is now moot.  Because the Complaint does not allege that Kenny and Nesmith were adjudicated delinquent nor has the Complaint been amended to say that they were, their records claims should be dismissed as well on grounds of mootness.

For the above reasons and those grounds previously asserted in his Renewed Motion to Dismiss, the Attorney General respectfully requests that this action be dismissed.

<div style="margin-left: 50%">

Respectfully submitted,

ALAN WILSON
Attorney General
Federal ID No.10457

ROBERT D. COOK
Solicitor General
Federal ID No. 285
Email: RCook@scag.gov

/s/ J. Emory Smith, Jr.
J. EMORY SMITH, JR.
Deputy Solicitor General
Federal ID No. 3908
Email: ESmith@scag.gov


[Signature block continues next page]

</div>

JA135

KEVIN DESMOND MARONEY
Assistant Attorney General
Federal ID No. 12377
Email: dmaroney@scag.gov
Office of the Attorney General
Post Office Box 11549
Columbia, South Carolina 29211
Phone:  (803) 734-3680
Fax:  (803) 734-3677

June 6, 2018                                    Counsel for Defendant Wilson

**Kenny v. Wilson**
2:16-cv-2794-MBS

# ATTACHMENT A

To Motion For Leave to Submit Supplemental Authority

**Act 182, 2018 S.C. Acts (effective date May 17, 2018)**

<div align="center">

**South Carolina General Assembly**
122nd Session, 2017-2018

</div>

Download This Bill in Microsoft Word format

~~Indicates Matter Stricken~~
Indicates New Matter

**A182, R198, S131**

**STATUS INFORMATION**

General Bill
Sponsors: Senators McLeod, Hutto, Jackson, Kimpson, M.B. Matthews, Fanning, Shealy, Senn and Malloy
Document Path: l:\council\bills\agm\18989wab17.docx
Companion/Similar bill(s): 3794

Introduced in the Senate on January 10, 2017
Introduced in the House on April 18, 2017
Last Amended on April 5, 2017
Passed by the General Assembly on May 10, 2018
Governor's Action: May 17, 2018, Signed

Summary: Disturbing schools

**HISTORY OF LEGISLATIVE ACTIONS**

```
    Date      Body    Action Description with journal page number
----------------------------------------------------------------------------
 12/13/2016   Senate  Prefiled
 12/13/2016   Senate  Referred to Committee on Judiciary
  1/10/2017   Senate  Introduced and read first time (Senate Journal-page 77)
  1/10/2017   Senate  Referred to Committee on Judiciary
                        (Senate Journal-page 77)
   2/7/2017   Senate  Referred to Subcommittee: Hutto (ch), Timmons, Rice
  3/22/2017   Senate  Committee report: Favorable with amendment Judiciary
                        (Senate Journal-page 6)
  3/23/2017           Scrivener's error corrected
   4/5/2017   Senate  Amended (Senate Journal-page 29)
   4/5/2017   Senate  Read second time (Senate Journal-page 29)
   4/5/2017   Senate  Roll call Ayes-33  Nays-8 (Senate Journal-page 29)
   4/6/2017           Scrivener's error corrected
   4/6/2017   Senate  Read third time and sent to House
                        (Senate Journal-page 114)
  4/18/2017   House   Introduced and read first time (House Journal-page 5)
  4/18/2017   House   Referred to Committee on Judiciary (House Journal-page 5)
   5/3/2018   House   Committee report: Favorable Judiciary
                        (House Journal-page 44)
   5/9/2018   House   Read second time (House Journal-page 80)
   5/9/2018   House   Roll call Yeas-102  Nays-2 (House Journal-page 80)
  5/10/2018   House   Read third time and enrolled (House Journal-page 19)
  5/14/2018           Ratified R 198
  5/17/2018           Signed By Governor
```

<div align="center">

**JA138**

</div>

5/24/2018          Effective date 05/17/18
5/31/2018          Act No. 182

View the latest legislative information at the website

**VERSIONS OF THIS BILL**

12/13/2016
3/22/2017
3/23/2017
4/5/2017
4/6/2017
5/3/2018

(Text matches printed bills. Document has been reformatted to meet World Wide Web specifications.)

**NOTE: THIS IS A TEMPORARY VERSION. THIS DOCUMENT WILL REMAIN IN THIS VERSION UNTIL FINAL APPROVAL BY THE LEGISLATIVE COUNCIL.**

(A182, R198, S131)

**AN ACT TO AMEND THE CODE OF LAWS OF SOUTH CAROLINA, 1976, BY ADDING SECTION 16-17-425 SO AS TO PROVIDE IT IS UNLAWFUL FOR SCHOOL OR COLLEGE STUDENTS TO MAKE THREATS TO TAKE THE LIVES OF OR TO INFLICT BODILY HARM UPON OTHERS BY USING ANY FORM OF COMMUNICATION WHATSOEVER, AND TO PROVIDE THE SECTION MAY NOT BE CONSTRUED TO REPEAL, REPLACE, OR PRECLUDE APPLICATION OF ANY OTHER CRIMINAL STATUTE; AND TO AMEND SECTION 16-17-420, RELATING TO OFFENSES INVOLVING DISTURBING SCHOOLS, SO AS TO RESTRUCTURE THE OFFENSES TO PROVIDE A DELINEATED LIST OF THOSE ACTIONS WHICH CONSTITUTE A VIOLATION, TO LIMIT ITS APPLICATION TO ACTIONS BY PERSONS WHO ARE NOT STUDENTS, TO DEFINE NECESSARY TERMINOLOGY, TO REVISE THE PENALTY FOR A VIOLATION OF A DISTURBING SCHOOLS OFFENSE, AND TO ELIMINATE JURISDICTION OF SUMMARY COURTS AND FAMILY COURTS.**

Whereas, recent reports indicate there has been an increase in the number of South Carolina students arrested for disturbing schools; and

Whereas, it is in the best interest of all South Carolinians that all students be given every opportunity to succeed in South Carolina's school systems. Now, therefore,

Be it resolved that educators and school administrators throughout the State are urged to exhaust all avenues of behavioral discipline in accordance with the school's code of conduct prior to requesting the involvement of law enforcement officials. Similarly, law enforcement officials are urged to seek the normal standards of proof when enforcing the criminal laws of this State on school grounds. Law enforcement officials should also maintain and apply officer discretion when enforcing the criminal laws of this State on school grounds.

Be it enacted by the General Assembly of the State of South Carolina:

**School disturbances by nonstudents**

**JA139**

USCA4 Appeal: 21-2166    Doc: 18    Filed: 02/11/2022    Pg: 145 of 353

SECTION    1.    Section 16-17-420 of the 1976 Code is amended to read:

"Section 16-17-420.    (A)    It is unlawful for a person who is not a student to wilfully interfere with, disrupt, or disturb the normal operations of a school or college in this State by:

(1)    entering upon school or college grounds or property without the permission of the principal or president in charge;

(2)    loitering upon or about school or college grounds or property, after notice is given to vacate the grounds or property and after having reasonable opportunity to vacate;

(3)    initiating a physical assault on, or fighting with, another person on school or college grounds or property;

(4)    being loud or boisterous on school or college grounds or property after instruction by school or college personnel to refrain from the conduct;

(5)    threatening physical harm to a student or a school or college employee while on school or college grounds or property; or

(6)    threatening the use of deadly force on school or college property or involving school or college grounds or property when the person has the present ability, or is reasonably believed to have the present ability, to carry out the threat.

(B)    For the purpose of this section, 'person who is not a student' means a person who is not enrolled in, or who is suspended or expelled from, the school or college that the person interferes with, disrupts, or disturbs at the time the interference, disruption, or disturbance occurs.

(C)    Any person who violates a provision of this section is guilty of a misdemeanor and, upon conviction, must be fined not more than two thousand dollars or imprisoned for not more than one year, or both."

**Student threats**

SECTION    2.    Article 7, Chapter 17, Title 16 of the 1976 Code is amended by adding:

"Section 16-17-425.    (A)    It is unlawful for a student of a school or college in this State to make threats to take the life of or to inflict bodily harm upon another by using any form of communication whatsoever.

(B)    Nothing contained in this section may be construed to repeal, replace, or preclude application of any other criminal statute."

**Savings**

SECTION    3.    The repeal or amendment by this act of any law, whether temporary or permanent or civil or criminal, does not affect pending actions, rights, duties, or liabilities founded thereon, or alter, discharge, release or extinguish any penalty, forfeiture, or liability incurred under the repealed or amended law, unless the repealed or amended provision shall so expressly provide. After the effective date of this act, all laws repealed or amended by this act must be taken and treated as remaining in full force and effect for the purpose of sustaining any pending or vested right, civil action, special

**JA140**

proceeding, criminal prosecution, or appeal existing as of the effective date of this act, and for the enforcement of rights, duties, penalties, forfeitures, and liabilities as they stood under the repealed or amended laws.

**Time effective**

SECTION   4.   This act takes effect upon approval by the Governor.

Ratified the 14th day of May, 2018.

Approved the 17th day of May, 2018.

———————

This web page was last updated on May 31, 2018 at 3:39 PM

**JA141**

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF SOUTH CAROLINA
## CHARLESTON DIVISION

Kenny, et al.,

        Plaintiffs,

   v.

Wilson, et al.,

        Defendants.

Civil Action No.: 2:16-cv-02794-MBS

## PLAINTIFFS' MOTION FOR LEAVE TO AMEND THE COMPLAINT AND ADD OR IN THE ALTERNATIVE SUBSTITUTE D.D. AS CLASS REPRESENTATIVE

For the reasons that follow, Plaintiffs, through their undersigned attorneys, respectfully move this Court for an order amending the complaint pursuant to Federal Rule of Civil Procedure 15(a)(2) and adding or in the alternative substituting D.D. as a class representative.

1. In January 28, 2019 proceedings, this Court directed Plaintiffs to "notify the court in 2 weeks if D.S. will remain a class representative or if they will be substituting another plaintiff." Minute Entry, ECF No. 146. An extension of time was granted until February 19, 2019. Text Order, ECF No. 149. Plaintiffs file this Motion to notify the Court that D.S. remains an adequate class representative and to add another plaintiff, D.D. Should the court find that D.S. is no longer an adequate class representative, Plaintiffs seek, in the alternative, to substitute D.D. as a class representative.

2. On August 17, 2016, Plaintiffs D.S. and S.P. moved this Court pursuant to Rules 23(a) and 23(b)(2) of the Federal Rules of Civil Procedure to certify a class of all elementary and secondary public school students in South Carolina ("Plaintiff Class"), each of whom faces a risk of arrest or juvenile referral under the broad and overly vague terms filed of South Carolina's Disturbing Schools law, S.C. Code § 16-17-420, and Disorderly Conduct law, S.C. Code§ 16-17-530.  *See* Pl.'s Mot. for Class Cert. & Mem. of Law in Supp., ECF No. 6.

3. South Carolina Act 182, 2018 S.C. Acts, signed into law and taking effect on May 17, 2018, ECF No. 132-1, amended the Disturbing Schools Statute, S.C. Code § 16-17-420.  The amendments to S.C. Code § 16-17-420 do not address all of Plaintiffs' requested relief.  *See* Resp. Def. Mot. Supp. Authority, ECF No. 134. Act 182 preserves the existence and continued effect of all records generated under the unconstitutional Disturbing Schools law.  *See* Act 182, 2018 S.C. Acts § 3 ("After the effective date of this act, all laws repealed or amended by this act must be taken and treated as remaining in full force and effect for the purpose of sustaining any pending or vested right, civil action, special proceeding, *criminal prosecution*, or appeal existing as of the effective date of this act, and for the enforcement of rights, duties, penalties, forfeitures, and liabilities as they stood under the repealed or amended laws.") (emphasis added).

4. Plaintiffs' requested relief asking this Court to "enjoin Defendants from considering any Plaintiffs' records related to being taken into custody, charges filed, adjudication or disposition under S.C. Code § 16-17-420 . . . and from retaining such records except as would be permissible following expungement

under S.C. Code § 17-1-40," Compl. 27, ECF No. 1, remains unresolved. *See* ECF No. 134.

5. Plaintiff D.S. continues to seek to represent the class for the purposes of obtaining the remaining relief related to S.C. Code § 17-1-40. Plaintiff D.S. was charged with Disturbing Schools, S.C. Code § 16-17-420, following an incident that happened at school on April 8, 2016 when she was 17 years old. *See* D.S. Decl. ¶¶ 5-6, ECF No. 6-7. The case against D.S. was ultimately dismissed. *Id*. ¶¶ 19-20.

6. Because D.S.'s case was dismissed, D.S. is eligible to have her records expunged pursuant to S.C. Code § 17-22-950 (effective May 16, 2016). Section 17-22-950 provides for automatic expungement of records if a person was finger printed. *Id.* at § 17-22-950(A). However, if a person was not finger printed, the accused must apply to the court for an order to expunge the criminal records. *Id.* at § 17-22-950(B). To the best of her recollection, D.S. was never fingerprinted and has not received a copy of an expungement order that would be provided if a record were expunged. *Id.* at § 17-22-950(D). To the best of Plaintiffs' knowledge, consistent with section 17-22-950, records remain of D.S.'s arrest and charges under the challenged Disturbing Schools law. Defendants have also made reference to the continued existence of records. Mem. in Supp. of Mot. to Dismiss Compl. & Mot. to Dismiss or Strike Class Action Allegations of Defs. Wilson, Crowe, Moore, Turner & Morton 45, ECF. No 28-1.

7. D.S. is in the process of seeking an order of expungement from the municipal court that handled her case. Plaintiffs maintain, however, that D.S. and the

members of the proposed class should not be required to shoulder the burden of curing an injury created by an unconstitutional law. Further, it remains the case that additional putative class members are not able to seek expungement under the terms available to D.S. For example, putative class members who were charged as adults and whose Disturbing Schools charges were not discharged, dismissed, nolle prossed, or who were not acquitted must pay a $250 fee to seek expungement. *See* S.C. Code § 17-22-940(A), (H). Putative class members who were charged as juveniles are not eligible for expungement until they turn eighteen. *See* S.C. Code § 63-19-2050(C)(3).

8. D.S.'s arrest record also continued to be considered by her schools, despite the dismissal of the case. D.S. Decl. ¶¶ 21-22, ECF No. 6-7 (discussing D.S.'s need to show her records to the high school she transferred to after her arrest and her concern that teachers would perceive her as a troublemaker or a bad person).

9. Plaintiff D.S. graduated from high school in May, 2017.

10. D.S. remains a fair and adequate representative of the class. D.S.'s claims relate back to the date the suit was filed. *See County of Riverside v. McLaughlin*, 500 U.S. 44, 51−52 (1991) (recognizing mootness exception for class actions involving claims that are "so inherently transitory that the trial court will not have even enough time to rule on a motion for class certification before the proposed representative's individual interest expires" (quoting *U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 399 (1980)); *Gerstein v. Pugh*, 420 U.S. 103, 110 n.11 (1975); *see also Sosna v. Iowa*, 419 U.S. 393, 402 (1975) ("The controversy may exist, however, between a named defendant and a member of the class represented

by the named plaintiff, even though the claim of the named plaintiff has become moot."); *Harris v. Ballone*, 681 F.2d 225, 230 n.10 (4th Cir. 1982) (stating that named plaintiff "would not necessarily lose eligibility as a class representative if he had in fact been harmed by [the challenged] scheme at the time he first asserted that they were unconstitutional, but his claims had been mooted by a subsequent change in circumstances.").

11. Even if D.S. were no longer an adequate class representative, Plaintiffs are able to substitute a class representative. *See Kremens v. Bartley*, 431 U.S. 119, 134-35 (1977) (remanding for substitution of new class representatives with live claims where amendments to a state statute mooted the claims of the named class representatives, yet unnamed members of the class retained live claims); *Harris v. Ballone*, 681 F.2d 225, 230 (4th Cir. 1982) (remanding case so that a proper class representative could come forth); *Goodman v. Schlesinger*, 584 F.2d 1325, 1332-33 (4th Cir. 1978) (same); *Brooks v. GAF Materials Corp.*, 41 F. Supp. 3d 474, 481 (D.S.C. 2014) ("The court . . . agrees with other jurisdictions that have authorized substituting a class representative who can show injury when a named plaintiff's claim fails . . . .").

12. Proposed plaintiff and class representative D.D. is currently a tenth-grade student in Conway, SC and thus fits within the proposed class definition. *See* D.D. Decl. ¶ 1; Pls.' Mot. for Class Certification & Mem. of Law in Supp., ECF 6.

13. D.D. was charged with Disturbing Schools, S.C. Code § 16-17-420, on April 20, 2017 when he was 14 years old, based on allegations, which D.D. denies, that

other students heard him utter a threat which then caused the school to investigate and call police. *Id*. ¶ 8.

14. On May 10, 2017, D.D.'s mother received a letter from the South Carolina Office of the Solicitor for the Fifteenth Judicial Circuit stating that the charge against D.D. had been dismissed, but that "this charge will appear on [D.D.]'s record both with this office and with the Department of Juvenile Justice and the State reserves the right to bring these charges back to court." *Id*. ¶ 26; Ex. A.

15. D.D.'s charges and the collateral consequences have harmed his wellbeing in numerous ways, including impacting his ability to obtain an education and leaving him fearful of future arrest and or charges under the challenged Disorderly Conduct statute, S.C. Code § 16-17-530. *Id*. ¶¶ 32-37.

16. Because D.D. is a current tenth-grade student in Conway, SC with remaining records relating to a Disturbing Schools charge, he can fairly and adequately represent the interests of the class, including in seeking relief related to existing records, in addition to, or in the alternative as a substitute for, D.S.

17. Amendment is proper and consistent with the requirements of justice. Fed. R. Civ. Pro. 15(a)(2) ("The court should freely give leave [to amend] when justice so requires."). The Fourth Circuit construes Rule 15 liberally and holds that "leave to amend a pleading should be denied only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would have been futile." *Laber v. Harvey*, 438 F.3d 404, 426–27 (4th Cir. 2006) (en banc) (internal citations omitted). An amendment is not prejudicial "if it merely adds an additional theory of recovery to

the facts already pled and is offered before any discovery has occurred," *id.* at 427, or simply because it occurs after any judgement. *See id.* (citing *Foman v. Davis*, 371 U.S. 178,182 (1962)) (additional citations omitted).

18.  Plaintiffs' requested amendment does not approach creating prejudice and is consistent with the directions of this Court.  ECF No. 146.  D.D. was an existing member of the proposed plaintiff class at the time of Plaintiffs' filing.  His addition to the case as a named plaintiff and class representative in no way alters the claims or defenses in the case and courts frequently grant leave to substitute a class representative, as discussed above at Paragraph 11.

19. Nothing in this Motion affects the status of Plaintiff S.P. as a proposed class representative. ECF No. 6.

WHEREFORE, Plaintiffs respectfully request that this Court grant this motion for leave to amend the complaint and add or in the alternative substitute D.D. as a class representative.

Dated: February 19, 2019.


Respectfully Submitted,

/s/ Susan K. Dunn
SUSAN K. DUNN (Fed. Bar #647)
American Civil Liberties Union of South Carolina
P.O. Box 20998
Charleston, S.C. 2941
Tel: (843) 282-7953
Fax: (843) 720-1428
sdunn@aclusc.org

SARAH HINGER*
GALEN SHERWIN*
EMMA ROTH*
LENORA LAPIDUS*
American Civil Liberties Union Foundation
125 Broad Street 18th Floor
New York, NY 10004
Tel: 212-519-7882
shinger@aclu.org

*Admitted Pro Hac Vice

ATTORNEYS FOR PLAINTIFFS

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

|  |  |  |
|---|---|---|
| Niya Kenny, et al., | ) | |
| | ) | C/A No. 2:16-2794-MBS |
| Plaintiffs, | ) | |
| v. | ) | |
| | ) | **OPINION AND ORDER** |
| Alan Wilson, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## I.    INTRODUCTION AND FACTUAL BACKGROUND

On August 11, 2016, Niya Kenny, Taurean Nesmith, Carolina Youth Action Project, DS, and SP ("Plaintiffs") filed this class action complaint against Alan Wilson, in his official capacity as Attorney General of South Carolina[1] ("Defendant"), challenging the constitutionality of the Disturbing Schools Act, S.C. Code Ann. § 16-17-425. ECF No. 1.  Plaintiffs argue that Section 16-17-425 is overbroad and "sweeps within the purview of criminal law and the court system a broad swath of adolescent behavior." Id. at 1.  On June 6, 2018, Defendant filed a motion for leave to file supplemental authority, asserting that the Disturbing Schools Act had been amended as to moot the case as to Plaintiffs Niya Kenny and Taurean Nesmith. ECF No. 132. In response, Plaintiffs argued that the amendment did not "address all of Plaintiffs' requested relief. . . ." ECF No. 134 at 2. On January 29, 2019, after a hearing, the court granted Defendant's motion, and directed Plaintiffs to notify the court if DS, a class representative, was to remain a class representative, or if Plaintiffs intended to substitute a new plaintiff. ECF No.

---

[1] Plaintiffs also filed this action against several state law enforcement officials. This case was stayed as to these "law enforcement Defendants" via consent order on May 15, 2018. ECF No. 131.

**JA150**

146.  On February 19, 2019, Plaintiffs filed a motion to amend. ECF No. 151. Plaintiffs contend

that DS is still an acceptable class representative, as she must seek expungement of her records

and "members of the proposed class should not be required to shoulder the burden of curing an

injury . . . ." Id. at 4.  In addition, Plaintiffs propose adding or substituting DD as a class

representative. Id. at 5. Plaintiffs represent that DS was charged under the Disturbing Schools

Act, but her charges were dropped. Id. at 3. However, records from her arrest still exist. Id.

Plaintiff further represent that DD was also charged under the Disturbing Schools Act. Id. at 5.

DD's charges were dismissed, but Plaintiffs allege that the charge remains on DD's record and

the state reserves the right to re-file charges. Id. at 6. Defendants filed a response in opposition

on March 18, 2019. ECF No. 155.

## II.    LEGAL STANDARD AND DISCUSSION

Fed R. Civ. P. 15(a)(2) stipulates that "a party may amend its pleading only with the

opposing party's written consent or the court's leave. . .[T]he court should freely give leave when

justice so requires." The Court of Appeals for the Fourth Circuit has "interpreted Rule 15(a) to

provide that 'leave to amend a pleading should be denied only when the amendment would be

prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the

amendment would have been futile.'" Laber v. Harvey, 438 F.3d 404, 426 (4th Cir. 2006)

(quoting Johnson v. Oroweat Foods Co., 785 F.2d 503, 509 (4th Cir.1986)). An amendment is

prejudicial if it "raises a new legal theory that would require the gathering and analysis of facts

not already considered by [a party] and is offered shortly before or during trial." Id.

In this case, there is no evidence of prejudice. Plaintiffs do not require that Defendant

evaluate a new legal theory, nor is this action close to trial. It further does not appear to the court

that Plaintiffs are seeking to amend in bad faith. Finally, amending the complaint would not be

futile, as DD appears to be an adequate class representative. Plantiffs's motion to amend is granted. Plaintiffs are granted leave to add DD as a class representative.

### III.    CONCLUSION

For the foregoing reasons, Plaintiffs's motion to amend, ECF No. 151, is **GRANTED**.

**IT IS SO ORDERED**.

<u>/s/ Margaret B. Seymour</u>
Margaret B. Seymour
Senior United States District Judge

Dated: May __10___, 2019

Charleston, South Carolina

3

**JA152**

# IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF SOUTH CAROLINA

## CHARLESTON DIVISION

|  |  |
|---|---|
| Kenny, et al., | |
| Plaintiffs, | Civil Action No.: 2:16-cv-02794-MBS |
| v. | |
| Wilson, et al., | |
| Defendants. | |

## <u>FIRST AMENDED COMPLAINT</u>

### PRELIMINARY STATEMENT

1. Plaintiffs challenge as unconstitutional S.C. Code § 16-17-420, commonly referred to as the "Disturbing Schools" statute, which sweeps within the purview of criminal law and the court system a broad swath of adolescent behavior. The Disturbing Schools statute violates fundamental concepts of fairness and the most basic tenants of due process.

2. By broadly labeling as criminal any "interference," or "disturbance" of a school, any act of "loitering" and any "obnoxious" action, the Disturbing Schools statute creates an impossible standard for school children to follow and for police to enforce with consistency and fairness. The Disturbing Schools statute also chills the ability of students to speak out against abuses and to participate in conversations about policing of their own classrooms and campuses.

3. South Carolina Code § 16-17-420 was enacted almost 100 years ago and there is no indication that it was intended to apply, or was applied at the time, to students rightfully

**JA153**

attending their own school. More recently, however, the law's broad terms have been

invoked to draw thousands of adolescents into the juvenile and criminal justice systems.

The Disturbing School charge is consistently among the leading sources of referrals to

the South Carolina Department of Juvenile Justice.

4. While the Disturbing Schools statute impacts hundreds of adolescents each year, some

students in South Carolina feel the burdens of the law more than others. Statewide in

2014-2015, Black students were nearly four times as likely to be referred for charges of

Disturbing Schools as were their white classmates. In Charleston County, young people

were more likely to be referred to the juvenile justice system for Disturbing Schools than

for any other reason and Black students were more than six times as likely as their white

peers to be referred for this offense.

5. When applied to school students, the Disorderly Conduct statute, which prohibits

conducting oneself "in a disorderly or boisterous manner," is similarly vague. S.C. Code

§16-17-530. It fails to provide notice to students or guidance to those charged with

determining which adolescent behavior falls under the terms of the law. Adolescents are

also commonly referred to the Department of Juvenile Justice for Disorderly Conduct.

6. The types of incidents that lead to Disturbing Schools and Disorderly Conduct charges

cannot be distinguished by any objective standard from the types of behaviors schools

address regularly without resort to the criminal justice system. These include minor

school infractions like cursing, refusing to follow directions, and involvement in a

physical altercation that did not result in significant injuries and where the student was

not the initiator. Students as young as seven have been charged with Disturbing Schools.

At times, students have been arrested when they react to disruptions caused by those who are supposed to protect them.

7. School Codes of Conduct from across the state reflect the inability to distinguish criminal Disturbing Schools or Disorderly Conduct from minor school infractions. According to Codes of Conduct, students may experience consequences ranging from a verbal warning to criminal charges for the same behaviors.

8. The resort to charging students criminally occurs despite the substantial role played by school employees in shaping student behavior and the classroom environment. Research demonstrates that teachers and schools can employ a range of effective approaches to prevent disruption, and to de-escalate disruption and conflicts when they do occur. In contrast, research also shows that educators who employ punitive approaches create negative experiences for all students and may escalate disruptions.

9. Referral to law enforcement during school greatly diminishes the likelihood that a student will graduate. Young people who are charged with crimes may feel stigma and fear, making it more difficult to engage with school. They may also face disciplinary consequences that can include years in alternative settings that fail to offer complete access to course work necessary to graduate.

10. Plaintiffs are individuals and a nonprofit organization whose members are directly impacted by and face ongoing risk of arrest or referral under S.C. Code § 16-17-420. Plaintiffs seek a declaratory judgment that S.C. Code § 16-17-420 violates their constitutional right to due process, as well as an injunction preliminarily and permanently enjoining enforcement of and reliance upon S.C. Code § 16-17-420 by Defendants.

**JA155**

11. Plaintiffs D.S., D.D. and S.P. are individuals who face an ongoing risk of arrest or referral under S.C. Code § 16-17-530 while attending school. Plaintiffs seek declaratory judgment that S.C. Code § 16-17-530 violates their constitutional right to due process when applied to elementary and secondary school students, as well as an injunction preliminarily and permanently enjoining enforcement of and reliance upon S.C. Code § 16-17-530 as applied to students by Defendants.

## JURISDICTION AND VENUE

12. This action arises under 42 U.S.C. § 1983 to redress the deprivation under color of state law of rights secured by the United States Constitution.

13. This Court has original jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3)-(4).

14. Venue is proper in this Court under 28 U.S.C. § 1391(b)(1) and (2).

15. This Court has the authority to enter a declaratory judgment and to provide preliminary and permanent injunctive relief pursuant to Rules 57 and 65 f the Federal Rules of Civil Procedure, and 28 U.S.C. §§ 2201 and 2202.

## PARTIES

### A. Plaintiffs

16. Plaintiff Niya Kenny ("Plaintiff Kenny" or "Ms. Kenny") is a nineteen year-old African-American female who resides in Richland County, South Carolina. Ms. Kenny obtained her G.E.D. Diploma from Richland County School District Two in June, 2016.

17. Ms. Kenny was arrested and charged under S.C. Code § 16-17-420 while a student at Spring Valley High School in Richland School District Two. Ms. Kenny fears future arrest and prosecution under the Disturbing Schools statute if, while on or around the

4

**JA156**

grounds of a school, her actions are interpreted to fall under any of the broad terms of the statute.

18. Plaintiff D.S. is a seventeen year-old African-American female who resides in Charleston, South Carolina. She brings this case through her grandmother and next of kin, Juanita Ford. D.S. was enrolled at Stall High School in the Charleston County School District during the 2015-2016 school year. D.S. plans to enroll at Summerville High School in Dorchester County School District Two in August 2016. D.S. experienced lead poisoning as a young child and has an Individualized Education Plan.

19. D.S. was charged under S.C. Code § 16-17-420 while attending school. D.S. fears being charged under the Disturbing Schools or Disorderly Conduct statutes in the future if, while on or around the grounds of a school, her actions are interpreted to fall under any of the broad terms of the statutes.

20. Plaintiff D.D. is a fifteen year-old African American male who resides in Conway, South Carolina. He brings this case through his mother and next of Kin, Temika Hemmingway. D.D. is enrolled in the tenth grade at Conway High School in the Horry County School District where he plans to continue attending school.

21. D.D. was charged under S.C. Code § 16-17-420 for events alleged to have occurred while attending school.  D.D. fears future arrest and prosecution under the Disorderly Conduct statute in the future if, while on or around the grounds of a school, her actions are interested to fall under any of the broad terms of the statute.

22. Plaintiff S.P. is a fifteen year-old Caucasian female who resides in Travelers Rest, South Carolina. She brings this case through her mother and next of kin, Melissa Downs. S.P. was enrolled at Travelers Rest High School in the Greenville County School District

during the 2015-2016 school year. She plans to continue school at Travelers Rest High

School in the 2016-2015 school year. S.P. has been diagnosed with mood and conduct

disabilities. She has requested special education services to address her disability and has

had a behavior intervention plan.

23. S.P. was referred under S.C. Code § 16-17-0530 (disorderly conduct) while attending

school. S.P. fears being charged under the Disturbing Schools or Disorderly Conduct

statutes in the future if, while on or around the grounds of a school, her actions are

interpreted to fall under any of the broad terms of the statutes.

24. Plaintiff Girls Rock, Charleston ("Girls Rock") is a non-profit organization with its

principal office in Charleston, SC. Girls Rock provides mentorship, music and arts

education, and leadership development to young people in Charleston, South Carolina.

Girls Rock operates an afterschool program serving at-risk youth and youth who have

been involved in the justice system. Girls Rock is guided by core principles that include

challenging criminalization and promoting collective accountability for behavior.

25. Girls Rock sues on behalf of its members, students who risk arrest or referral under S.C.

Code § 16-17-420 or S.C. Code § 16-17-530 while attending school. Girls Rock also sues

on its own behalf. Girls Rock is substantially burdened in its mission by the continued

practice of charging students under S.C. Code § 16-17-420.

26. Plaintiff Taurean Nesmith ("Plaintiff Nesmith" or Mr. Nesmith") is a twenty-one year-

old African American male who resides permanently in Kingstree, South Carolina. Mr.

Nesmith is a student at Benedict College in Columbia, South Carolina.

27. Mr. Nesmith was arrested and charged with Disturbing Schools under S.C. Code § 16-17-

420 at his college-owned apartment building. Mr. Nesmith fears future arrest and

prosecution under the Disturbing Schools statute in the future if, while on or around the

grounds of a school, his actions are interpreted to fall under any of the broad terms of the

statute.


**B. Defendants**

28. Defendant Alan Wilson ("Defendant Wilson" or "Mr. Wilson") is sued in his official

capacity as the Attorney General of South Carolina. Pursuant to the South Carolina

Constitution, it is Defendant Wilson's duty in his capacity as Attorney General of South

Carolina to assist and represent the Governor in the faithful execution of the laws. S.C.

Const. art. IV § 15. Further, pursuant to South Carolina law, "[h]e shall appear for the

State in the Supreme Court and the court of appeals in the trial and argument of all

causes, criminal and civil, in which the State is a party or interested, and in these causes

in any other court or tribunal when required by the Governor or either branch of the

General Assembly." S.C. Code § 1-7-40, and "[i]n all cases wherein the right of the State

may be involved, the persons claiming under the State shall call on the Attorney General .

. . to defend the right of the State." S.C. Code § 1-7-710. Mr. Wilson is a person within

the meaning of 42 U.S.C. § 1983 and acts under color of state law in all circumstances

relevant to this complaint.

Charleston Defendants

29. Defendant J. Alton Cannon, Jr. ("Defendant Cannon" or "Mr. Cannon") is sued in his

official capacity as the Sheriff of Charleston County, S.C. The jurisdiction of the

Charleston County Sheriff's Office includes schools within Charleston County.

**JA159**

30. Defendant Gregory G. Mullen ("Defendant Mullen" or "Mr. Mullen") is sued in his official capacity as the Chief of the City of Charleston, S.C. Police Department. The jurisdiction of the Charleston Police Department includes schools within Charleston County.

31. Defendant Eddie Driggers, Jr. ("Defendant Driggers" or "Mr. Driggers") is sued in his official capacity as Chief of the North Charleston, S.C. Police Department. The jurisdiction of the North Charleston Police Department includes schools within Charleston County.

32. Defendant Carl Ritchie ("Defendant Ritchie" or "Mr. Ritchie") is sued in his official capacity as Chief of the Mount Pleasant, S.C. Police Department. The jurisdiction of the Mount Pleasant Police Department includes schools within Charleston County.

Columbia Defendants

33. Defendant Leon Lott ("Defendant Lott" or "Mr. Lott") is sued in his official capacity as the Sheriff of Richland County, S.C. The jurisdiction of the Richland County Sheriff's Department includes schools within Richland County.

34. Defendant W.H. Holbrook ("Defendant Holbrook" or "Mr. Holbrook") is sued in his official capacity as Chief of the Columbia, S.C. Police Department. The jurisdiction of the Columbia Police Department includes schools within Richland County.

Greenville Defendants

35. Defendant Steve Loftis ("Defendant Loftis" or "Mr. Loftis") is sued in his official capacity as the Sheriff of Greenville County, S.C. The jurisdiction of the Greenville County Sheriff's Department includes schools within Greenville County.

**JA160**

36. Defendant Ken Miller ("Defendant Miller" or "Mr. Miller") is sued in his official capacity as Chief of the City of Greenville, S.C. Police Department. The jurisdiction of the Greenville Police Department includes schools within Greenville County.

37. Defendant Lance Crowe ("Defendant Crowe" or "Mr. Crowe") is sued in his official capacity as Chief of the Travelers Rest, S.C. Police Department. The jurisdiction of the Travelers Rest Police Department includes schools within Greenville County.

38. Defendant Steve Moore ("Defendant Moore" or "Mr. Moore") is sued in his official capacity as Interim Chief of the Simpsonville, S.C. Police Department. The jurisdiction of the Simpsonville Police Department includes schools within Greenville County.

39. Defendant M. Bryan Turner ("Defendant Turner" or "Mr. Turner") is sued in his official capacity as Chief of the Mauldin, S.C. Police Department. The jurisdiction of the Mauldin Police Department includes schools within Greenville County.

40. Defendant Dan Reynolds ("Defendant Reynolds" or "Mr. Reynolds") is sued in his official capacity as Chief of the City of Greer, S.C. Police Department. The jurisdiction of the Greer Police Department includes schools within Greenville County.

41. Defendant A. Keith Morton ("Defendant Morton" or "Mr. Morton") is sued in his official capacity as Chief of the Fountain Inn, S.C. Police Department. The jurisdiction of the Fountain Inn Police Department includes schools within Greenville County.

42. Defendants, through their respective duties and obligations, are responsible for enforcing S.C. Code § 16-17-420 and S.C. Code § 16-17-530. Each Defendant, and those subject to their direction, supervision, and control, has or intentionally will perform, participate in, aide and/or abet in some manner the acts alleged in this complaint, has or will proximately cause the harm alleged herein, and has or will continue to injure Plaintiffs

irreparably if not enjoined. Accordingly, the relief requested herein is sought against each

Defendant, as well as all persons under their supervision, direction, or control, including

but not limited to their officers, employees, and agents.

## STATUTORY FRAMEWORK

43. South Carolina Code § 16-17-420 provides:

It shall be unlawful:
  (1)    for any person wilfully or unnecessarily (a) to interfere with or to disturb in any
         way or in any place the students or teachers of any school or college in this State,
         (b) to loiter about such school or college premises or (c) to act in an obnoxious
         manner thereon; or
  (2)    for any person to (a) enter upon any such school or college premises or (b) loiter
         around the premises, except on business, without the permission of the principal
         or president in charge.

S.C. Code § 16-17-420(A).

44. A violation of S.C. Code § 16-17-420 is punishable by fine of not more than $1,000 or

ninety days imprisonment. S.C. Code § 16-17-420(B).

45. Section 16-17-420, now commonly referred to as the "Disturbing Schools" statute, was

enacted in 1919 and as originally drafted, applied to "any school or college in the State

attended by women or girls." 1919 S.C. Acts 239 (Appendix 1).

46. The Disturbing Schools statute was amended in 1968 to apply to "any school." 1968 S.C.

Acts 2308 (Appendix 2). It was subsequently applied to arrest protestors on a college

campus. *See Bistrick v. Univ. of S. Carolina*, 324 F. Supp. 942 (S.C. 1971); *Herman v.

Univ. of S. Carolina*, 341 F. Supp. 226, 229 (D.S.C. 1971), *aff'd*, 457 F.2d 902 (4th Cir.

1972). In 1972, the statute was amended to increase the applicable penalties. 1972 S.C.

Acts 1426 (Appendix 3).

47. A Westlaw search generated cases referencing juveniles charged under § 16-17-420

beginning in 1989. *See Matter of Johnny J.*, 387 S.E.2d 251, 252 (S.C. 1989) (indefinite

commitment for probation violation and status offenses was inappropriate); *In Interest of*

*Doe*, 458 S.E.2d 556, 560 (Ct. App. 1995) (conviction for Disturbing Schools upheld;

S.C. Code § 20-7-2170 precluded residential evaluation for children ten years old and

younger); *In re Amir X.S.*, 639 S.E.2d 144 (S.C. 2006) (statute not overbroad or vague as

applied); *In re Joelle T.*, No. 2010-UP-547, 2010 WL 10088227, at *1 (S.C. Ct. App.

Dec. 16, 2010) (Appendix 4).

48. In 2010, the law was amended to remove mandatory minimum sentences and fines and to

expressly vest jurisdiction in summary courts or for juveniles, in family court. 2010

South Carolina Laws Act 273 (S.B. 1154).

49. Section 16-17-420 contains no intent requirement before imposing criminal penalties.

50. The terms "interfere," "disturb," "loiter," and "act in an obnoxious manner" are not

further defined by the statute.

51. South Carolina Code § 16-17-530 provides:

> Any person who shall (a) be found on any highway or at any public place
> or public gathering in a grossly intoxicated condition or otherwise
> conducting himself in a disorderly or boisterous manner, (b) use obscene
> or profane language on any highway or at any public place or gathering or
> in hearing distance of any schoolhouse or church or (c) while under the
> influence or feigning to be under the influence of intoxicating liquor,
> without just cause or excuse, discharge any gun, pistol or other firearm
> while upon or within fifty yards of any public road or highway, except
> upon his own premises, shall be deemed guilty of a misdemeanor and
> upon conviction shall be fined not more than one hundred dollars or be
> imprisoned for not more than thirty days.

S.C. Code § 16-17-530.

52. The terms "disorderly" and "boisterous" are not further defined by the statute.

53. A series of South Carolina Attorney General's Opinions discuss the reach of both the

Disturbing Schools and Disorderly Conduct statutes to address student conduct.

**JA163**

54. Attorney General's Opinions conclude that the Disturbing Schools statute and the Disorderly Conduct statute may both be applied to prohibit "[u]se of foul or offensive language toward a principal, teacher, or police officer," or "[u]se of obscene or profane language near a 'schoolhouse.'" 1994 S.C. Op. Att'y Gen. 25, 1994 WL 199757 (Appendix 5).

55. The Attorney General's Office also concludes that "[f]ailure by a student . . . to leave a school campus or school bus, when requested to do so," *id.*, "fighting," *id.*, and becoming "uncooperative and disruptive," each may constitute Disturbing Schools. Letter from Robert D. Cook, S.C. Assistant Att'y Gen., to Hon. John W. Holcombe, Sheriff, Chester Co., 1999 WL 626642 (July 12, 1999) (Appendix 6).

56. Moreover, Attorney General's Opinions observe that "[n]o express limitations on the time of applicability of [§16-17-420's] prohibition are set forth," 1990 S.C. Op. Att'y Gen. 61, 1990 WL 482448 (Appendix 7), and reason that the law might "apply to any part of the campus regardless of whether students or other students [sic] or faculty were present." 1994 S.C. Op. Att'y Gen. 25.

## FACTUAL ALLEGATIONS

### A. The Impact of Educator Practices on Student Behavior

57. Normal adolescent development includes the development of behavioral and social skills.

58. Addressing student behavior is a regular part of school administration.

59. Research indicates that the ways in which schools and teachers approach student behavior and the school climate can shape student behavior for better or worse.

60. There are many techniques shown to reduce incidences of disruption and discipline when employed by educators. Evidence based practices exist to respond to a continuum of

student needs, and effective approaches exist including for students requiring higher levels of support.

61. In contrast, schools and classrooms that are characterized by a punitive approach with high levels of discipline and fewer positive supports are experienced negatively by students and teachers.

62. Some educator practices and responses can escalate student misbehavior and conflict.

63. Black students and students with disabilities are disproportionately likely to be subjected to exclusionary discipline such as out-of-school suspension as well as referral to law enforcement and arrest at school.

64. Research does not suggest that racial disparities in discipline can be explained by differences in behavior across students of different races.

65. Disparities are most prevalent in categories of discipline that require subjective determination of whether the rule was violated, such as offenses of "disruption" or "excessive noise."

66. Students who experience punitive discipline miss valuable educational time and may enter a cycle of negative consequences.

67. Students are frequently disciplined more harshly when their behavior is characterized as criminal, and their educational opportunities are diminished through expulsion, suspension, placement in an alternative program, or a combination of these consequences.

68. Disciplinary consequences can have lasting impact on a student's ability to access educational opportunities. For example, students may be placed into alternative programs without significant support services, providing only computer based instruction, and with no fixed end period, from which they must instead earn their way out. These programs

may not even provide the course work required to obtain a high school diploma, placing the prospect of educational reentry further and further out of reach.

69. Students may also experience stigma and increased negative feelings about school which may impact their ability to reengage with school.

70. Students who experience referral to law enforcement have significantly reduce likelihood of graduating from high school, even after a first referral.

71. Without a high school education, a young person's future prospects are also dimmed.

**B. Enforcement of S.C. Code § 16-17-420 and § 16-17-530 Across South Carolina**

72. Between the 2010-2011 school year and March, 2016, over 9,500 young people in South Carolina were referred to the Department of Juvenile Justice on charges of Disturbing Schools.

73. This number provides only a partial picture of the law's impact. Students 17 and older are charged and prosecuted as adults.

74. Students as young as seven have been charged with Disturbing Schools.

75. Students have been charged with Disturbing Schools in every county in the state except for Chester County.

76. Disturbing Schools and Disorderly Conduct charges are consistently among the leading reasons that young people enter the juvenile justice system.

77. Although referrals for Disturbing Schools have decreased over time in some counties, Disturbing Schools charges have increased statewide from the 2012-2013 school year to the 2015-2016 school year.

**JA166**

78. Rates of racial disparity in referrals for Disturbing Schools have also increased. In the 2014-2015 school year, Black students statewide were nearly 4 times as likely as their white classmates to be charged with Disturbing Schools.

79. Substantial racial disparities in Disturbing Schools referrals exist in large and small counties and in counties that are more and less racially homogenous.

80. Across the state, there are wide discrepancies in how charges of Disturbing Schools are handled, including whether they will be dismissed, diverted, or prosecuted. In about twenty percent of cases in which DJJ recommended diversion, solicitor's offices moved forward with prosecution.

81. School Codes of Conduct from across South Carolina reflect the impossibility of attempting to distinguish criminal Disturbing Schools or Disorderly Conduct from behaviors that should be addressed through school responses, including responses as minimal as a verbal warning or a parent conference.

82. Infractions including "disruption," "behavior that significantly interrupts the learning environment," "fighting," "excessive noise," "boisterous play or pranks," and "profanity" have all been listed as behaviors that can be addressed through lesser school interventions. Yet the same behaviors may lead students to be charged with the crimes of Disturbing Schools or Disorderly Conduct.

83. The prior experiences of named Plaintiffs exemplify the arbitrary and discriminatory application of the Disturbing Schools and Disorderly Conduct statutes to charge or refer students.

84. Students have been arrested and charged with Disturbing Schools when expressing concern over police actions.

15

**JA167**

85. On October 26th, 2015, Niya Kenny was a student at Spring Valley High School when she was arrested under S.C. Code § 16-17-420. Ms. Kenny was in her math class. Students were instructed to work on their laptops on a practice math lesson. Ms. Kenny was working on her lesson when she noticed her teacher whispering to a student a couple desks away. She thought that the teacher must have been helping the other student with her work until she saw him walk over to his desk and call for someone to escort the student from the class. Ms. Kenny wondered what the girl could have done wrong, because she had not noticed anything out of the ordinary.

86. Shortly thereafter, a School Resource Officer ("SRO"), a sworn police officer of the Richland County Sheriff's Office, known among students as "Officer Slam" entered the room. Ms. Kenny witnessed her classmate forcefully pulled from her desk by the SRO, dragged on the floor, and handcuffed. Deeply frightened by the officer's actions, Ms. Kenny attempted to document the incident and called out for someone to do something to stop the violent treatment of her classmate.

87. In response, Ms. Kenny was herself arrested. She was handcuffed in front of her classmates, berated by the police officer and the school administrator for voicing her concern and distress, held in an adult detention center for several hours, patted down, finger printed and photographed.

88. The police incident report described her offense as a crime of disorderly conduct and she was charged with Disturbing Schools.

89. Throughout her experience, Ms. Kenny was scared and humiliated. Although she would have liked to complete her senior year with friends and classmates, due to the humiliation

and anxiety she experienced, Ms. Kenny did not feel that she could return to Spring Valley High School. She withdrew and entered a GED program.

90. Taurean Nesmith was arrested and charged with Disturbing Schools at his college owned apartment building. A campus police officer who had repeatedly stopped and searched Mr. Nesmith and his friends was patrolling in the apartment complex parking lot as Mr. Nesmith and friends left the building and got into their cars. The officer approached Mr. Nesmith's friend and proceeded to ask him for his identification.

91. Mr. Nesmith complained to another friend that the officer was again stopping them because of their race. The Officer then turned his attention to Mr. Nesmith and asked for his identification. Mr. Nesmith asked why the officer needed to see his identification and continued to question the officer's actions. Other residents came out to their balconies to see what was happening.

92. Mr. Nesmith was eventually handcuffed and transported to a detention center where he remained overnight. He was charged with Disturbing Schools and Disorderly Conduct. His charges were later dropped.

93. In other instances, students have been charged with Disturbing Schools as the result of behaviors that could just as possibly have met with less severe school discipline or other interventions.

94. In Richland School District One, an eight-year-old African-American student was charged with Disturbing Schools and assault when, after being directed to leave class, the student attempted to slam the classroom door and the teacher's arm was caught.

95. In Charleston, an African American student was charged with Disturbing Schools and adjudicated delinquent after she and a group of other students were reported for taking

17

**JA169**

photographs of themselves and other students in the girls' restroom. The student was referred to Girls Rock as a condition of her probation.

96. When K.B., a Latina student in Charleston, was thirteen years old, she was charged with Disturbing Schools and adjudicated delinquent after an incident that started with her late arrival to gym class. A School Resource Officer was called when K.B. began to loudly protest being made to leave the gym class and being followed to the "tardy sweep" room. The police officer physically restrained K.B., taking her to the ground and causing bruises, and placed her in handcuffs. She was searched before being released to her mother. The police incident report indicated that K.B. would be charged with Disorderly Conduct. She was subsequently charged with Disturbing Schools.

97. K.B. was sentenced to probation and referred to Girls Rock by her probation officer. K.B. took honors courses in middle school. When K.B. returned to her high school after being charged, she was placed in a program called "Twilight," through which she was provided no more than three hours of computer-based education per day, and which did not provide access to the courses necessary to obtain a high school diploma. Because K.B. was only permitted to be on campus during program hours, which were shorter than the normal school day, K.B. had to find her own transportation to school, which was a costly expense for K.B. and her mother.

98. K.B. and her mother may move to Texas soon. Although K.B. believes she will be able to return to her regular classes if she begins school in South Carolina, she believes that she will no longer be on track to graduate from high school.

99. D.D., an African American female who has struggled with homelessness, was charged with Disturbing Schools after an incident at her Charleston middle school. D.D. was sent

JA170

out of class for talking. While she was seated on a bench outside of the classroom,

another girl walked past her and began speaking to her. A School Resource Officer

noticed her speaking to another student and she was detained, handcuffed, and charged

with Disturbing Schools. She was placed on probation and became involved with Girls

Rock.

100.  When D.D. left the alternative middle school and started high school, she was placed in

the Twilight program. Although she has remained in the Twilight program for two years,

she continues to attend school and struggle to obtain an education. D.D. must find her

own transportation to and from Twilight. Her family does not own a car and navigating

the bus system was difficult. D.D. was detained for violating the terms of her probation

after being picked up for truancy. While attending Twilight, D.D. also does not have

access to the school lunch services that she would receive if attending school regularly.

101. S.P. was charged with Disorderly Conduct as a freshman in the Greenville County

School District. S.P. has diagnosed disabilities that impact her mood and conduct and has

seen a therapist for several years. S.P. had a Behavior Intervention Plan with her school.

On the day that S.P. was charged with Disorderly Conduct, she had an ongoing

altercation with a girl who had been making fun of her throughout the morning. S.P.

encountered the girl in the library and told her to stop talking about her before sitting

down at a table with friends. The principal came to the library and told S.P. that she

needed to leave with him. When she refused and complained that the girl who was

making fun of her did not get in trouble, the principal told S.P. he was addressing her

because she could be arrested for not leaving with him. An SRO came to the library and

S.P. eventually agreed to leave the library with him. As she was leaving, S.P. cursed at

the student who had been teasing her. Other students in the library also began to clap as
S.P. was escorted out of the library, and S.P. cursed at them.

102. Several months later, S.P. was charged with Disorderly Conduct for these actions.

103. D.S., an African American student in Charleston, was charged with Disturbing Schools
after becoming involved in a physical altercation which she did not initiate and in which
she was the only person who sustained an injury, a lump on her head.

104. Charged as adults, D.S., her friend, and the other two students involved in the
altercation plead guilty to Disturbing Schools without legal representation. D.S. received
a suspended sentence of a $400 fine or 20 days imprisonment conditioned on completion
of a Pretrial Intervention program (PTI). D.S. subsequently learned that participation in
PTI costs $300 or more, a cost that she could not afford. D.S. was rejected from the PTI
program and spent many stressful weeks fearing that she would be sent to jail before she
obtained a public defender who was able to reopen her case, which was eventually
dismissed.

105. D.D., an African American student in Horry County, was charged with Disturbing
Schools as a sixth grader after he was alleged to have made a threat toward his school on
the school bus. D.D. contested these allegations and questioned the lack of evidence. The
charges against him were dismissed prior to any court hearing.

106. Despite the dismissal of charges, D.D. received a letter from the Solicitor General's
Office indicating that charges would remain on his record, that these charges could be
brought back in court, and that the dismissed charges could be held against him should he
face any future charges. The letter indicated that, if further charges are received, the

Solicitor "would have a record of the opportunity given by this dismissal and will likely take prosecutorial action."

107. Enforcement of the Disturbing Schools and Disorderly Conduct laws has also impacted Girls Rock as an organization. Recognizing that Disturbing Schools charges are a primary cause of youth involvement with the justice system, Girls Rock has taken up efforts to challenge the Disturbing Schools statute and bring awareness to the statute's negative impact on Charleston area young people. For example, Girls Rock teen leaders have engaged in an organizing apprenticeship in which they learned about school-based referrals to law enforcement and the Disturbing Schools law and spoke about these issues at public events, Girls Rock After School Program ("GRASP") participants performed a skit on the issue during the program's annual showcase, and created a short video about their advocacy.

108. Girls Rock volunteers have also expended significant time and resources to address the impacts of Disturbing Schools adjudications through mentorship and support of young people in the GRASP program. Girls Rock volunteers also attended hearings with members. They present testimony to speak on a participant's character and her progress in GRASP. Volunteers have spent hours, at times across multiple days, to attend these hearings.

109. Girls Rock is a primarily volunteer run organization with limited resources. The significant time and resources that Girls Rock staff members spend in mentoring and supporting young people who have been caught up in the justice system for charges of Disturbing Schools detracts from Girls Rock's ability to help other young people. In addition, time spent addressing ongoing court involvement and other collateral

consequences of a Disturbing Schools adjudication detract from the positive mentorship activities that Girls Rock seeks to provide. Time spent at court hearings would otherwise be spent developing programming and providing direct services to young people and attending to administrative business necessary to sustain the operations of the organization, such as writing grant proposals and conducting fundraising activities.

110.  The experiences of named Plaintiffs and other students in South Carolina reflect the Disturbing Schools and Disorderly Conduct statutes' broad reach and arbitrary and discriminatory enforcement. The terms of § 16-17-420 are vague and fail to provide notice to students and others expected to comply with its terms or to provide sufficient guidance to those charged with its enforcement, permitting arbitrary and discriminatory enforcement. When applied to elementary and secondary school students, the terms of §16-17-530 are equally vague.

111. Plaintiffs have an objectively reasonable fear that they will be charged with Disturbing Schools under § 16-17-420 or Disorderly Conduct under § 16-17-530.

112. Plaintiffs have no adequate remedy at law.

### CLASS ALLEGATIONS

#### Plaintiff Class

113. Plaintiffs D.S., D.D. and S.P. bring this action on behalf of themselves and on behalf of all elementary and secondary public school students in South Carolina ("Plaintiff Class"), each of whom faces a risk of arrest or juvenile referral under the broad and overly vague terms of the challenged statutes.

114.  The class is so numerous that joinder of all members is impracticable. F. R. Civ. P. 23(a)(1). Upon information and belief, there are over 750,000 elementary and secondary

public school students residing South Carolina. Each of these students faces a risk of arrest or juvenile referral under the broad and overly vague terms of S.C. Code § 16-17-420 or S.C. Code § 16-17-530.

115.  Plaintiffs' claims share common issues of law and fact, including but not limited to whether each of the challenged statutes is overly vague and violates the Due Process Clause of the Fourteenth Amendment. Fed. R. Civ. P. 23(a)(2).

116.  The claims or defenses of the named Plaintiffs are typical of the claims of members of the Plaintiff Class. All Plaintiffs' claims arise from S.C. Code § 16-17-420 and S.C. Code § 16-17-530 and are based on the same constitutional provisions and arguments.

117.  The named Plaintiffs will fairly and adequately protect the interests of the Plaintiff Class. The named Plaintiffs have no interest that is now or may be potentially antagonistic to the interests of the class. Named Plaintiffs and the Plaintiff Class both seek to enjoin enforcement of S.C. Code § 16-17-420 and S.C. Code § 16-17-420 and to obtain a declaration that each law violates the due process guarantees of the Fourteenth Amendment. The attorneys representing the Plaintiffs are experienced civil rights attorneys and are considered able practitioners in federal constitutional litigation.

118. This action is also maintainable as a class action under Fed. R. Civ. P. 23(b)(2). Class certification is also proper because S.C. Code § 16-17-420 and S.C. Code § 16-17-530 each apply generally to the class, thereby making final injunctive and declaratory relief appropriate as to the whole.

### The Defendant Class

119. Plaintiffs bring this action against named Defendants individually and, pursuant to Rules 23(a) and 23(b)(1) and (b)(3) of the Federal Rules of Civil Procedure, on behalf of all

**JA175**

South Carolina law enforcement agencies who may enforce S.C. Code §§ 16-17-420 and 16-17-530 against Plaintiffs. The proposed Defendant Class consists of all South Carolina law enforcement agencies with authority to enforce S.C. Code § 16-17-420 and S.C. Code § 16-17-530 against Plaintiffs.

120. The class is so numerous that joinder of all members is impracticable. Fed. R. Civ. P. 23(a)(1). Upon information and belief, there are more than 200 state and local law enforcement agencies in South Carolina, employing over 11,000 personnel. S.C. Code § 16-17-420 has been enforced against Plaintiffs in each county in South Carolina, apart from Chester County.

121. There are questions of law and fact common to the members of the class, including but not limited to whether the challenged statutes are overly vague and violate the Due Process Clause of the Fourteenth Amendment. Fed. R. Civ. P. 23(a)(2).

122. The claims against the named Defendants are typical of the claims against the Defendant Class, particularly because this is a facial challenge to the statute. All claims arise from S.C. Code § 16-17-420 and S.C. Code § 16-17-530 and are based on the same constitutional provisions and arguments. The Defenses expected to be asserted by the named Defendants likewise are common to the members of the Defendant Class.

123. This action is maintainable as a class action under Fed. R. Civ. P. 23(b)(1). Prosecution of separate actions against individuals would create the risk of inconsistent and varying adjudications.

124. This action is also maintainable as a class action under Fed. R. Civ. P. 23(b)(2). Plaintiffs' claims to enjoin enforcement of S.C. Code § 16-17-420 and S.C. Code § 530

**JA176**

apply generally to the class, thereby making final injunctive and declaratory relief appropriate as to the whole.

## CLAIMS FOR RELIEF
### First Cause of Action
### S.C. Code § 16-17-420 Violates Due Process
### Under the United States Constitution, 42 U.S.C. § 1983

125. Plaintiffs incorporate by reference all of the preceding paragraphs of this Complaint as though fully set forth herein.

126. S.C. Code § 16-17-420's vague terms violate Plaintiffs' rights to due process guaranteed by the Fourteenth Amendment to the United States Constitution. U.S. Const. amend. XIV, § 1.

### Second Cause of Action
### S.C. Code § 16-17-530 Violates Due Process
### Under the United States Constitution as Applied to Elementary and
### Secondary Students, 42 U.S.C. § 1983

127. Plaintiffs incorporate by reference all of the preceding paragraphs of this Complaint as though fully set forth herein.

128. S.C. Code § 16-17-530's vague terms as applied to elementary and secondary school students violate Plaintiffs' rights to due process guaranteed by the Fourteenth Amendment to the United States Constitution. U.S. Const. amend. XIV, § 1.

## PRAYER FOR RELIEF

Wherefore, Plaintiffs respectfully request that the Court:

A. Issue a declaratory judgment that S.C. Code § 16-17-420 is unconstitutional;

B. Issue a declaratory judgment that S.C. Code § 16-17-530 is unconstitutional;

C. Issue injunctive relief:

1. preliminarily and permanently enjoining enforcement by Defendants of S.C. Code § 16-17-420;

2. preliminarily and permanently enjoining enforcement by Defendants of S.C. Code § 16-17-530 against elementary and secondary school students;

3. enjoining Defendants from considering any Plaintiffs' records relating to being taken into custody, charges filed, adjudication, or disposition under S.C. Code § 16-17-420 or S.C. Code § 16-17-530, and from retaining such records except as would be permissible following expungement under S.C. Code § 17-1-40;

4. enjoining Defendants from considering any Plaintiffs' records related to arrest, booking record, associated bench warrants, mug shots, fingerprints, charges filed, proceedings, or sentencing under S.C. Code § 16-17-420 or S.C. Code § 16-17-530, and from retaining such records except as would be permissible following expungement under S.C. Code § 17-1-40;

D. Award Plaintiffs costs and attorneys' fees pursuant to 42 U.S.C. § 1988; and

E. Grant such other, further, and different relief as the Court deems just and proper.

F. The declaratory and injunctive relief requested in this action is sought against each Defendant; against each Defendant's officers, employees, and agents; and against all persons acting in active concert or participation with any Defendant, or under any Defendant's supervision, direction, or control.

Pursuant to Local Rule 3.01(B), undersigned counsel hereby endorses and certifies that this action is properly filed in the Charleston Division.

Between the filing of the Complaint and this First Amended Complaint, the following

developments have occurred in the case relevant to the Complaint. On May 17, 2018, Governor

Henry McMaster signed an amendment to the Disturbing Schools statute that rescinds the

provisions contested by Plaintiffs. Act 182, 2018 S.C. Acts, ECF No. 132-1. The amendments to

S.C. Code § 16-17-420 address Plaintiffs' request for injunctive relief against the enforcement by

Defendants of S.C. Code § 16-17-420. *See* Pls.' Resp. Def. Mot. Supp. Authority 1, ECF No.

134. This also resolves the claims of Plaintiffs Kenny and Nesmith. *Id*. at 2. Plaintiffs' requested

relief related to still-existing juvenile and criminal records reflecting Disturbing Schools charges

remains unresolved. *Id*. at 2-4.  Additionally, on May 15, 2018, Plaintiffs and Defendants jointly

filed a Consent Order, ECF No. 131, through which Plaintiffs agreed to withdraw their Motion

for Defendant Class Certification and to stay proceedings against local Law Enforcement

Defendants and that Law Enforcement Defendants shall not be obligated to further defend this

action or file responsive pleadings. Last, the case caption was amended to reflect the fact that

Plaintiff Girls Rock changed its name to the Carolina Youth Action Project. *See* Pls.' Mot.

Amend, ECF No. 128; Order Granting Mot. Amend, ECF No.  133.


Dated: May 16, 2019.


Respectfully Submitted,

/s/ Susan K. Dunn
SUSAN K. DUNN (Fed. Bar #647)
American Civil Liberties Union of South Carolina
P.O. Box 20998
Charleston, S.C. 2941
Tel: (843) 282-7953
Fax: (843) 720-1428
sdunn@aclusc.org

**JA179**

SARAH HINGER*
GALEN SHERWIN*
EMMA ROTH*
LENORA LAPIDUS*
American Civil Liberties Union Foundation
125 Broad Street 18th Floor
New York, NY 10004
Tel: 212-519-7882
shinger@aclu.org

*Admitted Pro Hac Vice

ATTORNEYS FOR PLAINTIFFS

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON  DIVISION

| | | |
|---|---|---|
| Kenny, et al, | ) | Civil Action No.  2:16-cv-2794-MBS |
| | ) | |
| Plaintiffs, | ) | **MOTION TO DISMISS** |
| v. | ) | **AMENDED COMPLAINT AND** |
| | ) | **MOTION DISMISS OR STRIKE** |
| Wilson, et al, | ) | **CLASS ACTION ALLEGATIONS** |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

The Defendant Wilson, as named herein, hereby moves for dismissal of the Amended
Complaint in this case pursuant to Rule 12(b)(6), FRCP, in that, for  the  reasons set forth below,
Plaintiffs have failed to state a claim upon which relief can be granted.  This Motion is also made
under Rule (12(b)(1) due to lack of subject matter jurisdiction to consider the claims subject to
dismissal on grounds of mootness and lack of standing.  These Defendants also move to dismiss
or strike the class action allegations pursuant to Rules 12(b)(6) and 12(f).

1.      Plaintiffs concede that the claims of Plaintiffs Kenny and Nesmith are resolved.
Their claims are also moot, and Kenny lacks standing.

2.      Plaintiff D.S.'s claims are moot because she is no longer in school, and the
charges against her are dismissed.

3.      Plaintiff Girls Rock lacks standing to sue.

4.      Under the *Rooker-Feldman* doctrine (*Washington v. Wilmore*, 407 F.3d 274,
279 (4th Cir.2005)), *Heck v. Humphrey*, 512 U.S. 477 (1994) and res judicata
the claims of any Plaintiff and any Plaintiff class member should be dismissed
if they have been convicted of or pleaded guilty to charges of violating §§16-

17-420 or 16-17-530.   This defense includes, but is not limited to, the Plaintiff S.P.

5.  Plaintiffs' claims for prospective injunctive relief as to enforcement of §16-17-420 must be dismissed.

6.  Sections 16-17-420, as written prior to the 2018 amendment to it, and 16-17-530 are not vague or otherwise unconstitutional.

7.  Plaintiffs fail to state a class action against defendant class because they have withdrawn their Motion for Defendant Class Certification and this Court has stayed this action as to Law Enforcement Defendants.  Order May 14, 2018 (Dkt. Entry 131).

8.  Plaintiffs have failed to state a class action for a plaintiff class and such allegations are immaterial under Rule 12(f) and fail to satisfy Rule 23, FRCP.

Respectfully submitted,

ALAN WILSON
Attorney General
Federal ID No.10457

ROBERT D. COOK
Solicitor General
Federal ID No. 285
Email: RCook@scag.gov

/s/ J. Emory Smith, Jr.
J. EMORY SMITH, JR.
Deputy Solicitor General
Federal ID No. 3908
Email: ESmith@scag.gov

June 6, 2019                                    Counsel for Defendant Wilson

2

**JA182**

1                    Wednesday, December 4, 2019

2          (WHEREUPON, court was called to order at 2:06 p.m.)

3                    THE COURT:  Good afternoon.  You may take your

4      seats.

5                    MR. SMITH:  Good afternoon.

6                    MS. HINGER:  Good afternoon, Your Honor.

7                    THE COURT:  This afternoon we have a hearing in

8      the matter of Kenny, et al. vs. Wilson, et al.  This is

9      Civil Action No. 2:16-2794.  And we are here on the motion

10     to dismiss the amended complaint that was filed by the

11     defendants.  So I'll hear from you at this time on your

12     motion.

13                   MR. SMITH:  Thank you, Your Honor.  For the

14     record, Emory Smith for Attorney General Wilson.  I really

15     don't have much to add to what I have filed in the

16     memoranda, but I'm going to try to summarize it and try to

17     answer any questions that the Court might have.

18                   As this Court knows from the history of this

19     case, it was brought to challenge the South Carolina's

20     disturbing the schools statute, 16-17-420, and the

21     disorderly conduct statute as applied to school children.

22     And it was done on the grounds of vagueness.  And the

23     plaintiffs also ask in their complaint that a class action

24     be certified.

25                   The case was initially dismissed by the late

1    Judge Houck on grounds of lack of standing.  The

2    plaintiffs appealed to the Fourth Circuit Court of

3    Appeals.  And the Court of Appeals found that there was

4    standing as to three of the plaintiffs, SP, DS, and

5    Nesmith.  But it was -- so it remanded for further

6    consideration of the case.  It did not make a decision as

7    to whether Kenny or Girls Rock, now known as Carolina

8    Youth Action Project.  It established also an injury in

9    fact, so we believe standing is open as to them.

10         If I use -- I may use the term Girls Rock and

11   Carolina Youth Action Project interchangeably.  I think

12   that both names appear in the amended complaint that way.

13         Upon remand, the attorney general and the law

14   enforcement officers renewed their motion to dismiss in

15   answer to the original complaint.  Plaintiffs move to

16   amend their complaint to add a substitute DD as a class

17   representative noting that DS has graduated from high

18   school and the case against him had been dismissed.  The

19   Court granted that motion.

20         The Court also signed an agreement -- signed an

21   order allowing the proceedings against the remaining law

22   enforcement officer defendants to be I believe it was

23   stayed.  I don't see that before me right now.  Staying

24   the action as to law enforcement officers, that was

25   May 15th, 2018.  That order remains in effect.

4

1          The attorney general has now moved to dismiss

2     the amended complaint.  And that is what's before you

3     today along with his motion to dismiss the class action

4     allegations.

5          There are certain matters that I believe at the

6     outset can be dispensed with by agreement.  I think the

7     plaintiffs have indicated their agreement with these

8     things but there's been no formal order of dismissal.  And

9     that is that they believe that the Defendants Nesmith and

10    Kenny are no longer -- the allegations against them are

11    now moot and that those claims may be dismissed.

12         They also have said that because of an amendment

13    to the disturbing the schools law, 16-17-420, that now

14    makes it apply only to non-students who might be

15    disturbing a school, that they no longer have a claim for

16    prospective injunctive relief.  They are asking for

17    retroactive injunctive relief.  So we believe those three

18    parts of the case may be dismissed, Nesmith, Kenny, and

19    prospective injunctive relief as to 16-17-420.

20         At the outset in their response, they contend

21    that the mandate rule bars consideration of the motion to

22    dismiss.  But the motion to dismiss here, in other words,

23    the ruling of the Court of Appeals in reviewing Judge

24    Houck's standing issue dispensed with those matters that

25    might be heard on this motion to dismiss and we disagree.

1    The motion to dismiss is drawn to avoid revisiting those

2    issues that the Court of Appeals decided, which was that

3    it was very narrow in deciding that only SP, DS, and

4    Nesmith satisfied the injury-in-fact requirement for

5    standing.  And of those three plaintiffs, Nesmith is now

6    moot.  Standing as to Kenny and the Girls Rock, Carolina

7    Youth Action Project remain.  And then we've got other

8    issues as to SP and DS.  And as I said, we would ask that

9    by agreement of the plaintiffs that claims of Kenny and

10   Nesmith be dismissed as moot.

11        **THE COURT:**  Before you continue, let me just get

12   on the record that the plaintiffs agree that Kenny and

13   Nesmith's claims are moot.  Would the plaintiffs agree

14   with that?

15        **MS. HINGER:**  Yes, Your Honor.  There is no

16   disagreement that their claims are moot.

17        **THE COURT:**  Okay.  All right.

18        **MR. SMITH:**  And may we, if it pleases Your

19   Honor, also get on the record that they're dismissing the

20   claims as to 16-17-420 for prospective injunctive relief?

21        **MS. HINGER:**  Just to clarify that, we are

22   dismissing the request for an injunction against further

23   enforcement of the law.  We do still have a claim for

24   prospective injunctive relief regarding the continued

25   reliance on arrest and other criminal records related to

1    the previously challenged statute.

2         THE COURT:  So that goes to the issue of having

3    their records expunged, is that what you're talking about?

4         MS. HINGER:  Effectively, yes.

5         THE COURT:  So the claim with regard to having

6    their -- but you're not asking for prospective relief,

7    you're just asking that their records be expunged.  Is

8    that what you're asking for?

9         MS. HINGER:  I suppose, Your Honor.  I think we

10   would characterize that as a form of prospective

11   injunctive relief in terms of the treatment of those

12   records going forward.  But we are not seeking to enjoin

13   enforcement of the law since the law is no longer in

14   effect.

15        THE COURT:  Okay.  So you're not challenging the

16   law anymore.  You're challenging the conviction that's on

17   these individuals' records, right?  That's the

18   distinction?

19        MS. HINGER:  Um, Your Honor, I think that the

20   way we see it, we would be challenging the law in that it

21   remains on the record and the injury that follows from

22   that unconstitutional law remains and continues to have an

23   impact on our plaintiffs.  And so the treatment of those

24   continuing existing records is the remedy that we would be

25   seeking that would follow from a ruling on the

1    constitutionality of that law itself.

2         THE COURT:  But the law doesn't exist anymore.

3    So how could I make a ruling on the constitutionality of

4    it?  I think you have to make a distinction between the

5    law itself and the constitutionality of the law, and then

6    the conviction and the criminal -- and the record as a

7    result of that conviction.  I think those are two separate

8    things and treated differently as far as how the Court

9    would address it.

10        MS. HINGER:  Um, yes, Your Honor, we do agree

11   there would be a different remedy and outcome.  I think

12   that to address the continued and remaining injury of the

13   criminal records that exist, that is -- that is the extent

14   of what we're seeking from the Court.

15        THE COURT:  Okay.

16        All right.  Mr. Smith?

17        MR. SMITH:  Thank you.  Your Honor, DS was one

18   of those plaintiffs I believe that the Court of Appeals

19   said it alleged a sufficient injury for standing purposes.

20   But her claims are moot now because she's no longer in

21   school and the charges against her are dismissed.

22   Plaintiffs concede she's eligible to have her records

23   expunged.  So we believe they should be -- that she should

24   be dismissed as a party for those reasons.

25        They cannot claim that her claims are inherently

1   transitory.  We believe that they fall squarely within

2   mootness doctrine and that she should be dismissed.  And

3   anything that we can -- well, we believe the entire case

4   should be dismissed.  But anything we can do to try to get

5   rid of issues we don't need to deal with I think would be

6   helpful in this case; and that's one of them.  I don't

7   think DS needs to remain a party because the claims

8   against her are moot.

9           We also believe that Girls Rock and Carolina

10  Youth Action Project, d/b/a, or however you want to

11  characterize it, Carolina Youth Action Project lack

12  standing.  There are two bases for standing of an

13  association.

14          And one is under Hunt v. Washington State Apple

15  Advertising Company and Flash Tail Park.  An association

16  has standing to bring suit on behalf of its members when,

17  A, its members would otherwise have standing to sue in

18  their own right; the interests it seeks to protect are

19  germane to the organization's purpose; and neither the

20  claim asserted nor relief requested requires the

21  participation of individual members in the lawsuit.

22          We believe that Carolina Youth Action Project

23  does not meet this test because its allegations of

24  membership fail.  Under Hunt, when an association is not a

25  traditional voluntary membership organization, its

9

1    constituents must possess the indicia of membership in an

2    organization in order to qualify for associational

3    standing.

4         Although the plaintiffs allege that Girls Rock

5    sues on behalf of its members, students who risk arrest or

6    referral, looking at the entire complaint you see that

7    they also refer to, in Paragraph 24, the organization

8    provides services to young people.  Its mission is for

9    at-risk students in Paragraph 25.  They provide in

10   Paragraph -- allege in Paragraph 108, membership in

11   support of young people; in Paragraph 109, significant

12   time and resources that Girls Rock staff members spend in

13   mentoring and supporting young people.  So truly, in

14   looking at all these allegations, they're not members of

15   the organization.  They're clients, students who are

16   served by the organization.  And Girls Rock simply does

17   not have a basis for standing to allege claims for those

18   students.

19        We also believe that Girls Rock lacks standing

20   to sue in its own right.  Plaintiffs cite but fail to

21   distinguish Lane v. Holder, a Fourth Circuit case decided

22   in 2012.  In that case, the Court found that although a

23   diversion of resources might harm the organization by

24   reducing the funds available for other purposes, it

25   results not from any action taken by the defendant but

1  rather from the organization's own budgetary choices.

2  Carolina Youth Action Project's claims are similar to

3  those of the organization in Lane in alleging that it has

4  to redirect its programming and spend extra time and

5  resources supporting impacted members, time that would

6  otherwise be spent developing programming and providing

7  direct services to young people.  Accordingly, the project

8  lacks standing.

9         The plaintiffs cite Havens, an earlier US

10  Supreme Court case.  But the Fourth Circuit noted that

11  Havens involved the issue of organizational standing of an

12  organization that did have standing because the practices

13  perceptibly impaired the organization's ability to provide

14  counseling and referral services.  Carolina Youth Action

15  Project's ability to provide services is not directly

16  impaired as was the Havens organization.  Instead, it has

17  diverted resources due to its budgetary choices as did the

18  organization in Lane.

19         I'm moving on now to Rooker-Feldman, Heck, and

20  res judicata doctrines.  A big part of plaintiff's claims

21  here, certainly as to the disturbing the schools law, too,

22  is to seek retroactive relief as to the records of

23  students who have been charged under these laws, including

24  students who were adjudicated delinquent under these laws.

25         We believe that this would involve powers that

1   would go beyond the powers of a federal district court to

2   go back and require the correction or expungement of

3   records based upon adjudications or other law enforcement

4   action.  And that if it were permissible in this instance,

5   then any time the court changed a law or found that a law

6   were unconstitutional, it could go back years changing

7   records.  And the prospects of that are mind boggling.

8   There's a process set up under state law for expungement

9   of records.  And that would be the option that should be

10  followed for those people who want to have that done, also

11  appeal of criminal convictions.

12          But Rooker-Feldman makes clear --

13          THE COURT:  Let me just ask you this question.

14  Is there any way that the state would set up a process by

15  which these young children could have their records

16  expunged?

17          MR. SMITH:  That is something I have talked to

18  plaintiff's counsel about just generally.  We've reached

19  no agreement on that.  And I don't know whether that could

20  be done.  I think certainly an individual child or a child

21  who is now an adult could apply if they were eligible.

22  And I think there's a process under law that -- by which

23  that can be done in appropriate cases.  But whether there

24  could be any kind of en masse way of doing that, I'm just

25  not sure at this point.

1      **THE COURT:**  I mean, it seems to me that if the

2   law is no longer on the books, and this record can have a

3   tremendous impact on them in the future, that maybe the

4   school system or somebody in the state could set up some

5   procedure whereby -- to make it easier rather than having

6   these children or these young adults have their parents

7   try to figure out how to get a lawyer, how to get it done.

8   It seems to me that maybe there could be like an office in

9   the school.  Say, if you were charged under this law, come

10  see me and I'll help you go through the system to get it

11  resolved.  It doesn't seem like that would be such a

12  difficult thing to do.

13     **MR. SMITH:**  Your Honor, that's something I can

14  report back to you on and I will be glad to do that.  I

15  don't know that that could be done.  And I think the

16  amendment to the disturbing the schools law that changed

17  that law prospectively so as only to apply to

18  non-students, I think it made clear in there that it was

19  not intended to be a retroactive application of that law.

20  So anything that would -- any kind of process that would

21  be set up would have to be done with that in mind.

22     And so I think it would probably fall back on --

23  absent a legislative change under existing law permitting

24  expungement.  But I'll be glad if Your Honor would like me

25  to prepare a memorandum for you on what is permissible

```
 1   under South Carolina law regarding expungements, if that
 2   would help you.
 3            THE COURT:  Okay.  Thank you.
 4            MR. SMITH:  We believe that these doctrines of
 5   Rooker-Feldman, Heck, and res judicata would bar the
 6   courts acting outside of the expungement process or any
 7   type of setup in that regard from going back and
 8   retroactively changing these records.  The Rooker-Feldman
 9   doctrine says, Prohibits the lower federal courts from
10   reviewing or rejecting state court judgments and serves as
11   a judicial bar to federal court review of each of the
12   federal claims alleged.  Except in limited circumstances
13   not applicable here, the only federal court with the
14   authority to reverse or modify the judgments of state
15   court is the Supreme Court itself.  And so this, we
16   believe, under Rooker-Feldman this Court could not direct
17   the expungement or voiding of records of criminal
18   convictions under either the disorderly conduct statute or
19   the disturbing the schools law except as is permitted by
20   state law pursuant to existing expungement law.
21            THE COURT:  But let me ask you this question.
22   Under the Rooker-Feldman, it seems here that plaintiffs
23   are not asking that the verdict itself be voided.  They
24   just want the record expunged.  And there's a distinction,
25   correct?
```

1          **MR. SMITH:**  Well, respectfully, I would think

2    that would be -- it would have the same effect.  If the

3    record is expunged, then there would be no basis of

4    determining whether that person had ever been convicted of

5    the statute under state law.  And so that would have

6    essentially the same effect.  It would be a determination

7    by this Court that the prior judgment of delinquency or

8    conviction under the old disturbing the schools law was

9    not valid because the statute was, however the Court

10   determined, vague, for example, and therefore the records

11   should be expunged.  It would in effect be a voiding of

12   the adjudication.

13         **THE COURT:**  So you don't see a distinction

14   between, I guess, the validity of the conviction as

15   opposed to enjoining future use of the conviction?

16         **MR. SMITH:**  I do not, Your Honor, except as

17   permitted by South Carolina law for expungements or any

18   related process.

19         And I think that the Heck doctrine comes in as

20   an aid here because it says that the US Supreme Court has

21   held that where a state prisoner's claim for damages is

22   not cognizable under Section 1983 where success of the

23   action would implicitly question the validity of the

24   conviction or duration of the sentence, unless the

25   prisoner can demonstrate the conviction or sentence has

15

1    been previously invalidated.  So an order as to records

2    would implicitly question the validity of the judgment

3    upon which the records were based.

4          We also believe that res judicata comes into

5    play.  Federal court must give the state court judgment

6    the same preclusive effect as would be given a judgment

7    under the law of the state in which the judgment was

8    rendered.  South Carolina courts hold that the doctrine of

9    res judicata applies to issues adjudicated in the prior

10   suit and issues which could have been raised.  So --

11         **THE COURT:**  Now, Heck was a 1983 suit.  Does

12   that make a difference in this situation?  I think it gets

13   back to my question before, the difference between

14   challenging a law and challenging a conviction, that these

15   are two different things.

16         **MR. SMITH:**  I don't believe it would, Your

17   Honor.  Because it says here in this quotation from Cox

18   vs. United States, a 2012 district court decision, The

19   preclusive rule in Heck likewise bars relief if a judgment

20   in the plaintiff's favor would necessarily imply the

21   invalidity or sentence.  In the present case, plaintiff

22   seeks relief which would affect the duration of his

23   kidnapping sentence.  Plaintiffs have not shown that his

24   conviction has been invalidated.

25         So, here, the plaintiffs in the current case

1    would be seeking relief that would affect the

2    recordkeeping of their sentences.  And so therefore, it

3    would call into question the conviction or sentence upon

4    which that record was based, and that this Court would

5    intrude on the Heck doctrine if it made such a ruling,

6    respectfully.

7            We've also already talked about that.  Um, we

8    believe -- I've set it out at length in our memoranda, and

9    I'm going to try to avoid going through it laboriously,

10   why we believe Section 16-17-420 as it existed prior to

11   the amendment is constitutional, and the disorderly

12   conduct statute as well.  And the plaintiffs do not -- we

13   talked earlier about what relief they were seeking as to

14   420 as to records and so forth.  My understanding is they

15   do not question the wording of the amendments to 420.  So

16   new 420 is not at issue.  It's old 420, old disturbing the

17   schools law that is.

18           And we believe that both -- although they pick

19   out words and say this word in this statute is

20   unconstitutional or vague, and we believe that if you

21   consider the acts as a whole, they are self-limiting.  I

22   understand and I put in our brief that the Fourth Circuit

23   addressed this point somewhat as to standing, but it did

24   not address all of these limiting constructions as to all

25   aspects of these laws.

1          I think that both of them -- I think it's clear

2    from the authority that I have cited that you cannot reach

3    spoken words except where those words are not subject to

4    constitutional constraints, such as fighting words,

5    shouting fire in a theater.  Words that are beyond the

6    reach of the free speech clause are the only words that

7    could be sanctioned under these statutes.  In fact, we

8    believe that the plaintiffs did not allege infringement of

9    constitutionally protected conduct.  The plaintiffs'

10   complaint contains no First Amendment claim.  They refer

11   to it in their preliminary injunction but they made no

12   First Amendment claim.

13          There are various issues about whether, for

14   purposes of a vagueness challenge, there has to be no

15   conduct that would -- that it has to be impermissibly

16   vague in all of its applications.  Justice Scalia casts

17   some doubt on that and said that at the very least a

18   facial challenge cannot succeed if a statute has a plainly

19   legitimate sweep.

20          We maintain that it has to be vague in all of

21   its applications.  But even if it does not, relying on

22   Judge Scalia's writing in Johnston or other authority, the

23   statutes, both of them, certainly have plainly legitimate

24   sweeps and therefore should be found not to be vague.

25   Lanning said that constitutional standard for -- or Amir

1    said the constitutional standard for vagueness is where

2    the law gives fair notice to those persons to whom the law

3    applies.  We believe that it -- both laws do here.

4           As the Supreme Court stated in 1972 in Colten v.

5    Kentucky, the root of vagueness doctrine is a rough idea

6    of fairness.  It is not a principle designed to be

7    converted into a constitutional dilemma, the practical

8    difficulties in drawing criminal statutes both general

9    enough to take into account a variety of human conduct and

10   sufficiently specific to provide fair warning that certain

11   kinds of conduct are prohibited.

12          As to the old 420, we believe -- the conduct may

13   not be punished unless it willfully or unnecessarily

14   disturbs the learning environment.  And we believe that

15   these words provide sufficient guidance.  Willful itself

16   certainly supplies the same scienter requirement as did a

17   Florida law that acts must be done knowingly.

18          Courts have upheld a number of similar statutes

19   prohibiting disturbance of schools.  We set them forth in

20   our memoranda.  We have in Section 420 a statute

21   specifically written for the school context where the

22   prohibited disturbances are easily measured by the impact

23   on the normal activities of the school.  And therefore it

24   gives fair notice to those to whom it is directed.

25          As to the term interfering, the South Carolina

19

1    Supreme Court has recognized that a statute must be
2    limited in scope to fighting words that by their very
3    utterance inflict injury or tend to incite an immediate
4    breach of peace.  Therefore, words that go farther than
5    that cannot be punished under 420 or under the disorderly
6    conduct statute.

7              We believe that the terms in 420, act in an
8    obnoxious manner, are not vague because of the limitations
9    in the statute, nor is the term loitering that's been
10   upheld in other statutes.  The terms at issue are all ones
11   of ordinary meaning.  And they are limited by the
12   requirements that the conduct be willful or unnecessary
13   and disturbing the school environment.

14             Plaintiffs have not alleged in the complaint
15   that the statute infringes on constitutionally protected
16   conduct, such as speech.  But even if they have raised the
17   issue properly, 420 does not tread on constitutional
18   rights.  Both the offender and law enforcement are under
19   sufficient notice of the meaning of the law.

20             Now, as to 530, the disorderly conduct statute,
21   plaintiffs focus on the prohibitions of conducting himself
22   in a disorderly or boisterous manner.  They appear to
23   acknowledge under South Carolina law that language alone
24   is not a basis for charging a person under 530 unless
25   fighting words are used.  So I think as to both statutes,

20

1    we can take language out of this and focus on the conduct

2    because they cannot go farther than the constitution

3    allows as to language.

4            Under the cases that I've cited as to 530, only

5    conduct or fighting words are subject to charge under 530.

6    And numerous disorderly conduct statutes and ordinances of

7    other states have been upheld as not unconstitutionally

8    vague.  And I set forth a list of those in our brief.

9            One of those, Occupy Ft. Myers vs. City of Ft.

10   Myers, prohibited loitering and boisterousness, sleep or

11   protractedly lounge on the seats, benefits {verbatim}, or

12   other areas or engage in loud, boisterous, threatening, et

13   cetera, language.  The court found in that case only the

14   terms protractedly lounge and tending to be vague.

15           US v. Cassiagnol, a Fourth Circuit case from

16   1970, the court upheld a GSA regulation prohibiting

17   unwarranted loitering or assembly and unseemly or

18   disorderly conduct.

19           So we believe when you consider the limitations

20   of speech that may be sanctioned to fighting words, the

21   constitutional limits as set forth in the Supreme Court

22   cases, and focus on conduct, these statutes provide

23   certainly sufficient guidance on conduct.

24           And the disturbing the schools law, it has to

25   interfere with the school functions.  And so we believe

1   that those guideposts, those limitations avoid a finding

2   of vagueness as to either law.

3          The remaining part here is the class action

4   allegations.  And the plaintiffs originally had asked for

5   the certification of a defendant class of law enforcement

6   officers.  They have dropped that claim but they have

7   maintained their claim for class action certification.

8   And we believe that on the face of the complaint they fail

9   to meet it.  They want a class certified of all South

10  Carolina students, approximately 750,000 students.  Very

11  few of those students, by whatever measure you use, or

12  relatively few would be subject to be charged under these

13  laws.  And as to the future, they're not going to be

14  charged as to 420 because it no longer applies to them.

15  And some of them may like these laws.  They may like the

16  protection that it provides to law enforcement for them on

17  school property if somebody's engaging in criminal

18  behavior.

19          So they are certainly not uniform.  They

20  haven't -- the individual plaintiffs have not even been

21  charged under the same laws.  So there -- and some were

22  charged under 420, some under 530, some have been

23  dismissed, some have been subject to expungement.  And so

24  they're not all uniform.  And, of course, the vast

25  majority of South Carolina students have not been charged

1    under either law nor will they be.

2            So for these reasons, the plaintiffs fail to

3    meet the commonality test of Rule 23(a)(2) and the

4    typicality case under -- typicality requirement under

5    23(a)(3) of the Federal Rules of Civil Procedure because

6    they have not suffered the same alleged injury, if any, by

7    the statutes.  None of the individual plaintiffs have been

8    charged under both statutes.  And DS's claims are now

9    moot.  So they fail under that requirement.

10           They also fail to satisfy one of the

11   requirements of Rule 23(b).  They allege that they meet

12   Rule 23(b)(2) which requires that final injunctive relief

13   or corresponding declaratory relief is appropriate

14   respecting the class as a whole.  But the plaintiffs

15   cannot make such a showing because not all class members

16   would benefit from an injunction in that some may have

17   been charged, most have not.  Some may want the laws to

18   remain in place.  So therefore, they do not have an

19   appropriate class for certification as alleged in the

20   complaint.  And so therefore we ask that those allegations

21   be dismissed or struck.

22           This is a large, unwieldy action.  Some of the

23   plaintiffs need to be dismissed.  Girls Rock has no

24   standing, Carolina Youth Action Project.  DS is moot.  SP

25   is moot as she's no longer in school.  They don't include

1    that in their allegations, but there's no reason to

2    continue with her.  She's no longer in school and no

3    longer subject to a threat of enforcement.

4            So the case would narrow down as to just DD.  We

5    reserve the right at a later stage to contest standing as

6    to him if we find out further facts about him.  So we're

7    reserving that right.

8            But his claims, along with everybody else's,

9    also fail under Rooker-Feldman, Heck, res judicata, and

10   the challenge to the statutes because under Supreme Court

11   precedent of this state, only fighting words can be

12   punished.  And as to conduct, the statutes themselves

13   provide sufficient guidance as to that conduct that may be

14   chargeable under those statutes.  Other jurisdictions have

15   upheld laws that might be compared with them.  So for this

16   reason, we believe it fails on the face of the complaint

17   as to the law.

18           And finally, we would ask that, if nothing else,

19   the class action allegations be dismissed or struck

20   because they fail to meet the requirements of the Federal

21   Rules of Civil Procedure because of this large, unwieldy

22   class of differing interests, different statuses,

23   different people, an enormous class, in fact.

24           I'll be glad to answer any questions Your Honor

25   might have.

24

1          THE COURT:  So let me ask you about the class

2     certification.  Is it too early to strike the class at

3     this point in time prior to the Court's ruling on the

4     motion to dismiss?  Is it possible that they could at some

5     later time amend the definition of the class after a

6     motion for class certification has been filed?

7          MR. SMITH:  Well, they raise that point claiming

8     that it shouldn't be dismissed at this stage of the

9     proceeding.  But we believe that it -- we've set forth

10    cases in our brief.  I'm sorry, I closed up that page.  I

11    could find it, but I cited several cases in which courts

12    had --

13         THE COURT:  That's okay.

14         MR. SMITH:  -- dismissed class action

15    allegations at this stage.  And we think that based upon

16    the complaint and the reasons that I gave you that that

17    can and should be done here.  Anything that would -- could

18    be done here to narrow this case down from its unwieldy

19    posture now attacking two different laws with differing

20    plaintiffs, some of whom are no longer -- claims have been

21    mooted would be helpful.  And that in this process,

22    they -- just the very unwieldiness of this and the

23    differing interests of the individual plaintiffs and

24    statuses I think shows that on the face of this complaint

25    that they cannot meet class action standards.  So,

25

1    therefore, dismissing it now would be a valid thing to do.

2    It would also help in making this case more narrowly

3    focused.

4            And so we believe the whole case should be

5    dismissed because they fail on the law looking at the face

6    of the complaint.  But even if the whole thing is not

7    thrown out, we believe that the class action should be

8    dismissed.

9            **THE COURT:**  Okay.  Thank you very much.

10           **MR. SMITH:**  Thank you, Your Honor.

11           **MS. HINGER:**  Good afternoon, Your Honor.  Sarah

12   Hinger from the ACLU on behalf of the plaintiffs.

13           To start with defendant's closing point, I think

14   this case is actually in fact a quite straightforward and

15   simple legal challenge.  There are two legal questions in

16   this case challenging on their face to state laws.  And I

17   think that it is in fact defendant's efforts to throw

18   everything in the kitchen sink at the lawsuit that makes

19   it complicated.  But these are things that really don't

20   need to distract the Court.

21           The defendants in their motion to dismiss the

22   amended complaint raise no new legal arguments.  In fact,

23   the only addition in the amended complaint is of Plaintiff

24   DD.  This Court, in granting the motion to file the first

25   amended complaint, acknowledged that adding DD did not

 1    require the defendants to evaluate a new legal theory.

 2    And that DD appeared to be an adequate class member which,

 3    of course, would require that DD also have standing.  In

 4    fact, defendants in their motion at Page 34 also conceded

 5    that DD appeared to have standing and that his claims were

 6    not moot.

 7              In addition to that ruling, of course, this

 8    Court and the First Circuit -- or excuse me, the Fourth

 9    Circuit have previously considered each of the arguments

10    to dismiss in this case and have either implicitly or

11    explicitly rejected those arguments.  And for that reason,

12    they are governed by the mandate rule and should not be

13    taken up again in this case.

14              THE COURT:  But let me just clarify that.  The

15    Fourth Circuit appears to have left the issue of standing

16    as to the Carolina Youth Action Project for this Court to

17    decide because they said, Further analysis -- I'm trying

18    to find the exact quote.

19              MS. HINGER:  Yes.  If I could, Your Honor?  It's

20    at Page 18 and Note 4 of the --

21              THE COURT:  Right, right.

22              MS. HINGER:  -- circuit court's opinion.

23              THE COURT:  Um-hmm.

24              MS. HINGER:  And I think that what the Court

25    said there, we would say is --

1       THE COURT:  They said that, Because SP and DS

2   and Nesmith satisfy the injury-in-fact requirement, we

3   need not decide whether Kenny or Girls Rock have also

4   established an injury in fact.  Whether the claims alleged

5   by Kenny and Girls Rock survive further analysis is a

6   matter we leave to the district court.  So the Fourth

7   Circuit seems to be saying that Kenny's claim and Girls

8   Rock's claim have to be decided by this Court.

9       MS. HINGER:  Your Honor, I think our

10  understanding of the court's opinion, which should be

11  understood in both the letter and the spirit of the

12  opinion as a whole, which the Fourth Circuit expressed in

13  US v. Bell, is a recognition of the cannon of judicial

14  avoidance.  And as the Fourth Circuit in particular held

15  in US v. Bostic and affirmed that when a court has decided

16  that one plaintiff has standing, it does not need to

17  venture further to rule and issue an opinion on the

18  standing of each plaintiff in order for the case to

19  proceed.  So we believe that what the court was saying in

20  that opinion is that it just simply did not need to reach

21  that legal question and issue an opinion on it.

22      THE COURT:  So let me just ask you this.  So if

23  the court said because SP, DS, and Nesmith satisfy the

24  standing, Nesmith is no longer in the case, correct?

25      MS. HINGER:  That is correct.

28

1          **THE COURT:**  And DS?

2          **MS. HINGER:**  DS remains in the case.

3          **THE COURT:**  And SP?

4          **MS. HINGER:**  SP remains in the case.

5          **THE COURT:**  So these two claims still remain.

6    So your position is because they're still in the case, we

7    don't need to get to whether Kenny and Girls Rock should

8    have standing.

9          **MS. HINGER:**  That is correct, Your Honor.  So

10   when the Court said that the district court should proceed

11   to determine whether the claims alleged survived, it was

12   referring in fact to the substantive legal claims.  Um, I

13   would also note that the district -- or that the Court of

14   Appeals vacated in full the district court's reading,

15   which had ruled that Girls Rock did not have standing.  If

16   the court did not believe that that decision should be

17   overturned and that the case should proceed, it would not

18   have vacated the decision in full.

19          In any event, of course, and as set forth fully

20   in our briefing, we believe that Girls Rock does continue

21   to have standing.  And as Your Honor recognized that in

22   any event so long as one of the plaintiffs in this case

23   does have standing, a further ruling on individual

24   standing would not in any way limit the proceedings going

25   forward.

29

1              As regards the class action allegations,

2      further, we have alleged a class action, and on behalf of

3      a class that can be characterized as inherently

4      transitory, in that these are young people and students,

5      they would age out of the class at the time they graduate.

6      And because of that transitory nature of the class, their

7      standing also relates back to the point in time that they

8      filed the lawsuit as the Supreme Court recognized in

9      Riverside v. McLaughlin and the Fourth Circuit

10     acknowledged in Harris v. Malone.

11             Your Honor is correct to recognize that with

12     regard to the disturbing schools statute we are not

13     seeking to disturb the verdict or the sentence of any of

14     the state courts.  Indeed, we have never sought to

15     challenge the sentence, a probation condition, a condition

16     to diversion that any individual was placed on.  And we

17     only seek to ensure that there is no future injury

18     continued from having a record in place that would be

19     referred back to in the future for other reasons such as

20     application to a job or college.

21             We do believe that a procedure could be set up

22     if the state were amenable to work with us cooperatively

23     to facilitate that or if the Court were to order it.  They

24     could provide an easy channel for young people to be able

25     to have this reviewed and removed from their records.  And

30

1    again, that's specifically only regarding this charge.

2    And we're not seeking relief related to, you know, any

3    other thing that might be on an individual record.

4            The federal courts do have that power.  And

5    that's been recognized by every circuit court that has

6    taken up the issue.  We think that really goes to, even if

7    the Court were uncertain about that, the specific and

8    precise nature and contour of the remedy a court would

9    issue.  But we are more than happy to brief that issue

10   additionally.  In any event, we don't believe it would be

11   a basis for a motion to dismiss.

12           Similarly, a motion to strike class allegations

13   is particularly disfavored.  And we believe that these

14   issues can be heard in the context of a class

15   certification motion, which we are also happy to submit

16   supplemental briefing on.  And likewise, the plaintiffs'

17   arguments regarding the vagueness of the statutes really

18   goes to the merits of the case and -- excuse me, the

19   merits of the case and not to a motion to dismiss for lack

20   of jurisdiction, although I'm happy to answer any further

21   questions on those points.

22           THE COURT:  Let me go back to DS's claims and

23   your argument as to why these claims are not moot.  Do you

24   have any example of situations where a similar claim would

25   become moot before a lawsuit would reach its conclusion?

1    And also, how do you get around the effectively reviewable

2    language in Genesis Health Care?

3         **MS. HINGER:**  Your Honor, I don't have examples

4    before me.  But, certainly, we concede that an individual

5    claim for relief might become moot if, for example, in the

6    positions of our plaintiffs, Kenny and Nesmith, their

7    claims became moot as individual claims.  It is the nature

8    of the class representation, um, that permits a plaintiff

9    such as DS to remain a valid representative.  Because at

10   the time that she filed her claim and sought to represent

11   the class, she had standing and her claim was not moot.

12   We have also added the additional plaintiff and proposed

13   class representative DD who the defendants have conceded

14   does not have a moot claim who can also represent the

15   class.

16        **THE COURT:**  Okay.  Thank you.

17        **MS. HINGER:**  Thank you.

18        **THE COURT:**  Now, with regard to the Carolina

19   Youth Action Project, could you expand on the activities

20   of that group and the case of Students For Fair Admission

21   and whether or not this group meets the criteria set forth

22   in that case?  For example, does this group elect its own

23   leadership?

24        **MS. HINGER:**  Yes, Your Honor.  So the criteria

25   is not limited to an election of leadership but to the

1    indicia of standing -- of membership.  And we believe that

2    and have argued that Carolina Youth Action Project meets

3    that because its youth members are integral to the

4    activities of the organization.  They participate directly

5    in organizing and holding community events to raise

6    awareness and support for decriminalization of students.

7    They play an active role, even though not elected, in

8    shaping the positions of the organization.  They

9    participate in that decision-making process in the group

10   meetings.

11           Carolina Youth Action Project is a grassroots

12   organization and they operate with a collective

13   organizational model.  And so some of the things, like an

14   election or dues paying, are not a part of that.  And

15   that's because the Youth Action Project seeks to more

16   adequately represent young people and people who may

17   otherwise have been marginalized from the types of

18   organizations where they might have dues paid and elected

19   membership.

20           Importantly, what Carolina Youth Action Project

21   does as an organization is provide these youth a platform

22   by which their views can be made heard and be more

23   effective through their membership and collective action

24   in the same way as any of the other organizations that

25   have been found to have membership standing does.  In this

1  case, it simply does that through a different mechanism

2  because it's representing youth and people who are

3  otherwise marginalized or may not have the economic and

4  other means to join a dues paying organization.

5         THE COURT:  So how do you respond to the

6  defendant's argument that the students are basically

7  clients of the organization and not participants and

8  members?

9         MS. HINGER:  We do believe that they are more

10  than clients.  In particular, there is a group called --

11  of young people who join a mentorship for organizing

12  leadership.  And these young people may have received

13  services previously and then go on to take a larger role

14  in the organization, including working with younger youth

15  in the community.  They produce their own advocacy

16  materials, including spoken word and presentations for

17  community meetings.  They've produced videos about their

18  advocacy.  And they've played a decision-making role in

19  all of the meetings of the organization.  These are the

20  types of indicia of membership and not merely receipt of

21  services.

22         THE COURT:  So how is the organization financed?

23         MR. SMITH:  The organization is financed as a

24  non-profit, so primarily through donations or through

25  grant monies.

34

1          THE COURT:  And do the members or the students

2    serve as part of the organization's leadership?

3          MS. HINGER:  Yes, they do.  So, again, the

4    leadership structure is a grassroots collective model.

5    They make decisions collectively.  So there is not a

6    single president or board that makes the decisions.  And

7    the youth members are an active part of that decision

8    making.

9          THE COURT:  Okay.  All right.  Thank you.

10          MS. HINGER:  Thank you, Your Honor.

11          THE COURT:  One other question about this

12   Carolina Youth organization.  You have indicated that the

13   injury that they've suffered is that they have to divert

14   their resources.  Is that the only injury or is there

15   anything else?

16          MS. HINGER:  Um, so for the second basis of

17   standing as an organization itself, it is an injury in the

18   diversion of their resources and also to their general

19   mission.  So their mission is to advance decriminalization

20   and rely instead on community accountability and

21   resiliency within the community.  The continued

22   enforcement of previously the disturbing schools law and

23   continue the disorderly conduct law undermines that core

24   mission, not only because people continue to be

25   criminalized directly under those laws, but when young

1   people do then experience contact with the justice system,

2   it undermines their own ability to serve as leaders in

3   their community and advance.  And it diminishes the Youth

4   Action Project's ability to serve other young people that

5   they could serve if they weren't spending their resources

6   addressing what are effectively school discipline issues

7   that have gone into the criminal justice system.

8        THE COURT:  And so with regard to your class

9   action, is your position that the class would consist of

10  all students in South Carolina, all 750,000 or whatever it

11  is, whatever the number is at this time?

12       MS. HINGER:  We do believe so.  And I think

13  that, you know, in fact the large number of students goes

14  to the reason for certification of a class.

15       THE COURT:  So what's the commonality of all the

16  750,000?

17       MS. HINGER:  Yes.  So the commonality here is

18  that each and every one of these students attends school

19  each day subject to the challenged law.  And as the Fourth

20  Circuit found, they have a credible fear by virtue of

21  being students exposed to this law, that they might be

22  subject to arrest under these laws because of the vague

23  terms as alleged, that they don't know which of their

24  juvenile behaviors might be treated as criminal at any

25  time.

1          THE COURT:  So is this the new 420 or the old

2    one?

3          MS. HINGER:  This would be the old 420 and the

4    current disorderly conduct statute as applied to students.

5          THE COURT:  So the old 420 no longer exists, so

6    the class would not -- there would not be a possibility

7    that they have this credible fear that they would be

8    subject to the old 420, correct?

9          MS. HINGER:  Yes, Your Honor.  With regard to

10   the old 420, we would be happy to supplement briefing on

11   that where the request now would just be related to

12   existing records.

13         THE COURT:  So the class for the old 420

14   wouldn't be all students?

15         MS. HINGER:  That's correct.

16         THE COURT:  And then with regard to the class

17   you would argue would be for all students for the other

18   statute, this 530, the disorderly conduct statute?

19         MS. HINGER:  Yes, that's correct, Your Honor.

20   And I think that, as I said, the crux -- the commonality,

21   typicality of the claim here is that each and every

22   student is subject to enforcement of these laws.  It's the

23   only legal question at issue.  And commonality exists

24   where there is any one common question of law or fact.  In

25   this case, it's the only question.  Each of these class

```
 1    members, purported class members would be a student and in
 2    that way common.  So while their various behaviors may
 3    individually differ, they're all in the same position
 4    because they cannot know which of these behaviors might
 5    trigger enforcement.  And as the Fourth Circuit found,
 6    they're effectively chilled from expressive participation
 7    in the school system and in their own education by the
 8    continued existence of these laws.  So it's these common
 9    questions that bind the class.
10              THE COURT:  Okay.  All right.  Thank you.
11              MR. SMITH:  May I respond briefly?
12              THE COURT:  You may.
13              MR. SMITH:  First, I have a little trouble
14    following the argument about the Fourth Circuit mandate.
15    I don't see that it decided anything other than that SP,
16    DS, and Nesmith have allegations that are sufficient to
17    establish injury in fact.  It said, We need not decide
18    whether Kenny and Girls Rock have also established injury
19    in fact.  It didn't say whether this Court could examine
20    it in light of the Fourth Circuit's opinion.
21              The problem -- standing as to all these people
22    should be important because we need to determine who
23    remains as an active plaintiff.  The Fourth Circuit
24    addressed DS, SP, and Nesmith.  Nesmith, plaintiffs
25    concede, is now moot and out of the case.  Same for Kenny,
```

1   one of the leftovers.  That leaves SP that the Fourth

2   Circuit found had standing and DS.  DS, we believe, is

3   moot for the reasons we set forth in our memorandum and

4   our argument.  So we believe he should be out.  And making

5   the decision about him is important because if SP is out

6   of school now, the allegations against her would be moot

7   also.  If we don't decide that now then we may have to

8   come back up after doing some discovery as to the status

9   of SP.  So it might help to resolve SP as well.

10          And then that would leave Girls Rock, Carolina

11   Youth Action Project.  We believe for the reasons we

12   discussed that they are -- do not meet standing

13   requirements for an organization for the reasons we set

14   forth in our briefing and in our argument.  I didn't hear

15   anything from the plaintiffs that changed that.  I don't

16   think that they are members of an organization in the

17   sense contemplated by the court.  And I think that it's

18   clear from the allegations that they are clients, people

19   who receive the services of the organization.

20          Students have a voice in their schools for

21   student councils, for student body officers.  But they

22   don't make the final decisions, the administration does,

23   not the students.  And from the way that the complaint is

24   framed, that doesn't appear that clients of Girls Rock,

25   Carolina Youth Action Project have a -- the membership

1  role contemplated by court decisions.

2          So if they're out, if DS is out -- I guess we

3  need to determine whether SP is still in school, she may

4  be out also -- that leaves DD.  We reserve the right to

5  contest standing as to DD.  We don't do so now because we

6  don't have enough information about him.  But it's

7  important to determine the scope of this case is what's

8  going to be addressed to know who the parties are.

9          As to the class action, I think it's already --

10  the pointing out about the disturbing the schools law

11  change affecting the scope of that class because there

12  would be no need for a class of people who might be

13  charged in the future under 420 because it's been amended

14  so as to take them out of the scope of it.

15          So we've got a partial class as to that statute.

16  We've got a bigger class as to 530.  It makes the whole

17  thing unwieldy and underscores the lack of commonality and

18  typicality.  They say, well, any student is potentially

19  subject to a charge under 530 in the future.  But we

20  don't -- most students aren't going to encounter that.

21  Most students are going to be doing what they're supposed

22  to be doing.  Most students maybe favor this kind of law.

23  It's just purely speculative that this might apply to a

24  particular student in the future.  And the size of the

25  class just underscores the lack of commonality and

1    typicality.

2         I believe that -- as to the relief they seek

3    from the record, as I said in discussing this, they don't

4    want to disturb the sentences, but they want to disturb

5    the record.  But disturbing the record does disturb the

6    sentences because there would be no record of it.

7    Instead, they should be required to follow existing

8    exhaustion procedures.

9         However, the Court has had questions about it.

10   And as I said in my opening argument, if the Court would

11   like briefing on expungement issues, what the power of the

12   Court is with respect to recordkeeping alone without

13   adreading the sentences themselves, I'll be glad to

14   provide that to the Court.  And I would think plaintiffs

15   would be glad to address that as well if Your Honor would

16   like that.

17        **THE COURT:**  That would be helpful if both

18   parties could do that.  That would be helpful.

19        **MR. SMITH:**  Your Honor, with the holidays coming

20   up and a number of deadlines, it seems like December is

21   always a busy month.

22        **THE COURT:**  Correct.

23        **MR. SMITH:**  If we could -- 30 days would just

24   carry us to right after the first of the year.  If we

25   could have until -- let's see, the 1st is -- if we could

1    have until January 17th to submit something?

2              THE COURT:  That would be fine.

3              MR. SMITH:  And then the plaintiffs could

4    respond to that.  And then we might do a brief reply or --

5    on that issue if that would be agreeable to Your Honor.

6              THE COURT:  That's fine.  Thank you.  Appreciate

7    it.

8              MR. SMITH:  So we'll address in that the power

9    of the Court to address records retroactively and the

10   extent of expungement procedure under SC law.

11             THE COURT:  Okay.  That would be helpful.

12             MR. SMITH:  Unless there's something further,

13   Your Honor, we rest on our arguments and our brief.

14             THE COURT:  I don't have any additional

15   questions.  I appreciate it very much.  Thank you.

16             MR. SMITH:  Thank you, Your Honor.  Best wishes

17   for the holidays.

18             THE COURT:  Thank you.  Same to you.

19             MS. HINGER:  Your Honor, I have just a couple of

20   points.

21             THE COURT:  Okay.

22             MS. HINGER:  First, I wanted to make a slight

23   correction to what I said earlier.  After our case was

24   filed, the Carolina Youth Action Project did create a

25   non-profit board, which is adults only for purposes of

42

1  fiscal accountability.  So I did want to make that

2  correction.  But all the programming decisions are still

3  decided collectively with the involvement of youth; for

4  example, the issues of advocacy that the group will work

5  on and the central mission that they focus on.

6       And then the second issue that I did just want

7  to draw Your Honor's attention to is the joint stipulation

8  for a protective order that's pending with the Court at

9  Docket No. 144.  And that's just to protect confidential

10 information, particularly about juveniles that may be

11 exchanged by the parties in the case.

12      **THE COURT:**  All right.  So that is still pending

13 that I need to respond to?

14      **MS. HINGER:**  Yes, Your Honor.  I have a copy of

15 it here I can provide if the Court would like.

16      **MR. SMITH:**  Did I file a response to that?

17      **MS. HINGER:**  It was jointly filed.

18      **MR. SMITH:**  It was?  Okay.  All right.  When you

19 said it, I forgot --

20      **THE COURT:**  I'll be able to get it off the

21 docket, so thank you.

22      **MS. HINGER:**  Thank you, Your Honor.

23      **THE COURT:**  All right.  Thank you very much.

24 I'll take it all under advisement.  I look forward to

25 getting your briefs and have a nice holiday.

43

```
1          MR. SMITH:  Thank you.

2          MS. HINGER:  Thank you.

3          MR. SMITH:  You too, Your Honor.

4          THE COURT:  So with regard to this protective

5   order, is there any opposition to it?

6          MR. SMITH:  I believe they just -- I had

7   forgotten that I had looked at it, Your Honor.  But she

8   said it was of consent.  If I consented, I consented.  I

9   did.  According to this, I did, Your Honor.

10          THE COURT:  Okay.  All right.  Thank you.

11      (WHEREUPON, court was adjourned at 3:15 p.m.)

12                                    * * *

13  I certify that the foregoing is a correct transcript from

14  the record of proceedings in the above-entitled matter.

15      s/Karen E. Martin                    11/17/2021
    _____        _____
16  Karen E. Martin, RMR, CRR              Date

17

18

19

20

21

22

23

24

25
```

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON  DIVISION

| | | |
|---|---|---|
| Kenny, et al, | ) | Civil Action No.  2:16-cv-2794-MBS |
| | ) | |
| Plaintiffs, | ) | **MEMORANDUM OF DEFENDANT** |
| | ) | **WILSON REGARDING** |
| v. | ) | **EXPUNGEMENT** |
| | ) | |
| Wilson, et al, | ) | |
| | **)** | |
| Defendants. | ) | |
| _____ | ) | |

The Defendant Alan Wilson hereby submits this memorandum regarding expungement as authorized by this Court's Minute Entry of December 4, 2020 (No. 175).  In this action Plaintiffs seek for themselves, and the alleged class, that the Defendants be enjoined from retaining or considering records related to the adjudication or disposition of charges or sentencing.  As provided in that Entry, this Memorandum addresses the power of the court to address records retroactively and the extent of the expungement procedure in South Carolina.

**EXPUNGEMENT PROCEDURE IN SOUTH CAROLINA**

The statutory provisions for expungement in this State make clear that expungement is applicable only on an individual basis rather than for a class or other group.

S.C. Code Ann. § 63-19-2050 of the Juvenile Justice Code provides, in part, as follows

(A)(1) A person who has been taken into custody for, charged with, or adjudicated delinquent for having committed a status offense or a nonviolent crime, as defined in Section 16-1-70, may petition the court for an order expunging all official records relating to:

(a) being taken into custody;
(b) the charges filed against the person;
(c) the adjudication; and
(d) the disposition.

Because the alleged class consists of all elementary and secondary public school students in South Carolina (Amended Complaint and the crimes at issue are nonviolent, ¶113 (Doc. Entry No. 113), §63-19-2050 appears to be the section under which most eligible persons would apply. This statute does not provide for a class or a group petition, and the following individualized exceptions in §63-19-3050 demonstrate that it is intended for a single person who would have to apply and meet the terms of the statute:

> (A2) A person may not petition the court if the person has a prior adjudication for an offense that would carry a maximum term of imprisonment of five years or more if committed by an adult.

> (B) A prosecution or law enforcement agency may file an objection to the expungement. If an objection is filed, the expungement must be heard by the court. The prosecution or law enforcement agency's reason for objecting must be that the person has other charges pending or the charges are not eligible for expungement. The prosecution or law enforcement agency shall notify the person of the objection. The notice must be given in writing at the most current address on file with the court, or through the person's counsel of record.

Because the alleged class consists of elementary and secondary students, very few if any would have been charged as adults, and the individual Plaintiff Nesmith's claims have been resolved. For those who were convicted as adults, §22-5-910 as follows might potentially apply to those persons convicted of disorderly conduct who individually apply and who meet its terms because the maximum penalty for a conviction falls within the limits of the statute[1]:

---

[1] S.C. Code Ann. § 16-17-530 – disorderly conduct ("fined not more than one hundred dollars or be imprisoned for not more than thirty days. However, conditional discharge may be granted by the court in accordance with the provisions of this section upon approval by the circuit solicitor.").

Convictions of disturbing the schools under the former version of the disturbing the schools statute carried a maximum penalty outside the range of the §22-5-910 ("(B) Any person violating any of the provisions of this section [§16-17-420] shall be guilty of a misdemeanor and, on conviction thereof, shall pay a fine of not more than one thousand dollars or be imprisoned in the county jail for not more than ninety days." 2010 South Carolina Laws Act 273 (S.B. 1154)).

2

(A) Following a conviction for a crime carrying a penalty of not more than thirty days imprisonment or a fine of one thousand dollars, or both, the defendant after three years from the date of the conviction, including a conviction in magistrates or general sessions court, may apply, or cause someone acting on his behalf to apply, to the circuit court for an order expunging the records of the arrest and conviction and any associated bench warrant. However, this section does not apply to an offense involving the operation of a motor vehicle.

* * *

(C) If the defendant has had no other conviction, including out-of-state convictions, during the three-year period as provided in subsection (A), or during the five-year period as provided in subsection (B), the circuit court may issue an order expunging the records including any associated bench warrant.

The provisions in this statute regarding the record of the defendant demonstrates that it is intended only for a single applicant. Section 17-1-40 provides for expungement of records of persons whose charges were discharged or dismissed or the person was found not guilty.

Alternative expungement provisions are available for certain youthful offenders (§24-19-10(d)[2]) under §22-5-920. That statute would not permit class wide relief because it is individualized in that it requires an application for the defendant to the circuit court and imposes the condition that the defendant not have been convicted of an offense over a 5 year period.

That individual applications are required is also made clear by general provisions for handling expungements. Section 17-22-910 requires that the solicitors' offices administer all applications for expungement, and §17-22-930 provides that a person applying to expunge a criminal record use a blank expungement order from the appropriate solicitor's office. The Supreme Court, by a 2015 Order, approved forms for use for expungement and destruction of

---

[2] (d) "Youthful offender" means an offender who is: . . .

(ii) seventeen but less than twenty-five years of age at the time of conviction for an offense that is not a violent crime, as defined in Section 16-1-60, and that is a misdemeanor, a Class D, Class E, or Class F felony, or a felony which provides for a maximum term of imprisonment of fifteen years or less;

S.C. Code Ann. § 24-19-10. *See also* §24-19-50 powers of court upon conviction of youthful offenders.

3

JA227

arrest in various courts including the following: "Motion and Order for Expungement Of Juvenile Records (Family Court) (SCCA 492);   Motion and Order for Expungement Of Juvenile Records—Not Guilty (Family Court) (SCCA 492NG);  Order for Destruction of Arrest Records (Magistrate/Municipal Court) (SCCA 223C)." *In re Revised/Created Unif. Expungement Forms*, 413 S.C. 205, 776 S.E.2d 72 (2015).

## FEDERAL COURTS LACK AUTHORITY TO ORDER ADDRESS RECORDS RETROACTIVELY AS BY ORDERING EXPUNGEMENT IN A PROCEEDING OF THIS TYPE

Plaintiffs request an injunction as to the consideration and retention of any of their criminal records except as is permitted following expungement under §17-1-40.  They appear to be requesting, in effect, that this Court order that their records be expunged.  Respectfully, this Court lacks the authority to order such retroactive relief in the form of expungement or otherwise.

The Court of Appeals for the Fourth Circuit in *United States v. Mettetal*, 714 F. App'x 230, 235–36 (4th Cir. 2017) emphasized that expungement is a remedy to be used in only "extreme circumstances":

> Amicus counsel now argues on appeal that because this court previously declared that Mettetal's arrest and convictions were unlawful, we have ancillary jurisdiction to consider his petition to expunge his records on those grounds. Assuming without deciding that ancillary jurisdiction exists to consider Mettetal's motion for expungement, we find that Mettetal's petition fails on the merits. *United States v. Smith*, 395 F.3d 516, 519 (4th Cir. 2005) (we "may affirm on any grounds apparent from the record"); see, e.g., *United States v. Field*, 756 F.3d 911, 915-16 (6th Cir. 2014) (noting in dicta its agreement with other circuits that "where motions for expungement challenge an unconstitutional conviction or an illegal arrest or are otherwise based upon a constitutional claim, federal courts may have jurisdiction to consider the motion"). On balance, expungement is rarely justified. *See United States v. Bagley*, 899 F.2d 707, 708 (8th Cir. 1990).

Mettetal argues that where a court overturns an arrest or conviction for lack of probable cause, that record must be expunged. As the Eighth Circuit pointed out in[ *United States v. Bagley*, 899 F.2d 707, 708 (8th Cir. 1990)], it is "difficult to imagine that expunction, a remedy to be used in extreme circumstances, should be exercised every time a case is dismissed because evidence is suppressed." 899 F.2d at 708. Indeed, the cases Mettetal points to in support of this claim involved much more "extreme circumstances," like mass arrests intended to curb the expression of civil rights. *See Sullivan v. Murphy*, 478 F.2d 938 (D.C. Cir. 1973) (arrest of over 14,000 antiwar demonstrators); *United States v. McLeod*, 385 F.2d 734 (5th Cir. 1967) (large-scale arrests intended to harass and intimidate black voters). These circumstances are so different from the ones before us that they afford no assistance to Mettetal's argument.[footnote omitted]

The judiciary and the public possess an independent interest in maintaining a full and accurate account of court proceedings and the judiciary's own role in the vindication of criminal defendants' constitutional rights. *See Doe v. Public Citizen*, 749 F.3d 246, 266 (4th Cir. 2014) ("[P]ublic access promotes not only the public's interest in monitoring the functioning of the courts but also the integrity of the judiciary."); *Jessup v. Luther*, 277 F.3d 926, 928 (7th Cir. 2002) (linking full judicial records to "the values protected by the free-speech and free-press clauses of the First Amendment" and to adequate public monitoring of judicial performance); *Nixon v. Warner Communications*, 435 U.S. 589, 602 (1978) (recognizing the "presumption ... in favor of public access to judicial records"). We find no reason to believe that this interest is not present here.

In sum, then, *Mettetal's* petition falls short of the criteria necessary for the court to expunge the records of his vacated arrest and convictions.

The instant case is a collateral proceeding challenging statutes under which some alleged class members may have been adjudicated delinquent. The State maintains that these statutes are valid; however, should this Court, *arguendo*, rule differently, the Court would lack the authority to order the expungement of the records. As stated in *Mettetal, supra*, "it is "difficult to imagine that expunction, a remedy to be used in extreme circumstances, should be exercised every time a case is dismissed because evidence is suppressed." In the instant proceeding, this Court is not even presiding over the cases in which the Plaintiffs and class members have been or were charged. Accordingly, when *Mettetal* rejected use of expungement in a court that had vacated his criminal conviction long ago, this Court lacks authority to do so in a civil case as to criminal cases over which it never presided.

5

Plaintiffs have cited *Sullivan v. Murphy*, 478 F.2d 938 (D.C. Cir. 1973) as authority for expungements, but it is readily distinguishable.  In fact, as quoted above, the Fourth Circuit, in *Mettetal*,  cited *Sullivan* as a case involving "'extreme circumstances,' like mass arrests intended to curb the expression of civil rights" unlike those here.  In the instant case, Plaintiffs seek relief for themselves and as to a huge class whose arrests involve different times, charges and circumstances. The District Court of South Carolina, in a federal habeas case, has also distinguished *Sullivan* and recognized the limited authority of a federal court to order expungement:

> Petitioner's motion also seeks expungement of all records, in any form, relating to Petitioner's arrest and supporting his commitment. ( [33] at p. 7) However, Petitioner has not alleged any facts in his motion which would support a finding of the required exceptional circumstances justifying such relief. "A person can petition the federal court (complaint for injunctive relief) to expunge all federal judicial (but not executive branch) records .... but it is very difficult to prove the "exceptional circumstances" that would support a judgment for expunction." *Gilchrist v. South Carolina Veterans Admin.*, 2007 WL 3286781 (D.S.C. Nov.6, 2007), citing *Allen v. Webster*, 742 F.2d 153, 155 (4th Cir.1984) (expungement of an arrest record is relief confined to "exceptional circumstances"). Aside from the isolated statutory bases for expungement (none of which are present in this case), courts also have inherent equitable power to order the expungement of criminal records; *see U.S. v. Doe*, 556 F.2d 391, 393 (6th Cir.1977); yet such power is of "exceedingly narrow scope." *Coles v. Levine*, 561 F.Supp. 146, 153 (D.Md.1983) (quoting *Rogers v. Slaughter*, 469 F.2d 1084, 1085 (5th Cir.1972)), aff'd, 725 F.2d 674 (4th Cir.1984); see also *Geary v. U.S.*, 901 F.2d 679, 679 (8th Cir.1990) (courts may expunge criminal records based on their inherent equitable powers "provided that the case presents extraordinary circumstances"), invocation of courts' inherent power to expunge criminal records is to be reserved only for extreme and compelling circumstances, such as when necessary to "remedy[ ] the denial of an individual's constitutional rights," *Coles*, 561 F.Supp. at 153, or when the government concedes the defendant's innocence. *U .S. v. Van Wagner*, 746 F.Supp. 619, 622 (E.D.Va.1990). But *cf. Geary*, 901 F.2d at 680 (stating that mere "[a]cquittal [of a defendant] generally has not been treated by the courts as an extraordinary circumstance warranting the issuance of an expungement order").

> *7 This Court is aware that the power to expunge "is a narrow one, and should not be routinely used whenever a criminal prosecution ends in an acquittal, but should be reserved for the unusual or extreme case." *U.S. v. Linn*, 513 F.2d 925, 927 (10th Cir.), cert. denied, 423 U.S. 836 (1975). Such extreme circumstances have been found and records ordered to be expunged where procedures of mass arrests rendered judicial

6

determination of probable cause impossible, *Sullivan v. Murphy*, 478 F.2d 938 (D.C.Cir.1973); where the court determined the sole purpose of the arrests was to harass civil rights workers, *U.S. v. McLeod*, 385 F.2d 734 (5th Cir.1967); where the police misused the police records to the detriment of the defendant, *Wheeler v. Goodman*, 306 F.Supp. 58 (W.D.N.C.1969); or where the arrest was proper but was based on a statute later declared unconstitutional, *Kowall v. U.S.,* 53 F.R.D. 211 (W.D.Mich.1971). Nothing like any of these extreme circumstances exist in this case. Accordingly, Petitioner is not entitled to expungement of his records.

*Knox v. United States*, No. CIVA 9071792-HMHGCK, 2008 WL 2168871, at *6–7 (D.S.C. May 2, 2008), report and recommendation adopted, No. CA 9:07-1792-HMH-GCK, 2008 WL 2168866 (D.S.C. May 20, 2008), aff'd, 297 F. App'x 254 (4th Cir. 2008).[3]

As set forth above, Federal Courts order expungements only under "narrow" circumstances not present here.  Therefore, no authority appears to exist for this Court to order retroactive relief as to the Plaintiffs' records.  Accordingly, any person desiring expungement would need to apply and meet the requirements of state statutes on an individual basis.

---

[3] This quotation cites an exception  "where the arrest was proper but was based on a statute later declared unconstitutional, *Kowall v. U.S.,* 53 F.R.D. 211 (W.D.Mich.1971)."  *Kowali* is distinguishable because the request for expungement was made by a single individual in connection with his moving to vacate his sentence inposed by the same court.  Although the quotation says that the statute involved was declared unconstitutional, the sentence was the result of a regulation found to be invalid.  *Kowali* cites *Gutknecht v. United States*, 396 U.S. 295, 306, (1970) which held that "[t]he power under the regulations to declare a registrant 'delinquent' has no statutory standard or even guidelines."  Moreover, *Kowali* indicates that the determination of expungement should be individualized.  As it stated, "[i]n each case, the court must weigh the reasons advanced for and against expunging arrest records. If it is found after careful analysis that the public interest in retaining records of a specific arrest is clearly outweighed by the dangers of unwarranted adverse consequences to the individual, then the records involved may properly be expunged."  53 F.R.D. at 214 (emphasis added).

7

USCA4 Appeal: 21-2166    Doc: 18    Filed: 02/11/2022    Pg: 237 of 353

**CONCLUSION**

For the foregoing reasons, this Court lacks the authority to order that records be altered retroactively by expungement or otherwise in this case.   Plaintiffs would individually have to apply and meet State statutory requirements in order to have their records expunged.

Respectfully submitted,

ALAN WILSON
Attorney General
Federal ID No.10457

ROBERT D. COOK
Solicitor General
Federal ID No. 285
Email: RCook@scag.gov

/s/ J. Emory Smith, Jr.
J. EMORY SMITH, JR.
Deputy Solicitor General
Federal ID No. 3908
Email: ESmith@scag.gov

January 17, 2020                              Counsel for Defendant Wilson

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH CAROLINA
## CHARLESTON DIVISION

| | | |
|---|---|---|
| Kenny, et al., | ) | Civil Action No. 2:16-cv-2794-MBS |
| | ) | |
| | ) | **ORDER AND OPINION** |
| Plaintiffs, | ) | |
| v. | ) | |
| | ) | |
| Wilson, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## I.     FACTUAL BACKGROUND AND PROCEDURAL HISTORY

On August 11, 2016, Niya Kenny; Taurean Nesmith; Girls Rock Charleston, Inc.[1] ("Girls Rock"); D.S.; and S.P. ("Plaintiffs"), on behalf of themselves and those similarly situated, filed suit against South Carolina Attorney General Alan Wilson ("Defendant")[2] challenging the Disturbing Schools Law, codified at S.C. Code Ann. § 16-17-420; and the Disorderly Conduct Law, codified at S.C. Code Ann. § 16-17-530. ECF No. 1. Plaintiffs challenge the Disturbing Schools Law as unconstitutional on its face and challenge the Disorderly Conduct Law as unconstitutional as applied to K-12 public school children in South Carolina. Id.

In their complaint, Plaintiffs seek 1) a declaratory judgment stating that the Disturbing Schools and Disorderly Conduct Laws violate the Fourteenth Amendment; 2) a preliminary and permanent injunction enjoining Defendant from enforcing both statutes; and 3) an order

---

[1] Defendant refers to this organization as "Girls Rock," which was the name of the organization at the time of the filing of this suit. Since the filing of the suit, the organization changed its name to the Carolina Youth Action Project. ECF No. 133. The court will refer to the organization as "Girls Rock," as that is the name used in the complaint.

[2] Plaintiffs originally filed this action against Defendant Alan Wilson and numerous state law enforcement officials. The action was stayed against the state law enforcement Defendants by consent order. ECF No. 131. Defendant Wilson, however, remains part of the action.

1

**JA233**

enjoining Defendant from considering and/or retaining records of individuals prosecuted or

charged under the Disturbing Schools and Disorderly Conduct Laws, "except as would be

permissible following expungement . . . ." ECF No. 167 at 2. Defendant, as well as four state law

enforcement officials, filed a motion to dismiss on September 30, 2016, asserting, among other

things, that Plaintiffs lacked Article III standing. ECF No. 28. The Honorable C. Weston Houck[3]

granted the motion to dismiss on March 3, 2017. ECF No. 91. Plaintiffs appealed the district

court's decision to the Court of Appeals for the Fourth Circuit. On March 15, 2018, the Fourth

Circuit vacated the decision of the district court and remanded the case for further proceedings,

finding that Plaintiffs S.P., D.S., and Nesmith had shown that they had standing. ECF No. 102.

Defendant, as well as four state law enforcement officials, filed a renewed motion to dismiss

shortly thereafter. ECF No. 117. That motion was withdrawn by consent on May 15, 2018. ECF

No. 131.

The Disturbing Schools Law was amended on May 17, 2018. ECF No. 132-1. While

Plaintiffs concede that the amendments "address Plaintiffs' request that this Court enjoin

enforcement of S.C. Code § 16-17-420 . . . and also resolve the [enforcement] claims of Niya

Kenny and Taurean Nesmith . . . the legislative amendments did not address Plaintiffs' request

for relief from the retention of records related to . . . the Disturbing Schools Law or Plaintiffs'

claims related to the Disorderly Conduct statute." ECF No. 167 at 3. On February 19, 2019,

Plaintiffs moved to amend their complaint to add D.D., a current South Carolina public school

student charged under the old Disturbing Schools Law, as a class representative. Plaintiffs also

maintained that D.S. is an adequate class representative. The court granted leave to amend, and

---

[3] Following Judge Houck's passing, this matter was reassigned to the undersigned on April 6, 2018. ECF No. 104.

Plaintiffs filed an amended complaint adding D.D. as a Plaintiff on May 16, 2019. ECF No. 157. Plaintiffs' original complaint was otherwise unchanged.

On June 6, 2019, Defendant filed a motion to dismiss the amended complaint. ECF No. 165. Defendant raises the following grounds for dismissal: 1) the claims of Plaintiffs Kenny and Nesmith are resolved, moot, and the two individuals lack standing; 2) Plaintiff D.S.'s claims are moot because she is no longer in school and the charges against her are dismissed; 3) Girls Rock lacks standing; 4) the claims of sentenced Plaintiffs are barred by the doctrine of res judicata, the Rooker-Feldman[4] doctrine, and the Supreme Court's holding in Heck v. Humphrey, 512 U.S. 477 (1994); 5) Plaintiffs' claims for prospective relief as to the Disturbing Schools Law must be dismissed; 6) the Disturbing Schools and Disorderly Conduct Laws are constitutional; and 7) the class action allegations should be stricken. Id. Plaintiffs filed a response in opposition on June 20, 2019. ECF No. 167. Plaintiffs assert that 1) Defendant raises no new issues and re-assertion of previously litigated issues is barred by the mandate rule; 2) Girls Rock has standing; 3) D.S.'s claims relate back to the filing of the suit and are therefore not moot; 4) the class allegations are properly pleaded; 5) the doctrine of res judicata, the Rooker-Feldman doctrine, and Heck do not apply here; and 6) constitutionality claims were addressed by the Fourth Circuit and are barred from re-litigation. ECF No. 167.  A hearing was held on Defendant's motion on December 4, 2019. ECF No. 175.

## II.    LEGAL STANDARD

Under the Federal Rules of Civil Procedure, a party can move to dismiss a case if the other party fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). To

---

[4] Rooker v. Fidelity Trust, 263 U.S. 413 (1923), and District of Columbia Court of Appeals v. Feldman, 460 U.S. 462 (1983).

survive a motion to dismiss, a complaint must state sufficient factual information that is

"plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 547 (2007). Allegations in

complaints are generally "taken as true." Id. at 556.  If a complaint contains well-pleaded

allegations with factual background, the court is to assume that the facts are accurate and then

determine if the court should grant relief. Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009). However,

"[f]actual allegations must be enough to raise a right to relief above the speculative level . . . ."

Twombly, 550 U.S. at 555 (citing 5 C. Wright & A. Miller, Federal Practice and Procedure §

1216, pp. 235–236 (3d ed. 2004)).

### III.    ANALYSIS AND DISCUSSION

#### A.  The Mandate Rule

Plaintiffs contend that the mandate rule bars the court from considering Defendant's

motion with respect to Girls Rock's standing. Plaintiffs argue that "the standing of [Girls Rock]

was fully briefed before both the District and Appellate Courts . . . .[A]fter reviewing this

briefing . . . the Court of Appeals vacated the District Court decision." ECF No. 167 at 6.

Defendant asserts that the Fourth Circuit left the question of standing as to Girls Rock up to this

court.

The mandate rule "compels compliance on remand with the dictates of a superior court

and forecloses relitigating of issues expressly or impliedly decided by the appellate court."

United States v. Bell, 5 F.3d 64, 66 (4th Cir. 1993). "The mandate rule in fact serves the interest

of finality in litigation . . . . Repetitive hearings, followed by additional appeals, waste judicial

resources and place additional burdens on . . . hardworking district and appellate judges." Doe v.

Chao, 511 F.3d 461, 465–66 (4th Cir. 2007)(internal quotation marks omitted).

The Fourth Circuit has held that "a district court must, except in rare circumstances, implement both the letter and spirit of the . . . mandate, taking into account [our] opinion and the circumstances it embraces." Bell, 5 F.3d at 66–67. "Few legal precepts are as firmly established as the doctrine that the mandate of a higher court is 'controlling as to matters within its compass.'" Id. (quoting Sprague v. Ticonic Nat'l Bank, 307 U.S. 161, 168 (1939)).

In vacating Judge Houck's ruling, the Fourth Circuit found that Plaintiffs S.P., D.S., and Nesmith had standing, and then concluded that "[b]ecause S.P., D.S., and Nesmith satisfy the injury-in-fact requirement, we need not decide whether Kenny or Girls Rock have also established an injury in fact . . . . [W]hether the claims alleged by [Kenny and Girls Rock] survive further analysis is a matter we leave to the district court." Kenny v. Wilson, 885 F.3d 280, 291 (2018). The court finds that the Fourth Circuit's standing determination applied only to Plaintiffs S.P., D.S., and Nesmith; the holding was narrow, and the language in the Fourth Circuit's opinion does not indicate that it made a finding as to Girls Rock's standing. The court will independently evaluate Girls Rock's standing.

**B.  Claims as to the Disturbing Schools Law**

Plaintiffs Kenny and Nesmith sought injunctive relief from enforcement of the Disturbing Schools Law. ECF No. 167 at 2.  The parties agree that Kenny and Nesmith's claims, as well as all other claims for injunctive relief as to future enforcement of the Disturbing Schools Law, are moot due to the modification of the Disturbing Schools Law. ECF No. 167 at 4. However, Plaintiffs still seek injunctive relief, i.e., expungement of any portion of their criminal records referencing the old Disturbing Schools Law. Defendant argued at the hearing and in

supplemental briefing that the court is without the authority to order expungement.[5] ECF No.

179. Defendant argues that Plaintiffs are required to apply individually to have their records

expunged. Defendant also asserts that federal courts may order expungement only in extreme

circumstances that are not present here. Id. at 4.

 As a general rule,"'once a plaintiff has established the violation of a constitutional or

statutory right in the civil rights area . . . court[s] ha[ve] broad and flexible equitable powers to

fashion a remedy that will fully correct past wrongs.'" N. Carolina State Conference of NAACP

v. McCrory, 831 F.3d 204, 239 (4th Cir. 2016)(quoting Smith v. Town of Clarkton, 682 F.2d

1055, 1068 (4th Cir. 1982)). The power of federal courts to order remedies is not unlimited. For

instance, federal courts often decline to consider motions for expungement when expungement is

sought for purely equitable reasons -- ordinarily, situations where parties do not challenge the

validity of past convictions, but rather assert that their past convictions impose hardships upon

them in later life -- finding that they do not have ancillary jurisdiction to consider such motions.

See, e.g., United States v. Mitchell, 683 F. Supp. 2d 427, 429 (E.D. Va. 2010);  United States v.

Bowen, No. 5:92CR174, 2015 WL 2144012, at *3 (N.D.W. Va. May 7, 2015); United States v.

Aquine, No. CR 9:01-1117-SB, 2014 WL 12843525, at *1 (D.S.C. Nov. 19, 2014). The district

court's authority to order expungements is "confined to 'exceptional circumstances.'" Allen v.

Webster, 742 F.2d 153, 155 (4th Cir. 1984)(quoting United States v. Schnitzer, 567 F.2d 536,

539 (2d Cir.1977)). Exceptional circumstances are present when an "'arrest was proper but was

based on a statute later declared unconstitutional.'" Id. (quoting Schnitzer, 567 F.2d at 539-40).

---

[5] Defendant also argues that the court cannot order expungement as class relief. ECF No. 179 at
8. The court will address Defendant's argument when it considers the issue of class certification.

Here, Plaintiffs do not seek purely equitable expungement. Rather, Plaintiffs seek expungement based upon convictions stemming from laws they challenge as unconstitutional in this suit. Therefore, the expungement sought in this case would result from proper arrests based on allegedly unconstitutional statutes. Such expungement fits within the parameters detailed in Allen.

### C. Mootness as to D.S.

Defendant contends that D.S.'s claims are moot because she is no longer in school and the charges against her were dismissed. ECF No. 165 at 1. In response, Plaintiffs contend that D.S.'s claims relate back to the filing of the suit "when her record was not expunged." ECF No. 167 at 11. Plaintiffs assert that records from D.S.'s arrest still exist. Id.

The Supreme Court discussed the doctrine of relation back and mootness in class action cases in Cty. of Riverside v. McLaughlin, 500 U.S. 44 (1991). In that case, the Court held that a claim relates back to the filing of the suit and is not moot if it is "so inherently transitory that the trial court will not have even enough time to rule on a motion for class certification before the proposed representative's individual interest expires." Id. at 52 (quoting United States Parole Comm'n v. Geraghty, 445 U.S. 388, 399 (1980)). In Genesis Healthcare Corp. v. Symczyk, the Court elaborated:

> The "inherently transitory" rationale was developed to address circumstances in which the challenged conduct was effectively unreviewable, because no plaintiff possessed a personal stake in the suit long enough for litigation to run its course. A plaintiff might seek, for instance, to bring a class action challenging the constitutionality of temporary pretrial detentions. In doing so, the named plaintiff would face the considerable challenge of preserving his individual claim from mootness, since pretrial custody likely would end prior to the resolution of his claim.

569 U.S. 66, 76 (2013).

By its very nature, the state K-12 education period has an expiration date, making it possible that a plaintiff could graduate from the state K-12 school system before his or her claim was resolved. The instant action, for instance, has been pending for four years. If a plaintiff were to have commenced this suit when he or she entered the ninth grade, that plaintiff would now be approaching graduation from high school and would potentially leave the K-12 system before the case concluded. Furthermore, students often move away from the state before they finish their K-12 schooling. The court finds that the class claims alleged here are transitory in nature. D.S.'s claims are not moot.[6]

### D. __Standing as to Girls Rock__

Defendant first argues that Girls Rock lacks representational standing. ECF 165 at 9. An association establishes representational standing when: "(1) its members would otherwise have standing to sue in their own right; (2) the interests it seeks to protect are germane to the organization's purpose; and (3) neither the claim asserted nor the relief requested requires the participation in the lawsuit of each of the individual members." Hunt v. Washington State Apple Advert. Comm'n, 432 U.S. 333, 333 (1977). For organizations without traditional membership, such as Girls Rock, Hunt requires that a reviewing court determine if the individuals in that organization possess the "indicia of membership." Id. at 344. Factors to consider are whether the individuals in an organization elect the organization's leadership, serve as the organization's leadership, and finance the organization's activities, including the costs of litigation. Id. Ultimately, for an organization to possess the "indicia of membership," it must "provide[] the

---

[6] Even if D.S. could not remain, the court notes that the action would still be able to proceed with D.D. as a class representative, as D.D. remains in the K-12 system.

**JA240**

means by which [the individuals in an organization] express their collective views and protect their collective interests." Id. at 345.

Defendant argues that the individuals in Girls Rock lack the "indicia of membership." Defendant asserts that there is no evidence that the "students -- who are clients served by the non-profit organization actually qualify as members of the organization in any sense as to give rise to associational standing." ECF No. 165 at 9.  Specifically, Defendant states that "there is no evidence . . . that the students are elected or otherwise participate in the organization or that the students finance the organization . . . . Further, no evidence exists that Girls Rock provides a means by which the students 'express their collective views and protect their collective interests,'" as required by Hunt. ECF No. 165 at 9. Plaintiffs argue that that Girls Rock has a defined membership, which consists of "students in the Charleston area . . . . These members include teen leaders who have participated in an organizing leadership apprenticeship through the Girls Rock After School Program." ECF No 167 at 7-8. Plaintiffs state that the mission of Girls Rock is to "challeng[e] criminalization and promot[e] collective accountability for behavior." Id. at 8.

For the following reasons, the court finds that Girls Rock satisfies the minimum requirements for "indicia of membership."  Girls Rock is a "grassroots, youth led movement" where the individuals in the organization "shape the organization's work" themselves. ECF No. 167 at 7. The organization is comprised of students in the Charleston area that benefit from its work. Specifically, teen leaders from the Girls Rock After School Program (GRASP) organize and conduct outreach, including speaking at public events about school-based referrals to law enforcement. Id. They also create videos about their advocacy. Id. at 8. Thus, the first criterion of the Hunt analysis is met.  Regarding the second criterion, the court agrees with Plaintiffs and

**JA241**

concludes that the individual members of Girls Rock would have standing to sue in their own right for the same reasons as the named Plaintiffs. With regard to the third criterion, the organization's activities directly relate to the organization's core principles, which include challenging criminalization and promoting collective accountability for behavior.  Lastly, because the organization is seeking injunctive relief, the participation of the individual members is not required. See Se. Booksellers Ass'n v. McMaster, 282 F. Supp. 2d 389, 393 (D.S.C. 2003). The court concludes that Girls Rock possesses representational standing.

Defendant also argues that Girls Rock lacks organizational standing. A group has organizational standing and may bring suit on its own when it "seeks redress for an injury suffered by the organization itself." White Tail Park, Inc. v. Stroube, 413 F.3d 451, 458 (4th Cir. 2005). Accordingly, the established individual standing requirements -- the requirements that a plaintiff have suffered an injury, that the injury is traceable to the actions of a defendant, and that a court could offer redressability with a favorable ruling -- apply to organizations. Friends of the Earth, Inc. v. Laidlaw Environmental Serv., Inc., 528 U.S. 167 (2000).

Plaintiffs assert that Girls Rock has been injured because charges against some members under the Disturbing Schools Law required it "to increase its public education efforts, advocacy, and outreach activities by redirecting its programming and spending extra time and resources supporting impacted members . . . . [-- t]ime that would otherwise be spent developing programming and providing direct services to young people[,]. . . [which is] a drain on the resources of the organization." ECF No. 167 at 10. In response, Defendant cites Lane v. Holder, 703 F.3d 668 (4th Cir. 2012), arguing that Lane stands for the proposition that an organization does not suffer an injury when the harm it alleges is that it was required to redirect funds in response to an action by a plaintiff.

In <u>Lane</u>, the Fourth Circuit held that a diversion of resources can still create an injury in fact if the challenged laws "burden [plaintiffs] directly." <u>Id.</u> at 673. The Fourth Circuit distinguished types of injuries, stating that "minor inconveniences are distinct from an absolute deprivation." <u>Id.</u> Here, Girls Rock alleges an injury beyond simply redirecting funds. The Disturbing Schools and Disorderly Conduct Laws detract from the organization's mission and purpose and require significant advocacy and outreach efforts. ECF No. 167 at 10. Disturbing Schools and Disorderly Conduct Laws directly burden Girls Rock, and the burden is more than a minor inconvenience to the group. The court finds that Girls Rock possesses organizational standing.

### E.  Res Judicata, the Rooker-Feldman Doctrine, and Heck v. Humphrey

Defendant argues that the doctrine of res judicata, the <u>Rooker-Feldman</u> doctrine, and <u>Heck</u> apply to Plaintiffs who were convicted or pleaded guilty to the statutes at issue.  Defendant asserts that the relief sought would "render the sentences of [Plaintiffs] nullities." ECF No. 165-1 at 15.

"Under the doctrine of res judicata, or claim preclusion, '[a] final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action.'" <u>Pueschel v. United States</u>, 369 F.3d 345, 354 (4th Cir. 2004)(quoting <u>Federated Dep't Stores, Inc. v. Moitie</u>, 452 U.S. 394, 398(1981)).

The <u>Rooker-Feldman</u> doctrine serves to bar federal courts from considering previously decided state court issues. In  <u>Exxon Mobil Corp. v. Saudi Basic Indus. Corp.</u>, 544 U.S. 280 (2005), the Supreme Court held that the <u>Rooker-Feldman</u> doctrine "is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings

commenced and inviting district court review and rejection of those judgments." Id. at 284.

"Rooker-Feldman bars a losing party in state court 'from seeking what in substance would be

appellate review of the state judgment in a United States district court, based on the losing

party's claim that the state judgment itself violates the loser's federal rights.'" Id. at 287 (quoting

Johnson v. De Grandy, 512 U.S. 997, 1005-06 (1994)).

    In Heck, the Supreme Court held that "when a state prisoner seeks damages in a § 1983

suit, the district court must consider whether a judgment in favor of the plaintiff would

necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be

dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been

invalidated." 512 U.S. 477, 487 (1994).

    In this case, Plaintiffs are seeking enjoinment from future enforcement, and are seeking

to prevent Defendant from retaining or considering records created as a result of convictions

under the Disturbing Schools and Disorderly Conduct Laws. The requested relief is different

from challenging the actual validity of any sentence. Rather, Plaintiffs are asking the court to

evaluate the constitutionality of the Disturbing Schools and Disorderly Conduct Laws.  The court

finds that neither res judicata, the Rooker-Feldman doctrine, nor Heck is implicated in this

matter.

### F.  Constitutional Claims

    Defendant moves the court to grant his motion to dismiss on the grounds that the

Disturbing Schools and Disorderly Conduct Laws are constitutional. Procedurally, a motion to

dismiss made pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure is properly made

before a defendant files an answer to a complaint, in the initial stages of a lawsuit. Fed. R. Civ.

P. 12(b)(6)("A motion asserting [a 12(b)(6) defense] must be made before pleading if a

responsive pleading is allowed"). At the 12(b)(6) stage, the court is tasked with performing a threshold analysis -- a determination as to whether a plaintiff has stated a claim upon which relief can be granted in his or her complaint -- and not an in-depth analysis of the claims alleged within that complaint. See In re KGC Homeowners, Inc., No. 16-01062-5-JNC, 2017 WL 3405509, at *2 (Bankr. E.D.N.C. Aug. 8, 2017)("If a complaint fails to meet this threshold obligation, the action should be dismissed . . . .").

This action is in its initial stages. The constitutional challenges to the Disturbing Schools and Disorderly Conduct Laws represent the entirety of this claim. Performing Defendant's requested constitutional analysis at this juncture would amount to the court determining the final outcome of this case, which strays well beyond the threshold analysis with which the court is tasked.

### G. **Class Allegations**

Defendant argues the class action allegations should be stricken because Plaintiffs "fail to meet the requirements for a class action" under Rule 23 of the Federal Rules of Civil Procedure. ECF No. 165-1 at 32.

Rule 23 of the Federal Rules of Civil Procedure provides that "One or more members of a class may sue or be sued as representative parties on behalf of all members only if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class."

Plaintiffs state that it is "in fact rare to [strike class allegations] in advance of a motion for class certification." Cholakyan v. Mercedes-Benz USA, LLC, 796 F. Supp. 2d 1220, 1245

13

**JA245**

(C.D. Cal. 2011). However, a court in this circuit recently held that "[a] court may grant a motion to strike class allegations where the pleading makes clear that the proposed class cannot be certified and no amount of discovery would change that determination." <u>Burch v. Murphy</u>, No. 2:17-CV-03311, 2019 WL 1243860, at *8 (S.D.W. Va. Feb. 25, 2019)(citing <u>Waters v. Electrolux Home Prod., Inc.</u>, Civ. Action No. 5:13-cv-151, 2016 WL 3926431, *4 (N.D. W. Va. July 18, 2016)).  To prevail on a motion to strike class allegations, "defendants have the burden of demonstrating from the face of plaintiffs' complaint that it will be impossible to certify the classes alleged by the plaintiffs regardless of the facts the plaintiffs may be able to prove." <u>Bryant v. Food Lion, Inc.</u>, 774 F. Supp. 1484, 1495 (D.S.C. 1991).

In the present case, no pleading has made it clear that the class in this matter cannot be certified, and it is unclear whether discovery would change that determination. It would be premature to rule on the validity of the class allegations at this juncture.   Accordingly, the court declines to strike the class allegations at the motion to dismiss stage.

## IV.    CONCLUSION

Defendant's motion to dismiss, ECF No. 165, is **DENIED**.

**IT IS SO ORDERED.**


/s/ Margaret B. Seymour
Margaret B. Seymour
Senior United Sates District Judge

Dated: March 30, 2020
Charleston, South Carolina

14

**JA246**

USCA4 Appeal: 21-2166   Doc: 18   Filed: 02/11/2022   Pg: 252 of 353

15

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON  DIVISION

| | | |
|---|---|---|
| Kenny, et al, | ) | Civil Action No.  2:16-cv-2794-MBS |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | **ANSWER OF DEFENDANT** |
| Wilson, et al, | ) | **WILSON TO FIRST AMENDED** |
| | ) | **COMPLAINT** |
| Defendants. | ) | |
| _____ | ) | |

The Defendant Alan Wilson answering the Amended Complaint (Complaint) herein, alleges the following:

**FOR A FIRST DEFENSE**

1.      He denies each and every allegation of the Complaint not hereinafter specifically admitted.

2.      As to Paragraph 1 of the Complaint, he admits only that Plaintiffs challenge S.C. Code Ann. §16-17-410.  He craves reference to the statute, denies any allegations inconsistent therewith and denies that the statute is unconstitutional.  Plaintiffs acknowledge in the last paragraph of the Complaint that §16-17-410 has been amended which resolves their claims for injunctive relief.

3.      As to Paragraph 2, he craves reference to the statute, denies any allegations inconsistent therewith, and denies that the statute "creates an impossible standard" or chills students.  He denies that the statute is unconstitutional. Plaintiffs acknowledge in the last paragraph of the Complaint that §16-17-410 has been amended which resolves their claims for injunctive relief.

4.      As to the first sentence of Paragraph 3, he admits only that the statute was enacted approximately 100 years ago and denies the remainder of that sentence.  He lacks knowledge or information sufficient to form a belief about the truth of the allegations as to the second sentence because it does not specify a time frame.  He denies any suggestion in the second sentence that the statute is unconstitutional.  Defendants lacks knowledge or information sufficient to form a belief about the truth of the last sentence of this Paragraph.  Plaintiffs acknowledge in the last paragraph of the Complaint that §16-17-410 has been amended which resolves their claims for injunctive relief.

5.      As to Paragraph 4, he lacks knowledge or information sufficient to form a belief about the truth of the allegations of this Paragraph.  The Plaintiffs allege a probability for arrest, but on information and belief, they have not provided tables showing probability.  He denies that arrest data is, itself, a predictor for the future arrest of any individual student.   Plaintiffs acknowledge in the last paragraph of the Complaint that §16-17-410 has been amended which resolves their claims for injunctive relief.

6.      He denies the first two sentences of Paragraph 5. He lacks knowledge or information sufficient to form a belief about the truth of the allegations of the last sentence because the scope of that sentence is not explained.

7.      He denies the first two sentences of Paragraph 6.  As to the third sentence of that Paragraph, he admits only that the Marcelin declaration contains a figure of two students referred to the Department of Juvenile Justice during the period 2010 school year – March, 2016,  but he denies that the figures is evidence that the statutes are unconstitutional.  As to the fourth sentence, he lacks knowledge or information sufficient to form a belief about the truth of the allegations of the sentence as written.

8.      As to Paragraph 7, he craves reference to the school codes of conduct and denies any allegations inconsistent therewith.  He denies any allegation that the Codes support the claims in this case.

9.      He lacks knowledge or information sufficient to form a belief about the truth of the allegations of Paragraphs 8 and 9.

10.      As to Paragraph 10, he denies the first sentence as to those individual Plaintiffs who are no longer enrolled in a school or college and as to all Plaintiffs because the provisions of S.C. Code Ann. §16-17-420 that they contested have been rescinded as they acknowledge in the last paragraph of the Complaint.  As to the second sentence, he admits only that Plaintiffs allege that they seek relief, but he denies that the statute is unconstitutional and that they are entitled to the relief alleged.

11.      As to the first sentence of Paragraph 11, he denies, on information and belief, that the Plaintiffs S.P.and D.S. are still attending a South Carolina school, and therefore, denies that they face an ongoing risk.  As to the second sentence, he admits only that Plaintiffs allege that they seek relief but denies that they are entitled to the relief alleged.

12.      As to Paragraph 12, He admits only that Plaintiffs allege that they seek relief under 42 U.S.C. §1983, but denies that they are entitled to the relief alleged.

13.      He admits Paragraphs 13, 14 and 15 but denies that Plaintiffs are entitled to any relief against him.

14.      He admits the second sentence of Paragraph 16, on information and belief.  He admits the first sentence on information and belief as of the time of the filing of the Complaint in 2016.  He lacks knowledge or information sufficient to form a belief about the truth of the allegations as to where Ms. Kenny resides now, and notes that she is older now than as alleged.

Ms. Kenny should be dismissed as a party because Plaintiffs admit in the last paragraph of the Complaint that the claims of Ms. Kenny are resolved.

15.    He admits the first sentence of Paragraph 17 and alleges, on information and belief, that the charges were dismissed.    He denies the second sentence because of the amendment of §16-17-420 and because Plaintiffs admit in the last paragraph of the Complaint that the claims of Ms. Kenny are resolved.

16.    He admits the allegations of Paragraph 18 on information and belief as of the time of the filing of the 2016 Complaint, but he lacks knowledge or information sufficient to form a belief about the truth of the allegations as to where D.S. resides now and denies on information and belief that she is enrolled in a South Carolina school.    She is older now than as alleged.

17.    He admits the first sentence of Paragraph 19, but alleges that the charge has been dismissed.    He denies the second sentence on information and belief and also due to the amendment of §16-17-420.

18.    He admits the allegations of Paragraph 20 on information and belief as of the time of the filing of the Amended Complaint, but he lacks knowledge or information sufficient to form a belief about the truth of the allegations as to where D.D. resides or is in school now.    He is older now than as alleged.

19.    He admits the first sentence of Paragraph 21 but he lacks knowledge or information sufficient to form a belief about the status of the charge now. He lacks knowledge or information sufficient to form a belief about the truth of the allegations in the second sentence of that Paragraph.

20.    He admits the allegations of the first two sentences of Paragraph 22 on information and belief only as of the time of the filing of the 2016 Complaint.    He lacks

knowledge or information sufficient to form a belief about the truth of the allegations as to where S.P. resides now, or where she was enrolled in the 2016-2017 school year (third sentence). He denies on information and belief that she is enrolled now in a South Carolina school. Subject to the Opinion of the Court of Appeals, he denies that S.P. has standing. He lacks knowledge or information sufficient to form a belief about the truth of the allegations of the last two sentences of Paragraph 21.

21.     He admits the allegations of the first sentence of Paragraph 23 on information and belief. As to the second sentence, subject to the Opinion of the Court of Appeals, he lacks knowledge or information sufficient to form a belief about the truth of the allegations but denies that S.P. has any alleged any risk of prosecution that meets constitutional standards for standing and alleges, on information and belief, that she is no longer enrolled in a South Carolina school. He denies that S.P. faces a risk of being charged under the Disturbing the Schools statute due to its amendment. He denies that the statutes are unconstitutional.

22.     The Attorney General admits the allegations of Paragraph 24 on information and belief but acknowledges that the last paragraph of the Complaint states that the name has changed to Carolina Youth Action project. Because the Complaint continues to refer to the organization by the name Girl's Rock, this Answer will use that name also.

23.     He admits only that Girls Rock sues as alleged in the first two sentences of Paragraph 25, but subject to this Court's Order of March 30, 2020 (ECF No. 185 at 10 & 11), denies that Girls Rock has standing to sue or is entitled to relief and denies the third sentence of that Paragraph.

24.     Defendants admits the first sentence of Paragraph 26 on information and belief as of the time of the filing of the 2016 Complaint, but he lacks knowledge or information sufficient

to form a belief about the truth of the allegations as to where Mr. Nesmith resides now and whether he is enrolled in a South Carolina college now.

25.    He admits the first sentence of Paragraph 27 on information and belief, but alleges that the charges have since been dismissed.   He denies the second sentence, because of the amendment of §16-17-420 and because Plaintiffs admit in the last paragraph of the Complaint that the claims of Mr. Nesmith are resolved.

26.    As to the first sentence of Paragraph 28, he admits only that the Defendant Wilson is sued in his official capacity, but denies that Plaintiffs are entitled to relief as to him.  As to the remainder of that Paragraph other than the last sentence, he craves reference to the cited statutes and constitutional provision and denies any allegations inconsistent therewith.  As to the last sentence of this Paragraph, he admits only that the Defendant Wilson is a person under §1983 in this case only to the extent permitted by applicable Federal case law and that he is the State Attorney General and acts within the scope of his authority under State law, but he denies that Plaintiffs have stated a claim against him upon which relief can be granted.

27.    He admits Paragraphs 29 – 37, inclusive, on information and belief subject to the jurisdictional limits of those Defendants and any changes in the persons holding their positions since the Amended Complaint was filed.  He denies that Plaintiffs are entitled to relief as to them.  Proceedings against these defendants are stayed by Consent Order.  ECF No. 131.

28.    He admits Paragraph 38 except that Michael D. Hanshaw is now the Chief of Police for Simpsonville, and he denies that his jurisdiction extends to schools outside that City and denies that Plaintiffs are entitled to relief as to him. Proceedings against him are stayed by Consent Order.  ECF No. 131.

29.     He admits Paragraphs 39 – 41, inclusive, on information and belief subject to the jurisdictional limits of those Defendants and any changes in the persons holding their positions since the Amended Complaint was filed.  He denies that Plaintiffs are entitled to relief as to them.  Proceedings against these defendants are stayed by Consent Order.  ECF No. 131.

30.     As to the first sentence of Paragraph 42, he admits only that their duties under these statutes are as provided by South Carolina law and denies any inconsistencies with South Carolina law.    He denies the second sentence of this Paragraph.  He denies that Plaintiffs are entitled to relief against them alleged in the third sentence. Proceedings against all defendants other than the Attorney General are stayed by Consent Order.  ECF No. 131.

31.     As to Paragraphs 43 - 46, inclusive, he craves reference to the referenced statutes and cases including the amendment to §16-17-420 and denies any allegations inconsistent therewith.

32.     As to Paragraph 47, he craves reference to the referenced cases and denies any allegations inconsistent therewith.

33.     As to Paragraphs 48- 50 inclusive, he craves reference to the statute, including the most recent amendment, and case law construing it and denies any allegations inconsistent therewith.

34.     As to Paragraph 51, he craves reference to the entirety of the statute quoted and denies any inconsistency therewith.

35.     As to Paragraph 52, he craves reference to the statute and case law construing it and denies any inconsistency therewith.

36.     As to Paragraphs 53 - 56, inclusive, he craves reference to the cited Opinions of the Office of the Attorney General and denies any allegations inconsistent therewith.

37.     He admits Paragraphs 57 and 58.

38.     He is lacks knowledge or information sufficient to form a belief about the truth of the allegations of Paragraphs 59 – 71, inclusive.

39.     He admits Paragraph 72 on information and belief.

40.     As to Paragraph 73, he lacks knowledge or information sufficient to form a belief about the truth of the allegations of the first sentence as worded.  He admits the second sentence of that paragraph.

41.     As to Paragraph 74, he admits only that ECF No. 5-7 page 7 contains a figure of two students age 7 referred to the Department of Juvenile Justice during the period 2010 school year – March 9, 2016 for disturbing the schools, but he denies that the figure is evidence that the statutes is unconstitutional.

42.     He admits Paragraph 75 on information and belief as to the period 2010- March 9, 2016 only.

43.     He lacks knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 76.

44.     As to Paragraph 77, he admits only that Plaintiffs have an exhibit that shows an increase in referrals to DJJ in the 2014-15 school year over the 2012-13 school year, but the data shows that DJJ referrals decreased in the 2013-14 school year.  Complete data for the 2015-2016 school year has not been reported by Plaintiffs.

45.     The first sentence of Paragraph 78 does not refer to the period for which rates are alleged to have increased, and therefore, he lacks knowledge or information sufficient to form a belief about the truth of the allegations.  He denies the second sentence because, on information and belief, the data Plaintiffs have produced shows only some raw numbers and does not contain

sufficient information to make predictions as to likelihood of charges among the student population.

46.     He lacks knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 79 in that this Paragraph does not specify the counties or the period of time.

47.     He lacks knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 80 because it does not specify the period of time, and Plaintiffs have not produced any data more recent than four years ago.

48.     He denies Paragraph 81.

49.     As to Paragraph 82, he craves reference to school codes of conduct and denies any allegations inconsistent therewith.

50.     He denies Paragraph 83.

51.     He lacks knowledge or information sufficient to form a belief about the truth of the allegations of Paragraphs 84 - 87 inclusive.

52.     As to Paragraph 88, he craves reference to the incident report and denies any allegations inconsistent therewith.  He alleges that the charges against Plaintiff Kenny have been dismissed.

53.     He lacks knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 89.

54.     As to Paragraph 90, he admits only that Plaintiff Nesmith was arrested and charged with disturbing the schools, but he lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations of that paragraph.

55.     He lacks knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 91.

56.     He lacks knowledge or information sufficient to form a belief about the truth of the allegations of the first sentence of Paragraph 92.  He admits the second and third sentences of that paragraph. Plaintiffs admit in the last paragraph of the Complaint that the claims of Mr. Nesmith are resolved.

57.     He lacks knowledge or information sufficient to form a belief about the truth of the allegations of Paragraphs 93, 94 and 95.

58.     As to Paragraph 96, he admits only that K.B. was charged with disturbing the schools and adjudicated delinquent as alleged in the first sentence.  He craves reference to the police incident report.  He lacks knowledge or information sufficient to form a belief about the truth of the allegations of the remainder of the paragraph.

59.     As to Paragraph 97, he craves reference to K.B's  sentencing records and denies any allegations inconsistent therewith.   He lacks knowledge or information sufficient to form a belief about the truth of the allegations of the remainder of that Paragraph.

60.     He lacks knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 98.

61.     He lacks knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 99 but craves reference to D.D's sentencing records and incident report and denies any allegations inconsistent therewith.

62.     He lacks knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 100.

63.     He lacks knowledge or information sufficient to form a belief about the truth of the allegations of Paragraphs 101 and 102 except that he admits only that S.P. was charged with disorderly conduct.

64.     He lacks knowledge or information sufficient to form a belief about the truth of the allegations of Paragraphs 103 and 104 except that he craves reference to the records regarding the referenced charge against D.S. and its adjudication and dismissal and denies allegations inconsistent therewith.

65.     He lacks knowledge or information sufficient to form a belief about the truth of the allegations of Paragraphs 105 and 106 except that he craves reference to the records regarding the referenced charge against D.D. and its adjudication and dismissal and denies allegations inconsistent therewith.  He denies that the referenced letter came from the "Solicitor General's Office."

66.     He lacks knowledge or information sufficient to form a belief about the truth of the allegations of Paragraphs 107, 108 and 109 except that he acknowledges that Plaintiffs have produced an affidavit about Girls Rock.  The Disturbing the Schools statutes has been amended.

67.     He denies Paragraphs 110, 111 and 112 and specifically denies the allegation regarding §16-17-420 in Paragraph 111 because the statute has now been amended.

68.     As to Paragraph 113, he admits only that D.S., D.D. and S.P. have brought this action.  He denies, on information and belief, that S.P. and D.S. are in school, and subject to the Opinion of the Court of Appeals and this Court's Order of March 30, 2020 (E.C.F. No. 185), he denies that they have standing to bring this action, and he alleges that this action is moot as to them.  Subject to that Opinion and Order, he denies that S.P., D.D. and D.S. may bring this action on behalf of a class, and denies that the class faces the alleged risk.

2:16-cv-02794-MBS   Date Filed 04/09/20   Entry Number 186   Page 12 of 14

69.     As to Paragraph 114, he admits only the second sentence.  He denies the third sentence.  As to the first sentence, he admits only that the proposed class is numerous but denies that the proposed class meets standards for certification under Rule 23, FRCP.

70.     He denies Paragraphs 115 and 116.

71.     As to Paragraph 117, he admits only the last sentence.  He denies the remainder of this Paragraph.

72.     He denies Paragraph 118.

73.     He denies Paragraphs 119 through 124 in that they conflict with the last paragraph of the Complaint in which the Plaintiffs state that they are staying their action against the law enforcement defendants and withdrawing their motion for a defendant class.

74.      Paragraph 125 is a cumulative paragraph to which no response is necessary.  To the extent that, *arguendo,* a response is necessary, he incorporates by reference his answers to the previous allegations and paragraphs of the Complaint and reasserts them.

75.     He denies Paragraph 126.

76.     Paragraph 127 is a cumulative paragraph to which no response is necessary.  To the extent that, arguendo, a response is necessary, He incorporates by reference his answers to the previous allegations and paragraphs of the Complaint and reasserts them.

77.     He denies Paragraph 128.

78.      He denies that Plaintiffs are entitled to any of the Relief in the Prayer for Relief.

79.     He admits the last unnumbered Paragraph of the Complaint beginning with the words "[b]etween the filing," but denies that Plaintiffs are entitled to relief related to still-existing juvenile and criminal records reflecting Disturbing the Schools charges.

**FOR A SECOND DEFENSE**

80.    Subject to the Opinion of the Court of Appeals and the March 30, 2020, Order of this Court, the Attorney General reserves all of his arguments that Plaintiffs lack standing to bring this suit against him and that this action is moot.

81.    Subject to that Opinion and Order, he alleges on information and belief, that the Plaintiffs S.P. and D.S. do not have standing to sue and this action is moot as to them because they are no longer in school.

82.    Subject to that Opinion and Order, he alleges that Girls Rock lacks standing to sue.

**FOR A THIRD DEFENSE**

83.    Plaintiffs have failed to state a class action for a plaintiff class and such allegations are immaterial under Rule 12(f) and fail to satisfy Rule 23, FRCP.

**FOR A FOURTH DEFENSE**

84.    S.C. Code Ann. §16-17-420, as written prior to amendment in 2018, and §16-17-530 are not vague or otherwise unconstitutional.

**FOR A FIFTH DEFENSE**

85.    Plaintiffs have failed to state a claim upon which relief can be granted.

**FOR A SIXTH DEFENSE**

86.    Subject to the March 30, 2020, Order of this Court, the Attorney General reserves all of his arguments that expungement may not be ordered as relief in this case including, but not limited to relief for the alleged class.

## FOR A SEVENTH DEFENSE

88.     Plaintiffs Kenny and Nesmith should be dismissed as parties because Plaintiffs agree that the claims of Kenny and Nesmith are resolved.

## FOR AN EIGHTH DEFENSE

89.     Plaintiffs are not entitled to costs and attorneys' fees under 42 U.S.C. § 1988.

WHEREFORE, having fully answered the Plaintiffs' Complaint, he prays as follows:

1.     That judgment for him be entered as to the Complaint and that the relief sought by the Plaintiffs be denied.

2.     For such further relief as the Court deems just and proper.

ALAN WILSON
Attorney General
Federal ID No.10457

ROBERT D. COOK
Solicitor General
Federal ID No. 285
Email: BCook@SCAG.gov

/s/ J. Emory Smith, Jr.

J. EMORY SMITH, JR.
Deputy Solicitor General
Federal ID No. 3908
Email: ESMITH@SCAG.GOV

Office of the Attorney General
Post Office Box 11549
Columbia, South Carolina 29211
Phone:  (803) 734-3680
Fax:  (803) 734-3677

April 9, 2020                              Counsel for Defendant Wilson

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

Kenny, et al.,

        Plaintiffs,

    v.

Wilson, et al.,

        Defendants.

Civil Action No.: 2:16-cv-2794-MBS

**PLAINTIFFS' MOTION TO SUPPLEMENT MOTION FOR CLASS CERTIFICATION**

Plaintiffs hereby submit this Motion to Supplement their Motion for Class Certification. ECF No. 6. Plaintiffs seek to supplement the Motion for Class Certification with the Declaration of Plaintiff D.D. (Decl. of D.D., attached hereto as Exhibit 1), and to request that D.D. be named as a class representative together with D.S. and S.P.

Plaintiffs filed their First Amended Complaint, ECF No. 157, on May 16, 2019, adding Plaintiff D.D. as a class representative. As stated in the Amended Complaint, D.D. was at the time a fifteen year-old African American male residing in Conway, South Carolina and attending Conway High School in the Horry County School District. *Id.* at ¶ 20; Ex. A at ¶ 1. D.D. continues to attend school in the Horry County School District. D.D. was charged under S.C. Code § 16-17-420 for events alleged to have occurred while attending school and continues to fear arrest and prosecution under the Disorderly Conduct statute if in the future, while on or around the grounds of a school, his actions are interpreted to fall under any of the broad terms of the statute. Am. Compl. at ¶ 21; Ex. A at ¶ 37. D.D. was charged with Disturbing Schools as a

1

sixth grader; the charges against him were dismissed prior to any court hearing. Am. Compl. at ¶ 105 Ex. A at ¶¶ 10, 26. However, D.D. received a letter from the Solicitor General's Office indicating that charges would remain on his record, that these charges could be brought back in court, and that, "if further charges are received, the Solicitor 'would have a record of the opportunity given by this dismissal and will likely take prosecutorial action.'" Am. Compl. at 106.

This supplement to the Motion for Class Certification does not alter the legal arguments before the Court on class certification and Plaintiffs continue to meet the requirements for Class Certification under Rule 23(a) and 23(b)(2). *See* ECF No. 6. As the Court found in granting leave to amend the complaint to add D.D. as a class representative, this addition "does not require that Defendant review a new legal theory." Order Granting Leave to Amend, ECF No. 156 at 2. Moreover, the Court found that "D.D. appears to be an adequate class representative." *Id.* at 3.

The addition of D.D. does not alter the arguments before the court regarding the satisfaction of numerosity requirements. At the filing of the Motion for Class Certification, there were 763,588 students actively enrolled in South Carolina public schools. ECF No. 6 at 3. South Carolina reports that in the 2019-2020 school year there are 787,069 students enrolled in South Carolina public schools.[1] These figures are substantially similar and satisfy the requirement that

---

[1] South Carolina Department of Education, 45 Day Active Student Head Count (2019-2020), https://ed.sc.gov/data/other/student-counts/active-student-headcounts/. It is well settled in the Fourth Circuit that a court may "properly take judicial notice of matters of public record." *Sec'y of State for Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007); *see also Bradacs v. Haley*, 58 F. Supp. 3d 499, 511 (D.S.C. 2014)(finding judicial notice appropriate for facts that are "generally known within the trial court's territorial jurisdiction" or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned") (citing Fed. R. Evid. 201(b)).

JA263

the number of potential plaintiffs is "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23.

D.D. makes the same claims as other named plaintiffs, and raises no new legal arguments. With D.D.'s addition, the same common questions raised in the Motion for Class Certification remain. ECF No. 6. These include whether the Disorderly Conduct statute, S.C. Code § 16-17-530, is unconstitutionally vague as applied to elementary and secondary students, requiring an injunction against future enforcement, and whether Defendant should be enjoined from further considering or retaining records generated under the allegedly unconstitutionally vague S.C. Code § 16-17-420. As Plaintiffs have previously acknowledged, the requested injunctive relief against enforcement of § 16-17-420 through arrest or taking into custody, was addressed by May 2018 revisions to the law, and is no longer sought as a remedy, *see* ECF No. 134 at 1; ECF No. 157 at 27. While this fact is relevant to the ultimate *remedy*, it does bear on the appropriateness of class certification. As set forth in the Motion for Class Certification, these requests for declaratory and injunctive relief are common to the class and are the type that routinely satisfy class certification requirements. *See* ECF No. 6, pp. 5–9; *Berry v. Schulman*, 807 F.3d 600, 608–09 (4th Cir. 2015) ("[B]ecause of the group nature of the harm alleged and the broad character of the relief sought, the (b)(2) class is, by its very nature, assumed to be a homogenous and cohesive group with few conflicting interests among its members."). For the same reasons, D.D.'s inclusion does not alter the analysis of the typicality requirement, which "tends to merge with the commonality and adequacy-of-representation requirements." *Deiter v. Microsoft Corp.*, 436 F.3d 461, 466. (4th Cir. 2006).

Last, Plaintiffs and Defendants jointly filed a Consent Order, ECF No. 131, through which Plaintiffs agreed to withdraw their Motion for Defendant Class Certification. The

3

**JA264**

proposed supplement to the Motion for Class Certification to include D.D. does not alter the withdraw of the motion for defendant class certification.

For the foregoing reasons, Plaintiffs respectfully request that the Motion to Supplement the Motion for Class Certification be granted.

Dated: May 11, 2020

Respectfully submitted,

/s/ Susan K. Dunn                              SARAH HINGER*
SUSAN K. DUNN (Fed. Bar #647)                  GALEN SHERWIN*
American Civil Liberties Union                 American Civil Liberties Union Foundation
Foundation of South Carolina                   125 Broad Street 18th FL
P.O. Box 20998                                 New York, NY, 1004
Charleston, S. C. 29413-0998                   shinger@aclu.org
Tel: (843) 282- 7953
Fax: (843) 720- 1428                            *Admitted Pro Hac Vice
sdunn@aclusc.org

ATTORENYS FOR PLAINTIFFS

**JA265**

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| Kenny, et al., | |
| Plaintiffs, | Civil Action No.: 2:16-cv-2794-MBS |
| v. | **SUPPLEMENTAL MEMORANDUM** |
| Wilson, et al., | **REGARDING CLASS DEFINITION** |
| Defendants. | |

Plaintiffs hereby submit this supplemental memorandum to address the appropriate class definition following the legislative amendments to S.C. Code § 16-17-420 following the initial filing of Plaintiffs' Motion for Class Certification, ECF 6. Supplemental briefing is provided pursuant to this Court's Minute Entry of October 29, 2020. ECF 195.

**Procedural History**

Plaintiffs filed this case on August 11, 2016, seeking, *inter alia*, certification of a class of all elementary and secondary public school students in South Carolina. Complaint, ECF 1 at ¶ 109. Plaintiffs sought relief in the form of an injunction from enforcement of S.C. Code §§ 16-17-420 and 16-17-530 (as applied to elementary and secondary school students), and against the consideration of records generated through enforcement of the challenged statutes. *See id.* at pp. 27–28. As alleged at the filing of the Complaint, all members of the proposed class faced "a risk of arrest or juvenile referral under the broad and overly vague terms of these challenged statutes." *Id.*; *see also* Motion for Class Certification, ECF 6 at 1 (seeking certification of a "plaintiff class consisting of all elementary and secondary public school students in South

Carolina . . ., each of whom faces a risk of arrest or juvenile referral under the broad and overly vague terms of the challenged statutes").

During the course of this litigation on May 17, 2018, Act 182, 2018 S.C. Acts, was signed into law amending S.C. Code § 16-17-420. *See* Pls Resp. re Supp. Auth., ECF 134 at 1. These amendments resolved Plaintiffs' request that the Court enjoin enforcement of § 16-17-420 "as regards to arrests or the taking of a juvenile into custody occurring on or after May 17, 2018"—the amendment's effective date. *Id.* However, the Act preserved the existence and effect of all records generated under the statute prior to its amendment. For this reason, Plaintiffs' request that the Court "enjoin[] Defendants from considering any Plaintiffs' records related to being taken into custody, charges filed, adjudication or disposition under S.C. Code § 16-17-420 . . . and from retaining such records except as would be permissible following expungement under S.C. Code § 17-1-40," ECF 1 at p. 27, remains unresolved for those records generated through enforcement of the statute prior to May 17, 2018. *See* ECF 134.

On May 16, 2019, Plaintiffs filed their First Amended Complaint, indicating the changed circumstances following the amendment to S.C. Code § 16-17-420, ECF 157 at p. 27, and adding Plaintiff D.D. *Id.* at ¶¶ 20–21. Subsequently, Plaintiffs filed a Motion to Supplement the Class Certification Motion to formally add D.D. as a proposed Class Representative. ECF 187; *see also* ECF 189.

On October 29, 2020, the Court held a status conference regarding the proposed class definition and the impact of the amendment to S.C. Code § 16-17-420. Plaintiffs indicate that they were willing to provide an updated proposed class definition, and the Court directed Plaintiffs to do so in its subsequent minute entry. ECF 195.

## ARGUMENT

### I.    This Court has Authority to Define the Class

The Federal Rules of Civil Procedure provide the Court with authority to alter or amend the class definition as appropriate throughout the course of litigation. Fed. R. Civ. Proc. 23(d). The Rules also permit the court to certify subclasses "when appropriate." Fed. R. Civ. Proc. 23(c)(5). Certification of subclasses is proper where a potential conflict exists amongst class members. *See, e.g.*, *Boucher v. Syracuse Univ.*, 164 F.3d 113, 119 (2d Cir. 1999). Conversely, where there is no likely disadvantage to a group of class members, the certification of subclasses is not required. *In re Deepwater Horizon*, 739 F.3d 790 (5th Cir. 2014).

### II.    Amended Proposed Class Definition

Plaintiffs provide the following amended class definition for purposes of obtaining an injunction against enforcement of S.C. Code § 16-17-530 only:

> 1.    All elementary and secondary school students in South
>       Carolina, each of whom faces a risk of risk of arrest or juvenile
>       referral under the broad and overly vague terms of S.C. Code §
>       16-17-530 while attending school.

Additionally, Plaintiffs propose that the Court certify the following separate injunctive relief sub-classes for purposes of obtaining an injunction against retention of records under both S.C. Code § 16-17-420 and S.C. Code §16-17-530:

> 2.    All elementary and secondary school students in South Carolina
>       for whom a record exists relating to being taken into custody,
>       charges filed, adjudication, or disposition under S.C. Code § 16-
>       17-530; and

**JA268**

3. All elementary and secondary school students in South Carolina

   for whom a record exists relating to being taken into custody,

   charges filed, adjudication, or disposition under S.C. Code § 16-

   17-420 prior to May 17, 2018.

These second and third proposed sub-class definitions reflect that Plaintiffs no longer

challenge the constitutionality of S.C. Code § 16-17-420 as amended through Act 182, 2018 S.C.

Acts, and that as to Section 16-17-420, they seek injunctive relief only as to retention of records

created prior to the effective date of the Act as amended.

## CONCLUSION

Class Certification is appropriate in this case. The Court has broad authority to define the

class and Plaintiffs' proposed class definitions are proper.


Dated: November 17, 2020

                                                    Respectfully submitted,


/s/ Susan K. Dunn
SUSAN K. DUNN (Fed. Bar #647)              SARAH HINGER*
SHIRENE HANSOTIA (Fed. Bar # 12558)        GALEN SHERWIN*
American Civil Liberties Union              American Civil Liberties Union Foundation
Foundation of South Carolina                125 Broad Street 18th FL
P.O. Box 20998                              New York, NY, 1004
Charleston, S. C. 29413-0998                shinger@aclu.org
Tel: (843) 282- 7953
Fax: (843) 720- 1428                         *Admitted Pro Hac Vice
sdunn@aclusc.org

ATTORENYS FOR PLAINTIFFS

**JA269**

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH CAROLINA
## CHARLESTON DIVISION

| | | |
|---|---|---|
| Kenny, et al., | ) | Civil Action No. 2:16-cv-2794-MBS |
| | ) | |
| | ) | |
| Plaintiffs, | ) | **OPINION AND ORDER** |
| v. | ) | |
| | ) | |
| Wilson, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

This matter is before the court on the motion to certify class pursuant to Federal Rule of

Civil Procedure 23 ("Motion to Certify"), ECF No. 6, filed by Plaintiffs Niya Kenny; Taurean

Nesmith; Girls Rock Charleston, Inc.; D.S., by and through her next of kin Juanita Ford; and

S.P., by and through her next of kin Melissa Downs, on behalf of themselves and those similarly

situated.  Also before the court is the motion to supplement the motion to certify, ("Motion to

Supplement"), ECF No. 187, filed by Plaintiffs Kenny, Nesmith, Girls Rock Charleston, Inc.,

D.S., S.P., and D.D., by and through his next of kin, Temika Hemmingway (collectively,

"Plaintiffs").  Defendant Alan Wilson, in his official capacity as Attorney General of South

Carolina, ("Defendant") opposes the Motion to Certify and Motion to Supplement.[1]

---

[1] Pursuant to a consent motion, the court stayed this action as to Defendants J. Alton Cannon, Jr., in his official capacity as the Sheriff of Charleston County, South Carolina, Luther T. Reynolds, in his official capacity as the Chief of the Charleston City Police Department, Reginald L. Burgess, in his official capacity as the Chief of the North Charleston City Police Department, Carl Ritchie, in his official capacity as the Chief of the Mt. Pleasant City Police Department, Leon Lott, in his official capacity as the Sheriff of Richland County, South Carolina, W.H. Holbrook, in his official capacity as the Chief of the Columbia City Police Department, Johnny Mack Brown, in his official capacity as the Interim Sheriff of Greenville County, South Carolina, Ken Miller, in his official capacity as the Chief of the Greenville City Police Department, Lance Crowe, in his official capacity as the Chief of the Travelers Rest City Police Department, M. Bryan Turner, in his official capacity as the Chief of the Mauldin City Police Department, Dan Reynolds, in his official capacity as the Chief of the Greer City Police Department, A. Keith

## BACKGROUND

Plaintiffs Kenny, Nesmith, D.S., S.P., and D.D. are or were enrolled in the South Carolina public school system.  Plaintiff Girls Rock Charleston, Inc. ("Girls Rock") is a nonprofit organization "whose members are directly impacted by and face ongoing risk of arrest or referral under S.C. Code § 16-17-420."[2]  ECF No. 157 at ¶ 10.  Together, Plaintiffs asserted a challenge pursuant to 42 U.S.C. § 1983 that the Disturbing Schools Law, codified at S.C. Code Ann. § 16-17-420, is unconstitutional on its face and the Disorderly Conduct Law, codified at S.C. Code Ann. § 16-17-530, is unconstitutional as applied to children in public school grades K-12.  Plaintiffs filed an amended complaint on May 16, 2019, at which time they sought: 1) a declaratory judgment stating that the Disturbing Schools and Disorderly Conduct Laws violate the Fourteenth Amendment; 2) a preliminary and permanent injunction enjoining Defendant from enforcing both statutes; and 3) an order enjoining Defendant from considering and/or retaining records of individuals prosecuted or charged under the Disturbing Schools and Disorderly Conduct Laws, "except as would be permissible following expungement . . . ." ECF No. 157 at 25-26.

The Disturbing Schools Law was amended on May 17, 2018. ECF No. 132-1.  Plaintiffs concede that the amendments "address Plaintiffs' request that this Court enjoin enforcement of

---

Morton, in his official capacity as the Chief of the Fountain Inn City Police Department, and Michael D. Hanshaw, in his official capacity as the Chief of the Simpsonville City Police Department ("Law Enforcement Defendants").  ECF No. 131.  Pursuant to the consent motion, the Law Enforcement Defendants withdrew any objection to the Motion to Certify.  *See id.*

[2] Defendant refers to this organization as "Girls Rock," which was the name of the organization at the time of the filing of this suit. Since the filing of the suit, the organization changed its name to the Carolina Youth Action Project.  ECF No. 133. The court will refer to the organization as "Girls Rock," as that is the name used in the complaint.

S.C. Code § 16-17-420 . . . and also resolve the [enforcement] claims of Niya Kenny and

Taurean Nesmith . . .," but assert that "the legislative amendments did not address Plaintiffs'

request for relief from the retention of records related to . . . the Disturbing Schools Law or

Plaintiffs' claims related to the Disorderly Conduct statute." ECF No. 167 at 3.[3]  On February 19,

2019, Plaintiffs moved to amend their complaint to add D.D., a current South Carolina public

school student charged under the Former Disturbing Schools Law, as a class representative.

Plaintiffs also maintained that D.S. is an adequate class representative.  The court granted leave

to amend, and Plaintiffs filed an amended complaint adding D.D. as a Plaintiff on May 16, 2019.

ECF No. 157.  The original complaint was otherwise unchanged.

This case was reassigned to the undersigned on April 6, 2018, following remand from the

Fourth Circuit on the district court's order granting Defendant's motion to dismiss for lack of

standing.[4]  ECF No. 104.  Defendant filed a renewed motion to dismiss in which he raised the

following grounds for dismissal: the claims of Plaintiffs Kenny and Nesmith are resolved and

moot and the two individuals lack standing; Plaintiff D.S.'s claims are moot because she is no

longer in school and the charges against her are dismissed; Girls Rock lacks standing; the claims

of Plaintiffs who have been convicted of or pleaded guilty to charges of violating the statutes are

barred by the doctrine of res judicata, the *Rooker-Feldman* doctrine, and the Supreme Court's

---

[3] Plaintiffs Kenny and Nesmith sought injunctive relief from enforcement of the Disturbing
Schools Law. ECF No. 167 at 2.  The parties agree that Kenny and Nesmith's claims, as well as
all other claims for injunctive relief as to future enforcement of the Disturbing Schools Law, are
moot due to the modification of the Disturbing Schools Law. ECF No. 167 at 4. However,
Plaintiffs still seek injunctive relief in the form of expungement of any portion of their criminal
records referencing the old Disturbing Schools Law, which the court hereinafter refers to as the
"Former Disturbing Schools Law."
[4] Defendant originally argued that Plaintiffs lacked Article III standing. ECF No. 28. On March
15, 2018, the Fourth Circuit vacated the decision of the district court, finding that Plaintiffs S.P.,
D.S., and Nesmith had shown they had standing, and remanded the case for further proceedings.
ECF No. 102.

holding in *Heck v. Humphrey*, 512 U.S. 477 (1994)[5]; Plaintiffs' claims for prospective relief as to

the Disturbing Schools Law must be dismissed; the Disturbing Schools and Disorderly Conduct

Laws are constitutional; and the class action allegations should be stricken.  ECF No. 165.

Following briefing on the motion to dismiss, Defendant filed a supplemental memorandum

arguing that the court is without authority to order expungement and additionally that the court

cannot order expungement as a form of class relief.  ECF No. 179.  Plaintiffs filed a response,

ECF No. 181, to which Defendant filed a reply, ECF No. 184.

The court denied the motion to dismiss in an order issued March 30, 2020.  ECF No. 185.

In relevant part, the court found that the class claims alleged here are transitory in nature and that

D.S.'s claims are not moot.[6]  The court found that neither res judicata, the *Rooker-Feldman*

doctrine, nor *Heck* is implicated here because Plaintiffs' requested relief—enjoinment from

future enforcement and to prevent Defendant from retaining or considering records created as a

result of convictions under the Disturbing Schools and Disorderly Conduct Laws—concerns

assessment of the constitutionality of those statutes and is different from challenging the actual

validity of any sentence.  As to the argument that the Disturbing Schools and Disorderly Conduct

Laws are constitutional, the court found that undertaking a constitutional analysis at this juncture

would amount to the court determining the final outcome of this case, which endeavor would

stray well beyond the threshold analysis of a Rule 12(b)(6) review.  The court declined to strike

the class allegations finding that any such ruling was premature.  Finally, the court found with

respect to expungement that Plaintiffs seek expungement based on convictions stemming from

---

[5] *See Rooker v. Fidelity Trust*, 263 U.S. 413 (1923); *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983).
[6] The court noted that even if D.S. could not remain a class representative, the action could nonetheless proceed with D.D. as a class representative because D.D. remains in the K-12 system.

laws they challenge as unconstitutional; therefore, the expungement sought in this case would result from proper arrests based on allegedly unconstitutional statutes, and such expungement fits within the parameters detailed in *Allen v. Webster*, 742 F.2d 153, 155 (4th Cir. 1984). The court reserved Defendant's argument regarding the propriety of expungement as a form of class relief to be addressed during consideration of the Motion to Certify.

Plaintiffs filed the Motion to Supplement on May 11, 2020. ECF No. 187. Defendant filed a response in opposition, ECF No. 188, to which Plaintiffs filed a reply, ECF No. 189. As of the date the Motion to Supplement was fully briefed, Plaintiffs D.S., S.P., and D.D. ("Named Plaintiffs") were seeking to certify under Federal Rule of Civil Procedure 23(b)(2) a plaintiff class "consisting of all elementary and secondary public school students in South Carolina [], each of whom faces a risk of arrest or juvenile referral under the broad and overly vague terms of the challenged statutes," ("Original Proposed Class").[7][8] ECF No. 6 at 7. *See* ECF Nos. 157, 187 (adding D.D. as a class representative). On October 29, 2020, the court held a telephonic status conference to discuss with the Parties whether and how the legislative amendments to the Disturbing Schools Law effects membership in the class the Named Plaintiffs seek to certify. ECF No. 195. With the court's leave, Plaintiffs filed a supplement to the Motion to Certify and Motion to Supplement ("Supplemental Memorandum"), offering a revised definition of the proposed class. ECF No. 198.

---

[7] Plaintiffs Kenny, Nesmith, and Girls Rock proceed in this lawsuit as individuals, outside of the proposed classes.

[8] The Named Plaintiffs originally sought certification of a defendant class, *see* ECF No. 6, which request they withdrew in the consent motion, ECF No. 131 at 3.

Plaintiffs propose through their Supplemental Memorandum to amend the class definition set forth above so as to obtain an injunction against enforcement of the Disorderly Conduct Law only, as follows:

> All elementary and secondary school students in South Carolina, each of whom faces a risk of risk of [sic] arrest or juvenile referral under the broad and overly vague terms of S.C. Code § 16-17-530 while attending school.

("Proposed Class").  ECF No. 198 at 3.

Plaintiffs additionally ask the court to certify two "injunctive relief sub-classes for purposes of obtaining an injunction against retention of records under both S.C. Code § 16-17-420 and S.C. Code § 16-17-530."  ECF No. 198 at 3.  Plaintiffs propose to define the sub-classes as follows:

> All elementary and secondary school students in South Carolina for whom a record exists relating to being taken into custody, charges filed, adjudication, or disposition under S.C. Code § 16-17-530 ("Disorderly Conduct Law Sub-Class");

and

> All elementary and secondary school students in South Carolina for whom a record exists relating to being taken into custody, charges filed, adjudication, or disposition under S.C. Code § 16-17-420 prior to May 17, 2018 ("Former Disturbing Schools Law Sub-Class").

ECF No. 198 at 3-4.  Plaintiffs specify that the proposed sub-class definitions reflect that they "no longer challenge the constitutionality of S.C. Code § 16-17-420 as amended through Act 182, 2018 S.C. Acts, and that as to Section 16-17-420, they seek injunctive relief only as to retention of records created prior to the effective date of the Act as amended."  *Id.*[9]

Defendant filed a Supplemental Response through which he reasserts his opposition to any class certification and argues that the revised proposed class definitions do "nothing to alleviate the

---

[9] The court understands however that for the purpose of obtaining the relief the Former Disturbing Schools Law Sub-Class seeks, Plaintiffs maintain the claim that the Former Disturbing Schools Law was unconstitutional.

fundamental problems [as] outlined in [the] earlier filings." ECF No. 199 at 1. Defendant also asks

the court to defer a determination on class certification until such time as it has ruled on the

constitutionality of the Disorderly Conduct Law and Former Disturbing Schools Law. *Id.* at 4-5.

Plaintiffs filed a Supplemental Reply on December 7, 2020. ECF No. 200.

## DISCUSSION

The Named Plaintiffs move under Rule 23(b)(2) to certify the Proposed Class and proposed

sub-classes. Rule 23(b)(2) provides that a class action may be maintained if Rule 23(a) is satisfied

and if "the party opposing the class has acted or refused to act on grounds that apply generally to the

class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the

class as a whole." Fed. R. Civ. P. 23(b)(2). Rule 23(a) states that one or more members of a class

may sue as representative parties on behalf of all members only if the following criteria are

satisfied: (1) the class is so numerous that joinder of all members is impracticable; (2) there are

questions of law or fact common to the class; (3) the claims or defenses of the representative parties

are typical of the claims or defenses of the class; and (4) the representative parties will fairly and

adequately protect the interests of the class. Fed. R. Civ. P. 23(a). "[A] class representative must be

part of the class and 'possess the same interest and suffer the same injury' as the class members,"

and Rule 23(a) "ensures that the named plaintiffs are appropriate representatives of the class whose

claims they wish to litigate." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349 (2011) (citations

omitted). The court begins its analysis with the Rule 23(a) requirements.

A.    **Federal Rule of Civil Procedure 23(a)**

1.    <u>Numerosity</u>

The Named Plaintiffs assert that the Proposed Class and proposed sub-classes meet the

numerosity requirement because 763,588 students were actively enrolled in South Carolina public

schools as of the beginning of the 2015-2016 school year, as reported by the South Carolina Department of Education, and that joinder of so many individuals would be impracticable.[10]  ECF No. 6 at 9.  The Named Plaintiffs further assert that while the precise number of enrolled students may fluctuate throughout a school year, the Proposed Class and proposed sub-classes are nonetheless sufficiently defined to meet the Rule's "implicit" requirement "that the members of a proposed class be 'readily identifiable.'"  *Id.*

Defendant conceded that the Original Proposed Class satisfied the numerosity requirement, ECF No. 29 at 2, and does not appear to contest numerosity in the Supplemental Response, *see* ECF No. 199.  The court agrees this element is met and turns next to the question of commonality.

2.  Commonality

The commonality requirement asks whether there are questions of law or fact common to the class.  Commonality requires the plaintiff to demonstrate that the class members "have suffered the same injury," which showing requires that the claims depend "upon a common contention."  *Dukes*, 564 U.S. at 350 (citations omitted).  The common contention "must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."  *Id.* ("What matters to class certification . . . [is] the capacity of a class-wide proceeding to generate common *answers* apt to drive the resolution of the litigation") (emphasis in original) (citation omitted).

The Named Plaintiffs assert they seek "to enjoin the operation of the [] Disorderly Conduct statute[] based on the single legal theory that the statute[] [is] unconstitutionally vague."  ECF No. 6

---

[10] The Named Plaintiffs assert that the South Carolina Department of Education reports enrollment of 787,069 students for the 2019-2020 school year.  ECF No. 187 at 2.  Defendant does not dispute the enrollment number.

at 6.[11]  They contend that whether a law is vague is an objective inquiry and therefore the outcome

of the claim "does not turn upon the subjective perceptions or personal experiences of the individual

plaintiffs."  *Id.* at 13.  The Named Plaintiffs also assert that in addition to raising a single legal

theory, they raise a common set of facts that results in a common injury: "being subject to actual

and threatened enforcement of an overly vague criminal statute commonly applied to penalize a

broad range of normal adolescent conduct."  *Id.*  The common injury borne by the Proposed Class,

they contend, is "the lack of certainty as to how to regulate their behavior in order to avoid running

afoul of the law and the risk of arrest or juvenile referral under the law[] in an arbitrary and

discriminatory manner."  *Id.*

Defendant contends the Named Plaintiffs fail to satisfy the commonality requirement

"because they have not suffered the same alleged injury if any by the statutes."  ECF No. 29 at 3.

Defendant argues that "[n]one of the individual Plaintiffs have been charged under both statutes";

"[p]robably few of the class members have been charged under both laws"; "[n]ot all class members

will have charges pending"; "[n]ot all will even have been charged ever under either statute nor will

they be concerned that they might be charged in the future"; and "[s]ome Plaintiff class members

would likely want the laws enforced against students who are disturbing their schools or engaging in

disorderly conduct."  *Id.* at 2-3.  In reply, the Named Plaintiffs assert that commonality "is not

disturbed simply because Plaintiffs have had different past experiences"; that Plaintiffs "challenge

[§ 16-17-530] based on risk of future harm . . ."; and that the "past experiences of individual

students serve to illustrate the breadth of the challenged law['s] enforcement."  ECF No. 57 at 7.

---

[11] The court's alterations reflect Plaintiffs' revisions to the Proposed Class as set forth in the
Supplemental Memorandum, in which Plaintiffs clarify that they seek to enjoin enforcement of
the Disorderly Conduct Law and do not seek to enjoin enforcement of the Disturbing Schools
Law as amended.  ECF No. 198 at 4.

In the Supplemental Response, Defendant asserts that the total number of students referred for violations "of one of the above statutes has dropped dramatically from approximately 3,000 students referred to the Department of Juvenile Justice in the 2015-2016 school year to 1,058 referred in the 2019-2020 school year with the latter number including an undetermined number of non-school related charges." ECF No. 199 at 2. Defendant further argues:

> [t]he disturbing the school charges dropped to just one person in 2019-2020 without a corresponding uptick in disorderly conduct changes. Therefore, data shows that roughly only 1/750 are referred annually now which is .13% or less than 1/7 of 1% or about 1.5 students out of every thousand. Furthermore, these calculations include [Department of Juvenile Justice] referrals for charges that are not school related which makes these numbers higher than they would be for just school misconduct.

*Id.* In other words, Defendant contends, the statutes create a "microscopic impact" on the student population, and the "tiny proportion of students referred under the disorderly conduct statute shows that Plaintiffs fail to meet commonality and typicality requirements." *Id.* at 2, 3.

With respect to Defendant's arguments regarding a lack of common alleged injury, the court agrees with the Named Plaintiffs that any variance in "the details of the specific incidents precipitating charges for disturbing schools or disorderly conduct," does not defeat a finding of commonalty, "as those details are not necessary" for adjudicating the vagueness claim. ECF No. 6 at 14. That the potential for injury or precise nature of how the injury will impact an individual student may vary according to circumstance, including how law enforcement chooses to exercise its discretion in charging students, does not preclude a finding of commonality. Additionally, the court is not persuaded that the reduction in cases of students charged under the Disorderly Conduct Law is a satisfactory reason to forgo resolution of the Named Plaintiffs' request for certification. As Plaintiffs note in their Supplemental Reply, Rule 23(c)(1)(A) counsels the court to determine a motion to certify class "[a]t an early practicable time." And, as the Named Plaintiffs explain, because every student enrolled in public school in South Carolina is subject to the Disorderly

Conduct Law, each one of those students is at risk of the same future injury if the statute is in fact unconstitutionally vague. *See* ECF No. 57 at 7. The fact that law enforcement may render charges against students under the Disorderly Conduct Law only infrequently does not diminish the potential injury to which each student is exposed should it be determined that the statute is unconstitutional. Furthermore, Plaintiffs here seek only injunctive and declaratory relief, which courts generally recognize as the type of redress that by its very nature presents common questions of law and fact. *See, e.g., Scott v. Clarke*, 61 F. Supp. 3d 569, 585 (W.D. Va. 2014) (citation omitted). The court is satisfied that the Named Plaintiffs have sufficiently demonstrated commonality and turns next to the question of typicality.

3. Typicality

Typicality requires that "a class representative [] be part of the class and possess the same interest and suffer the same injury as the class members." *Lienhart v. Dryvit Sys., Inc.*, 255 F.3d 138, 146 (4th Cir. 2001). "The typicality requirement is met if a plaintiff's claim arises from the same event or course of conduct that gives rise to the claims of other class members and is based on the same legal theory." *Moodie v. Kiawah Island Inn Co., LLC*, 309 F.R.D. 370, 378 (D.S.C. 2015) (citation omitted). The commonality and typicality requirements of Rule 23(a) "tend to merge." *Dukes*, 564 U.S. at 349 n.5 (explaining that "[b]oth serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence"). "The essence of the typicality requirement is captured by the notion that 'as goes the claim of the named plaintiff, so go the claims of the class.'" *Deiter v. Microsoft Corp.*, 436 F.3d 461, 466 (4th Cir. 2006) (quoting *Broussard v. Meineke Discount Muffler Shops, Inc.,* 155 F.3d 331, 340 (4th Cir. 1998)). The "representative

party may proceed to represent the class only if the plaintiff establishes that his claims or defenses are 'typical of the claims or defenses of the class." *Id.* at 467 (quoting Fed. R. Civ. P. 23(a)).

The Named Plaintiffs assert that the typicality requirement is met because "the claims of the individual Plaintiffs and the absent class members arise from the same course of conduct— enforcement of the [] Disorderly Conduct statute[] against students—and rest on the identical legal theory—the claim that the statute is unconstitutionally vague." ECF No. 6 at 16. They further assert that the relief sought is "strictly injunctive in nature and does not depend upon adjudication of individual facts, or of individual damages." *Id.* at 17.

Defendant argues that the Named Plaintiffs fail to satisfy the typicality requirement "because they lack standing and are subject to abstention." ECF No. 29 at 3. The court addressed these contentions when it denied Defendant's motion to dismiss and finds the arguments similarly unpersuasive for the purpose of adjudicating the Motion to Certify. Defendant additionally reasserts the argument, raised in opposition to a finding of commonality, that "some members of the class would undoubtedly have criminal charges pending against them, a preliminary injunction would throw their cases into confusion possibly delaying favorable resolution for them," and "[m]any may prefer that the laws be enforced." *Id.* In reply, the Named Plaintiffs assert that "'[t]ypicalness' is not a subjective test," and a court is not authorized "to dismiss a class action based on a substantial legal claim where [it] thinks some members of the class may prefer to leave the violation of their rights unremedied." ECF No. 57 at 8 (quoting *Glover v. Johnson*, 85 F.R.D. 1, 5 (E.D. Mich. 1977) (quoting 3B Moore's Federal Practice § 23.06-2, p. 23–327 (2d ed. 1980)). Finally, Defendant asserts in his Supplemental Response, as he did with respect to commonality, that the "tiny proportion" of students charged under the Disorderly Conduct Law defeats a showing of typicality. ECF No. 199 at 3.

"A statute is unconstitutionally vague under the Due Process Clause if it 'fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement." *Martin v. Lloyd*, 700 F.3d 132, 135 (4th Cir. 2012) (citations omitted). *Papachristou v. City of Jacksonville*, 405 U.S. 156, 162 (1972). The court agrees with the Named Plaintiffs that the determination of whether a law is vague "does not turn upon the subjective perceptions or personal experiences of the individual plaintiffs." ECF No. 57 at 9. As discussed by the Named Plaintiffs and addressed above, the one legal theory at issue in this case is whether the statutes are unconstitutionally vague, and the court will undertake one analysis to adjudicate the claims associated with this theory. *See City of Ann Arbor Emps.' Ret. Sys. v. Sonoco Products Co.*, 270 F.R.D. 247, 251-52 (D.S.C. 2010) (finding typicality satisfied where the "information that the [named] plaintiff assert[ed] [was] materially false and misleading [was] the same information that would be used by other class members to prove their case"). The court perceives no variation between the objective motivating the Named Plaintiffs and the objective motivating the Proposed Class and proposed sub-classes. *See Broussard*, 155 F.3d at 340 ("[t]he typicality and commonality requirements of the Federal Rules ensure that only those plaintiffs or defendants who can advance the same factual and legal arguments may be grouped together as a class"). Accordingly, the typicality requirement is met.

    4.    Adequate Representation

    The final requirement under Rule 23(a) asks whether the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a)(4). The requirement is "a two-pronged inquiry, requiring evaluation of: (1) whether class counsel are qualified, experienced, and generally able to conduct the proposed litigation; and (2) whether Plaintiffs' claims are sufficiently interrelated with and not antagonistic to the class claims as to ensure fair and adequate

representation." *Moodie*, 309 F.R.D. at 378 (quoting *Lott v. Westinghouse Savannah River Co.*, 200 F.R.D. 539, 561 (D.S.C. 2000)).  The Named Plaintiffs assert that the American Civil Liberties Union ("ACLU"), the organization that represents them, "is the nation's preeminent legal organization litigating in the constitutional and civil rights arena," "its attorneys have litigated and won countless cases brought under Section 1983," and, class counsel in this case, "are a team of experienced civil rights litigators with decades of experience among them," and with "considerable expertise in prosecuting class actions."  ECF No. 6 at 19.  The Named Plaintiffs further assert that "because the individual Named Plaintiffs' claims are identical to those of the Plaintiff class, there are no conflicts of interest between named parties and the class they seek to represent"; indeed, "all would benefit from an injunction against the operation of an unconstitutionally vague statute." *Id.* In opposition to the Named Plaintiffs' assertions, Defendant relies on his arguments as to why the typicality requirement has not been met. *See* ECF No. 29 at 3-4 ("the disparity in the status of the individual Plaintiffs and the class members prevents them from 'adequately protect[ing] the interests of the class").

Defendant does not challenge the qualifications of Plaintiffs' counsel and the court has no reservations that counsel of record will ably and vigorously prosecute this action on behalf of the classes.  As to the second prong, the court considers in particular whether the Named Plaintiffs' claims and the claims of the Proposed Class and proposed sub-classes are "so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Moodie*, 309 F.R.D. at 379 (quoting *Gunnells v. Healthplan Servs., Inc.*, 348 F.3d 417, 459 (4th Cir. 2003)). The court finds no apparent conflicts of interest between the Named Plaintiffs and the members of the Proposed Class and proposed sub-classes and therefore concludes that the Named Plaintiffs can adequately represent the Proposed Class and sub-classes. The court additionally finds that Plaintiffs'

counsel of record satisfies the criteria set forth in Rule 23(g) and accordingly appoints them as class counsel.

## B.  Federal Rule of Civil Procedure 23(b)(2)

In addition to satisfying the Rule 23(a) requirements, the Named Plaintiffs must demonstrate that the action can be maintained under Rule 23(b)(2).  *See, e.g., Deiter*, 436 F.3d at 466.  Rule 23(b)(2) certification is reserved for cases where broad, class-wide injunctive or declaratory relief is necessary to redress a group-wide injury.  *Dukes*, 564 U.S. at 360 ("Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each member of the class"). "The twin requirements of Rule 23(b)(2)—that the defendant acted on grounds applicable to the class and that the plaintiff seeks predominantly injunctive or declaratory relief—make that Rule particularly suited for class actions alleging racial discrimination and seeking a court order putting an end to that discrimination."  *Thorn v. Jefferson-Pilot Life Ins. Co.*, 445 F.3d 311, 329-30 (4th Cir. 2006) (citing *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 614 (1997) ("Civil rights cases against parties charged with unlawful, class-based discrimination are prime examples [in which class certification is proper under Rule 23(b)(2)]").

The Named Plaintiffs assert that Rule 23(b)(2) certification is appropriate because "the entire class of public elementary and secondary students is subject to and at risk of enforcement under the vague . . . Disorderly Conduct law[]," Defendant's "actions in enforcing th[at] law[] are applicable to the class as a whole," and the declaratory and injunctive relief sought "would clearly benefit all members of the class by eliminating the uncertainty as to what conduct is permitted and the risk of being charged under a vague law."  ECF No. 6 at 20.  Defendant argues that certification is not appropriate because "not all Plaintiff class members would benefit from an injunction [because] some have never been charged, do not anticipate being charged and/or may want existing

laws enforced against those students who are violating the disturbing the school and disorderly conduct statutes." ECF No. 29 at 4.

If the Disorderly Conduct Law is indeed unconstitutionally vague, it poses a risk of injury to each member of the Proposed Class, regardless of how many members have previously been charged under the statute and any member's personal opinion of the statute, and this lawsuit seeks relief that would offer redress to and benefit the entire Proposed Class. The court is satisfied that certification of the Class is appropriate and in so finding declines to forgo a ruling on certification pending a determination on the constitutionality of the Disorderly Conduct Law and Former Disturbing Schools Law.

The court turns next to the proposed sub-classes and question of expungement of records as a form of class relief.

## C.    Expungement of Records

As an initial matter, the court finds that its analysis of the Rule 23(a) factors and of Rule 23(b)(2) as discussed above pertains equally to the proposed sub-classes, and notes that Defendant does not raise specific challenges to the contrary in his Supplemental Response. Therefore, the court will turn to Defendant's one remaining argument, raised in opposition to the Original Proposed Class, that the court cannot award the requested relief of record expungement.

As a remedy for what they contend are unconstitutionally vague statutes, Plaintiffs request injunctive relief in the form of "enjoining Defendants from considering any Plaintiffs' records relating to being taken into custody, charges filed, adjudication or disposition under S.C. Code § 16-17-420 or S.C. Code § 16-17-530 and from retaining such records except as would be permissible following expungement under S.C. Code § 17-1-40," and "enjoining Defendants from considering any Plaintiffs' records related to arrest, booking records, associated bench warrants, mug shots,

fingerprints, charges filed, proceedings, or sentencing under S.C. Code § 16-17-420 or S.C. Code § 16-17-530, and from retaining such records except as would be permissible following expungement under S.C. Code § 17-1-40." ECF No. 157 at 26. In other words, should the court determine that the Disorderly Conduct Law and Former Disturbing Schools Law are unconstitutionally vague, Plaintiffs ask that the court enjoin Defendant from using against members of the sub-classes any records generated pursuant to the prosecution of these statutes. The Parties refer to this requested relief as "expungement," and for ease of discussion the court will as well.

Defendant argues that such relief is not available, regardless of how the court resolves Plaintiffs' claims, because the expungement of records in South Carolina is available only on an individual basis for those who apply according to and satisfy the statutory requirements. ECF No. 179. Defendant further argues that under Fourth Circuit law, expungement is a remedy to be used in "extreme circumstances" only, and that a collateral civil proceeding, such as the instant action, is not an appropriate forum for ordering expungement of records generated as a result of criminal cases over which this court did not preside. *Id.*

Plaintiffs respond that the court has "broad equitable authority to fashion an appropriate remedy," should it agree that the statutes are unconstitutionally vague, and that expungement is both necessary and appropriate because, absent such relief, "a record under the challenged statutes could still be relied upon to the detriment of the youth in the criminal and juvenile justice systems and could impact them in their educational placements, when applying to college, seeking employment, or in other circumstances." ECF No. 181 at 2. Plaintiffs further respond that Defendant's reliance on the state's statutory scheme for expungement is misplaced because the court's "authority to fashion a constitutional remedy is not defined or limited by State statutory law." *Id.* at 3 (citations omitted).

2:16-cv-02794-MBS    Date Filed 02/24/21    Entry Number 201    Page 18 of 19

The action before the court sounds in federal law because it challenges the constitutionality of state statutes as a violation of the Due Process Clause as applied to the state through the Fourteenth Amendment.  "[O]nce a plaintiff has established the violation of a constitutional or statutory right in the civil rights area, . . . court[s] ha[ve] broad and flexible equitable powers to fashion a remedy that will fully correct past wrongs." *North Carolina State Conference of NAACP v. McCrory*, 831 F.3d 204, 239-40 (4th Cir. 2016) (commenting that "the remedy for an unconstitutional law must completely cure the harm wrought by the prior law") (citations omitted). South Carolina's statutory scheme for seeking expungement of records notwithstanding, the court is satisfied at this juncture that it has the authority and discretion to issue the relief Plaintiffs seek.  *See, e.g., Franklin v. Gwinnett County Public Schools*, 503 U.S. 60, 69 (1992) (reaffirming that "if a right of action exists to enforce a federal right and Congress is silent on the question of remedies, a federal court may order any appropriate relief") (citations omitted); *Doe v. Alger*, No. 5:15-cv-00035, 2017 WL 1483577, at *5 (W.D. Va. Apr. 25, 2017) (relying on its broad equitable power to order expungement even where expungement was otherwise prohibited by state law).[12]  The court is further satisfied at this time that expungement is an appropriate remedy to the alleged constitutional violations.  As the court noted in its order denying Defendant's motion to dismiss, while expungement should be reserved for the unusual or extreme case, it may very well be appropriate where the arrest was proper but was based on a statute later declared unconstitutional.  ECF No. 185 at 7 (citing *Allen*, 742 F.2d at 155).  Finally, with respect to Defendant's contention that expungement as a class-wide remedy is not appropriate and/or without precedent, *see* ECF No. 184,

---

[12] The court agrees with Plaintiffs that the nature of the expungement requested here is distinguishable from the expungement that was denied in *United States v. Mettetal*, 714 Fed. Appx. 230 (4th Cir. 2017) (affirming denial of petition to expunge criminal records after arrest and conviction were set aside due to Fourth Amendment violations).  *See* ECF No. 181 at 6-7.

the court finds the argument reminiscent of Defendant's challenge as to whether the Rule 23(a) requirements of commonality and typicality are met. In any event and as discussed herein, the injunctive relief Plaintiffs seek is appropriate respecting the sub-classes pursuant to Fed. R. Civ. P. 23(b)(2).[13] Defendant's arguments to the contrary are not persuasive. Accordingly, the court will certify the Former Disturbing Schools Law Sub-Class and the Disorderly Conduct Law Sub-Class.

**IT IS HEREBY ORDERED** that the Motion to Certify, ECF No. 6, and Motion to Supplement, ECF No. 187, are **GRANTED**; it is further

**ORDERED** that the court certifies the Class and Sub-Classes as defined in the Supplemental Memorandum, ECF No. 198, pursuant to Federal Rule of Civil Procedure 23(b)(2); it is further

**ORDERED** that Plaintiffs' counsel of record is appointed class counsel pursuant to Federal Rule of Civil Procedure 23(g); it is further

**ORDERED** that within fourteen days of the date this order is entered, counsel shall file a joint status report with the court stating their respective positions as to whether the court should issue a class notice and, if appropriate, setting forth the proposed language of such notice; it is further

**ORDERED** that within fourteen days of the date this order is entered, counsel shall file a joint proposed amended scheduling order.

**IT IS SO ORDERED.**

/s/Margaret B. Seymour
Margaret B. Seymour
Senior United Sates District Judge

Dated: February 23, 2021
Charleston, South Carolina

---

[13] And the award of such relief to a class of individuals is not without precedent. *See, e.g., Wheeler v. Goodman*, 306 F. Supp. 58 (W.D.N.C. 1969) (ordering expungement of records for a class of youthful plaintiffs), *vacated on other grounds*, 401 U.S. 987 (1971).

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON  DIVISION

| | | |
|---|---|---|
| Kenny, et al, | ) | Civil Action No.  2:16-cv-2794-MBS |
| | ) | |
| Plaintiffs, | ) | **MOTION FOR SUMMARY** |
| | **)** | **JUDGMENT OF DEFENDANT** |
| v. | ) | **WILSON** |
| | ) | |
| Wilson, et al, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

The Defendant Attorney General Wilson, as named herein, hereby moves for summary judgment herein pursuant to Rule 56, FRCP, in that, the pleadings and any supporting documents submitted, including exhibits 1-3 submitted herewith and the accompanying memorandum, show that there is no genuine issue as to any material fact and that he is entitled to judgment as a matter of law for reasons that include the following:

1.    Plaintiffs concede that the claims of Plaintiffs Kenny and Nesmith are resolved and do not oppose their dismissal.

2.    Plaintiffs' claims for prospective injunctive relief as to enforcement of §16-17-420 must be dismissed.

3.    S.C. Code Ann. §16-17-420, as written prior to the 2018 amendment to it, and §16-17-530 are not vague or otherwise unconstitutional.

4.    He reserves all defenses made on the basis of standing, mootness, and expungement as a form of relief and opposition to certification of the Plaintiff class.

[Signature block on next page]

JA289

Respectfully submitted,

ALAN WILSON
Attorney General
Federal ID No.10457

ROBERT D. COOK
Solicitor General
Federal ID No. 285
Email: RCook@scag.gov

/s/ J. Emory Smith, Jr.
J. EMORY SMITH, JR.
Deputy Solicitor General
Federal ID No. 3908
Email: ESmith@scag.gov

July 23, 2021                                  Counsel for Defendant Wilson

2

**JA290**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON  DIVISION

| | | |
|---|---|---|
| Kenny, et al, | ) | Civil Action No.  2:16-cv-2794-MBS |
| | ) | |
| Plaintiffs, | ) | **MEMORANDUM IN SUPPORT OF** |
| | ) | **MOTION FOR SUMMARY** |
| v. | ) | **JUDGMENT OF DEFENDANT** |
| | ) | **WILSON** |
| Wilson, et al, | ) | |
| | **)** | |
| Defendants. | ) | |
| _____ | ) | |

The  Defendant  Alan  Wilson,  Attorney  General,  hereby  submits  this  memorandum  in

support of his Motion for Summary Judgment.  He reserves any grounds previously raised in his

Motions to Dismiss which are not addressed herein.

## INTRODUCTION

The  individual  Plaintiffs  and  an  organization  brought  this  case  for  themselves  in  2016

and  on  behalf  of  an  alleged  class  of  elementary  and  secondary  students   in  an  unwarranted,

sweeping assault on two statutes, the Disturbing the Schools statute, S.C. Code Ann. §16-17-420

and  the  Disorderly  Conduct  statute  as  applied  to  school  children,  §16-17-530.  Those  statutes

have  been  not  been  changed  in  any  way  pertinent  to  this  case  in  decades  except  for  a  2018

amendment to §16-17-420 that limits the statute to non-students and thereby moots all requests

for  prospective  relief.   No  case  at  the  appellate  level  in  South  Carolina  or  in  the  United  States

District  Court  in  this  State  has  ever  found  either  statute  to  be  unconstitutional.   Plaintiffs  are

using  this  action  to  decriminalize  behavior  that  is  criminal  according  to  our  law  and  address

school  disciplinary  issues  which  are  policy  decisions  for  the  legislative  branch  of  State

government rather than the Courts.

This suits seeks to tie the hands of prosecutors and law enforcement by enjoining prosecutions under these laws even though no named plaintiff has charges pending against him or her. Although a class has been certified of all children in the State (ECF No. 201), respectfully, only a microscopic portion of school children were charged in the 2019-2020 school year – less than 1/7 of 1%. See, infra and ECF No. 199, p. 2. Moreover, Plaintiffs demand extraordinary and sweeping relief by the expungement of records retroactively which is unprecedented in this state.

<div align="center">PROCEDURAL HISTORY</div>

The original Complaint was dismissed due to lack of standing by the late, Honorable Weston Houck. Order, March 3, 2017 (ECF No. 17). The Court of Appeals for the Fourth Circuit vacated that Order and remanded the case concluding that the allegations of S.P., D.S. and Nesmith were sufficient to establish an injury in fact. *Kenny v. Wilson,* 885 F.3d 280, 291 (4th Cir. 2018) The Court said that it "need not decide whether Kenny or Girls Rock have also established an injury in fact. Whether the claims alleged by these plaintiffs survive further analysis is a matter we leave to the district court." *Id.*

Upon remand, the Attorney General and the law enforcement officer defendants, Hanshaw, Crowe, Turner and Morton renewed their motion to dismiss and also answered the original complaint. Later, the parties consented to an order of this Court staying this action as to the law enforcement officer defendants. Order, May 15, 2018 (ECF No.131). That Order remains in effect.

Plaintiffs moved to amend their Complaint to add or substitute D.D. as a class representative. (ECF No. 151, February 19, 2019). The Motion noted that D.S. had graduated

<div align="center">2</div>

from high school, and that the case against him under §16-17-420 was dismissed.    This Court granted that Motion by Text Order on May 10, 2019 (ECF No. 156).

Attorney General Wilson moved to dismiss the Amended Complaint because Plaintiffs have conceded that the claims of Plaintiffs Kenny and Nesmith are resolved, because Plaintiff Girls Rock lacks standing, and because the remaining claims are subject to dismissal for one or more grounds.    The Court agreed that the claims of Kenny, Nesmith and all other claims for future injunctive of the Disturbing Schools Law were moot, but not moot as to expungement. ECF No. 185.    Plaintiffs report that they do not oppose the dismissal of Plaintiffs Kenny and Nesmith.    The Court found that the claims of D.S. were not moot due to her no longer being in school and found that Girl's Rock (Carolina Youth Action project) had organizational and representational standing.    This Court denied the Motion because "[p]erforming Defendant's requested constitutional analysis at this juncture would amount to the court determining the final outcome of this case, which strays well beyond the threshold analysis with which the court is tasked."  ECF No. 185 at page 13.

The Attorney General filed an Answer to the Amended Complaint (ECF No. 186) in which he reserved all lack of standing arguments, alleged that Plaintiffs had failed to state a class action, contended that S.C. Code Ann. §16-17-420, as written prior to amendment in 2018, and §16-17-530 are not vague or otherwise unconstitutional and contended that subject to the March 30, 2020, Order of this Court (ECF No. 185), the Attorney General reserved all of his arguments that expungement may not be ordered as relief in this case including, but not limited to relief for the alleged class.    The Answer also asserted that the Plaintiffs Kenny and Nesmith should be dismissed as parties because Plaintiffs agree that their claims are resolved.

By its Order of February 24, 2021, (ECF No. 201), this Court granted Plaintiffs' Motion to Certify a Class Action including, for purposes of injunctive relief, a class of elementary and secondary students facing a risk of referral or arrest under S.C. Code Ann. §16-17-530 (disorderly conduct) and two subclasses for purposes of obtaining an injunction against the retention of records under §16-17-530 and the former provisions of §16-17-420 (disturbing the schools).

## THE STATUTES AT ISSUE

### Section 16-17-420 – Disturbing the schools

Section 16-17-420 provided as follows until 2018:

§ 16-17-420. Disturbing schools; summary court jurisdiction.

(A) It shall be unlawful:(1) for any person wilfully or unnecessarily (a) to interfere with or to disturb in any way or in any place the students or teachers of any school or college in this State, (b) to loiter about such school or college premises or (c) to act in an obnoxious manner thereon; or( 2) for any person to (a) enter upon any such school or college premises or (b) loiter around the premises, except on business, without the permission of the principal or president in charge.

(B) Any person violating any of the provisions of this section shall be guilty of a misdemeanor and, on conviction thereof, shall pay a fine of not more than one thousand dollars or be imprisoned in the county jail for not more than ninety days.

(C) The summary courts are vested with jurisdiction to hear and dispose of cases involving a violation of this section. If the person is a child as defined by Section 63-19-20, jurisdiction must remain vested in the Family Court.

. . . HISTORY: 1962 Code § 16-551; 1952 Code § 16-551; 1942 Code § 1129; 1932 Code § 1129; Cr. C. '22 § 28; 1919 (31) 239; 1968 (55) 2308; 1972 (57) 2620; 2010 Act No. 273, § 12, eff June 2, 2010.

Part A has been substantially the same since it was enacted in 1919.  *See* History, *supra,* and

§16-551 of the Code of Laws of South Carolina, 1962.  In 1968, it was amended to remove

language limiting the applicability of the provision to schools attended by women or girls.  In 1972, the penalty provisions were changed, and in 2010, the penalty provisions were changed again and the summary court jurisdiction paragraph was added.  Therefore, in pertinent parts, this statute has been the same for nearly one hundred years.  No appellate case has addressed a vagueness claim regarding this law. *In re Amir X.S.* 371 S.C. 380, 639 S.E.2d 144, (2006) rehearing denied, certiorari denied 551 U.S. 1132, found the statute not to be overbroad and that Plaintiff lacked standing to raise a vagueness claim.

In 2018 the statute was substantially amended to impose criminal penalties only on non-students except for threats by students to take the life of or to inflict bodily harm upon another.  Act 182, 2018 S.C. Acts (effective date May 17, 2018).  (SECTION 1. (A) It is unlawful for a person who is not a student to wilfully interfere with, disrupt, or disturb the normal operations of a school or college in this State by. . . .); except that now under §16-17-425. "[i]t is unlawful for a student of a school or college in this State to make threats to take the life of or to inflict bodily harm upon another by using any form of communication whatsoever.")[1]  Plaintiffs no longer seek prospective injunctive relief as to this statute.

---

[1] The Act contains the following savings clause:

> SECTION 3. The repeal or amendment by this act of any law, whether temporary or permanent or civil or criminal, does not affect pending actions, rights, duties, or liabilities founded thereon, or alter, discharge, release or extinguish any penalty, forfeiture, or liability incurred under the repealed or amended law, unless the repealed or amended provision shall so expressly provide. After the effective date of this act, all laws repealed or amended by this act must be taken and treated as remaining in full force and effect for the purpose of sustaining any pending or vested right, civil action, special 2017-2018 Bill proceeding, criminal prosecution, or appeal existing as of the effective date of this act, and for the enforcement of rights, duties, penalties, forfeitures, and liabilities as they stood under the repealed or amended laws.

2:16-cv-02794-MBS    Date Filed 07/23/21    Entry Number 215-1    Page 6 of 26

### Section 16-17-530 – Disorderly Conduct

Plaintiffs challenge §16-17-530 as applied to elementary and secondary students. Its language has been substantially the same since it was first enacted nearly 50 years ago, and it currently reads as follows:

> Any person who shall (a) be found on any highway or at any public place or public gathering in a grossly intoxicated condition or otherwise conducting himself in a disorderly or boisterous manner, (b) use obscene or profane language on any highway or at any public place or gathering or in hearing distance of any schoolhouse or church or (c) while under the influence or feigning to be under the influence of intoxicating liquor, without just cause or excuse, discharge any gun, pistol or other firearm while upon or within fifty yards of any public road or highway, except upon his own premises, shall be deemed guilty of a misdemeanor and upon conviction shall be fined not more than one hundred dollars or be imprisoned for not more than thirty days.
>
> . . . HISTORY: 1962 Code § 16-558; 1952 Code § 16-558; 1949 (46) 466; 1968 (55) 2842; 1969 (56) 153.

### FACTS PERTAINING TO STATUTE

Although this case should be purely about whether the statutes are unconstitutionally vague, we provide the following information regarding enforcement subject to any objections we may have to evidence offered by Plaintiffs.

Craig Wheatley is the manager of data and statistics for the Department of Juvenile Justice. Ex. 1 (Wheatley Dep. p. 12, ll. 18-21). He has supplied the following data that includes showing that the total number of students that have been referred for violations of one of the above statutes has dropped dramatically from approximately 3,000 students referred to the Department of Juvenile Justice in the 2015-2016 school year to 1,058 referred in the 2019-2020 school year with the latter number including an undetermined number of non-school related charges. *See* table in attached email with counsel for Plaintiffs. Ex. 2; see also ECF No. 199, p. 2 (AG's Return to Supplemental Memo re Class Definition). Mr. Wheatley's deposition included the source data for the disorderly conduct charges, and counsel deposed him about the

6

**JA296**

data then.  Ex. 1(Dep. p. 21, ll 11-14).  The disturbing the school charges dropped to just one

person in 2019-2020 without a corresponding uptick in disorderly conduct charges. Therefore,

data shows that roughly only 1 / 750 students are referred annually now which is .13% or less

than 1/7 of 1% or about 1.5 students out of every thousand. Furthermore, these calculations

include DJJ referrals for charges that are not school related which make these numbers higher

than they would be for just school misconduct.  See Ex. 1 (Wheatley Depo, p 22, line 12 – p. 28,

l. 20).

|  | FY 15/16 | FY 16/17 | FY 17/18 | FY 18/19 | FY 19/20 |
|---|---|---|---|---|---|
| Disturbing School | 1800 | 949 | 1140 | 8 | 1 |
| Public Disorderly Conduct | 1080 | 1033 | 840 | 1088 | 1057 |

### Captain Rinehart Testimony

He is the Captain of the Specialized Investigations for the Greenville County Sheriff's

Office which includes the school enforcement unit.  Ex. 3 (Rinehart Dep. p. 12, l. 15 – p. 13, l.

15).  Prior to that position he was supervisor of the school enforcement unit and conducted

training, reviewed incident reports and served as liaison to the school district.   Ex. 3 (Dep. p. 17,

l. 7 – p. 21, l. 1 and Ex. 2 to depo (vita)).   Deputies assigned to the school enforcement unit have

responsibility for the safety and security of the school campus and the investigation of criminal

incidents related to the school or its students.  Ex. 3 (Dep. p. 31, ll. 10- 16).  School resource

officers attend the South Carolina Criminal Justice Academy's two week SRO certification class.

Ex. 3 (Dep.  p. 39, ll. 8-16).  Capt. Rinehart testified as follows as to how a resource officer

might handle an incident:

JA297

2:16-cv-02794-MBS    Date Filed 07/23/21    Entry Number 215-1    Page 8 of 26

A. Well, obviously, if the -- if the  individual is causing a disturbance in the school and the -- the teacher immediately picks up the phone and calls an administrator or calls for the SRO, then, obviously, the SRO is going to get down there and try to evaluate what's going on. Even if the teacher or the administrator has tried to de-escalate the situation, we would continue -- if the individual's behavior was still beyond the normal, we would try to de-escalate that. It may be a situation if the teacher or the administrator did not try to de-escalate that, we could work on that as well, ask the student to step outside, hey, talk to us, what's going on, things like that.

 Q. And if a teacher or administrator called for an SRO, would it be possible ever for that officer to determine that the student's behavior was not beyond the normal?

A. Yes.

Q. And what would happen in that instance?

A. You would basically tell them that they -- we didn't feel it was sufficient probable cause for a criminal charge or it wasn't a matter that we needed to be involved in and that they needed to handle it administratively.

 Q. And has that ever happened in your role, in your current position that you're aware of?

A. Oh, yeah.

Q. How often does that happen?

A. I would probably say more often than not.

Q. So I think we've covered this a little bit, but just to make sure. What are the Circumstance[s] under which a student might be charged with disorderly conduct?

A. Causing a severe disruption inside a classroom, um, causing a severe disruption during class change, um, in the cafeteria or in a setting, in an office setting, say an administrator is having a meeting with them and their behavior gets out of control, obviously if they come to school intoxicated and aggressively intoxicated, situations like that.

Ex. 3 (Dep. p. 55, l. 4 –p 58, l. 2).  A serious disruption in a cafeteria might including jumping up

on a table and causing a disturbance that might escalate into something involving hundreds of

students.  Ex. 3 (Dep. p. 58, l. 3 – p. 60, l. 12).  Throughout his testimony, Captain Rinehart

demonstrated that charges were made carefully only after investigation of the event, the totality

of the circumstances, and discussions with school officials.  He indicated no difficulty in

8

**JA298**

understanding or applying any statutes including the disorderly conduct statute and the disturbing the schools statute.

<div align="center">**Plaintiffs' Charges**</div>

In her Declaration S.P. reported that she refused the principal's request to leave the library with him, told the SRO that she did not want to talk to him or the principal when he arrived, that she cursed a girl laughing at her when she finally did leave with them and then "said something like 'f* all of you'" to students in the library who were clapping as she was lead out of the library.  Declaration, ECF, 5-5, pp. 2 & 3.  She was charged with disorderly conduct.  *Id*., p. 3.  D.S. was charged with disturbing the schools for fighting in the school, but the charges were later dismissed.  Declaration, ECF No. 5-4, pp. 1 & 2.  D.D. was charged with disturbing the schools for allegedly making threats against the school.  ECF No. 151-2, p. 2.  The charges were later dismissed.  *Id.,* p. 4.

<div align="center">

**ARGUMENT**

**I**

**PLAINTIFFS DO NOT OBJECT TO THE DISMISSAL OF PLAINTIFFS KENNY AND NESMITH**

</div>

Plaintiff's Response to Defendant's Motion For Leave To Submit Supplemental Authority (ECF No. 134) conceded that the claims of Kenny and Nesmith were "resolved" due to the amendment to §16-17-420 and noted that they were never convicted under the former provisions of that statute and "any records of their arrests are considered expunged pursuant to S.C. Code Ann. §17-22-920."  Response at page 2.  Therefore, they should be dismissed from this suit.  Their counsel do not object.

<div align="center">9</div>

## II

## SECTIONS 16-17-420 (PRIOR TO THE 2018 AMENDMENT) AND 16-17-530 ARE NOT VAGUE OR OTHERWISE UNCONSTITUTIONAL

In considering a constitutional challenge, we bear in mind that "[e]very statute is presumed to be constitutional." *Johnson v. Quattlebaum*, 664 F. App'x 290, 291 (4th Cir. 2016). "'(I)t is not on slight implication and vague conjecture that the legislature is to be pronounced to have transcended its powers, and its acts to be considered as void.' *Fletcher v. Peck*, 6 Cranch 87, 128, 3 L.Ed. 162. (1810). " *Flemming v. Nestor*, 363 U.S. 603, 617 (1960). Plaintiffs fail to overcome this heavy presumption for the reasons that follow.

This case is essentially a facial challenge. Although the challenge to the disorderly conduct statute is as applied to elementary and secondary students, it is applicable to that very large population rather than to individuals. *Edgar v. Haines*, 2 F.4th 298 (4th Cir. 2021) ("[a]t the outset, we reiterate that the plaintiffs are mounting a facial challenge, meaning that their claim is that the policies and regulations are unconstitutional not as applied to their own conduct, but rather, on their face, as they apply to the population generally. . . ."). Facial challenges such as the ones in the instant case are disfavored "because they 'run contrary to the fundamental principle of judicial restraint that courts should neither anticipate a question of constitutional law in advance of the necessity of deciding it nor formulate a rule of constitutional law broader than is required by the precise facts to which it is to be applied.'" *Edgar, supra*. Similarly, the Fourth Circuit stated as follows in *Schleifer by Schleifer v. City of Charlottesville*, 159 F.3d 843, 853 (4th Cir.1998):

> Striking down ordinances (or exceptions to the same) as facially void for vagueness is a
> disfavored judicial exercise. Nullification of a law in the abstract involves a far more

aggressive use of judicial power than striking down a discrete and particularized application of it. Of course there will be hard cases under any law. And of course all the particular applications of any general standard will not be immediately apparent. That is no reason, however, for courts to scrap altogether the efforts of the legislative branch. It is preferable for courts to demonstrate restraint by entertaining challenges to applications of a law as those challenges arise.

In addition to the disfavored status of their case, Plaintiffs still have to meet the heavy burden required for a vagueness challenge. In *Johnson v. United States*, 576 U.S. 591, 601 (2015), the Supreme Court stated that "[o]ur cases establish that the Government violates this guarantee by taking away someone's life, liberty, or property under a criminal law so vague that it fails to give ordinary people fair notice of the conduct it punishes, or so standardless that it invites arbitrary enforcement." 576 U.S. at 595.[2] "[A] regulation that 'fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement,' is impermissibly vague and must therefore be invalidated." *Edgar.* As stated in *Kolbe v. Hogan*, 849 F.3d 114, 149 (4th Cir. 2017). "[T]he

---

[2] *Johnson v. Quattlebaum, supra*, 664 F. App'x at 294, recognized *Johnson v. United States*, as changing the law regarding showings as to vagueness claims:

> "in its ruling, the district court relied on the statement in *Vill. of Hoffman Estates* [v. *Flipside, Hoffman Estates, Inc.,* 455 U.S. 489 (1982)] that, where no constitutionally protected conduct is concerned, courts "should uphold the [vagueness] challenge only if the enactment is impermissibly vague <u>in all of its applications</u>." 455 U.S. at 495, (emphasis added [in *Johnson*]). However, the Supreme Court recently backed away from this pronouncement: "[O]ur holdings squarely contradict the theory that a vague provision is constitutional merely because there is some conduct that clearly falls within the provision's grasp." *Johnson* [*supra*], 135 S.Ct. at 2561. . . .

*Edgar, supra,* held that "facial challenges typically require 'a showing that no set of circumstances exists under which the [law] would be valid, i.e., that the law is unconstitutional in all of its applications, or that the statute lacks any plainly legitimate sweep.' *Miselis,* 972 F.3d at 530 (cleaned up)." This quotation does not appear to limit *Quattlebaum* as to vagueness claims although one was involved in *Edgar*. To the extent that the ruling in *Village of Hoffman,* noted in *Quattlebaum*, remains valid, the Attorney General preserves that argument because Plaintiffs have not shown that the laws at issue are impermissibly vague in all their applications. They also have failed to show that the statutes are vague in any applications.

vagueness inquiry . . . focuses on the intractability of identifying the applicable legal standard, not on the difficulty of ascertaining the relevant facts in close cases." Moreover, "[c]lose cases do not make a regulation vague." *Edgar; see also Amir, supra*, 639 S.E. 2d at 150 ("The constitutional standard for vagueness is whether the law gives fair notice to those persons to whom the law applies.")

Neither statute is unconstitutionally vague under the above standards. As the Supreme Court has stated, "[t]he root of the vagueness doctrine is a rough idea of fairness. It is not a principle designed to convert into a constitutional dilemma the practical difficulties in drawing criminal statutes both general enough to take into account a variety of human conduct and sufficiently specific to provide fair warning that certain kinds of conduct are prohibited." *Colten v. Kentucky*, 407 U.S. 104, 110 (1972).[3]    The statutes at issue meet these standards of both "general enough" and "sufficiently specific." They should be sustained as discussed below.

### A

### Section 16-17-420 (Prior to 2018 Amendment)

Plaintiffs focus on the parts of the statute that make it unlawful for a person to "interfere or disturb in any way" to "loiter" and "to act in an obnoxious manner, but these terms are all limited by the requirement that a person engage in these acts "wilfully or unnecessarily." *Amir, supra,* recognized that these terms limit the statute. Although scienter[4] is not required in a law to

---

[3] *Colten* sustained a Kentucky statute that provided that "A person is guilty of disorderly conduct if, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he: '(f) Congregates with other persons in a public place and refuses to comply with a lawful order of the police to disperse.'"

[4] "Scienter" has been defined as "[a] degree of knowledge that makes a person legally responsible for the consequences of his or her act or omission; the fact of an act's having been done knowingly, esp. as a ground for civil damages or criminal punishment." SCIENTER, Black's Law Dictionary (10th ed. 2014)

12

avoid vagueness, it "may mitigate a law's vagueness." *Village of Hoffman Estates*, 455 U.S. at 499. This statute is not vague and in need of scienter. Nevertheless, it has been construed so as to limit its application.

The South Carolina Supreme Court relied on the limiting terms of "wilfully" and "unnecessarily" to dispose of the First Amendment / overbreadth challenge in *Amir*. Although the Court did not rule on the merits of the vagueness challenge because the Plaintiff lacked standing on that issue, its interpretation of the statute is instructive here:

> The overbreadth doctrine additionally provides that any threat or deterrence to constitutionally **149 protected expression may be removed by a limiting construction on the challenged statute. *Broadrick,* 413 U.S. at 613, 93 S.Ct. 2908. Analyzed from this perspective, § 16–17–420 is limited in its application by its own terms so as to remove any substantial threat to constitutionally protected expression. First, the statute specifically deals with the disturbance of students and teachers in South Carolina's schools, and not a disturbance in just any public forum. *See S.H.B.,* 355 So.2d at 1178. Furthermore<u>, it does not explicitly prohibit any type of gathering or expression except those which disturb the learning environment in South Carolina's schools.</u> Those who wish to engage in this type of "expression" are free to either do so elsewhere; or do so in the school environment in a way that does not disturb schools. *McAlpine,* 309 F.Supp. at 140. <u>Finally, the statute is limited in the type of conduct that may be punished. The disturbance or interference is required to be done "wilfully" or "unnecessarily." S.C.Code Ann. § 16–17–420(1)(a).</u>
>
> Taken to its outermost First Amendment boundaries, § 16–17–420 is most accurately characterized as "intertwining" speech and non-speech elements. *Cox v. Louisiana,* 379 U.S. at 563; *McAlpine,* 309 F.Supp. at 140. Appellant *390 argues that this might include constitutionally protected expression, but we find this is not "substantially" so. The proper functioning of schools is "a topic of great and fundamental interest to our society." *McAlpine* 309 F.Supp. at 140. Clearly the State has a legitimate interest in maintaining the integrity of its education system.[footnote omitted] This objective is necessarily achieved in part by classroom discipline. Because the school environment is "fragile by [its] nature," it requires a certain level of conduct and cooperation on the part of both the student and the teacher in order to function effectively for all its participants. *S.H.B.,* 355 So.2d at 1178. Any conduct in this context that interferes with the State's legitimate objectives may be prohibited. "The fact that free speech is intermingled with such conduct does not bring with it constitutional protection." *McAlpine,* 309 F.Supp. at 140.

13

JA303

639 S.E.2d  at 148–49.  Accordingly, conduct may not be punished under §16-17-420 unless it

willfully or unnecessarily disturbs the learning environment.    Plaintiffs overlook the element

that the conduct must "disturb the learning environment" as well as be willful or unnecessary.

> Other states have construed similar language to limit the scope of their statutes:

> We note immediately that section 877.13 does contain a specific scienter requirement that
> a person act "knowingly" to interfere or disrupt school functions or activities. Thus, the
> accused is not faced with the perils of strict criminal liability for an unintentional
> violation of this statute. . . .Giving the terms in section 877.13 their plain and ordinary
> meaning, we conclude that this statute is not vague because it seeks to prohibit any
> conduct, acts, etc., which are specifically and intentionally designed to stop or
> temporarily impede the progress of any normal school function or activity occurring on
> the school's property."

*M.C. v. State*, 695 So.2d 477, 483 (Fla.App. 3 Dist.,1997).  The requirement in §16-17-420 that

the conduct be "willful" certainly supplies the same scienter requirement as does the requirement

in the Florida law that acts be done "knowingly."

Section 16-17-420 contains the conditions that a person act "unnecessarily" or "wilfully."

"Unnecessary" is a term of ordinary meaning that something is "[n]ot required under the

circumstances; not necessary."   UNNECESSARY, Black's Law Dictionary (10th ed. 2014).

Therefore, the proscribed conduct of interfering, disturbing, loitering or acting obnoxiously must

be willful or unnecessary and must "disturb the learning environment" (*Amir*).    These terms

"provides additional indicia of objectivity" as did the term "unreasonably" in a Seattle ordinance

that made a person guilty of "disorderly bus conduct" if he or she "[u]nreasonably disturbs others

by engaging in loud or raucous behavior."  *City of Seattle v. Eze,* 759 P.2d 366, 370, 111

Wash.2d 22, 29 (Wash.,1988).

 Courts have upheld a number of similar statutes prohibiting disturbance of schools:

*Toledo v. Thompson-Bean*, 879 N.E.2d 799, 802, 804 173 Ohio App.3d 566, 570, 2007 -

Ohio- 4898, ¶ 13 (Ohio App. 6 Dist.,2007) ("No person shall * * * disrupt, disturb or interfere

with the teaching of any class of students, or disrupt, disturb or interfere with any activity conducted in a school * * *.")[5]

Com. v. Bohmer, 372 N.E.2d 1381, 1386, 374 Mass. 368, 372 (Mass. 1978) ("wilfully interrupts or disturbs a school or other assembly of people met for a lawful purpose . . . ." § 40. Disturbance of schools or assemblies, MA ST 272 § 40)

M.C., supra.

In re D.H., 663 S.E.2d 139, 140, 283 Ga. 556, 557 (Ga.,2008)("the phrase 'disrupt or interfere with the operation of any public school' contains words of ordinary meaning that give fair notice as to the statute's application.")

McAlpine v. Reese, 309 F.Supp. 136, 138 (D.C.Mich. 1970)(the statute provided that "[n]o person shall wilfully or maliciously make or assist in making any noise, disturbance, or improper diversion by which the peace, quietude or good order of any public, private, or parochial school is disturbed.")[6]

State v. Schoner, 591 P.2d 1305, 1306, 121 Ariz. 528, 529 (Ariz.App., 1979)(The statute provided that "[a] person who wilfully disturbs a public school or school meeting is guilty of a misdemeanor . . . .")

---

[5] Toledo held that "the Safe School Ordinance is not vague for its use of the terms 'disrupt' and 'disturb' as they entail an objective test. . . . However, following the reasoning of Euclid v. Moore, supra, we are also required to construe the ordinance as proscribing only "willful" disturbances. . . . ('Statutes that prohibit 'disturbing the peace' are construed, if possible, to apply only to conduct that is actually intended to create a disturbance * * *')"). Id.

[6] "The specificity of the ordinance is further emphasized by its use of the words 'wilfully or maliciously.' As Mr. Justice Black, writing for the majority, held in Adderley et al. v. State of Florida, 385 U.S. 39149 (1966), such words make the ordinance 'more understandable and clear,' and 'narrow the scope of the offense.'"  McAlpine v. Reese, 309 F.Supp. 136, 139 (D.C.Mich. 1970)

15

*State v. Wiggins*, 158 S.E.2d 37, 42, 272 N.C. 147, 153 (N.C. 1967)( a person was guilty of a misdemeanor if he or she "wilfully interrupt[s] or disturb[s] any public or private school")[7]

Most significantly, the United States Supreme Court upheld a similar ordinance in *Grayned v. City of Rockford*, 408 U.S. 104, 107–08 (1972).   The Court considered an antinoise ordinance that  provided that "[n]o person, while on public or private grounds adjacent to any building in which a school or any  class thereof is in session, shall willfully make or assist in the making of any noise or diversion which disturbs or tends to disturb the peace or good order of such school session or class thereof. . . ."

As the Court stated in *Grayned*:

 [W]e find no unconstitutional vagueness in the antinoise ordinance. Condemned to the use of words, we can never expect mathematical certainty from our language. The words of the Rockford ordinance are marked by 'flexibility and reasonable breadth, rather than meticulous specificity,' *Esteban v. Central Missouri State College*, 415 F.2d 1077, 1088 (CA8 1969) (Blackmun, J.), cert. denied, 398 U.S. 965(1970), but we think it is clear what the ordinance as a whole prohibits. Designed, according to its preamble, 'for the protection of Schools,' the ordinance forbids deliberately noisy or diversionary activity

---

[7] As stated in *Wiggins*:

The defendants argue in their brief that this statute is void because its prohibitions are uncertain, vague or indefinite, under the rule applied by this Court in *State v. Furio*, 267 N.C. 353, 148 S.E.2d 275. They argue in their brief that the statute contains no definition of 'interrupt' or of 'disturb' and, consequently, men of common intelligence must necessarily guess at its meaning and thus be left in doubt as to what conduct is prohibited. It is difficult to believe that the defendants are as mystified as to the meaning of these ordinary English words as they profess to be in their brief. Clearly, they have grossly underestimated the powers of comprehension possessed by 'men of common intelligence.' Nevertheless, we treat this contention as having been seriously made.

* * *

G.S. s 14—273 does not have 'the objectionable quality of vagueness and overbreadth' thought by the United States Supreme Court to render void the Virginia statute under examination in *NAACP v. Button*, 371 U.S. 415405. G.S. s 14—273 is not 'susceptible of sweeping and improper application' so as to prevent *159 the advocacy of unpopular ideas and criticisms of public schools or public officials.

158 S.E.2d at 46, 272 N.C. 153, 158–59 (N.C. 1967).

16

that disrupts or is about to disrupt normal school activities. It forbids this willful activity at fixed times—when school is in session—and at a sufficiently fixed place—'adjacent' to the school. Were we left with just the words of the ordinance, we might be troubled by the imprecision of the phrase 'tends to disturb.' However, in *Chicago v. Meyer,* 44 Ill.2d 1, 4, 253 N.E.2d 400, 402 (1969), and *Chicago v. Gregory*, 39 Ill.2d 47, 233 N.E.2d 422 (1968), reversed on other grounds, 394 U.S. 111 (1969), the Supreme Court of Illinois construed a Chicago ordinance prohibiting, inter alia, a 'diversion tending to disturb the peace,' and held that it permitted conviction only where there was 'imminent threat of violence.' (Emphasis supplied.) *See Gregory v. Chicago*, 394 U.S. 111, 116—117, 121—122 (1969) (Black, J., concurring). Since *Meyer* was specifically cited in the opinion below, and it in turn drew heavily on *Gregory*, we think it proper to conclude that the Supreme Court of Illinois would interpret the Rockford ordinance to prohibit only actual or imminent interference with the 'peace or good order' of the school. Although the prohibited quantum of disturbance is not specified in the ordinance, it is apparent from the statute's announced purpose that the measure is whether normal school activity has been or is about to be disrupted. <u>We do not have here a vague, general 'breach of the peace' ordinance, but a statute written specifically for the school context, where the prohibited disturbances are easily measured by their impact on the normal activities of the school. Given this 'particular context,' the ordinance gives 'fair notice to those to whom (it) is directed.</u> (emphasis added).

408 U.S. at 110–12 (footnotes omitted).

In §16-17-420, we also have "a statute written specifically for the school context, where the prohibited disturbances are easily measured by their impact on the normal activities of the school. Given this 'particular context,' the ordinance gives 'fair notice to those to whom (it) is directed." *Id*. Particular terms of §16-17-420 are examined below which shows that all of them meet standards of constitutionality and that the statute is not vague.

### 1

### The Term "Interfering"

Plaintiffs have cited *Town of Honea Path v. Flynn*, 255 S.C. 32, 40, 176 S.E.2d 564, 567, (1970) which found vague an ordinance that made "a penal offense for one to interfere with a police officer 'in any manner, by word or act, * * *'." The Court questioned "just what kind of word or words would amount to interference with an officer is not at all indicated by the ordinance" and that "[t]o allow police officers, or other officers actively engaged in assigned

17

duties, the discretion to arrest and prosecute those whom they feel have made inappropriate remarks upon a charge of interference would, we think, invite gross abuses of discretion and impose unfair penalities and burdens upon the citizenry." *Id.*   That Honea Path ordinance is distinguishable because it is not limited by the requirement in §420 that the interference be disturbing to the learning environment.  State law has also recognized limitations on punishment for words addressed to a police officer.

Although Plaintiffs complain in their Preliminary Injunction Memorandum that the statute encroaches on First Amendment freedoms, they did not raise this claim in their Amended Complaint so as to bring the issue before the Court.  *See*, note 2, *supra.* Moreover, even Plaintiffs recognize that the South Carolina Supreme Court has said that  "[t]o punish only spoken words addressed to a police officer, a statute must be limited in scope to fighting words that 'by their very utterance inflict injury or tend to incite an immediate breach of the peace.' *Hill*, 482 U.S. at 461-462 (quoting *Lewis v. City of New Orleans*, 415 U.S. 130 (1974)."  *State v. Perkins*, 412 S.E.2d 385, 386, 306 S.C. 353, 354–55 (S.C.,1991):

<div align="center">

**2**

**The Term "Obnoxious"**

</div>

The terms "act in an obnoxious manner" are not vague because of the limitations in the instant statute just as the term "obnoxious" has prevailed against challenges elsewhere.

> The Court notes that the term "obnoxious," if taken alone, could push the envelope of unconstitutional vagueness. However, if taken in context of the sentence "obnoxious or offensive to the commonly and generally accepted standards of fitness and good taste," the scope of the conduct proscribed is sufficiently clear, and fairly puts a reasonable beer distributor on notice that vulgar or profane language will be prohibited in the context of beer advertising.

<div align="center">

18

</div>

*Bad Frog Brewery, Inc. v. New York State Liquor Authority*, 973 F.Supp. 280, 288 (N.D.N.Y.,1997); rev'd in part on other grounds, 134 F.3d 87, (2nd Cir., 1997) ; *see also, Fox v. Philadelphia Turf Club, Inc.,* 1987 WL 17751, at *3 (E.D.Pa., 1987*) (The Court found "that prohibition against 'disturbing the peace' and 'obnoxious behavior on the grounds of association' are standards which a person of ordinary intelligence can understand.").  Here, the obnoxious conduct must be willful or unnecessary and must be disturbing to the learning environment which is sufficient notice of its meaning.  Also, as noted, previously, the use of words alone may not be punished unless "fighting words."

### 3

### The Term "Loitering"

The inclusion of loitering in the statute is not vague.  "When 'loitering' is joined with a second specific element, courts have uniformly found that such legislation sufficiently informs a person of common understanding as to what is forbidden.  *State ex rel. Williams v. City Court of Tucson*, 520 P.2d 1166, 1168, 21 Ariz.App. 489, 491 (Ariz.App. 1974).  The loitering provision of the disturbing the schools law here is joined with the elements of willfully or unnecessarily engaging in such conduct.  Some other examples of loitering provisions that have been upheld include the following:

*Anderson v. Shaver*, 290 F.Supp. 920, 921 (D.C.N.M. 1968) upheld a New Mexico ordinance finding that it had "even more clarity and certainly (sic) [than a California statute given a restricted meaning] in that it defines what kind of loitering is forbidden, i.e. that done 'without lawful business there.' The term 'lawful business' has, in turn, been held to be sufficiently certain to apprise the individual of what is prohibited."

19

*D.H. v. City of New York*, 309 F. Supp. 3d 52 (S.D.N.Y. 2018)(statute prohibiting loitering for purposes of prostitution not vague)

*State v. Wallmuller,* 194 Wash. 2d 234, 245, 449 P.3d 619, 624 (2019) upheld community custody provision that a defendant "shall not loiter in nor frequent places where children congregate such as parks, video arcades, campgrounds, and shopping malls."

Under §16-17-420 additional "element[s]" (*Williams*) are included and the kind of loitering that is prohibited is defined (*Anderson*). Plaintiffs erroneously claim that the statute is not limited to "loitering that impairs school functions," but it is so limited. The loitering, as set forth above, must be disturbing to the learning environment as well as be willful or unnecessary. The statute would not apply to a student or anyone else unless they were loitering under the circumstances prescribed in §16-17-420.    In most instances, the statute would apply to non-students.  Certainly, the term is not vague.

### 4

### Summary as to §16-17-420

Section 16-17-420 is not unconstitutionally vague.  The terms at issue are all ones of ordinary meaning, and they are limited by the requirements that the conduct be willful or unnecessary and disturbing to the school environment.   Plaintiffs have not alleged in the Complaint that the statute infringes on constitutionally protected conduct, but even if they had raised the issue properly, §16-17-420 does not tread on constitutional rights.  Both the offender and law enforcement are under sufficient notice of the meaning of the law.  For these reasons, and those set forth above, the statute is not unconstitutionally vague.

## B

### Section 16-17-530

Plaintiffs focus on section 530's prohibitions on "conducting himself in a disorderly or boisterous manner" *See* Complaint, ¶ 49. They appear to acknowledge that that, under South Carolina law, language alone is not a basis for charging a person under §16-17-530 unless fighting words are used. As stated in *State v. Bailey*, 626 S.E.2d 898, 901, 368 S.C. 39, 45 (S.C.App.,2006):

> Bailey was charged with public disorderly conduct. The pertinent portion of the public disorderly conduct statute provides that it is a misdemeanor for a person to "be found ... at any public place or public gathering ... otherwise conducting himself in a disorderly or boisterous manner...." S.C.Code Ann. § 16-17-530(a) (2003). However, there is an additional requirement that "fighting words" must be used when one is charged with disorderly conduct towards a police officer.

And, as set forth in *State v. Perkins, supra*, 412 S.E.2d at 386:

> Section 16-17-530(a) provides:Any person who shall (a) be found on any highway or at any public place or public gathering in a grossly intoxicated condition or otherwise conducting himself in a disorderly or boisterous manner ... shall be deemed guilty of a misdemeanor.... (Emphasis added).Appellants challenge the underscored statutory provision as unconstitutionally overbroad under the First Amendment when applied to them. "[T]he First Amendment protects a significant amount of verbal criticism and challenge directed at police officers." *City of Houston v. Hill*, 482 U.S. 451, 461 (1987). The State may not punish a person for voicing an objection to a police officer where no "fighting words" are used. *Norwell v. Cincinnati*, 414 U.S. 14 (1973). To punish only spoken words addressed to a police officer, a statute must be limited in scope to fighting words that "by their very utterance inflict injury or tend to incite an immediate breach of the peace." *Hill*, 482 U.S. at 461-462 (quoting *Lewis v. City of New Orleans*, 415 U.S. 130 (1974). As further noted by the United States Supreme Court, the "fighting words" exception may require narrow application in cases involving words addressed to a police officer "because a properly trained officer may reasonably be expected to exercise a higher degree of restraint than the average citizen." *Hill*, 482 U.S. at 462. As stated by the high court: The freedom of individuals verbally to oppose or challenge police action without thereby risking arrest is one of the principal characteristics by which we distinguish a free nation from a police state .*Id*. at 462-63. Under the foregoing precedent, we conclude appellants cannot be punished under § 16-17-530(a) for voicing their objections to sheriff's officers where the record indicates no use of fighting words.

"*Perkins* requires more than profanity or loud and boisterous behavior directed at the officers." *State v. Pittman*, 537 S.E.2d 563, 566, 342 S.C. 545, 550–51 (S.C.App., 2000).

Plaintiffs' complaint is difficult to understand in light of the above authority. Under those cases, only conduct or "fighting words" are subject to a charge under 530, and certain conduct, without question, falls within constitutional limitations. As stated in *Johnson v. Quattlebaum*, *supra*, 664 F. App'x at 295:

> [S.C. Code Ann. §16-17-530 prohibiting obscene or profane language within hearing distance of a school or church] does not violate the Due Process Clause of the Fourteenth Amendment. It does not "fail[ ] to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits." *Hill*, 530 U.S. at 732. On the contrary, it forbids a narrow category of unprotected speech—fighting words—and only when that speech occurs within hearing distance of a school or church. Similarly, it is not "so standardless that it invites arbitrary enforcement." *Johnson*, 135 S.Ct. at 2556. Police officers cannot arbitrarily decide what conduct to punish under the Statute; both the fighting-words requirement and the proximity limitation circumscribe their discretion. "'As always, enforcement requires the exercise of some degree of police judgment,' and the degree of judgment involved here is acceptable." *Hill*, 530 U.S. at 733 (quoting *Grayned,* 408 U.S. at 114). . . .We conclude that the Statute is not unconstitutionally overbroad or vague.

The conclusion that §16-17-530 is constitutional is consistent with other decisions. Numerous disorderly conduct statutes and ordinances of other states have been upheld as not unconstitutionally vague including, for example, the following.

*City of Groppi v. Froehlich*, 311 F.Supp. 765, 767 (D.C.Wis. 1970)("'(1) Each [legislative] house may punish as a contempt, by imprisonment, a breach of its privileges or the privileges of its members * * * for . . .b) Disorderly conduct in the immediate view of the house and directly tending to interrupt its proceedings.")

*Freeman v. State*, 302 Ga. 181, 183, 805 S.E.2d 845, 848 (2017)("disorderly conduct when he or she '[a]cts in a ... tumultuous manner . . . .'". Upheld statute using dictionary definition of "tumultuous.")

*Livingston v. State*, 995 A.2d 812, 821, 192 Md.App. 553, 569 (Md.App., 2010)("[w]hile an individual is in any placement for tuberculosis treatment, the individual may not: (1) Behave in a disorderly manner." H–G § 18–325(b)(1).)

*Lowery v. Adams*, 344 F.Supp. 446, 453–54 (D.C.Ky., 1972)(Policy statement that "[t]he University will not allow or tolerate any disruptive or disorderly conduct which interferes with the rights and opportunities of those who attend the University for the purpose for which the University exists-the right to utilize and enjoy the facilities provided to obtain an education.")

*Occupy Fort Myers v. City of Fort Myers*, 882 F.Supp.2d 1320, 1337 (M.D.Fla., 2011) ("Loitering and boisterousness. Sleep or protractedly lounge on the seats, benches, or other areas, or engage in loud, boisterous, threatening, abusive, insulting or indecent language, or engage in any disorderly conduct or behavior tending to a breach of the public peace." Court found only the terms "protractedly lounge" and "tending" to be vague)

*Tigrett v. Rector and Visitors of University of Virginia,* 97 F.Supp.2d 752, 755 (W.D.Va., 2000) ("Disorderly conduct is defined to include acts which break the peace or are lewd, indecent or obscene and which are not constitutionally-protected speech.")

*U.S. v. Cassiagnol*, 420 F.2d 868, 872 (4th Cir. 1970)("GSA regulation prohibiting 'unwarranted loitering * * * or assembly' and 'unseemly or disorderly conduct' while on government property.")

Several statutes and regulations including "boisterous" as part of the definition of disorderly conduct have been upheld.  *See, eg.  United States v. Agront*, 773 F.3d 192, 197 (9th

Cir. 2014)("prohibition on '[d]isorderly conduct' creating 'loud, boisterous, and unusual noise' on VA property . . . ."); *Heard v. Rizzo*, 281 F. Supp. 720, 741 (E.D. Pa.), aff'd, 392 U.S. 646, 88 S. Ct. 2307, 20 L. Ed. 2d 1358 (1968)willfully making "loud, boisterous and unseemly noise or disturbance"); *City of Cincinnati v. Hoffman*, 31 Ohio St. 2d 163, 165, 285 N.E.2d 714, 716–17 (1972)(Ordinance providing that "[i]t shall be unlawful for any person to willfully conduct himself or herself in a noisy, boisterous, rude, insulting or other disorderly manner, with the intent to abuse or annoy any person or the citizens of the city or any portion thereof . . . .").

Section 16-17-530 clearly passes muster under standards applied to vagueness challenges.  It is "both general enough to take into account a variety of human conduct and sufficiently specific to provide fair warning that certain kinds of conduct are prohibited." *Colten, supra.*    As stated in *Commonwealth v. Telcinord*, 94 Mass. App. Ct. 232, 239, 113 N.E.3d 382, 389 (2018), quoting *Commonwealth v. Orlando*, 371 Mass. 732, 733-736, 359 N.E.2d 310 (1977),:

> A more specific standard is impractical because the conduct proscribed by this law necessarily varies according to its location and timing.... A disturbing the peace standard which attempted to define more precisely the levels of noise and types of conduct permitted in various places at varying times would be both underinclusive and overbroad. The void for vagueness doctrine does not require this result. Rather, for offenses such as this, it permits the use of a normative standard which informs a potential defendant that his common sense in most cases will define proscribed conduct.

"Our case law is replete with examples of upholding statutory language that is not precise but nevertheless "'requires a person to conform his conduct to an imprecise but comprehensible normative standard so that men of common intelligence will know its meaning.'" *Commonwealth v. Telcinord*, 113 N.E.3d at 388–89.    This statute is most certainly comprehensible and provides fair warning.

## III

## CERTIFICATION

The South Carolina Supreme Court in its discretion may answer questions from a federal court that are determinative of a claim and are not controlled by existing precedent in the decisions of the Supreme Court. S.C.App.Ct. R. 228(a). Certifying a question to a state's highest court is appropriate when the state law is unsettled. *Lehman Bros. v. Schein*, 416 U.S. 386, 391(1974).

*Builders Mut. Ins. Co. v. Burton Co., Inc*., 2007 WL 2284576, at *7 (D.S.C., 2007).  Although

the Defendant Wilson maintains that the statutes are not vague, should this Court determine that

clarification of either statute by the South Carolina Supreme Court would be determinative of a

claim, then this Court should certify questions to the Supreme Court for that purpose.

## IV

## SEVERABILITY

State law—here, South Carolina law—governs the severability of a state statute. *Muller*, 889 F.2d at 57; *see Timmons*, 281 S.C. at 59, 314 S.E.2d 322. In South Carolina, the test for severability is to determine whether or not the Legislature would have passed the residue independently of that which is void.[W]here part of the statute is unconstitutional, and that which remains is complete in itself, capable of being executed, wholly independent of that which is rejected, and is of such character as that it may fairly be presumed that the Legislature would have passed it independently of that which is in conflict with the Constitution, then the courts will reject that which is void and enforce the remainder. *Townsend v. Richland County*, 190 S.C. 270, 2 S.E.2d 777, 781 (1939). *See Thomas v. Cooper River Park*, 322 S.C. 32, 471 S.E.2d 170, 171 (1996); *Thayer v. South Carolina Tax Comm'n*, 307 S.C. 6, 413 S.E.2d 810 (1992).

*Murray v. Kaple*, 66 F.Supp.2d 745, 750 (D.S.C., 1999).  Should this Court find any part of the

statutes unconstitutional, those parts should be severed and the remainder of the statute enforced.

## CONCLUSION

Brought as a sweeping challenge to law enforcement and a radical effort to purge

retroactively criminal records of students all over the state, this suit fails.   The statutes

challenged have been the law in this State for decades and have never been overturned.  They are

sustainable under a well-developed body of case law discussed above.    The Attorney General

respectfully requests that his Motion for Summary Judgment be granted[8].

Respectfully submitted,

ALAN WILSON
Attorney General
Federal ID No.10457

ROBERT D. COOK
Solicitor General
Federal ID No. 285
Email: RCook@scag.gov

/s/ J. Emory Smith, Jr.
J. EMORY SMITH, JR.
Deputy Solicitor General
Federal ID No. 3908
Email: ESmith@scag.gov

July 23, 2021                                Counsel for Defendant Wilson

---

[8]  The Attorney General reserves his arguments in opposition to the certification of the class, and because this suit fails on the merits, he reserves his arguments in opposition to retroactive expungement and will present them in opposition to Plaintiffs' Motion for Summary Judgment.

26

**EXHIBIT 1 TO AG's MOTION FOR SUMMARY JUDGMENT**

**Case No. 2:16-cv-2794-MBS**

**Wheatley Deposition- Cover & pp. 21-28**

USCA4 Appeal: 21-2166   Doc: 18   Filed: 02/11/2022   Pg: 323 of 353
2:16-cv-02794-MBS   Date Filed: 07/23/21   Entry Number: 215-2   Page 2 of 11
Kenny, et al. vs. Wilson, et al.

```
 1                  UNITED STATES DISTRICT COURT
               FOR THE DISTRICT OF SOUTH CAROLINA
 2                      COLUMBIA DIVISION
         --------------------------------------------------
 3       KENNY, et al.,

 4

                         Plaintiffs,
 5
              v.                    Case No.: 2:16-cv-02794-MBS
 6

 7       WILSON, et al.,

 8

 9                       Defendants.
         --------------------------------------------------
10

11

12               VIDEOCONFERENCE DEPOSITION OF

13                    CRAIG R. WHEATLEY

14                       MAY 3, 2021

15                    2:04 P.M. (CST)

16

17

18

19

20

21

22

23

24

25                REPORTED BY: JODI M. MEYER
```

```
 1        really hard time hearing.  Is anybody else or can
 2        you guys hear him clearly and loudly?
 3             MS. BURGESS:  He's a bit muffled.
 4               Is it possible to move closer to the
 5        speaker?  That might help.
 6             MR. SMITH:  We're working on it.
 7             THE COURT REPORTER:  Thank you so much.
 8        BY MS. BURGESS:
 9   Q.   So I'll just start over with my last question.
10        When did you begin working for the South Carolina
11        Department of Juvenile Justice?
12   A.   I'm actually on my second stint with the South
13        Carolina Department of Juvenile Justice.  I began
14        first time in August of 2000.  I left in the fall
15        of 2009 and I returned again in the spring of
16        2013.  I began my current position in 2013.
17   Q.   And what is your current job title?
18   A.   Current title is manager of data and statistics.
19   Q.   So if you began in 2013, that means you've been in
20        that role for about eight years; is that correct?
21   A.   Yes.
22   Q.   And what are your responsibilities in that role?
23   A.   I take a look at populations throughout the
24        agency.  I help provide and compile reports that
25        we do annually.  I provide data when data is
```

USCA4 Appeal: 21-2166   Doc: 18   Date Filed: 07/28/21   Pg: 325 of 353
Filed: 02/11/2022   Pg: 325 of 353   Page 4 of 11
2:16-cv-02794-MBS   Doc: 18

Kenny, et al. vs. Wilson, et al.

```
 1              management system.  It wasn't designed as a data

 2              information system as we would -- as we pull stuff

 3              out for data usage.

 4                      So it's taken us many, many, many years

 5              to upgrade the capability of the system to pull

 6              out the information that we have here, and that's

 7              lots of tweaking and changing to the system that's

 8              happened since JJMS went online in 2006 or so, I

 9              believe.

10   Q.   Great.  Thank you.  That was helpful.

11                      If we could turn back to Exhibit 1, the

12              Disorderly Conduct Data Spreadsheet -- can you

13              still see the spreadsheet?

14   A.   Yes.

15   Q.   -- is this the spreadsheet that you provided to

16              the ACLU?

17   A.   I believe so.

18   Q.   Could you describe how the Research and Data

19              Unit produced this spreadsheet?

20   A.   Like I said, we have access to an extract of the

21              data and we created a query using SQL to pull the

22              information out of it.  Things like the age -- the

23              ages -- we don't actually have the actual

24              birthdays in our system due to confidentiality, so

25              we have to estimate the age, so -- but other than
```

USCA4 Appeal: 21-2166    Doc: 18    Date Filed: 02/11/2022    Pg: 326 of 353    Page 5 of 11
2:16-cv-02794-MBS    Date Filed 07/23/21    Entry Number 215-2
Kenny, et al. vs. Wilson, et al.

```
 1        that, most of it is just -- give us all cases that

 2        have this charge and all the pertinent information

 3        that goes with it.

 4   Q.   Do you trust the work of the employee who prepared

 5        this spreadsheet?

 6   A.   Yes.

 7   Q.   Are you confident in the accuracy of the data in

 8        this spreadsheet?

 9   A.   I'm confident in the pulling of the data.  As far

10        as the accuracy of what is in the system, for the

11        most part, yes.

12   Q.   Now, let's look just a little bit closer at this

13        spreadsheet itself.  What does this

14        IsSchoolRelated column refer to?

15   A.   Several years back we added a field into the

16        system where the intake worker or anyone who's

17        working in a case could click the box denoting

18        that the case (inaudible.)

19             THE COURT REPORTER:  I'm sorry, can you say

20        the end?

21             THE WITNESS:  That the case was school

22        related.

23        BY MS. BURGESS:

24   Q.   And what does it mean when this row says 0?

25   A.   That the checkbox was not checked.
```

```
 1   Q.   And what would that mean?

 2   A.   That means one of two things, either the person

 3        doing the intake or dealing with the youth --

 4        typically an intake -- did not deem that it was a

 5        school-related offense or it was just left blank

 6        without (inaudible.)

 7             THE COURT REPORTER:  Without what?

 8             THE WITNESS:  (Inaudible.)

 9             THE COURT REPORTER:  I'm sorry.

10             THE WITNESS:  Omission.

11             THE COURT REPORTER:  Without omission.  Okay.

12        BY MS. BURGESS:

13   Q.   And what does it mean when the row says 1?

14   A.   That someone has actually checked the box

15        indicating a school-related offense.

16   Q.   This column here labeled Referral Source, what

17        does referral source refer to?

18   A.   It is what is selected by the intake worker as who

19        brought the referral to DJJ.

20   Q.   Great.  And so now I'm going to pull up the second

21        exhibit.  Can you see this?

22   A.   Yes.

23   Q.   Do you recognize this e-mail?

24   A.   I do not see the e-mail.  I thought it changed to

25        a different one.  I'm not seeing the e-mail.
```

USCA4 Appeal: 21-2166    Doc: 18    Date Filed: 02/11/2022    Pg: 328 of 353
2:16-cv-02794-MBS    Doc. 18    Date Filed 07/28/21    Entry Number 215-2    Page 7 of 11

Kenny, et al. vs. Wilson, et al.

```
1   Q.   Let me zoom out a little bit.

2            MS. HINGER:  Tiffani, I don't know if it's a

3        lag, but we're still seeing that spreadsheet right

4        now.

5            MS. BURGESS:  Oh, really?  Okay.  Hang on.  I

6        think I have to -- how about now?

7            THE WITNESS:  Yes.

8        BY MS. BURGESS:

9   Q.   Can you see the e-mail?

10  A.   Yes.

11  Q.   Great.  Do you recognize this e-mail?

12  A.   Yes.

13  Q.   Did you send this e-mail?

14  A.   Yes.

15  Q.   Could you read for me the last few sentences that

16       start, "We do have a 'referral source' listed"?

17  A.   "We do have a 'referral source' listed in JJMS.

18       This is typically given as the local law

19       enforcement entity involved in an arrest,

20       therefore it has been an unreliable variable in

21       determining whether a charge was given for actions

22       involving schools.  Please let me know if you have

23       any questions."

24  Q.   When you said "it has been an unreliable

25       variable," were you referring to the referral
```

```
 1        source variable?

 2   A.   Yes.

 3   Q.   Can you read for me the sentence starting with,

 4        "This variable is input manually"?

 5   A.   "This variable is input manually when charges are

 6        entered into the system, and is not a required

 7        field."

 8   Q.   Could you read the next sentence as well?

 9   A.   "As such it is prone to human error and omissions,

10        but is our best source for providing the data that

11        you requested."

12   Q.   What did you mean when you wrote that it is prone

13        to human error and omissions?

14   A.   If the fact that -- the omission is that it is not

15        required, so someone does not have to enter it in;

16        and typically if the youth is brought in by the

17        local sheriff's office from the referral, that is

18        what is entered in in many cases by our county

19        workers rather than this happened at a school.

20   Q.   Okay.  And could you explain what might be a human

21        error?

22   A.   Not understanding that the actual referral source

23        was a school.

24   Q.   And could you explain what might be an omission?

25   A.   Someone who does not enter anything into the field
```

```
 1            for referral source.

 2    Q.   How significant is the risk of human error or

 3         omission?

 4    A.   I couldn't put a number on it because I don't know

 5         what the actual true value is.

 6    Q.   Does the risk of error impact -- hang on a second.

 7         Would you say that the -- does the risk of human

 8         error or omission impact the reliability of the

 9         dataset on the whole?

10    A.   For this variable, yes.  Can I add something to

11         that?

12    Q.   Yes.

13    A.   As such, it is actually one of the variables we

14         almost never give to anybody even though it's in

15         the system because we don't trust it.  So even

16         though it's a data field that is collected, we

17         don't use it.

18    Q.   Is the reason for that that the individual

19         inputting data into JJMS may underreport whether

20         or not an incident is school related?

21    A.   It's not whether -- it's not because they

22         intentionally do it.  If they get a referral from

23         a police officer, they're going to generally, just

24         human nature, just enter in that that is the

25         source of the referral.
```

USCA4 Appeal: 21-2166    Doc: 18    Filed: 02/11/2022    Pg: 331 of 353    Page 10 of 11

2:16-cv-02794-MBS    Date Filed 07/28/21    Entry Number 215-2    Page 10 of 11
Kenny, et al. vs. Wilson, et al.

```
 1                   We at DJJ are not the keepers of the

 2            arrest data.  We only get what is referred to us,

 3            and so our workers will report who actually gave

 4            the referral to them.

 5     Q.     So does that mean that the individuals inputting

 6            data into JJMS are more likely to specify that an

 7            incident is not school related when it, in fact,

 8            may be?

 9     A.     That I don't know.  As far as -- because school

10            related is a separate field from the -- from what

11            we have in the system as a referral source, so I'm

12            not 100 percent sure if that is true.

13     Q.     Could we take a brief break to confer?

14     A.     Sure.

15                        (Recess taken.)

16            BY MS. BURGESS:

17     Q.     I just want to go back to clarify something you

18            were just talking about.  You were just discussing

19            a particular piece of data and you said that it

20            was one that DJJ does not typically use or rely

21            on.  Did you mean the referral source data or the

22            is school related data?

23     A.     The referral source.

24     Q.     Great.  So with respect to the IsSchoolRelated

25            column, could you just quickly clarify how human
```

```
 1         error might come in to filling in this particular

 2         column?

 3    A.   In many ways the same way as the referral source.

 4         It's not a required field as it's just a box that

 5         is checked or unchecked.

 6              One of the suggestions we've actually

 7         made to our IT department is to change it from a

 8         check/uncheck box to a yes/no and require someone

 9         to actually enter a yes or no, and I think that's

10         one of the things we're planning on developing,

11         but yeah, it's -- omission is probably the number

12         1 way that it can be -- have errors.

13              I'm not 100 percent sure on this, but I'm

14         less likely to think that you have an error if it

15         is checked.

16    Q.   So generally speaking, human error as it relates

17         to the IsSchoolRelated column may result in

18         underreporting of incidents that are school

19         related?

20    A.   It absolutely could, yes.

21    Q.   Just a couple quick -- couple of additional

22         questions.  First, would any human error

23         associated with the IsSchoolRelated column impact

24         the reliability of the data in the race column?

25    A.   Not that I'm aware.  I don't think it would.
```

**EXHIBIT 1 TO AG's MOTION FOR SUMMARY JUDGMENT**

**Case No. 2:16-cv-2794-MBS**

**Emails – Smith to Hinger 7-21-20 and Hinger to Smith 9-17-20**

## Emory Smith

| | |
|---|---|
| **From:** | Sarah Hinger <shinger@aclu.org> |
| **Sent:** | Thursday, September 17, 2020 2:39 PM |
| **To:** | Emory Smith; Susan Dunn; Galen Sherwin |
| **Cc:** | Sierra Diamond Mohamed; Afraz Khan |
| **Subject:** | RE: Kenny Discovery |
| **Attachments:** | Kenny v Wilson Ps 1st RFP.pdf |

Emory, Thank you for working with DSS to obtain this information. We would like to get a more detailed breakdown of the referrals data. I am attaching a request that is similar to the public records request that we made regarding the disturbing schools data, which DJJ provided previously. The most recent DJJ report includes data on whether a youth was referred for a school related offense (p. 16), so this data should be available for at least recent years.

I also wanted to let you know that we are planning to request incident reports from the Sheriffs' Departments in Greenville, Richland, and North Charleston. We do not intend to bring them back into the case actively.

Thank you,
Sarah

**From:** Emory Smith <ESmith@scag.gov>
**Sent:** Tuesday, July 21, 2020 12:25 PM
**To:** Sarah Hinger <shinger@aclu.org>; Susan Dunn <sdunn@aclusc.org>; Galen Sherwin <gsherwin@aclu.org>
**Cc:** Gerardo Romo <gromo@aclu.org>; Sierra Diamond Mohamed <smohamed@aclu.org>; Afraz Khan <AKhan@aclu.org>
**Subject:** RE: Kenny Discovery

DSS reports the data below, but the agency says that its database does not have a reliable way of determining which of the Public Disorderly Conduct cases are school based.  Therefore, the data below reflects all cases referred to DJJ of Public Disorderly Conduct including those that are for conduct off campus.

**Cases where the charge was the most serious offense.**

| | FY 15/16 | FY 16/17 | FY 17/18 | FY 18/19 | FY 19/20 |
|---|---|---|---|---|---|
| Disturbing School | 1433 | 700 | 855 | 6 | 1 |
| Public Disorderly Conduct | 884 | 854 | 692 | 878 | 863 |

**Cases where the youth was charged with the offense.**

| | FY 15/16 | FY 16/17 | FY 17/18 | FY 18/19 | FY 19/20 |
|---|---|---|---|---|---|
| Disturbing School | 1800 | 949 | 1140 | 8 | 1 |
| Public Disorderly Conduct | 1080 | 1033 | 840 | 1088 | 1057 |

**From:** Emory Smith
**Sent:** Monday, July 20, 2020 4:39 PM
**To:** 'Sarah Hinger'; Susan Dunn; Galen Sherwin

**EXHIBIT 3 TO AG's MOTION FOR SUMMARY JUDGMENT**

**Case No. 2:16-cv-2794-MBS**

**Rinehart Deposition – cover and pp. 12, 13, 17-21, 31, 39, 55-60 and vita**

1              UNITED STATES DISTRICT COURT
          FOR THE DISTRICT OF SOUTH CAROLINA
2                   COLUMBIA DIVISION

3    - - - - - - - - - - - - - - - - - - - - - - - - - -

4    KENNY, et al.,

5                Plaintiffs,

6          v.              Case No.: 2:16-cv-02794-MBS

7    WILSON, et al.,

8                Defendants.

9    - - - - - - - - - - - - - - - - - - - - - - - - - -

10

           REMOTE VIDEO CONFERENCE DEPOSITION
11

12         The following is the remote video

13   conference deposition of MICHAEL RINEHART, who

14   appeared virtually via Zoom, taken before Jean F.

15   Soule, Remote Notary Public, Registered

16   Professional Reporter, pursuant to Notice of Taking

17   Deposition, commencing at 9:01 a.m., CDT, Thursday,

18   January 14, 2021.

19

20

21                     *      *      *

22

23

24

25

1   accurate, there's nothing that's been added to it

2   since it was written as is?

3          A.     Not that I'm aware of.

4          Q.     Captain Rinehart, when did you begin

5   working for the Greenville County Sheriff's Office?

6          A.     I was hired in July of 1998.

7          Q.     And what is your current position at

8   the Greenville County Sheriff's Office?

9          A.     My current position is the Captain of

10  the Specialized Investigations Division.

11         Q.     And how long have you been in that

12  role?

13         A.     Since May of this year -- excuse me.

14  I'm sorry.  May of 2020.

15         Q.     And what are your responsibilities in

16  your current position?

17         A.     Currently I'm the division commander

18  over specialized investigations.  I supervise

19  approximately 50 sworn personnel, both in the

20  School Enforcement Unit, and there's also an

21  investigative unit that contains our crimes against

22  children unit, juvenile, Internet crimes against

23  children, sex crimes, victim advocates, domestic

24  violation.  I believe I've covered all of this.

25         Q.     And on a general level, what does

1    supervision entail for you of those, particularly

2    of your officers who work in schools?

3         A.    So currently, as a captain, I ov --

4    overall -- see over all the School Enforcement

5    Unit.  Obviously, we have a chain command, and I

6    have individuals that work firsthand in that School

7    Enforcement Unit.

8              My job is to facilitate information

9    from the School Enforcement Unit of our chain of

10   command to the Sheriff and information that needs

11   to be facilitated down the chain of command to the

12   deputies.  I review documents that come from the

13   unit and things that are brought to my attention by

14   those supervisors but also from my supervisors as

15   well.

16        Q.    And who do you report to?

17        A.    My direct supervisor is Major Damon

18   Hubber.

19        Q.    And what is his position at the

20   Sheriff's Office?

21        A.    He's a major.

22        Q.    And does he oversee a particular

23   department or title?

24        A.    He has several divisions that he

25   supervises.

1   would bring to my attention and ask for my advice

2   any input I would have on those.

3          Q.      And have they ever brought to you a

4   concern or a question about enforcement of the

5   disorderly conduct law?

6          A.      No, ma'am, not that I'm aware of.

7          Q.      Captain Rinehart, before you took on

8   your current position, what was your position with

9   the Greenville County Sheriff's department?

10         A.      Prior to the position that I hold now,

11  I was the lieutenant over the School Enforcement

12  Unit, which means I was the -- what we call the

13  platoon commander in my -- I was the supervisor

14  over the whole entire School Enforcement Unit, and

15  that was all my duties entailed, was the school

16  enforcement.

17         Q.      And what were your duties in that

18  role?

19         A.      Similar to what I do now.  Obviously,

20  it was more directed because it was just in

21  reference to the School Enforcement Unit.  I

22  oversaw the day-to-day operations of just the

23  school enforcement, and similar to my role now, as

24  the captain, facilitate information up and down the

25  chain of command to the deputies and to my

```
1    supervisors, administrative paperwork, things of
2    that nature.
3          Q.     Okay.  And in that role, did you
4    provide training to officers in the School
5    Enforcement Unit?
6          A.     Yes, ma'am.  I am actually a firearms
7    instructor through the South Carolina Criminal
8    Justice Academy.  So I participated in quali --
9    firearms qualifications and additional supplemental
10   training as far as firearms goes.  And, then, in
11   our yearly in-service training we do active threat
12   training, and I assist in that with a role player.
13   All deputies have to go through that, including the
14   SROs.
15              And can I add one thing to the
16   previous question that you asked me?
17         Q.     Absolutely.
18         A.     Also as a lieutenant, in my previous
19   position, I was also the liaison from the Sheriff's
20   Office to the Greenville County School District,
21   was also one of my main roles.
22         Q.     Okay.  Thank you.
23              And did you provide any training to
24   the School Enforcement Unit on enforcement of the
25   disorderly conduct law?
```

2:16-cv-02794-MBS   Date Filed 07/23/21   Entry Number 215-4   Page 7 of 19
USCA4 Appeal: 21-2166   Doc: 18   Filed: 02/16/2022   Pg: 341 of 353   Page 7 of 19
Kenny, et al. vs. Wilson, et al.

1     A.     Not on that statute in particularly,

2     no.

3     Q.     Okay.  And did you have any review or

4     other involvement in the -- let me rephrase that

5     question.

6            Did you review the arrests or incident

7     reports from officers in the School Enforcement

8     Unit?

9     A.     I cannot think of one in particular,

10    but, yes, ma'am, in my position previously, I would

11    have reviewed incident reports, and it's possible

12    that I would have reviewed a public disorderly

13    conduct report.

14    Q.     And if you were reviewing a disorderly

15    conduct report, what would you be looking for in

16    that review?

17    A.     Obviously, in the incident report

18    itself, making sure that the appropriate blocks are

19    filled out and it has the appropriate information

20    as far as incident locations, dates and times, any

21    victims, witnesses, complainants, if there were any

22    subjects, that information would be included, and,

23    then, reading the actual narrative of the report to

24    determine if the report itself or the incident

25    itself met the criteria of the statute and if there

```
 1   was -- to make sure there was probable cause to

 2   make a charge.

 3          Q.     Okay.  Um --

 4          A.     If there was any follow -- I'm sorry.

 5          Q.     No.  Please, go ahead.

 6          A.     And if there was any follow-up

 7   investigation that needed to be done, to make sure

 8   whether that was forwarded to the officer that made

 9   the charge or the appropriate investigative entity

10   within the Sheriff's Office.

11          Q.     Thank you.

12                 To go back, then, to your role as a

13   liaison to the school district, could you tell me a

14   little bit more about what that role involved?

15          A.     Basically, it involved communicating

16   with the school district if there was a incident

17   involving something school related or on school

18   grounds, I would be the one that would pass that

19   information on to them as far as communicating with

20   them to make sure we were on the same page for lack

21   of better terms.  We changed sheriffs a couple

22   times through elec --

23          Q.     And in that capacity or otherwise,

24   were you involved in conversations with the school

25   district about the role of the Greenville -- of the
```

2:16-cv-02794-MBS    Doc. 18    Date Filed 07/23/21    Entry Number 215-4    Page 9 of 19
USCA4 Appeal: 21-2166    Doc. 18    Filed: 02/16/2022    Pg: 345 of 353    Page 9 of 19
*Kenny, et al. vs. Wilson, et al.*

```
 1    School Enforcement Unit?

 2         A.    Yes.

 3               Could you hear me?

 4         Q.    Sorry.  I'm not sure if you're

 5    speaking or thinking.  I can't hear anything right

 6    now.

 7         A.    I said yes.

 8               MR. SMITH:  Raise your hand if you can

 9    hear me.  This is Emory.  Her audio must be messed

10    up.

11               MR. MAYLEBEN:  Yeah.  Just so you guys

12    know, I can hear the conference room.  Sarah, can

13    you hear us, Sarah?

14               Everyone in the conference room can

15    hear me, correct?

16               MR. VORBERGER:  Yes.

17               MR. SMITH:  Yes.

18               THE WITNESS:  Yes.

19               MR. MAYLEBEN:  Okay.  Sarah, can you

20    hear us?

21               MS. HINGER:  Okay.  I can hear now.

22               MR. MAYLEBEN:  Okay.  All right.

23    BY MS. HINGER:

24         Q.    So, okay.  Maybe I'll go back and

25    repeat that question, because I didn't hear
```

USCA4 Appeal: 21-2166    Doc: 18    Date Filed: 02/11/2022    Pg: 344 of 353
2:16-cv-02794-MBS    Date Filed 07/28/21    Entry Number 215-4    Page 10 of 19
Kenny, et al. vs. Wilson, et al.

1   memorandum of understanding?

2       **A.      Yes, ma'am.**

3       Q.      Okay.  So does that MOU set out the

4   roles and responsibilities for the School

5   Enforcement Unit?

6       **A.      It does.**

7       Q.      Okay.  And could you describe, then,

8   the roles and responsibilities as they are set

9   forth in the MOU?

10      **A.      To paraphrase, Reader's Digest**

11  **version, basically that the deputy sheriffs are**

12  **responsible for the safety and security -- physical**

13  **safety and security of the campus and the**

14  **investigation of criminal incidents that may be**

15  **related to the physical location of the school or**

16  **involving students of that school.**

17      Q.      And do the roles and responsibilities

18  set out in that MOU address enforcement of the

19  disorderly conduct law?

20      **A.      Not specifically.**

21      Q.      And do you recall which entities were

22  involved in drafting or editing the MOU?

23      **A.      Um, it would be representatives from**

24  **the school district and the Sheriff's Office.  And,**

25  **then, on the -- our county administrator and our**

1    available during class change.

2                   Most of them have offices.  So, if

3    they're actually working on an investigation, they

4    may be in their office in the school, but they're

5    also available for students and staff to kind of

6    speak with them if there's a situation that occurs.

7    So pro -- some proactive and some preactive.

8          Q.     And for the officers who are in your

9    School Enforcement Unit, other than the standard

10   trainings that any law enforcement officer would be

11   required to have, are there other training

12   requirements for officers in the School Enforcement

13   Unit?

14         A.     We send our SROs to the South Carolina

15   Criminal Justice Academy's two-week SRO

16   certification class.

17         Q.     And is that training description or

18   materials included in your SRO manual?

19         A.     Yes.

20         Q.     And is that an annual training

21   requirement?

22         A.     No.

23         Q.     When would an officer receive that

24   training?

25         A.     When they transfer to the school

USCA4 Appeal: 21-2166    Doc: 18    Filed: 02/11/2022    Pg: 346 of 353    Page 12 of 19
2:16-cv-02794-MBS    Date Filed 07/29/21    Entry Number 215-4
Kenny, et al. vs. Wilson, et al.

1          A.      It could.

2          Q.      And can you explain a little more how

3    that would?

4          A.      Well, obviously, if the -- if the

5    individual is causing a disturbance in the school

6    and the -- the teacher immediately picks up the

7    phone and calls an administrator or calls for the

8    SRO, then, obviously, the SRO is going to get down

9    there and try to evaluate what's going on.

10              Even if the teacher or the

11   administrator has tried to de-escalate the

12   situation, we would continue -- if the individual's

13   behavior was still beyond the normal, we would try

14   to de-escalate that.  It may be a situation if the

15   teacher or the administrator did not try to

16   de-escalate that, we could work on that as well,

17   ask the student to step outside, hey, talk to us,

18   what's going on, things like that.

19         Q.      And if a teacher or administrator

20   called for an SRO, would it be possible ever for

21   that officer to determine that the student's

22   behavior was not beyond the normal?

23         A.      Yes.

24         Q.      And what would happen in that

25   instance?

USCA4 Appeal: 21-2166    Doc: 18      Date Filed: 02/11/2022    Pg: 347 of 353   Page 13 of 19

2:16-cv-02794-MBS    Doc: 18    Date Filed: 07/23/21    Entry Number 215-4
Kenny, et al. vs. Wilson, et al.

```
 1        A.       You would basically tell them that

 2   they -- we didn't feel it was sufficient probable

 3   cause for a criminal charge or it wasn't a matter

 4   that we needed to be involved in and that they

 5   needed to handle it administratively.

 6        Q.       And has that ever happened in your

 7   role, in your current position that you're aware

 8   of?

 9        A.       Oh, yeah.

10        Q.       How often does that happen?

11        A.       I would probably say more often than

12   not.

13        Q.       And more often than not, would that

14   be, are we talking 90 percent of calls, 50 percent

15   of calls, could you ballpark an estimate?

16        A.       I don't know that I can ballpark an

17   estimate, but I think that's where we as law

18   enforcement in communicating with the teachers and

19   the administrators have to explain, because they

20   don't have an under -- they may not have an

21   understanding of what a violation of the law is or

22   not.

23                 So, in that instance, they may think

24   it's a violation of the law, we may go down there

25   and talk with them, explain to them, no, it's not a
```

1   violation of the law, you need to handle this

2   administratively.  There are different prongs to --

3   to the situation.

4        Q.    And do you ever receive pushback on

5   that from a teacher or administrator asking you to

6   become involved in an incident?

7        A.    Yes.

8        Q.    How do you handle that?

9        A.    We basically explain to them that

10  we've reviewed the situation and the circumstances,

11  and that based on the circumstances that have been

12  presented to us, all of the factors that have taken

13  into consideration, evaluated and looked over, that

14  it's not a criminal matter and it's not something

15  that we need to be involved in.

16       Q.    So I think we've covered this a little

17  bit, but just to make sure.  What are the

18  circumstance under which a student might be charged

19  with disorderly conduct?

20       A.    Causing a severe disruption inside a

21  classroom, um, causing a severe disruption during

22  class change, um, in the cafeteria or in a setting,

23  in an office setting, say an administrator is

24  having a meeting with them and their behavior gets

25  out of control, obviously if they come to school

1    intoxicated and aggressively intoxicated,

2    situations like that.

3         Q.    And let's start with the cafeteria.

4    What would constitute a serious disruption in the

5    cafeteria?

6         A.    Well, obviously, in a school setting

7    you have -- during lunch you have hundreds of

8    students in -- in the cafeteria.  If you had an

9    individual that's being so loud that they're

10   gaining the attention of their fellow students,

11   let's say they're jumping on top of the table in --

12   in the cafeteria or -- it would not be dissimilar

13   to us being out in public and someone is causing

14   such a disturbance that it would cause me to look

15   over and see what's going on versus someone having

16   a loud discussion with someone.

17        Q.    And would it always be a violation of

18   the disorderly conduct statute if someone's

19   behavior in the cafeteria attracted the attention

20   of others?

21        A.    Not necessarily.

22        Q.    And how would you determine when it

23   was a violation of the disorderly conduct statute?

24        A.    Some of the same things we've talked

25   about earlier, talking to witnesses, talking to the

USCA4 Appeal: 21-2166    Doc: 18    Date Filed: 07/28/21    Entry Number: 215-4    Page 16 of 19
Filed: 02/11/2022    Pg: 350 of 353    Page 16 of 19
Kenny, et al. vs. Wilson, et al.

1    individual themselves to determine what's going on,

2    your own observations of how that individual is

3    acting.

4         Q.    And how would you determine when to

5    engage in further investigation of the

6    circumstances an individual is attracting the

7    attention of others in the cafeteria?

8         A.    It may be a situation where the SRO

9    is called by an administrator to the cafeteria.

10   Once they get to the cafeteria, the situation

11   basically is nonexistent anymore.  So, then, we

12   would need to take the time -- because we don't

13   have those actual observations of the individual's

14   behavior, we would need to take the time to

15   interview the administrators, witnesses, and

16   possibly look at the video camera footage from the

17   school to determine if it's a violation or not.

18        Q.    And is engagement in disorderly

19   conduct in school cafeterias a matter of serious

20   concern for you?

21        A.    Yes.

22        Q.    Can you explain why that is?

23        A.    Because you have hundreds of students

24   inside a school, and if one individual is acting

25   out and not acting appropriately, it can cause

2:16-cv-02794-MBS    Date Filed 07/28/21    Entry Number 215-4    Page 17 of 19
USCA4 Appeal: 21-2166    Doc: 18    Filed: 02/11/2022    Pg: 351 of 353
Kenny, et al. vs. Wilson, et al.

1    other situations to stem from that.  We basically

2    want to remove that person from that situation at

3    the particular time, because we don't want it to

4    escalate into something involving hundreds of

5    students at a time.

6                Obviously, if you have hundreds of

7    students in a cafeteria and someone's behavior

8    causes another person to act out, it can cause a

9    fight, someone could physically be assaulted, a

10   teacher could be physically assaulted, and we're

11   trying to avoid it escalating beyond a disorderly

12   conduct.

13       Q.     And is disorderly conduct in school

14   cafeterias an issue that the School Enforcement

15   Unit deals with regularly?

16       A.     We deal with them.  I don't know

17   what -- I don't know what the definition of

18   regularly would be, but that's -- that's something

19   that -- that we have dealt with in the past and --

20   and will certainly probably deal with in the

21   future.

22       Q.     And would you say once a year, twice a

23   year, more than that?

24       A.     Well, the whole entire unit or one

25   particular school?

EXHIBIT

2 - RINEHART

exhibitsticker.com

# MICHAEL **RINEHART**

Captain, Specialized Investigations Division
Greenville County Sheriff's Office
4 McGee Street Greenville, SC 29601 · (864) 355-2070
mrinehart@greenvillecounty.org

Twenty-two (22) years of law enforcement experience with the Greenville County Sheriff's Office.

## EXPERIENCE

**JULY 1998 – OCTOBER 2001**
**DEPUTY SHERIFF,** GREENVILLE COUNTY SHERIFF'S OFFICE
Assigned to the Uniform Patrol Division-Bravo Platoon

**OCTOBER 2001 – NOVEMBER 2004**
**DEPUTY SHERIFF (VOLUNTARY TRANSFER),** GREENVILLE COUNTY SHERIFF'S OFFICE
Assigned to the Selective Enforcement Division-Directed Patrol Unit

**NOVEMBER 2004 – AUGUST 2006**
**DEPUTY SHERIFF (VOLUNTARY TRANSFER),** GREENVILLE COUNTY SHERIFF'S OFFICE
Assigned to the Uniform Patrol Division-Echo Platoon

**AUGUST 2006 – NOVEMBER 2009**
**MASTER DEPUTY (PROMOTION),** GREENVILLE COUNTY SHERIFF'S OFFICE
Assigned to the Uniform Patrol Division- Delta Platoon (Field Training Deputy)

**NOVEMBER 2009 – NOVEMBER 2013**
**SERGEANT (PROMOTION),** GREENVILLE COUNTY SHERIFF'S OFFICE
Assigned to the Uniform Patrol Division- Echo Platoon (Platoon, Field Supervisor)

**NOVEMBER 2013 – JANUARY 2017**
**SERGEANT (VOLUNTARY TRANSFER),** GREENVILLE COUNTY SHERIFF'S OFFICE
Assigned to the Community Services Division- School Enforcement (Platoon Supervisor, Liaison to Greenville County Schools)

**JANUARY 2017 – MAY 2020**
**LIEUTENANT (PROMOTION),** GREENVILLE COUNTY SHERIFF'S OFFICE
Assigned to the Specialized Investigation Division- School Enforcement (Platoon Commander, Liaison to Greenville County Schools)

**MAY 2020 – PRESENT**
**CAPTAIN (PROMOTION),** GREENVILLE COUNTY SHERIFF'S OFFICE
Assigned to the Specialized Investigation Division- (Division Commander, Sheriff's Office Command Staff)

# EDUCATION

**JUNE 1994**
**HIGH SCHOOL DIPLOMA,** MAULDIN HIGH SCHOOL, SC (GREENVILLE COUNTY SCHOOLS)

**MAY 1998**
**BACHELOR OF SCIENCE-CRIMINAL JUSTICE,** UNIVERSITY OF SOUTH CAROLINA SPARTANBURG

**OCTOBER 1998**
**BASIC LAW ENFORCEMENT,** SOUTH CAROLINA CRIMINAL JUSTICE ACADEMY

# SKILLS

- Field Training Officer (The Carolinas Institute for Community Policing)
- Specific Skills Instructor (SCCJA)
- ALERRT Civilian Response to Active Shooter Events Train-the-Trainer (Texas State University)
- Immediate Action Teams Active Shooter training (GTI)
- Law Enforcement and Schools:  A Partnership for Safe Schools "Trends in School Safety" Seminar attendee
- Law Enforcement and Schools:  A Partnership for Safe Schools "School Safety & Protecting our Children" Seminar attendee
- Management and Supervisory training (Appalachian Council of Governments)

- Firearms Instructor (SCCJA)
- FBI Carolina Command College training (FBI)
- Aggressive Criminal Enforcement training (ACE, SCCJA)
- Legal and Liability Issues in Schools training (Public Training Council)
- 2019 National School Safety Conference attendee
- School Shooting Prevention Leadership Forum attendee (FBI, School Safety Advocacy Council)
- 2019 Marjory Stoneman Douglas High School Commission attendee (SLED, SC DOE, SCLEOA, SC Sheriff's Association, USC School of Law)

# ACTIVITIES

President of the Wounded and Recovering Fund (W.A.R. Fund), a Non-Profit 501c3 that provides financial assistance to Law Enforcement Officers injured in the line of duty in Greenville County, SC.